UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02 CV 1514 (JCH) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | | |
|     Defendant | : | NOVEMBER 13, 2005 |

**DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

I.    First Amendment Retaliation

In the present case, the plaintiff claims that he was suspended without pay for his statements made to Chief Wearing during their meeting on August 13, 2002 and for statements made in his report of August 3, 2002, concerning Captain Ortiz. The plaintiff claims that these statements are protected by the First Amendment and that Chief Wearing retaliated against him because of the content of those statements. Chief Wearing denies that he retaliated against the plaintiff for any protected speech, and claims that the plaintiff's suspension was based solely on his conduct in walking out of their meeting of August 13, 2002.

1

In order to prove his First Amendment retaliation claim, the plaintiff must show that (1) his speech, i.e., the statements made to Chief Wearing in ending their meeting of August 13, 2002, was constitutionally protected; (2) that he suffered from an adverse employment action; (3) and that the content of the statements was a substantial motivating factor in the adverse employment action.

### A. Protected Speech

Speech is protected by the constitution if it touches on a matter of legitimate public concern. Specifically, when speech addresses issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government, it falls squarely within the boundaries of public concern.[1] However, when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to an employees behavior.[2] Employee grievances concerning internal policy are not protected speech.[3]

---

[1] Weeks v. Bayer, 246 F. 3d 1231, 1234 (9th Cir. 2001)
[2] Connick v. Myers, 461 U.S. 138, 147, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)
[3] Connick v. Myers, 461 U.S. 138, 154 (1983)

In determining whether the plaintiff's 'speech' in question is entitled to the protection of the First Amendment, you are not limited merely to the content of the speech, you must also consider the form and the context of the speech. To do this, you must look at the plaintiff's motivation and the audience chosen for the speech in determining whether it is protected speech.[4]

A public employees freedom of speech is not absolute.[5] The First Amendment does not require a public employer to tolerate speech which is insubordinate, embarrassing or vulgar.[6]

B.   Adverse Employment Actions

Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.[7] Absent one of these actions, adverse employment actions may exist if the plaintiff can objectively demonstrate that the total circumstances of his working environment changed to become unreasonably inferior and adverse when compared with the typical or normal, not ideal or model, workplace.[8]

---

[4]   Gilbrook v. City of Westminster, 177 F.3d 839, (9th Cir. 1999)
[5]   Connick v. Meyers, 461 U.S. 138, 142 (1983)
[6]   Morris v. Crow, 117 F.3d 449, 458 (11th Cir. 1997); Chesser v. Sparks, 248 F.3d 1117, 1125 (11th Cir. 2001)
[7]   Morris v. Lindau, 196 F. 3d 102, 110 (2d Cir. 1999)
[8]   Philips v. Bowen, 278 F. 3d 103, 109 (2d Cir. 2002)

### C. Substantial or Motivating Factor

As I have already instructed you, the plaintiff must also prove that his speech was a motivating factor in his suspension. In determining whether the plaintiff's remarks were a substantial or motivating factor behind his suspension, you may consider all of the facts and circumstances surrounding this decision, including but not limited to, the proximity of time between the protected speech and the alleged retaliation, the defendants expressed opposition to the speech, if any, and other evidence concerning the reasons proffered by the defendant for the plaintiffs suspension.[9]

Even if you determine that the plaintiff's suspension was motivated by protected speech, you must find in favor of Chief Wearing if you determine that he would have suspended the plaintiff even in the absence of any constitutionally protected speech. This principal prevents an employee who engages in unprotected conduct from escaping discipline for that conduct by the fact that it was related to protected speech.[10]

### D. Pickering Test

---

[9] Allen v. Iranon, 283 Fl3d 1070, 1074 (9th Cir. 2002)
[10] Heil v. Santoro, 147 F.3d 103, 110 (2d Cir. 1998); Waters v. Churchill, 511 U.S. 661, 681 (1994); Mt. Healthy v. Doyle, 429 U.S. 274, 286 (1977)

4

If you determine that the plaintiff has proven that his remarks were protected speech, that he was subjected to adverse employment action, and that his remarks were a substantial motivating factor for the adverse employment action, you must then balance the interest of the plaintiff against the interest of Chief Wearing in promoting a disciplined, effective and efficient police department. This balancing test requires full consideration of Chief Wearing's interest in the effective and efficient fulfillment of the responsibilities of the police department and the maintenance of proper discipline.[11] Because working relationships are essential to fulfilling public responsibilities, there is a wide degree of deference given to a supervisor's judgment.[12] When a government employee personally confronts a supervisor, the institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered.[13]

In other words, you may still find in favor of Chief Wearing if he has demonstrated that he reasonably believed that Officer Tolnay's conduct would potentially interfere with or disrupt

---

[11] Connick v. Meyers, 461 U.S. 138, 150-151 (1983)
[12] Connick v. Meyers, 461 U.S. 138, 151-152 (1983)
[13] Connick v. Meyers, 461 U.S. 138, 153 (1983)

the activities of the police department[14] in a way which outweighed the plaintiff's First Amendment rights.[15]

---

[14] Heil v. Santoro, 147 F.3d 103, 109 (2d Cir. 1998)

[15] Pickering v. Bd. of Educ., 391 U.S. 563, 568, 20 L. Ed. 811, 88 S. Ct. 1731 (1968); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)

## II.  QUALIFIED IMMUNITY - FEDERAL LAW

In the present case, Chief Wearing claims that, even if you find that the plaintiff's rights under the First Amendment have been violated, he is entitled to qualified immunity for his actions in suspending the plaintiff.

To establish qualified immunity, Chief Wearing must demonstrate that his conduct did not violate any of the plaintiff's clearly established rights that would have been known to a reasonable person at the time, or in the alternative, that it was objectively reasonable for him to believe that his actions did not violate any of those clearly established rights.[16] To put it another way, the objective reasonableness test is met - and defendants are entitled to qualified immunity - if officers of reasonable competence could disagree as to whether the plaintiff's rights under the First Amendment were violated when he was suspended.

For example, could reasonable officers disagree as to whether the 'speech' in question focused on a matter of public concern; could reasonable officers disagree as to whether the form, context, audience and plaintiff's motivation for making the speech, entitled the speech to protection under the First Amendment; could reasonable officers disagree as to whether the

---

[16]   Lennon v. Miller, 66 F.3d 416, 422, 423 (2nd Cir. 1995)

plaintiff's 'speech' or conduct could potentially interfere with the efficient operation of the police department; could reasonable officers disagree as to whether the need to run a disciplined and efficient police department outweighed the plaintiff's rights under the First Amendment.

You are not limited to these specific questions in your analysis, but these questions are meant to provide you with examples of the issues which you may examine in your analysis of the defense of qualified immunity.

The availability of qualified immunity does not turn on whether a defendant violated the plaintiff's rights; qualified immunity is a defense.[17]

Should you find that Chief Wearing violated the plaintiff's rights under the First Amendment, Chief Wearing is still entitled to immunity if you also find that it was objectively reasonable for him to believe that, in suspending the plaintiff from duty, he was not violating the plaintiff's constitutionally protected rights to free speech.

---

[17]    Lennon v. Miller, 66 F.3d 416, 422, 423 (2nd Cir. 1995)

### III.   PUNITIVE DAMAGES

In this case, should you find that Chief Wearing violated the plaintiff's rights under the First Amendment and is not otherwise entitled to qualified immunity, you may also award punitive damages should you feel that this case warrants such an award. The awarding of punitive damages is not mandatory and is left to your discretion based on the guidelines I will provide you.

The purpose of punitive damages is to punish Chief Wearing and deter him from similar conduct in the future. Punitive damages are available when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.[18]

Although there is no mathematical formula to compute punitive damages, such an award must bear a reasonable relationship to the plaintiff's injury and any malicious intent by Chief Wearing. Because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute a windfall to the plaintiff.[19]

---

[18]   Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996)
[19]   Lewis v. Cowen, 979 F.Supp. 99 (D. Conn. 1997)

IV.   CREDIBILITY OF WITNESSES

The jury determines the credibility of witnesses and the weight to be given to their testimony. No fact is determined merely by the number of witnesses testifying for or against. It is quality, not quantity, of testimony that controls.

The credibility of a witness may be impaired or completely destroyed by impeaching testimony, such as illegal or criminal conduct on the part of the witness. It may have been impeached by cross-examination; it may be affected by the appearance of the witness upon the stand; by his or her interest in the outcome; or by evident ignorance to facts to which he or she testifies. You may consider these matters in weighing the testimony in this case.

In passing on the credibility of each of the witnesses, there are certain considerations you may well have in mind:

> Ask whether the story a witness has told is plausible. Does it ring true? Or are there inconsistencies in it? How does it fit in with other evidence in the case that you believe and other facts you find to have existed? Does it mesh with that evidence and those facts?

You may well ask yourselves in passing on the credibility of any witness whether that witness has any bias or prejudice with regard to any party to the action and, if so, whether he

10

or she has permitted that bias or prejudice to color their testimony. A jury should always bear in mind that if a witness has a decided bias or prejudice, or has interest in the outcome of the case, that there lurks the temptation to sway or shade one's testimony.  In assessing witnesses' testimony, you may properly apply your own knowledge of human nature and of the motives that influence and control human action.  You have the right to bring to bear upon testimony in court the same tests of veracity that would be used in the every day affairs of life.  You are at liberty within your own sound judgment to choose what testimony you will believe and to discard in whole or in part the testimony of any others.

It is your duty as jurors to harmonize the evidence as far as it reasonably can be done. You are to test the evidence of the several witnesses by your own knowledge of human nature and of the motives which influence and control human nature, using the same good judgment which you apply to facts which are daily presented to you for your consideration and decision.

> Wright and Ankerman, Connecticut Jury
> Instructions, Volumes I and II, §§ 318,
>      640, 641, 645 (4th ed. 2000);
> Connelly v. Connecticut Co., 107 Conn. 236
> (1928).

V.     ATTORNEYS FEES NOT TO BE CONSIDERED BY JURY

In awarding damages in this case, you should not be concerned by any attorney's fees to which the plaintiff's attorney may be entitled to for handling this civil lawsuit. That is a matter for the Court to consider, and may be awarded over and above any damages awarded by you. The fees to which the plaintiff's attorney may be entitled for handling this case are not a proper element of damages and should not be a part of your deliberations.

Bodner v. Haeckel, 86 CV 338 (JAC)

      VI.    <u>THE DEFENDANT MAY ONLY BE LIABLE FOR HIS OWN ACTIONS</u>

Lastly, I instruct you that the City of New Haven and its Police Department are not defendants in this case. There are no claims against the City or the Police Department or any of individuals other than Chief Wearing. You may only hold Chief Wearing liable for his own actions, and not the actions of others.

Further, in assessing damages you are not to do so because you think the City of New Haven or anyone other than Chief Wearing did something wrong, and you are not to assume that anyone other than Chief Wearing will be liable for damages.

<u>City of Newport v. Fact Concerts, Inc.</u>, 438 U.S. 247, 268-71 (1981).

DEFENDANT
MELVIN WEARING

By

ROBERT A. RHODES
HALLORAN & SAGE LLP
Fed. Bar #ct 13583
315 Post Road West
Westport, CT 06880
Telephone: (203) 227-2855
Facsimile: (203) 227-6992
rhodes@halloran-sage.com

## CERTIFICATION

        This is to certify that on this 30th day of August, 2005, I hereby mailed a copy of the foregoing to:

Karen Lee Torre
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06150

Jonathan H. Beamon, Esq.
Assistant Corporation Counsel
Office of the New Haven Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510

 

                                                  ROBERT A. RHODES

def'sjurycharge.wpd

753587-1(HSFP)

753587v.1