IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
| Defendant | : | DECEMBER 28, 2005 |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S MOTION FOR A NEW TRIAL

Jonathan H. Beamon, Esq.
CT Fed. Bar No. 22937
Assistant Corporation Counsel
**OFFICE OF THE NEW HAVEN
 CORPORATION COUNSEL**
165 Church Street, 4th Floor
New Haven, CT 06510
Tel:    (203) 946-7958
Fax:    (203) 946-7942
E-Mail:  JBeamon@Newhavenct.net

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:    (203) 227-2855
Fax:    (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

John B. Farley, Esq.
CT Fed. Bar No. 02239
Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:    (860) 522-6103
Fax:    (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,
Melvin Wearing*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

                                                                                                                   **PAGE**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ......................................................................................................................... 1

      I.      THE MAYOR'S TRIAL TESTIMONY ........................................................... 1

      II.     THE ADMISSION OF THE NEWSPAPER ARTICLES ............................... 2

STANDARD OF REVIEW ......................................................................................................... 3

ARGUMENT ............................................................................................................................... 4

      I.      IF THE COURT CONCLUDES THAT ONE OF THE
            PLAINTIFF'S STATEMENTS WAS NOT PROTECTED
            BY THE FIRST AMENDMENT A NEW TRIAL IS
            REQUIRED ........................................................................................................ 4

      II.     A NEW TRIAL IS REQUIRED BECAUSE THE COURT
            SHOULD HAVE CHARGED THE JURY REGARDING
            THE <u>PICKERING</u> BALANCING TEST ............................................................ 5

      III.    A NEW TRIAL IS REQUIRED BECAUSE THE COURT
            SHOULD HAVE SUBMITTED INTERROGATORIES
            TO THE JURY REGARDING THE <u>PICKERING</u>
            BALANCING TEST ........................................................................................... 6

      IV.    A NEW TRIAL IS REQUIRED BASED ON THE
            COURT'S ALLOWING TESTIMONY REGARDING
            INDEMNIFICATION BY THE CITY OF NEW HAVEN ................................ 7

      V.     A NEW TRIAL IS REQUIRED BASED ON THE COURT'S
            ADMISSION OF INFLAMMATORY NEWS ARTICLES ............................. 9

      VI.    A NEW TRIAL IS REQUIRED BASED ON THE
            COURT'S FAILURE TO CHARGE THE JURY AS
            REQUESTED ON PUNITIVE DAMAGES AND IN
            RESPONSE TO THE JURY'S QUESTION REGARDING
            RESPONSIBILITY FOR THE PAYMENT OF DAMAGES .......................... 11

|     |     | A.   | The Court Erred in Its Instruction On Punitive Damages ........... 11 |
| --- | --- | --- | --- |
|     |     | B.   | The Court Erred In Its Response/Supplemental Charge Given In Reply To The Jury's Specific Question Regarding Responsibility For Payment Of Any Award ........... 13 |
| VII. | A NEW TRIAL IS REQUIRED BASED ON THE COURT'S ADMISSION OF TESTIMONY AND EXHIBITS REGARDING UNRELATED PAST INCIDENTS OF DISCIPLINARY ACTION OR LACK OF DISCIPLINARY ACTION ........... 15 |
| VIII. | A NEW TRIAL IS REQUIRED BECAUSE THE AWARD OF DAMAGES WAS AGAINST THE WEIGHT OF THE EVIDENCE ........... 18 |
|     |     | A.   | A New Trial Is Required On The Emotional Distress/ Noneconomic Damages Award ........... 18 |
|     |     | B.   | A New Trial Is Required On The Punitive Damages Award ........... 18 |
| IX. | THE PUNITVE DAMAGES AWARD WAS CONSTITUIONALLY EXCESSIVE AND REQUIRES THE ORDERING OF A NEW TRIAL ........... 19 |
|     |     | A.   | The Legal Standard Governing Punitive Damages: State Farm And The Gore Factors ........... 19 |
|     |     | B.   | The Second Circuit's Analysis of Punitive Damages ........... 22 |
|     |     | C.   | The Application Of The Gore Guideposts Demonstrates That The Punitive Damages Award Was Constitutionally Excessive ........... 23 |
|     |     |     | 1.   The Reprehensibility Guidepost Weighs Heavily in Favor of Vacating the Punitive Damages Award ........... 23 |
|     |     |     | 2.   The Ratio to Actual Harm Guidepost Weighs Heavily in Favor of Vacating the Punitive Damages Award ........... 24 |

        3.     The Comparison to Similar Cases Guidepost Weighs Heavily in Favor of Vacating the Punitive Damages Award ............................................. 25

            a.     A Review of Second Circuit Cases Demonstrates that the Punitive Damages Award Was Excessive ............................... 26

            b.     A Review of Cases from the District of Connecticut Demonstrates that the Punitive Damages Award was Excessive ............ 31

            c.     Other Section 1983 Cases from the Second Circuit and District of Connecticut Support the Vacating of the Punitive Damages Award ............................................. 36

X.     THE AWARD OF NONECONOMIC DAMAGES WAS CONSTITUTIONALLY EXCESSIVE AND REQUIRES THE ORDERING OF A NEW TRIAL ............................................. 38

XI.    A NEW TRIAL IS REQUIRED BASED ON THE PLAINTIFF'S COUNSEL'S INAPPROPRIATE STATEMENTS DURING HER CLOSING ARGUMENT ............... 38

XII.   A NEW TRIAL IS REQUIRED BECAUSE THE COURT SHOULD HAVE SUBMITTED INTERROGATORIES TO THE JURY REGARDING QUALIFIED IMMUNITY ............... 40

CONCLUSION ............................................................................................. 40

## PRELIMINARY STATEMENT

The defendant, Melvin Wearing, the former Chief of Police for the City of New Haven, submits this memorandum of law in support of his motion for a new trial pursuant to Fed. R. Civ. P. 59. In further support of his motion, Chief Wearing has submitted an appendix of exhibits (1 through 46). For the reasons set forth below, the Court should grant Chief Wearing's motion and order a new trial. In the alternative, the arguments set forth below support the ordering of a remittitur as to the award of compensatory, noneconomic damages and punitive damages.

## BACKGROUND

In the interest of efficiency, the background section of Chief Wearing's memorandum of law in support of his motion for judgment as a matter of law is incorporated by reference. The additional background provided relates to the issues briefed in this memorandum.

### I. THE MAYOR'S TRIAL TESTIMONY

On December 6, 2005, when asked by plaintiff's counsel whether he had given any thought that by speaking at the church and issuing an apology, he would have been putting the plaintiff, Arpad Tolnay, in jeopardy of civil liability, (12/6/05 Tr. at 235-36), the Mayor referenced the fact that the city indemnifies its officers in the performance of their responsibilities. (Id. at 236) Tolnay's counsel then asked the Mayor "what did you mean that Tolnay was indemnified?" (Id. at 237) Over Chief Wearing's counsel's objection, the Court also asked the Mayor to explain what he meant. (Id.) The Mayor then testified as follows:

> My general understanding of city officials is in the conduct of their business, we are acting in good faith. The city protects them from liability. They're not personally liable.

(Id. at 237) Tolnay's counsel then asked the Mayor whether his justification for his statements at the church was the fact that the "city will just pay for it." (Id. at 237-38) Chief Wearing's counsel continued to object to any testimony regarding indemnification. (Id. at 238-41)

## II. THE ADMISSION OF THE NEWSPAPER ARTICLES

During a break in the testimony of the first day of trial, Chief Wearing's counsel objected to Tolnay's attempts to have several newspaper articles introduced into evidence. (12/1/05 Tr. at 125-56) Tolnay's counsel maintained that the articles were only being offered for the limited purpose of establishing the publicity surrounding the underlying arrest. (Id.) Chief Wearing's counsel emphasized that the prejudicial effect of the articles outweighed their probative value. (Id. at 126) He further noted that the articles were full of hearsay and opinions. (Id.) As an alternative to the articles, Chief Wearing's counsel offered to enter into a stipulation stating that the news articles were published about the incident on the days identified in the articles. (Id.) Although the court indicated that it had some problems with the articles, it allowed them into evidence in a redacted format. (Id. at 129-30) Although the Court noted that the jury would have to be reminded "probably, constantly" that the articles were only being introduced to show publicity, not necessarily to show that they reflect the truth of the matter, that instruction did not come until the final instruction on December 8, 2005. (12/1/05 Tr. at 137-38) Moreover, immediately after the Court's ruling allowing the newspapers into evidence, plaintiff's counsel questioned Tolnay regarding the publicity arising out of the incident. (Id. at 157, 189-91) The newspaper articles then became the topic of extended testimony during the trial. (12/2/05 Tr. at 8-29 (Tolnay's Testimony); 12/6/05 Tr. at 209-10 (Mayor's Testimony))

The plaintiff's Trial Exhibit No. 6 was the front page of the New Haven Register for August 7, 2002. It included a quote by the police union president stating "we don't need any

2

grandstand play by our mayor and our chief so they're back in line with the Hispanic community." It also states as a headline in bold raised letters "Cops: mayor, chief 'sold us out.'" It further contains a statement by the union president, that apparently the Mayor and Chief should have stood up for officers, "whether it's politically correct or not." Further, the article discusses "[m]any officers" being polled in police headquarters and believing that the police acted correctly when they arrested the two ministers.

Plaintiff's Trial Exhibit No. 7 was an article from the New Haven Register. It contains the headline that the Mayor apologizes for arrests. It also contains a photograph of a woman attending the church service at which the Mayor apologized for charges against the two ministers. The photograph shows the woman raising her hands in the air with her mouth open in apparently a joyous expression.

At the side bar on December 1, 2005, the Court expressly indicated that with regard to the photograph of the woman in the newspaper article, the jury could not accept it for the fact that she was at the service on the date in question; rather they can only accept it for the fact that the newspaper alleged this. (12/1/05 Tr. at 136) Nonetheless, the jury was never given such a limiting instruction.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 59(a), "[a] new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. ..." The language of Rule 59(a) "supports a broad grant of discretion to the district court." Gasperini v. Center for Humanities, Inc., 149 F.3d 137, 142 n.2 (2d Cir. 1998). For example, under Rule 59, a district court may overturn a jury verdict for excessiveness and order a new trial without qualification. Bracey v. Board of Educ. of City of Bridgeport, 368 F.3d 108, 117 (2d

3

Cir. 2004). A new trial may also be granted when the jury's verdict is against the weight of the evidence. DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998). See Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634-35 (2d Cir. 2002) (per curium). "A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." Song v. Ives Labs, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992).

It is "inherent in the proposition that the district judge may weigh the evidence that the judge will consider the credibility of witnesses." United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998). See Song 957 F.2d at 1047. In fact, the district court is "in a unique position to assess the credibility of the witnesses and to determine the weight which should be accorded their testimony." Song, 957 F.2d at 1047. Thus, "principles of deference to the jury do not override the trial judge's duty to 'see that there is no miscarriage of justice.'" Landau, 155 F.3d at 105. Accordingly, "'[i]f convinced that there has been [a miscarriage of justice] then it is [the trial judge's] duty to set the verdict aside ....'" Id.

Unlike judgment as a matter of law, a new trial may be granted even if there is "substantial evidence" supporting the jury's verdict. Landau, 155 F.3d at 104; Song; 957 F.2d at 1047; Benevino v. Saydjari, 574 F.2d 676, 683 (2d Cir. 1978).

## ARGUMENT

### I. IF THE COURT CONCLUDES THAT ONE OF THE PLAINTIFF'S STATEMENTS WAS NOT PROTECTED BY THE FIRST AMENDMENT A NEW TRIAL IS REQUIRED

The plaintiff's claim is based on two incidents of speech. The final three paragraphs in his case incident report, (Pl.'s Trial Exhibit No. 4), and his comments at the August 13, 2002

4

meeting. As part of its instructions, the Court identified these statements to the jury as protected under the First Amendment as a matter of law.

If, as part of its analysis of Chief Wearing's motion for judgment, the Court concludes that one of the two statements was not protected by the First Amendment, a new trial is required because the jury based its damages award on the alleged violation of Tolnay's free speech rights based on two incidents. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000)(If an instruction improperly directs the jury on whether the plaintiff has satisfied his burden of proof, "it is not harmless because it goes directly to the plaintiff's claim, and a new trial is warranted."). As such, the award will be grossly excessive and inflated, as it represents a finding based on two protected statements. It would constitute a manifest injustice for the verdict to stand based on the underlying assumption that both statements were protected by the First Amendment. Moreover, the evidence at trial could have been limited to only the protected statement. Thus, if allowed to stand, the verdict will be based on evidence that the jury should never have considered. Accordingly, a new trial must be ordered.

## II. A NEW TRIAL IS REQUIRED BECAUSE THE COURT SHOULD HAVE CHARGED THE JURY REGARDING THE PICKERING BALANCING TEST

Chief Wearing submitted a jury charge requesting that the balancing test under Pickering v. Board of Educ., 391 U.S. 563 (1968) be submitted to the jury. (Docket Entry No. 51-5, at 4-6) That instruction was not given and Chief Wearing's counsel took an exception to the jury not being charged on the Pickering balancing test. By not instructing the jury regarding test, and in particular, the right of a governmental employer to control potential employee speech in the interest of efficiency and preventing disruption, the Court eliminated Chief Wearing's ability to assert that defense at the trial. At trial, Chief Wearing testified regarding the adverse effect and disruption that an officer's insubordination directly to the Chief of Police can have on a police

5

department. (12/6/05 Tr. at 32-36) Thus, Chief Wearing was entitled to have the <u>Pickering</u> balancing test considered as part of his case. By its ruling, the Court eliminated that issue. As part of its ruling, it necessarily made factual findings against Chief Wearing. The Court should have involved the jury in those factual findings and instructed it on the relevance of disruptive behavior to the First Amendment retaliation analysis. <u>Gorman-Bakos v. Cornell Co-op. Extension</u>, 252 F.3d 545, 557 (2d Cir. 2001). Accordingly, the Court's ruling constitutes prejudicial error to Chief Wearing. As such, unless the Court grants judgment on this matter in favor of Chief Wearing, a new trial should be ordered.

### III. A NEW TRIAL IS REQUIRED BECAUSE THE COURT SHOULD HAVE SUBMITTED INTERROGATORIES TO THE JURY REGARDING THE <u>PICKERING</u> BALANCING TEST

While as a general rule the <u>Pickering</u> balancing test is a matter of law for the district court to apply, where there are questions of fact relevant to that application, the Second Circuit has recognized that it can "envision cases in which the question of the degree to which the employee's speech could reasonably have been deemed to impede the employer's efficient operation would properly be regarded as a question of fact, to be answered by the jury prior to the [district] court's application of the <u>Pickering</u> balancing test.'" <u>Gorman-Bakos</u>, 252 F.3d at 557.

In <u>Gorman-Bakos</u>, the court concluded that after the underlying factual disputes were "decided by a fact-finder, the district court should consider the factual findings to come to its own legal conclusions about whether the employer's interest in efficiency or the employee's interest in free speech is paramount." 252 F.3d at 558. See <u>Shands v. City of Kennett</u>, 993 F.2d 1337, 1342-43 (8th Cir. 1983)(cited in <u>Gorman-Bakos</u>); <u>Gilmore v. Bergin</u>, 1998 WL 1632526, at **2-4 (D. Conn. Sept. 22, 1998)(interrogatories asked the jury to identify any disruptive effect

6

caused by each specific instance of speech or active expression identified in the previous interrogatory).

In the instant case, during the charge conference, Chief Wearing's counsel provided the Court and opposing counsel with proposed jury interrogatories. (Rhodes Aff. & Ex. A thereto attached to Motion to Correct/Supplement Record) They included interrogatories touching upon the Pickering balancing test. They should have been given to the jury. Accordingly, a new trial should be ordered.

## IV. A NEW TRIAL IS REQUIRED BASED ON THE COURT'S ALLOWING TESTIMONY REGARDING INDEMNIFICATION BY THE CITY OF NEW HAVEN

The Court, over Chief Wearing's counsel's objection, allowed the plaintiff to question the Mayor regarding the details of indemnification and the City of New Haven's past indemnification of police officers. The allowing of this testimony was extremely prejudicial to Chief Wearing. See Fed R. Evid. 403, 411. It left the jury with the inappropriate impression that Chief Wearing would not be bearing the burden of the damages and thus created the likelihood of an inflated verdict. The jury's note after deliberations inquiring whether Chief Wearing or the City of New Haven would be paying any damages award confirms that the jury was confused and had been given the impression that any damages award would be paid by the City of New Haven, as opposed by the actual defendant in the case. (Court Exhibit No. 1) Thus, the admission of the testimony was prejudicial and harmful error. Consequently, the verdict constituted manifest injustice and the ordering of a new trial on all issues is required.[1]

---

[1]   A new trial on all issues is necessary, as opposed to a trial on only damages, because the jury's award of $5 million demonstrates that its analysis of this case was improperly tainted by its misunderstanding as to who it was awarding damages against. Moreover, the prejudicial errors discussed throughout this memorandum further demonstrate that the presentation of Chief Wearing before this jury was extremely prejudiced.

7

A review of the relevant case law confirms that the ordering of a new trial is required in the instant case. In Larez v. Holcomb, 16 F.3d 1513 (9th Cir. 1994), the Ninth Circuit addressed the issue of the impropriety of allowing information regarding indemnification to go to the jury in a § 1983 action. Id. at 1520-21. The district court in Larez instructed the jury regarding the city's indemnification of one of its police officers for compensatory damages. The Ninth Circuit held that the instruction was prejudicial error and vacated a damages award. Id. at 1520. Specifically, it recognized that it has long been the rule that evidence of insurance or other indemnification is not admissible on the issue of damages and, should any such information reach the ears of the jurors, the court should issue a curative instruction. Id. at 1518. The court concluded that there was no reason to depart from the rule in the context of a § 1983 action. Id. at 1519.

Larez also recognized that the interjection of the fact that a defendant in a § 1983 action may be protected by insurance or other indemnity might be prejudicial error requiring a reversal. Id. at 1519-20. Finally, Larez noted that its decision was consistent with Rule 411 of the Federal Rules of Evidence prohibiting the admission of evidence regarding insurance. 16 F.3d at 1520 n.6.[2] Similarly, in Green v. Baron, 879 F.2d 305, 310 (8th Cir. 1989), the Eighth Circuit in remanding a § 1983 case for a new trial, directed the district court not to instruct the jury that the State of Iowa would indemnify the defendants. The court emphasized that such an instruction would be "extremely prejudicial" and would constitute a reversible error. Id. (citing Griffin v.

---

[2]   See Matosantos Commercial Corp. v. Sea Tissue N. Am., LLC, 369 F.Supp.2d 191, 195 (D.P.R. 2005) (suppressing evidence regarding indemnification agreement under the rationale behind Fed. R. Evid. 411); Curtis Mfg. Co., Inc. v. Plasti-Clip Corp., 933 F.Supp. 94, 100 (D.N.H. 1995) (same). See also Humphrey v. M. Demitro, 1996 WL 580861, at *1 (N.D. Ill. Oct. 4, 1996) (same); Walker v. Saenz, 1992 WL 317188, at *3 (N.D. Ill. Oct. 27, 1992) (prohibiting introduction of evidence regarding indemnification against police officer in § 1983 action under Fed. R. Evid. 403).

8

Hilke, 804 F.2d 1052, 1056-58 (8th Cir. 1986)). Accordingly, here, given the introduction of the extremely prejudicial evidence, the Court should order a new trial on all issues.

## V.  A NEW TRIAL IS REQUIRED BASED ON THE COURT'S ADMISSION OF INFLAMMATORY NEWS ARTICLES

Hearsay is barred because it is "inherently untrustworthy." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 802.02[3] at 802-9 n.15 (2d ed. 1997) ("Weinstein's Evidence"). See Fed. R. Evid. 801, 802. Its use has denied fair trials and resulted in tragedies. See California v. Green, 399 U.S. 149, 156 (1970). The rule against hearsay is a fundamental component in our system of justice. See Edward W. Cleary, McCormick on Evidence § 244 at 726-28 (3d ed. 1984) ("McCormick"). Under our system, the trier of fact is entrusted with the task of evaluating the perception, memory, narration, and sincerity of witnesses. Id. at 726; Weinstein's Evidence, § 802.02[3]. With hearsay, the assessment of these traits and therefore, a witness' credibility, is impossible because the trier of fact cannot observe the declarant. Id.

"Generally, newspaper articles and television programs are considered hearsay under Rule 801(c) when offered for the truth in matter asserted." Green v. Baca, 226 F.R.D. 624, 637 (C.D. Cal. 2005). Even when the actual statements quoted in a newspaper article constitute non-hearsay or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem. Id. at 637-38. The problem is that statements in newspapers often constitute double hearsay. Id. See United State Football League v. National Football League, 1986 WL 5803, at *2 (S.D.N.Y. May 16, 1986) (excluding newspaper articles); id. (if plaintiff was allowed to use inflammatory and improper hearsay to establish its claim it would violate the interests of justice).

Here, the Court committed prejudicial error by allowing the plaintiff to offer into evidence the articles relating to the arrests of the ministers and the opinion of the police union.

9

Those articles were, in addition to constituting inadmissible, double hearsay, highly prejudicial to Chief Wearing. Even after being redacted, the articles still included information, in the form of hearsay, that went directly to a principal issue in the case, i.e., whether Chief Wearing had engaged in any wrongdoing. For example, plaintiff's Trial Exhibit No. 6 declared that the police union president believed that the Mayor and Chief Wearing had sold out the police officers involved. Plaintiff's Trial Exhibit No. 7 contained a photograph of a woman raising her hands at a church in response to the Mayor's apology. This photo is highly inflammatory and prejudicial to Chief Wearing's case. Plaintiff's Trial Exhibit No. 3 contained alleged statements by a city alderman demanding an explanation and an apology from the police.

A review of the trial transcript reveals that, notwithstanding the plaintiff's counsel's argument, the news articles were not used simply to show the publicity arising out of the arrests of the ministers. Rather, they were used extensively as part of Tolnay's testimony. The Court did not instruct the jury regarding the limited purpose of the articles until the final charge, six days later. That brief charge did not address the prejudicial effect of the photograph, a matter that the Court expressly acknowledged as a matter of concern. The argument by the plaintiff's counsel that articles were not offered for the truth of the matter asserted did not justify their admission into evidence. Fed. R. Evid. 801, 802, 403. The extensive manner in which the articles were actually used confirms that the plaintiff's argument for admission was without merit. Their admission resulted in Chief Wearing being tried on highly inflammatory, double hearsay evidence. Thus, the admission of this evidence was harmful.[3] The introduction of that prejudicial evidence constitutes a manifest injustice for which a new trial is required.

---

[3]/  The admission of the newspaper articles was also inappropriate because the purported purpose for which they were offered could have been fully achieved without prejudicing Chief Wearing through the stipulation that his counsel offered. Specifically, counsel offered to

10

## VI. A NEW TRIAL IS REQUIRED BASED ON THE COURT'S FAILURE TO CHARGE THE JURY AS REQUESTED ON PUNITIVE DAMAGES AND IN RESPONSE TO THE JURY'S QUESTION REGARDING RESPONSIBILITY FOR THE PAYMENT OF DAMAGES

A new trial is required based on the Court's failure to instruct the jury as requested on the issue of punitive damages.[4] It is also required based on the Court's answer to the jury's question on Chief Wearing or the taxpayers of the City of New Haven would responsible to pay any damages award. (Court Exhibit No. 1)

### A.   The Court Erred In Its Instruction On Punitive Damages

As both the Supreme Court and the Second Circuit have recognized, punitive damages may be awarded in an action under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). See Mathie v. Fries, 121 F.3d 808, 815 (2d Cir. 1997); Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996).

In the instant case, on December 8, 2005, the Court instructed the jury regarding punitive damages. (12/8/05 Tr. at 147-50) After the jury was excused, Chief Wearing's counsel, among other exceptions, took exception to the punitive damages charge. (12/8/05 Tr. at 153-55)

---

stipulate regarding the number of articles appearing in newspapers regarding the arrest, and the dates of those articles. In fact, the purported purpose was fully achieved immediately after the Court's ruling and before the admission of the articles, when Tolnay testified about media coverage. With that testimony, any arguable basis for the admission of the articles ended. Nevertheless, under the guise of the limited offering, the plaintiff was able to place before the jury highly inflammatory, irrelevant and extremely prejudicial information to the detriment of Chief Wearing.

[4]   A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law. LNC Investments, Inc. v. First Fidelity Bank, N.A., 173 F.3d 454, 460 (2d Cir. 1999). "An erroneous instruction requires a new trial unless the error is harmless." Id. Where jury instructions "create an erroneous impression regarding the standard of liability, it is not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted." Id. at 463. An error is only deemed harmless if the court is convinced that the error "did not influence the jury's verdict." Id. at 462.

11

Specifically, counsel requested that the Court charge the jury as set forth in the proposed charges submitted by Chief Wearing. (D.Ct Elec. Docket Entry No. 51-5, Def.'s Proposed Jury Instructions at 9) In particular, at page 9 of the proposed instructions, with regard to punitive damages, Chief Wearing requested, in relevant part, as follows:

> The purpose of punitive damages is to punish Chief Wearing and deter him from similar conduct in the future. Punitive damages are available when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.
>
> Although there is no mathematical formula to compute punitive damages, such an award must bear a reasonable relationship to the plaintiff's injury and any malicious intent by Chief Wearing. Because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute a windfall to the plaintiff.

(footnotes omitted).

During the exceptions after the charge, Chief Wearing's counsel expressly requested that the Court instruct the jury as set forth in the second paragraph quoted above. (12/8/05 Tr. at 155) Without some understanding of the need for a reasonable relationship between the compensatory and punitive damages, the jury was free to deliver a grossly inflated award of punitive damages. Moreover, given the jury's constitutionally and excessive award in this case, $5 million, the Court's failure to instruct the jury as requested constituted harmful error as the unreasonable and excessive verdict demonstrates that it was confused about the governing law on punitive damages. At a minimum, it is apparent that the jury disregarded the instructions given by the Court. Thus, a new trial is required.

**B.      The Court Erred In Its Response/Supplemental Charge Given In Reply To The Jury's Specific Question Regarding Responsibility For Payment Of Any Award**

In <u>Arroyo v. Jones</u>, 685 F.2d 35-29 (2d Cir. 1982), the Second Circuit addressed the issue of supplemental jury charges and recognized as follows:

> A supplemental charge must be viewed in a special light. It will enjoy special prominence in the minds of the jurors for several reasons. First, it will have been the most recent, or among the most recent, bit of instruction they will have heard, and will thus be freshest in their minds. Moreover, it will have been isolated from the other instructions they have heard, thus bringing it into the foreground of their thoughts. Because supplemental instructions are generally brief and are given during a break in the jury's deliberations, they will be received by the jurors with heightened alertness rather than with the normal attentiveness which may well flag from time to time during a lengthy initial charge. And most importantly, the supplemental charge will normally be accorded special emphasis by the jury because it will generally have been given in response to a question from the jury.

See also <u>Olivas v. City of Hobbs</u>, 50 Fed. Appx. 936, 941 (10th Cir. 2002) (district court granted new trial based on finding a jury note evidenced jury confusion).

On December 8, 2005, one hour and fifteen minutes after receiving its instructions, the jury submitted a note to the Court. (12/8/05 Trial Tr., at 161, 162; Court Exhibit 1) The note stated as follows:

> In case we decide in favor will Melvin Wearing be paying Damages from his own personal finances? Or Will Melvin Wearing be paying damages from city tax payers dollars?

(Court Exhibit 1; see 12/8/05 Trial Tr. at 162)

In response to the note, Chief Wearing's counsel made several appropriate requests. First, he requested that, as previously requested during the exceptions, the jury be instructed regarding the need for any award of punitive damages to "reasonable relationship" to the plaintiff's injury and that it not constitute a windfall. (12/8/05 Tr. at 165 (quoting "mathematical

13

formula" paragraph set forth above)) The Court rejected this request considering it to be irrelevant. Id.

For his second request, counsel requested the Court instruct the jury as follows:

> Further, you are not to award the plaintiff damages because you think the City of New Haven or anyone other than Chief Wearing did something wrong and you are not to assume that anyone other than Chief Wearing will be liable for damages.

(12/8/05 Tr. at 165-66) The Court denied this requested. Instead, the Court instructed the jury as follows:

> ...I have received your inquiry, ladies and gentlemen, with respect to, if you find for the plaintiff, who would be paying for the damages. As it happens to be the source of payment of any damages you may award, if you find for the plaintiff, is not an appropriate matter of concern for the jury and you are not to speculate about the source of payment of any damages you may find it appropriate to award. ...

(12/8/05 Tr. at 168-69)

The Court's answer and instructions to the jury in response to the questions in its note constituted error which was harmful to Chief Wearing. As discussed above in connection with the issue of indemnification testimony, a jury in a § 1983 action should not be given the impression that someone other than the defendant will be paying an award of damages. See Larez, 16 F.3d at 1513, 1518-21. The plaintiff's counsel's arguments notwithstanding, there was no evidence introduced that anyone other than Chief Wearing would be responsible for a verdict in this action. As such, the jury, in response to its questions in Court Exhibit No. 1, should have been clearly instructed that it should not assume that the City of New Haven would possibly be paying for any award against Chief Wearing.

By not expressly, clarifying this matter for the jury in response to its note, the Court left the jury with an incorrect impression regarding who was responsible for damages. As a result,

14