The Second Circuit affirmed Chief Judge Blumenfeld's denial of further compensatory damages and punitive damages. Id. at 488-89. With regard to compensatory damages, it agreed with Chief Judge Blumenfeld's conclusion that additional damages for humiliation, distress, and injury to reputation should be denied for failure of proof and because any such damages would be "wholly speculative." Id. at 488. With regard to punitive damages, the Second Circuit affirmed Chief Judge Blumenfeld's conclusion that the award of punitive damages would have been unwarranted, unwise and unnecessary. Id. at 489.

Here, Tolnay's situation comes nowhere near the situation of any of the plaintiffs in the foregoing cases. The same is true for the cases discussed below. Tolnay's interaction with Chief Wearing was limited to two meetings, one of which was only a brief, follow up meeting. And at that second meeting, Tolnay apologized for his conduct at the first meeting. This case stands in stark contrast to all of the cases discussed above and below. For example, the plaintiff is in Phillips experienced ongoing harassment for five years, as a result of her participation in an election campaign. Nevertheless, she only received an award of $200,000 in compensatory damages against each defendant. Thus, Phillips, and the other cases, dramatically underscore the excessiveness of the verdict in this case and they support the vacating of both the award of the punitive damages and the noneconomic, compensatory damages.

  **b.**  **A Review of Cases from the District of Connecticut Demonstrates that the Punitive Damages Award Was Excessive**

Like the cases addressed by the Second Circuit, a review of the conduct and awards in cases from the District of Connecticut confirms that the punitive damages award of $5 million in this case was constitutionally excessive. The cases analyzed below contained far worse conduct

and far lower awards. Thus, the comparison guidepost weighs heavily in favor of vacating the punitive damages award in the case at bar.

In Arlio v. Lively, 392 F.Supp.2d 317 (D. Conn. 2005), a police sergeant alleged that the Chief of Police retaliated against him for exercising his First Amendment rights, and violated his Fourteenth Amendment right to due process of law, by summarily suspending him on trumped-up charges of sleeping on the job and thereby sabotaging his chances to be promoted. Id. at 320. At a trial, held in May, 2005, the jury found the defendant liable on both of the constitutional claims as well as a state law claim of intentional infliction of emotional distress. It awarded no economic damages, but awarded $150,000 in non-economic damages and $100,000 in punitive damages. Id. The court denied post-trial motions challenging the verdict.

With regard to the first Gore guidepost, reprehensibility, the court in Arlio noted that the evidence at trial included both the violation of constitutional rights and the intentional infliction of emotional distress. It further noted that the plaintiff has shown the defendant engaged in a "malicious campaign to tarnish his name and reputation based on [the plaintiff's] support for an opposing political candidate." With regard to the third guidepost under Gore, the court concluded that the assessment of damages was consistent with other similar cases. Id. at 323.

In Stack v. Jaffee, 306 F.Supp.2d 137 (D. Conn. 2003) (Burns, J.), a jury found that a defendant police officer liable to the plaintiff for violation of the plaintiff's First Amendment rights, the intentional infliction of emotional distress and defamation. It awarded $2,000 in compensatory damages for all claims and $200,000 in punitive damages for violation of the plaintiff's first amendment rights. This Court held that the award of $200,000 in punitive damages was "neither reasonable nor proportionate to the amount of actual harm to [the plaintiff] and to the general damages he recovered." Id. at 142. Accordingly, this Court gave the plaintiff

32

the option of accepting $25,000 in punitive damages or proceeding to a new trial on the issue of punitive damages. Id.. In describing the defendant's conduct in the case, this Court noted that the defendant was aware that the plaintiff had been threatened and was intimidated by a co-defendant. Id. at 139. Despite pleas for protection, the defendant refused any protection to the plaintiff and had the potential for physical harm to the plaintiff, based on a co-defendant's threats of violence. Id. at 140. Moreover, the Court believed that the defendant's attitude and conduct evidenced a reckless disregard for the plaintiff's safety. Id.[7]

In De Leon v. Little, 1999 WL 1490299 (D. Conn. Sept. 29, 1999)(Chatigny, J.), the plaintiff, a former employee of the City of Hartford, brought a suit against the defendant, a former member of the Hartford City Council, alleging violation of her first amendment rights and intentional infliction of emotional distress. The plaintiff had been the defendant's administrative assistant during the period November, 1989, when the defendant was elected to the City Council until June 1992, when the plaintiff suffered a nervous breakdown at City Hall. Id. at *1. The complaint alleged that the plaintiff's breakdown was the culmination of mistreatment she suffered at the hands of the defendant. In particular, she maintained that the defendant pressured her to support the People for Change ("PFC") political party and subjected her to a campaign of harassment for not affiliating with the PFC. The plaintiff also testified that the defendant threatened her job position if the plaintiff did not participate in the political affairs of the PFC. Id. at *2. As a result of the meeting and threats, the plaintiffs attended PFC meetings and participated in the defendant's reelection campaign. Id.

---

[7]   Further, the Court noted that although the defendant had substantial evidence that a co-defendant had lied under oath and made serious physical threats against the plaintiff, the defendant, with no authority, wrote an inappropriate and unwarranted letter to the court. Based on the defendant's improper letter, another court lifted a restraining order that had been obtained by the plaintiff. Id. at 141. Moreover, the defendant wrongfully advised persons that the plaintiff had filed an unsubstantiated report with the Hartford Police Department. Id.

The jury found for the plaintiff on her First Amendment retaliation claim. It awarded nominal damages in the amount of $10 and punitive damages in the amount of $150,000. The court found that the punitive damages award was "plainly excessive." Id. at *6. It held that "[a]fter considering amounts awarded in other cases, the most that can be awarded in this case on the present record is $7,500." Id. at *8. As part of its analysis, it recognized that substantial awards of punitive damages in the First Amendment context involve conduct far more serious than the defendant's conduct at the meeting at issue. Id. at *7 (citing Annotation, Excessiveness or Inadequacy of Punitive Damages Awarded in Personal Injury or Death Cases, 12 A.L.R. 5th 195, § 36, n.72 (1993)). It further noted that Second Circuit "will reduce a substantial award unless the violation is egregious and the defendant has considerable wealth." Id.

In Dillon v. Bailey, 45 F.Supp. 2d 167 (D. Conn. 1999), the plaintiff, an inspector with the Office of the Chief State's Attorney, alleged violation of its First Amendment rights based on speech-limiting directives issued in 1996, 1997 and 1998. The directives were issued by the Chief State's Attorney. The directives followed the plaintiff's reporting evidence that FBI agents with whom he worked on a joint task force had engaged in unlawful conduct, i.e., filing false affidavits with the court in connection with warrants. More particularly, the plaintiff's Complaint asserted claims for: interference with constitutionally protected rights and retaliation for the exercise of or to chill exercise of speech rights. After eight days of evidence, the jury awarded compensatory damages of $800,000 and punitive damages of $1,500,000 on the retaliation count. After further instructions and deliberations, the jury awarded $400,000 in compensatory damages on the other count. The court found the plaintiff allegations to be addressing "serious misconduct by law enforcement officers comprising the integrity of the judicial system itself." 45 F.Supp. 2d at 173. Two of the directives issued by the Chief State's

34

Attorney were in response to articles in newspapers. A review of the court's electronic docket reveals that the Dillon case was settled. The ratio between the compensatory damages ($1.2 million) and the punitive damages ($1.5 million) in Dillon stands in strake contrast to the situation in the instant case.

In Mihalick v. Cavanaugh, 26 F.Supp. 2d 391 (D. Conn. 1998), the plaintiff, a former police officer, alleged that the four defendants, police officers, violated his First and Fourth Amendment rights when they arrested him without probable cause and investigated and presented disciplinary charges against him to the Police Commission in retaliation for his union activities. Id. at 393. The plaintiff also asserted as a state law claim for intentional infliction of emotional distress. The plaintiff was terminated from his employment as a result of the disciplinary proceedings. Mihalick v. Town of Simsbury, 1997 WL 43111, at *1 (D.Conn. Jan. 10, 1997). The jury found in the plaintiff's favor on all counts. It awarded compensatory damages totaling $3,000,000, consisting of $250,000 against each defendant on the First Amendment claim, $500,000 each against defendants Cavanaugh and Beck on the Fourth Amendment claim and $250,000 against each of the four defendants on the intentional infliction of emotional distress claim. Id. See Mihalick v. Town of Simsbury, 37 F.Supp. 2d 125, 126 (D. Conn. 1999) (opinion on clarification). The jury also awarded $3,700 in punitive damages on the First Amendment claim. Mihalick, 37 F.Supp.2d at 127. In response to the defendant's motion for a new trial or in the alternative remittitur, the court granted the motion and ordered the plaintiff either to accept compensatory damages of $150,000 plus the punitive damages award and fees and costs or submit to a new trial on the issue of damages. Id. at 127. The harsh conduct and limited punitive damages award in Mihalick stand in stark contrast to the limited conduct and grossly excessive punitive damages award in the instant case.

35

Ikram v. Waterbury Bd. of Educ., 1997 WL 597111 (D. Conn. Sept. 9, 1997) is another case that highlights the gross excessiveness of the $5 million punitive damages award in the instant case. In Ikram, the plaintiff, a former special education teacher with Waterbury, alleged that the defendants, the Board of Education and two individuals, had retaliated against her for exercising her first amendment right to freedom of speech. Id. at *1. She claimed that the defendants subjected her to harassment and mistreatment after she reported that a teacher's aid had purchased weapons from a student at the school. Id. A jury awarded the plaintiff $100,000 in compensatory damages against all defendants and punitive damages against Waterbury in the amount of $100,000. It also awarded punitive damages against each of the individual defendants in the amount of $75,000. The court held that the ratio of the punitive damages to the compensatory damages was not disportionate. With regard to the punitive damages against Waterbury, the court gave the defendant the option of accepting a remittitur to zero or proceeding with a new trial on the issue of damages. Id. at *5.

        c.     **Other Section 1983 Cases from the Second Circuit and District of Connecticut Support the Vacating of the Punitive Damages Award**

Although not First Amendment retaliation cases, like those discussed above, a review of other § 1983 cases from the Second Circuit and the District of Connecticut further reveals that the $5 million punitive damages award in this case is constitutionally excessive and must be vacated. Those cases involve facts of physical harm and violence far worse than the conduct at issue in this case. Nevertheless, those cases produced punitive damages awards far lower than the $5 million awarded by the jury in this case. Thus, they demonstrate that the jury's verdict here was constitutionally excessive and requires vacating. Accordingly, the Court should order a new trial.

In <u>Disorbo</u>, an arrestee sued a police officer and a city alleging excessive force, battery and abuse of process. In particular, the plaintiff alleged that the defendant officer grabbed her throat, slammed her body against the wall and choked her with such force that she was unable to breathe and began to lose vision. 343 F.3d at 177. The plaintiff's injuries were documented. <u>Id.</u> at 179. A jury awarded the plaintiff $400,000 in compensatory damages. The Second Circuit ordered a new trial unless the plaintiff agreed to accept $250,000 in compensatory damages. The jury had awarded the plaintiff $1.275 million in punitive damages, including $625,000 for the excessive force claim and $650,000 for the federal and state abuse of process claims. <u>Id.</u> at 188. The Second Circuit was "compelled to conclude that a punitive damages award of $75,000 more accurately reflect[ed] the severity of [the defendants'] acts under the <u>Gore</u> guidepost." Accordingly, it ordered a new trial unless the plaintiff agreed to accept $75,000 in punitive damages.

In <u>Mathie</u>, the plaintiff, an inmate, was sexually assaulted and sodomized by a prison official. 121 F.3d at 810. The jury awarded the plaintiff $250,000 in compensatory damages and $500,000 in punitive damages. <u>Id.</u> The Second Circuit held that the punitive damages award was excessive and reduced the award to $200,000. <u>Id.</u> at 810, 818.

In <u>King v. Verdone</u>, 1999 WL 33432177 (D. Conn. Sept. 30, 1999), the plaintiff, a prisoner, alleged excessive force in violation of § 1983 against two prison guards. <u>Id.</u> at *1. The jury awarded the plaintiff $75,000 in compensatory damages and also found each defendant liable for punitive damages in the amount of $1 million. <u>Id.</u> The court concluded that $150,000 was the maximum punitive damages award against each defendant that it would uphold as not excessive. <u>Id.</u> at *6.

37

X. **THE AWARD OF NONECONOMIC DAMAGES WAS CONSTITUTIONALLY EXCESSIVE AND REQUIRES THE ORDERING OF A NEW TRIAL**

The award of $150,000 in noneconomic damages was also constitutionally excessive. In particular, Tolnay's evidence in support of emotional distress damages consisted of three, brief statements that he was "depressed" and "embarrassed" by what happened and believed that his reputation was harmed. (12/2/05 Tr. at 38, 45, 150) There was no elaboration by Tolnay or any corroborating testimony from other witnesses. Nor was there any testimony of Tolnay having sought any mental health treatment or had any physical manifestations. Tolnay's limited evidence does not satisfy the standard governing the award of emotional distress damages and cannot support an award of $150,000. As demonstrated in the section above, the award cannot survive the application of the standard articulated by the Supreme Court. Chief Wearing's conduct cannot be deemed reprehensible when compared to the conduct of the defendants in the cases discussed above. Moreover, the ratio of the $150,000 noneconomic damages award to the $900 economic is more than *166 to 1*. Finally, a comparison of the facts and verdicts in the Second Circuit and District of Connecticut cases discussed above reveals that the jury verdict here was constitutionally excessive. Consequently, allowing the excessive award to stand would constitute a manifest injustice. Accordingly, the Court should order a new trial.

XI. **A NEW TRIAL IS REQUIRED BASED ON THE PLAINTIFF'S COUNSEL'S INAPPROPRIATE STATEMENTS DURING HER CLOSING ARGUMENT**

When the counsel's closing argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted. <u>Pappas v. Middle Earth Condominium</u>, 963 F.2d 534, 540 (2d Cir. 1992). Accordingly, the court must be affirmatively on guard against improper trial tactics that might prevent a fair verdict. <u>Id.</u> See <u>Brown v. Walter</u>, 62 F.2d 798, 799-800 (2d Cir. 1933) (Hand, J.) (ordering new trial). A new trial should be granted where the

summation argument creates undue prejudice or passion which played upon the sympathy of the jury. See Smith v. National R.R. Passenger Corp., 856 F.2d 467, 470 (2d Cir. 1988).

In the case at bar, a new trial is also required because of the inappropriate arguments contained in the plaintiff's counsel's closing arguments. In particular, the plaintiff's as part of her urging the jury to send a "strong message," used inflammatory hypotheticals based on facts that did not even remotely correspond to the situation at issue in this case. (12/8/05 Tr. at 50-51 (drunk driving, caught with a lot of cocaine, losing loved one to drunk driver)) Based on the excessive award of noneconomic compensatory and punitive damages in this case, the allowing of those arguments without the curative instruction requested by Chief Wearing's counsel, prejudiced Chief Wearing and constituted harmful error. A review of the evidence in this case, reveals that the vast majority of the plaintiff's theory of the case and evidence presented did not relate to Chief Wearing or his conduct. Rather, Chief Wearing was tried based on the plaintiff's allegations of conduct by Captain Ortiz and the Mayor. The plaintiff's counsel's statements during the closing arguments added inappropriate passion that contributed to the excessive compensatory and punitive damages award. The jury's confusion is confirmed by the note it sent out inquiring regarding whether Chief Wearing or New Haven would be liable for any damages award.

Consequently, the trial in this case constituted a manifest injustice to Chief Wearing and the ordering of a new trial is required. See City of Cleveland v. Peter Kiewit Sons Co., 624 F.2d 749, 759 (6th Cir. 1980) (excessive size of the verdict demonstrates the prejudicial effect of counsel's comments).

## XII. A NEW TRIAL IS REQUIRED BECAUSE THE COURT SHOULD HAVE SUBMITTED INTERROGATORIES TO THE JURY REGARDING QUALIFIED IMMUNITY

As part of his requested jury instructions, Chief Wearing submitted a request that the jury be instructed regarding the defense of qualified immunity. As part of the proposed jury interrogatories provided during the charging conference, Interrogatory No. 7 asked the jury whether it concluded that Chief Wearing's conduct had been objectively reasonable. (Rhodes Aff. & Ex. A thereto) A new trial is required because if the Court believed that there were disputed factual questions related to the defense of qualified immunity, they should have been resolved by the jury. Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990).

In the instant case, to the extent the Court denied qualified immunity to Chief Wearing on perceived disputed factual questions, those questions should have been submitted to the jury under Warren. Accordingly, by not submitting those factual questions that the Court believed to exist, Chief Wearing was prejudiced. That prejudice was harmful because it may have eliminated his having received the benefit of the defense of qualified immunity. Accordingly, a new trial should be ordered.

## CONCLUSION

For the foregoing reasons, the Court should grant Chief Wearing's motion and order a new trial. In the alternative, the Court should grant Chief Wearing's motion for a remittitur.

40

Dated: December 28, 2005                                          Respectfully Submitted,

                                                              **DEFENDANT**
                                                              **MELVIN WEARING**

                                                              By: _____

| | |
|---|---|
| Jonathan H. Beamon, Esq. | Robert A. Rhodes, Esq. |
| CT Fed. Bar No. 22937 | CT Fed. Bar No. 13583 |
| Assistant Corporation Counsel | **HALLORAN & SAGE LLP** |
| **OFFICE OF THE NEW HAVEN** | 315 Post Road West |
|   **CORPORATION COUNSEL** | Westport, CT 06880 |
| 165 Church Street, 4th Floor | Tel: (203) 227-2855 |
| New Haven, CT 06510 | Fax: (203) 227-6992 |
| Tel: (203) 946-7958 | E-Mail: rhodes@halloran-sage.com |
| Fax: (203) 946-7942 | |
| E-Mail: Jbeamon@Newhavenct.net | and |
| | |
| | John B. Farley, Esq. |
| | CT Fed. Bar No. 02239 |
| | Ralph W. Johnson III, Esq. |
| | CT Fed. Bar No. 15277 |
| | **HALLORAN & SAGE LLP** |
| | One Goodwin Square |
| | 225 Asylum Street |
| | Hartford, CT 06103 |
| | Tel: (860) 522-6103 |
| | Fax: (860) 548-0006 |
| | E-Mail: johnsonr@halloran-sage.com |
| | |
| | His Attorneys |

## **CERTIFICATION**

This is to certify that on this 28th day of December, 2005, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT  06150

_____
Ralph W. Johnson III

773182_1 DOC