that what he is doing violates that right.'" Id. at 88. "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Id. That is, the right must be defined with "reasonable specificity." Id. "In performing this analysis, [courts within the Second Circuit] look to the established law of the Supreme Court and of [the Second Circuit] at the time of the defendants' actions." Id.

Under the final step of the analysis, even if a plaintiff demonstrates that a defendant violated a clearly established law, a defendant is entitled to qualified immunity if a reasonable official could have believed that his actions were lawful in light of clearly established law and the circumstances confronting him. Poe v. Leonard, 282 F.3d 123, 146 (2d Cir. 2002). A defendant is therefore entitled to summary judgment on qualified immunity grounds, if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officials of reasonable competence could disagree on the legality of the defendant's actions. Id.

## B.    Qualified Immunity Within The Context Of First Amendment Retaliation Cases

In the context of qualified immunity, "[t]he plaintiff carries the burden of establishing that a given right is 'clearly established,' ... and to do so the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." Wernsing v. Thompson, 423 F.3d 732, 742 (7th Cir. 2005). See Defore v. Premore, 863 F.Supp. 91, 94 (N.D.N.Y. 1994), aff'd, 86 F.3d 48 (2d Cir. 1996) (per curium).

The doctrine of qualified immunity exists so that government officials can make reasonable discretionary decisions without the paralyzing fear of legal liability. See Pinder v. Johnson, 54 F.3d 1169, 1173 (4th Cir. 1995) (en banc). In addressing the question of qualified

immunity, courts "do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues. 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998).

### 1.    The Status of the "As a Citizen" Requirement Under Connick

On October 12, 2005, the United States Supreme Court heard arguments in the case of Ceballos v. Garcetti, 361 F.3d 1168. See Jones v. City of Milwaukee, 2005 WL 3274338, at *4 (E.D. Wis. Dec. 1, 2005). "The court has been asked to decide whether a public employee's purely job related speech, expressed strictly pursuant to the duties of employment, is cloaked with First Amendment protection simply because it touches on a matter of public concern, or whether First Amendment protection also requires the speech to be engaged in as a citizen." Id. (citing petition for writ of certiorari, available at 2004 WL 2260964). There is a split among the circuits on this issue, with some circuits ruling that a plaintiff must prove that he or she was speaking as a citizen, not merely as an employee. Id. Other circuits, such as the Ninth Circuit in the Ceballos case, do not require plaintiff to prove that element. Id. Rather, those courts focus on whether the public employee's speech would be of relevance to the public's evaluation of the performance of governmental agencies. Id.

### 2.    The Fact-Intensive Nature of the Pickering Balancing Test

In Lewis, 165 F.3d at 166-67, a First Amendment retaliation case, the Second Circuit reversed the denial of qualified immunity. As part of its analysis, the court recognized that the district and magistrate judges had defined the right in question "far too broadly." Id. at 166. It concluded that the relevant inquiry was not whether the defendants should have known that there was a federal right, in the abstract, to freedom of speech, but whether the defendants should have known if the "specific actions complained of" violated the plaintiff's freedom of speech. Id. at

166-67 ("inquiry requires that a court define the constitutional right with some specificity."). It emphasized that "[i]f the right is defined too broadly, plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. at 167. See Bartlett v. Fisher, 972 F.2d 911, 917 (8th Cir. 1992) (reversing district court and granting qualified immunity to defendants in first amendment retaliation case under "particularized" standard of qualified immunity); Giacalone v. Abrams, 850 F.2d 79, 85-86 (2d Cir. 1988) (requiring "more particularized" definition of right).[7]

At the heart of Tolnay's First Amendment claim is the case-and-context-specific Pickering/Connick balancing test. In Pickering, the Court emphasized that in view of the "enormous variety of fact situations" in which critical statements by public employees may be thought by their superiors to furnish grounds for dismissal, it would not be "appropriate or feasible to attempt to lay down a general standard" for resolving free-speech claims of public employees and that it could only "indicate some of the general lines along which an analysis of the controlling interests should run." 391 U.S. at 569. Subsequently, the Court acknowledged that the particularized balancing required by Pickering is difficult even for judges to accomplish. See Connick, 461 U.S. at 150. In short, "while it may have been clear since 1968 that a citizen does not forfeit his First Amendment rights entirely when he becomes a public employee, the scope of those rights in any given factual situation has not been well defined." Benson v.

---

[7]     "Just as an employee has a right to speak - even at work - public employers have the right to run efficient, functional operations." Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 351 (4th Cir. 2000). This is especially true since "only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a particularized balancing that is subtle, difficult to apply, and not yet well-defined." DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995).

Allphin, 786 F.2d 268, 276 (7th Cir. 1986). For example, in Noyola v. Texas Dept. of Human

Res., 846 F.2d 1021, 1025 (5th Cir. 1988), the Fifth Circuit explained that:

> One consequence of case-by-case balancing is its implication for
> the qualified immunity of public officials whose actions are alleged
> to have violated an employee's first amendment rights. There will
> rarely be a basis for *a priori* judgment that the termination or
> discipline of a public employee violated 'clearly established'
> constitutional rights.

Noyola's view of qualified immunity jurisprudence has been embraced by at least seven other

circuits.[8]  As a result, in the context of First Amendment retaliation cases, the circuit courts have

not hesitated to grant qualified immunity, especially when the employer is a law enforcement

agency or official.[9]

### C.    An Application Of The Qualified Immunity Analysis Demonstrates That Judgment Should Be Entered In Favor Of Chief Wearing

This case is a classic example of the importance of qualified immunity. Qualified

immunity is not an aberration within constitutional law. It has been long recognized as a critical

aspect of analyzing any § 1983 claim. See Anderson, 483 U.S. at 639; Mitchell, 472 U.S. at 526.

Police departments are quasi-military organizations. More than other governmental

agencies, police departments depend on loyalty, discipline, the chain of command and

supervision. Police chiefs must be able to maintain discipline without fear of liability based on

their judgment calls. This is exactly why qualified immunity exists. Where governmental

---

[8]/     Moran v. Washington, 147 F.3d 839, 847 (9th Cir. 1998); Kincade v. City of Blue Springs, 64 F.3d 389, 398 (8th Cir. 1995); DiMeglio, 45 F.3d at 806; O'Connor v. Steeves, 994 F.2d 905, 917 n.11 (1st Cir. 1993); McDaniel v. Woodard, 886 F.2d 311, 314 (11th Cir. 1989); Melton v. City of Oklahoma City, 879 F.2d 706, 729 (10th Cir. 1989), vacated on other grounds, 928 F.2d 920 (10th Cir. 1991)(en banc); Benson, 786 F.2d at 276.

[9]/     See Wagner v. City of Holyoke, 404 F.3d 504, 509 (1st Cir. 2005); Dirrane v. Brookline Police Dept., 315 F.3d 65, 71 (1st Cir. 2002) (given lack of precedent, this is not a case in which "a reasonable officer *must* have known that he was acting unconstitutionally.")(emphasis in original); Bartlett, 972 F.2d at 918.

officials acted on judgment calls they are not liable. Here, an application of the qualified immunity analysis and, in particular, the analysis within the context of First Amendment retaliation claims, demonstrates that the claim against Chief Wearing must be dismissed under the doctrine of qualified immunity.

Chief Wearing is entitled to qualified immunity under each step of the standard. First, as demonstrated in detail above, Chief Wearing did not violate any of the plaintiff's constitutional rights, as a matter of law. In particular, Tolnay had no rights under the First Amendment. He was not retaliated against for speaking "as a citizen" on a matter of "public concern." His "speech" was made as part of his official duties as a police officer and addressed matters of personal interest. The matters of personal interest were Tolnay's efforts to avoid any blame for his performance of his job. Further, an analysis of the context "time, place and manner" of the speech, as required by Supreme Court precedent, confirms that the speech at issue was not protected speech upon which a § 1983 claim can be based.

Moreover, even if Tolnay was speaking "as a citizen," under the Pickering balancing test, as a matter of law, the government's interest in maintaining discipline within a police department outweighed any of Tolnay's interests. Thus, there was no constitutional violation and Chief Wearing is entitled to qualified immunity.

Second, even assuming for the sake of argument that Tolnay had a constitutional right to engage in the speech at issue, that right was not "clearly established" in August 2002. Tolnay had the burden of demonstrating that his alleged right was "clearly established." That right could not be broadly defined in the abstract as the right of free speech. Rather, the right had to be defined with reasonable particularity and identified within Supreme Court or Second Circuit decisions issued prior to August 2002. Those decisions would have to involve factual situations

35

that closely correspond to the situation at issue here. As demonstrated above, the Supreme Court

heard oral argument in the Ceballos case on October 12, 2005. The question presented in

Ceballos is:

> Should a public employee's purely job-related speech, expressed
> strictly pursuant to the duties of employment, be blanketed with
> First Amendment protection simply because it touches on a matter
> of public concern, or should First Amendment protection also
> require the speech to be engaged in 'as a citizen', in accordance
> with this Court's holdings in Pickering v. Board of Education, 391
> U.S. 563 (1968) and Connick v. Myers, 461 U.S. 138 (1983)?

Petitioner's Brief on the Merits, at i (available on Westlaw, 2005 WL 1317482).

Thus, any right Tolnay had to speak as a part of his official duties as a police officer and

without his speech being made "as a citizen," was not clearly established in August 2002. To the

contrary, then-District Judge Parker's decision in Cahill and Judge McMahon's concurring

opinion in Pappas and her decision in Kelly demonstrate that, within the Second Circuit, the

weight of authority is that a police officer has no "clearly established" constitutional right unless

she speaks "as a citizen." Speech that merely touches upon a matter of public concern is not

sufficient. This rule is consistent with Pickering and Connick.

Further, as discussed above, any right held by Tolnay was not clearly established in

August 2002 because Pickering's constitutional rule turns upon a fact-intensive balancing test

and thus the result of the balancing analysis can rarely, if ever, be clearly established for

purposes of the qualified immunity analysis. In this case, based on the case law as it existed in

August 2002, Tolnay's alleged right was not clearly established. He has never identified a

decision that demonstrates that is was. Accordingly, Chief Wearing is entitled to qualified

immunity under the second step of the test.

Finally, Chief Wearing is entitled to qualified immunity because his conduct was objectively reasonable as a matter of law. Given the legal principles discussed above, it cannot be said that the law was clearly established to a point that Chief Wearing should have known that his actions would have violated any of Tolnay's first amendment rights.

For example, it cannot be said that it was objectively unreasonable for Chief Wearing to have acted consistently with <u>Cahill</u>. Nor would it have been unreasonable for Chief Wearing's <u>Pickering</u> balancing to have resulted in the conclusion that he could discipline Tolnay. Even if incorrect, that conclusion was not objectively unreasonable as a matter of law. In other words, it cannot be said as a matter of law that no reasonable police chief would find Chief Wearing's conduct to be reasonable. To the contrary, reasonable police chiefs would find that Chief Wearing's conduct was reasonable. The reasonableness of Chief Wearing's actions is confirmed by the varying results reached by federal courts. To the extent it is acknowledged that federal judges have difficulty with the <u>Pickering</u> balancing test, reasonable public officials cannot be expected to be more accurate. Consequently, Chief Wearing is entitled to qualified immunity as a matter of law.

## III.  JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED ON THE AWARD FOR NONECONOMIC DAMAGES BASED ON A LACK IN THE SUFFICIENCY OF THE EVIDENCE

Even assuming for the sake of argument that the Court does not agree with the arguments set forth above, it should still enter judgment as a matter of law on the award of $150,000 in noneconomic, compensatory damages based on a lack in the evidence.

In a § 1983 case, the plaintiff has the burden to actually prove his or her damages. <u>Carey v. Piphus</u>, 435 U.S. 247, 263-64 (1978). That burden applies to emotional distress damages. <u>Patrolmen's Benevolent Ass'n. v. City of New York</u>, 310 F.3d 43, 55-56 (2d Cir. 2002); <u>Annis v.</u>

County of Westchester, 136 F.3d 239, 248-49 (2d Cir. 1998). Consequently, the Second Circuit has recognized that although it is well-established that courts may award emotional distress damages in § 1983 cases, "the mere fact that a constitutional deprivation has occurred does not justify the award of such damages; the plaintiff must establish that she suffered an actual injury caused by the deprivation." Patrolmen's Benevolent Ass'n, 310 F.3d. at 55. Thus, any damages award "'must be supported by competent evidence concerning the injury.'" Id. "A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages." Id. "Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress ... or the objective circumstances of the violation itself." Id. Accordingly, when a plaintiff's evidence of emotional distress is insufficient, a court may enter judgment as a matter of law in favor of the defendant. See Caltabiano v. BSB Bank & Trust Co., 387 F.Supp.2d 135, 141-42 (E.D.N.Y. 2005).

Here, Tolnay's evidence in support of emotional distress damages consisted of a few, brief statements that he was "depressed" and "embarrassed" by what happened. (12/2/05 Tr. at 38, 45, 150) There was no elaboration or any corroborating testimony from any other witnesses. Nor was there any testimony of Tolnay having sought any mental health treatment or of him having suffered any physical manifestations, such as loss of sleep. Tolnay's limited evidence does not satisfy the standard governing the award of emotional distress damages and cannot support an award of $150,000. The award of damages amounted to pure speculation. Accordingly, the Court should enter judgment as a matter of law on the claim for noneconomic, compensatory damages.

**IV.    JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED ON THE PUNITIVE DAMAGES AWARD BASED ON A LACK IN THE SUFFICIENCY OF THE EVIDENCE**

Even assuming for the sake of argument that the Court does not agree with the arguments set forth above, it should still enter judgment as a matter of law on the punitive damages award of $5 million based on a failure in the plaintiff's evidence.

Federal standards govern the imposition of punitive damages in federal civil rights cases. Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir. 1989). While the trier of fact has the discretion to determine the appropriate amount of damages, "the sufficiency of the evidence supporting such an award is a legal question." Id. [10] Punitive damages are appropriate in a § 1983 case, when the defendant's conduct is shown to be motivated "by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). The considerations for assessing punitive damages include an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Wulf, 883 F.2d at 867. Based on that analysis, a court may reverse the award of punitive damages as a matter of law. See id.

The Wulf court held that there was evidence that the defendant may have thought it was legitimate for him to terminate the plaintiff because of concerns that the plaintiff was undermining the efficiency of the police department's operations. Id. It "[did] not matter that [the court had] concluded that [the defendant's] perception of disruption was *objectively* unreasonable, because an award of punitive damages requires an assessment of his *subjective*

---

[10]/    In Wulf, the Tenth Circuit recognized that the defendant had indeed violated the plaintiff's constitutional rights because he recommended that the plaintiff be terminated on the basis of the plaintiff's protected speech. Id. at 867. Nevertheless, the court recognized that just because public officials make mistakes in judgment in the performance of their duties sufficient to subject them to liability for actual damages does not automatically create a basis for a punitive award. Id.

state of mind. Id. (emphasis original). Accordingly, as the court concluded that there was insufficient evidence to support the award of punitive damages against the defendant, it held that the defendant's liability for compensatory damages served as an adequate pecuniary punishment as well as a deterrent to future misconduct. Id.[11]

In the instant case, based on the evidence at trial, the court should set aside the award of punitive damages as a matter of law. A review of the evidence at trial demonstrates that, even assuming arguendo that the plaintiff's constitutional rights were violated, Chief Wearing did not know or could not have reasonably known that the plaintiff had a First Amendment right to demand an attorney and walk out of a meeting with the Chief of Police. Moreover, the Chief could not have reasonably known that the plaintiff had a right to engage in the alleged speech and/or conduct at issue. (12/6/05 Tr. at 36) A review of the evidence also demonstrates that there was no evidence that the Chief acted out of evil motive or callous disregard for the plaintiff's rights. He also testified that he was concerned about the negative impact that Tolnay's insubordination would have on discipline within the police department if no discipline was imposed. (12/6/05 Tr. at 33-36) This concern was legitimate. Finally, the award of the economic, compensatory damages adequately serves any deterrent effect that might be needed. Accordingly, based on the lack of sufficiency in the necessary evidence, the award of punitive damages amounted to speculation and the Court should vacate it as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant Chief Wearing's motion and enter judgment in his favor.

---

[11]/    See Burns v. Long, 1992 WL 29971, at *7 (D.D.C. Feb. 7, 1992), aff'd, 44 F.3d 1031 (D.C. Cir. 1994) (vacating punitive damages award). See also D'Ascoli v. Roura & Melamed, 2005 WL 1655073, at *2 (S.D.N.Y. July 13, 2005).

Dated:  December 28, 2005

Respectfully submitted,

**DEFENDANT**
**MELVIN WEARING**

Jonathan H. Beamon, Esq.
CT Fed. Bar No. 22937
Assistant Corporation Counsel
**OFFICE OF THE NEW HAVEN**
  **CORPORATION COUNSEL**
165 Church Street, 4th Floor
New Haven, CT 06510
Tel:      (203) 946-7958
Fax:      (203) 946-7942
E-Mail:  JBeamon@Newhavenct.net

By:      _____

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:      (203) 227-2855
Fax:      (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

John B. Farley, Esq.
CT Fed. Bar No. 02239
Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:      (860) 522-6103
Fax:      (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

His Attorneys

## **CERTIFICATION**

This is to certify that on this 28th day of December, 2005, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06150


_____
Ralph W. Johnson, III

773185_1 DOC