UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARPAD TOLNAY | : |
| | : |
| Plaintiff, | : |
| | : Civil No. 3:02CV1514 (EBB) |
| V. | : |
| | : |
| MELVIN WEARING | : |
| | : January 30, 2006 |
| Defendant. | |

**AFFIDAVIT OF KAREN L. TORRE IN SUPPORT OF PLAINTIFFS' MOTION
FOR AWARD OF ATTORNEY FEES AND COSTS**

State of Connecticut        )
                            )  ss: New Haven
County of New Haven         )

I, Karen L. Torre, having been duly sworn, do depose and state the following:

1.  I am counsel for the plaintiff in this action and submit this affidavit in support of plaintiff's Motion for an Award of Attorney Fees and Costs.

2.  I have eighteen years of experience as a trial lawyer. I was admitted to the Bar of this state in December of 1985, to the Bar of this Court in May of 1987, to the Bar of the Court of Appeals for the Second Circuit in February, 1989 and to the Bar of the Supreme Court of the United States in October, 1989.

3.  I am an active member of the Connecticut Employment Lawyers Association ("CELA") and National Employment Lawyers Association ("NELA"). I am also a member of

the Federalist Society for Law and Public Policy Studies. I have attended numerous professional seminars and have been a principal speaker at seminars and meetings sponsored by CELA, NELA and other organizations which sponsor related continuing legal education.

4. I have never been the subject of professional discipline nor have I ever been sanctioned by a judge of a state or federal court.

5. Throughout these years, my practice has been devoted to employment and civil rights litigation in the state and federal courts and before administrative agencies on the state and federal level. I have extensive experience in the area of criminal defense and have handled hundreds of cases over the years including serious felonies and murder cases. At present, the vast majority of my time is devoted to employment litigation with a particular emphasis on cases presenting First Amendment issues. I do represent employers from time to time but the overwhelming percentage of my clients are individual employees who are law enforcement officers and government officials.

6. I currently bill paying clients at the hourly rate of $300.00 and at higher rates for appellate litigation. I would charge higher rates akin to the hourly rates charged by colleagues and opponents who are members of the defense bar but the individuals whom I represent are usually employed as police officers, firefighters and others who cannot afford the more lucrative hourly rates enjoyed by lawyers who represent the defendants in my cases.

7. I have represented countless individuals in employment-related and other claims

in the state and federal courts, before the Connecticut Commission on Human Rights and Opportunities, the Equal Employment Opportunities Commission, the Connecticut Department of Labor and like venues. I have handled numerous proceedings before such administrative tribunals as the Statewide Grievance Committee, the State Ethics Commission, the State Board of Mediation and Arbitration, and municipal police, fire and civil service boards.

8. I have extensive experience handling and defending appeals to the Court of Appeals for the Second Circuit and had some notable accomplishments early in my career. For example, I was counsel in the case of Miller v. Lovett, 879 F.2d. 1066 (2d Cir. 1989) which established the standards to be applied in litigating excessive force actions against police officers in this district. The Miller appeal also settled finally the then troublesome issue of the assertion of pendent state claims in federal actions. The opinion was considered a benefit to the civil rights bar in this state.

9. I was counsel for the plaintiff in Lounsbury v. Jeffries, 25 F.3d 131 (2d Cir. 2000), which settled finally the issue of the applicable statute of limitations in the District of Connecticut for civil rights plaintiffs bringing §1983 cases, a matter not previously considered by the Second Circuit. Again, the bringing of that appeal was considered a benefit to the civil rights bar in this district. I was also counsel for the plaintiff in Howley v. Town of Stratford, 217 F.3d 141, in which the Second Circuit Court of Appeals reversed a grant of Summary Judgment in a sex discrimination and promotion case. The opinion, noteworthy for its treatment of the "stray

remark" doctrine, is frequently cited and considered of benefit to the plaintiff's employment bar. I also succeeded as counsel of record in Dobosz v. Walsh, 892 F.2d 1135 (2d Cir. 1989) in which the Court of Appeals issued a decision, cited by courts to this day, which addresses the issue of adverse actions in first amendment cases and the doctrine of qualified immunity.

10.   An overwhelming percentage of my employment cases result in settlements. In the employment cases which did not settle and had to be tried, plaintiff's verdicts were achieved in all but two of the cases, one of which has post-trial motions pending including a motion for a new trial on the basis of newly-discovered witness perjury.[1]

11.   I have developed a special interest in the area of First Amendment litigation, in particular, litigation on behalf of municipal, state and federal government employees. My interest in first amendment issues is not limited to the employment context but has extended to other arenas. For example, I was counsel to the Reform Party in connection with a dispute over the identity of the Party's choice of candidate in the 2000 Presidential election and the form of the ballot prepared by the Secretary of State in Connecticut. Per state statute, that matter bypassed the lower courts and was tried directly to the Chief Justice of the Connecticut Supreme Court. I also represent the Republican Party's candidate for Attorney General in the State of Connecticut in connection with the 2002 election which involves ongoing issues relevant to the 2006

---

[1] In Lorusso v. Borer, 3:03CV00504, a case recently tried before the Hon. Mark R. Kravitz, an evidentiary hearing is ongoing on the issue of plaintiff's motion to vacate the judgment.

4

elections. I brought an action seeking to enjoin, as violative of the first amendment, the current Attorney General's practice of denying state contracts to any lawyer who contributes (or whose spouse contributes) to the campaigns of his opponents for elective office. The litigation will determine the right of thousands of lawyers in the tri-state area to contribute without penalty to a candidate of their choosing. This injunction and declaratory judgment action, which also raises issues of separation of powers, is pending in this Court.

12.   I was also counsel for the plaintiff in <u>Cotto v. United Technologies Corporation</u>, 245 Conn. 915 (1998), a notable case frequently cited, in which the Connecticut Supreme Court settled the question of the reach of Connecticut's free speech statute (Conn. Gen. Stat. §31-51q). The case was closely watched by Connecticut's business community because of its implications. I argued the matter and the Supreme Court, rejecting defendant's constitutional challenge to the statute, held that Sec. 31-51q extends federal first amendment guarantees to the private sector.

13.   In <u>Wu v. State of Connecticut</u>, H-89-649 (PCD), I successfully challenged the constitutionality of the University of Connecticut's speech policy and student conduct code after the University expelled Wu from campus residence for displaying a poster which was considered offensive to homosexuals. I agreed to take the case after the Connecticut Civil Liberties Union refused to help Ms. Wu. The action succeeded in striking down the policies as unconstitutional. The judgment also included a commitment by the State of Connecticut to respect the right to freedom of thought and speech for students throughout the state university system. Upon

information and belief, <u>Wu v. UCONN</u> was only the second time that a "politically correct" speech code was struck down in this country and the judgment received nationwide attention. Other oppressive university/college speech codes fell in the wake of <u>Wu</u>. Although many of my cases have brought handsome compensation, <u>Wu</u> did not and yet I consider <u>Wu</u> to be the single most rewarding accomplishment of my career.

14.   As to my jury trial experience, some notable verdicts are as follows. In <u>Mulvey v. State of Connecticut</u>, an employment discrimination case tried before the Hon. Peter C. Dorsey, I achieved a plaintiff's verdict and recovery in the amount of $225,000.00. The matter settled post-verdict with the issue of attorney fees resolved by the Office of the Attorney General.

15.   In <u>Pettit v. George E. Abbott & Co., Inc.</u>, an employment discrimination case tried to a jury before the Hon. Robert N. Chatigny, I gained a verdict in favor of the plaintiff and recovery in the approximate sum of $225,000. My application for an award of attorney's fees was settled post-judgment through negotiation. In <u>Claps v. Moliterno Stone Sales, Inc.</u>, tried before the Hon. Thomas P. Smith, I achieved a jury verdict and judgment in excess of $400,000 in a sexual harassment case. In <u>Gallagher v. Gallo</u>, a case tried before the Hon. Ellen Bree Burns, I achieved a plaintiff's verdict in the amount of $325,000, $250,000 of which was assessed as punitive damages.

16.   In <u>Shutts v. Feldman</u>, a first amendment case tried before the Hon. Ellen B. Burns, I achieved a verdict for a university professor in the amount of $450,00.00. The case settled post-judgment.

17. In <u>Dillon v. Bailey</u>, another state employee/ first amendment case, I achieved a plaintiff's verdict in the amount of $2.7 million dollars. This matter was also settled post-judgment, with the issue of attorney fees resolved voluntarily by negotiation with the Office of the Attorney General (hereafter "OAG").

18. In 2004, I achieved a plaintiff's verdict in three additional cases. In <u>Lamorte v. Leonard</u>, 3:01CV0098 (SRU), a plaintiff's verdict was achieved for a Connecticut State Trooper who alleged her first amendment rights were violated when she was transferred in the wake of her allegations that her agency was issuing faulty polygraph test results to courts and law enforcement agencies. .

19. In <u>Kelly v. Wearing</u>, No. 3:02CV1120 (PCD), I achieved a plaintiffs' award in a public employee/first amendment case in the amount of $885,000, $500,000 of which was assessed as punitive damages. The office of Corporation Counsel for the City of New Haven did not appeal the judgment and did not contest my claimed hourly rate of $300.00.

20. In <u>Lauretano v.Spada</u>, Docket No. 3:99CV1077 (DJS) after a five-year complex litigation and extensive trial proceedings before the Hon. Dominic J. Squatrito, the District Court found for the plaintiff State Trooper who challenged, on first amendment grounds, the constitutionality of the State of Connecticut Department of Public Safety's regulations and policies restricting speech and public disclosure of agency information. I consider Judge Squatrito's Memorandum of Decision to be of importance to law enforcement and other government agencies nationwide. I submitted a fee application and while the OAG asserted a

7

number of objections to it, the OAG, consistent with its previously expressed view, conceded that my requested hourly rate of $300.00 was reasonable and did not object to the requested rate. This matter has just settled and the judgment stands as a benefit to all state employees.

21.     In May of 2005, I achieved a plaintiff's verdict of $250,000 in Arlio v. Lively, 3:03CV02013 (JBA) on behalf of a Trumbull Police Sergeant in a First Amendment case. Ruling on my 42 U.S.C. § 1988 fee application in that case, Hon. Janet B. Arterton awarded the requested hourly rate of $300. The case is currently on appeal to the Second Circuit Court of Appeals.

22.     I also represent numerous municipal police and fire personnel including several in repeated actions challenging promotional practices and succeeded in gaining three temporary injunctions in a row against the City of New Haven. All of these cases were later consolidated and tried to a judge of the Superior Court. A final judgment entered declaring the City's promotional practices unlawful. The Connecticut Supreme Court opted to take the City's appeal to the Appellate Court and recently unanimously held for my clients. The decision, authored for the court by Justice Joette Katz, is expected to impact municipal hiring and promotions throughout the state.

23.     Other than Judge Arterton in Arlio v. Lively, no judge of the District Court has had occasion in recent years to determine an appropriate hourly rate for my services since, in respect to previous verdicts, I have been relieved of the burden of filing a fee application because of voluntary agreements by defense counsel to compensate for my work at the established hourly

8

rate existing at that time. As an active member of CELA and NELA, and based on my many years of experience in litigating these types of cases, I am familiar with market rates in our community. For example, in many of my cases where a state official is a defendant, the OAG has taken to hiring counsel from the private bar. Despite a highly qualified group of litigators in the OAG's Employee Rights Unit, the State has retained senior partners from some of the state's major firms to defend my cases. In these cases, I have come to learn one way or the other the rate of compensation the State pays to these attorneys which is often higher than my billable rate. The State of Connecticut has never prevailed in a case against my office and is willing to pay private lawyers hourly rates in the range of $400.00 to $475.00 to defend against my cases.

24.    I believe that my current billing rate is lower than the rate charged by some colleagues with like or less trial experience.  The hourly rate of $300.00 I requested and which Judge Arterton approved, is, in fact, lower than the rate enjoyed by a number of my opponents. In the spring of 2005, when I submitted my fee application to Judge Arterton in Arlio v. Lively, with a requested hourly rate, distinguished colleagues in the civil rights/employment bar, notably Attorney Joseph Garrison and Attorney Kathleen Eldergill, both believed that my years of experience and verdict record in District Court called for a higher rate.

25.    As with the instant case, I agree to take on a number of like cases at considerable risk for several reasons. First, the clients that I represent never can pay for my services on an hourly rate basis since they tend to be government employees who are not wealthy individuals. Moreover, my experience has shown that over the past ten years, the frequency with which

defense attorneys file motions for summary judgment has increased dramatically. In virtually all of my cases, a motion for summary judgment is all but assured. Such motions, as was the case in this action, are extremely time-consuming and expensive to oppose, and create all the more burden for attorneys who undertake representation in these cases while bearing all of the risk of loss. Moreover, as a solo practitioner, the litigation of these cases is all the more difficult. The extraordinary amount of time that summary adjudication procedures involve results in my inability to take on additional clients.

26.    In this case, defense counsel forced plaintiff and his counsel to go through such a time-consuming and expensive summary judgment process. Despite the best efforts of Magistrate Judge Joan Margolis, in two separate settlement conferences to resolve this matter short of trial, defendant chose to try this case. It is the undersigned's belief that the jury's verdict and judgment in this case goes well beyond the interests of Officer Tolnay and is of benefit to law enforcement officers and the public, whose interest in ensuring that officers take enforcement action against offenders unimpeded by fear of political reprisal cannot be overstated. Accordingly, given the outcome achieved in this case and the number of years plaintiff was forced to spend in litigation, the undersigned requests an hourly rate of $350.

27.    I maintained contemporaneous records of all time expended in connection with the litigation of this matter. The accounting of my time is appended hereto as Exhibit 1. An accounting of time expended by my paralegal, David Bachman, is included in Exhibit 1. Mr. Bachman was for many years an attorney and civil rights practitioner. He is no longer an active

member of the bar. His years of experience as a federal court practitioner allow for him to perform support services at a high level. Accordingly, plaintiff seeks an hourly rate of $125 for time expended by Mr. Bachman, time which was necessary and reasonably expended in this litigation. An itemization of litigation expenses accompanied by true copies of invoices received is appended hereto as Exhibit 2. I believe these expenses were reasonable and necessary to the prosecution of this action.

KAREN LEE TORRE

Subscribed and sworn to before me this 30th day of January, 2006.

_____
Notary Public

JOYCE M. COLE
NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 31, 2008

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed on this 30th day of January, 2006, to:

Jonathan H. Beamon, Esq.
Assistant Corporation Counsel
Office of the New Haven Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT  06510

Robert A. Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

KAREN LEE TORRE