IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
| Defendant | : | MARCH 2, 2006 |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A STAY OF THE ENFORCEMENT AND EXECUTION OF THE JUDGMENT AND REQUEST FOR EXPEDITED ADJUDICATION AND FOR IMMEDIATE STAY PENDING RESOLUTION OF THE INSTANT MOTION

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:    (203) 227-2855
Fax:    (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:    (860) 522-6103
Fax:    (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

799058_1 DOC

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 1

    I.    PROCEDURAL HISTORY.................................................................................. 1

    II.    CHIEF WEARING'S LIMITED ASSETS.......................................................... 2

    III.    OTHER POSSIBLE ASSETS AND RELATED MATTERS.............................. 2

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT ................................................................................................................... 4

    I.    THE COURT SHOULD ENTER A STAY WITHOUT
        REQUIRING THE POSTING OF ANY SECURITY........................................... 4

    II.    IN THE ALTERNATIVE, THE COURT SHOULD
        ORDER A STAY UPON THE POSTING OF A MINIMAL
        SECURITY TO SECURE ONLY THE COMPENSATORY DAMAGES
        PORTION OF THE JUDGMENT....................................................................... 12

    III.    IF THE COURT DENIES THE MOTION, IT SHOULD
        ORDER THE PLAINTIFF TO POST A BOND TO
        SECURE ANY EXECUTION............................................................................. 14

CONCLUSION............................................................................................................... 16

## PRELIMINARY STATEMENT

The defendant, Melvin Wearing, the former Police Chief for the City of New Haven, submits this memorandum of law in support of his motion for a stay of the enforcement and execution of the judgment, pursuant to Fed. R. Civ. P. 62(b) and Local Rule 7. In further support of his motion, Chief Wearing has submitted his affidavit, which is attached hereto as Exhibit A.

In connection with this motion, Chief Wearing has requested an expedited adjudication. He has also requested that as part of the scheduling order on the expedited briefing and argument, the Court immediately stay the execution and enforcement of the judgment pending its ruling on this motion.

For the reasons set forth below, the Court should grant Chief Wearing's motion and enter a stay without requiring the posting of any security. In the alternative, the Court should enter a stay with the posting of a minimal amount of security to secure only the compensatory damages portion of the judgment. If the Court denies the motion, it should order the plaintiff to post a bond to secure any execution of the judgment that he undertakes.

## BACKGROUND

### I.   PROCEDURAL HISTORY

Following a jury verdict, a judgment was entered against Chief Wearing in the amount of $150,903.84 in compensatory damages and $5,000,000.00 in punitive damages. (Elec. Docket Entry No. 71) Chief Wearing has filed a motion for judgment as a matter of law, a motion for a new trial and a motion for remittitur, in the alternative.

## II.    CHIEF WEARING'S LIMITED ASSETS

Chief Wearing does not have the assets to pay the judgment entered against him.  (Ex. A, Wearing Aff. ¶¶ 3(a)-(b))  He cannot obtain security for, let alone pay, the punitive damages award of $5 million.

Chief Wearing's assets are limited.  As set forth in his affidavit, he owns his home and his vacation home jointly with his wife.  (Wearing Aff. ¶¶ 3(a)-(b))  They purchased their home in 1972 and there is a home equity loan of $13,962.62 on it.  (Id. ¶ 3(a))  There is a mortgage of $137, 628.43 outstanding on their vacation home.  (Id. ¶ 3(b))  Chief Wearing is making monthly payments of $679.56 on his 2003 motor vehicle and there is a remaining balance of $18,046.68 due on it.  (Id. ¶ 3(c))  He also owns an old pick-up truck.  (Id. ¶ 3(d))  He only has approximately $40,000 in savings, which he holds jointly with his wife.  (Id. ¶ 3(e))  His current salary is $105,000 per year and his pension is $76,000 per year.  (Wearing Aff. ¶¶ 3(f)-(g))

Finally, in addition to his wife, Chief Wearing lives with his two minor grandchildren.  (Id. ¶ 4)  He is responsible for the financial well-being of his grandchildren.  (Id.)  If Chief Wearing is required to commit any of his assets as security for a stay of the judgment, it will have a significant adverse impact of his ability to pay his other creditors and to support his family.  (Id. ¶ 5)  Moreover, if required to commit any of his assets as security for a stay of the judgment, Chief Wearing will be forced to consult with bankruptcy counsel.  (Id.)

## III.    OTHER POSSIBLE ASSETS AND RELATED MATTERS

Coregis Insurance Company has been involved in this matter as the insurer of Chief Wearing's former employer, the City of New Haven.  Chief Wearing does not know exactly which portions of the judgment that Coregis will indemnify.  He can report that Coregis does not consider itself responsible to indemnify the punitive damages award of $5 million.

2

Chief Wearing's undersigned counsel has been informed by New Haven's Corporation Counsel that the Assistant Corporation Counsel who appeared on behalf of Chief Wearing and tried this case, will be filing a motion to withdraw his appearance.

## STANDARD OF REVIEW

Rule 62(b) of the Federal Rules of Civil Procedure provides, in relevant part, that "[i]n the discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial…or of a motion for judgment…." In Silver v. Mendel, 1992 WL 163285 (E.D.Pa. July 8, 1992), the court recognized that courts weigh the following factors when ruling on a motion under Rule 62(b): (1) a defendant's net worth and ability to post a bond, (2) whether a defendant has cooperated with the court, and (3) whether a defendant's assets are within the jurisdiction. Id. at *1. The court further recognized that a defendant demonstrates that posting a bond is impossible or impractical by the submission of an affidavit verifying his financial condition. Id. Moreover, because the defendants in Silver were located within the district, the court found that the equities weighed in favor of continuing the stay without a bond. See HCB Contractors v. Rouse & Assoc., 168 F.R.D. 508, 513 (E.D.Pa. 1995) (granting stay without bond under Rule 62(d) where allowing execution would prompt foreclosures and move debtor into bankruptcy).

Rule 62(d) governs a stay pending the resolution of an appeal. To determine whether to grant a stay of the execution of a judgment under Rule 62(d), a court considers: (1) whether the movant is likely to prevail on the merits, (2) whether, without a stay, the movant will be irreparably injured, (3) whether issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest. Morgan Guar. Trust Co. v. Republic

of Palau, 702 F.Supp. 60, 65 (S.D.N.Y. 1988), vacated on other grounds, 924 F.2d 1237 (2d Cir.

1991). The weight accorded to each of these factors should be "flexible" to ensure a just result

"according to the unique circumstances of each case." Id. Indeed, the district court may grant a

stay of a judgment without requiring a posting of a bond or condition on only a partial bond. See

Texaco v. Pennzoil Co., 784 F.2d 1133, 1154 (2d Cir. 1986), rev'd on other grounds, 481 U.S. 1

(1987) (inflexible requirement that a bond be posted may amount to "a confiscation of the

judgment debtor's property without due process"). "Thus, for example, where the latter three

factors strongly favor interim relief, the court has required only that the petitioner demonstrate a

'substantial case on the merits,' even if ultimate success is not a mathematical probability."

Morgan Guar., 702 F.Supp. at 65. Consequently, the bond requirement should be eliminated or

reduced if doing so "does not unduly endanger the judgment creditor's interest in ultimate

recovery." Id.

        In Dillon v. City of Chicago, 866 F.2d 902 (7th Cir. 1988), the Seventh Circuit

recognized that when determining whether to waive the posting of security, a district court may

look to the following criteria:

>           (1) the complexity of the collection process; (2) the amount of time
>           required to obtain a judgment after it is affirmed on appeal; (3) the
>           degree of confidence that a district court has in the availability of
>           funds to pay the judgment...; (4) whether 'the defendant's ability
>           to pay the judgment is so plain that the cost of a bond would be a
>           waste of money'...; and (5) whether the defendant is in such a
>           precarious financial situation that the requirement to post a bond
>           would place other creditors of the defendant in an insecure
>           position....

Id. at 904-05 (citations omitted).

## ARGUMENT

### I.    THE COURT SHOULD ENTER A STAY WITHOUT REQUIRING THE POSTING OF ANY SECURITY

This is a remarkable case. At the outset, as demonstrated in Chief Wearing's memorandum of law in support of his motion for a new trial, the largest portion of the judgment, the $5 million punitive damages award, is constitutionally excessive. (Chief Wearing's New Trial Mem. of Law, at 19-37) Consequently that portion of the judgment should not factor into the Court's determination of whether to require the posting of security as a condition of the entry of a stay. A portion of a judgment that will either be vacated or substantially reduced via remittitur should not be the basis for placing a defendant in a precarious financial position.

Moreover, the application of the criteria identified in <u>Silver</u>, <u>Morgan Guar.</u>, and <u>Dillon</u> confirms that the Court should grant Chief Wearing's motion for a stay of enforcement and execution without requiring the posting of a bond or alternate security.

First, as demonstrated by his affidavit, Chief Wearing does not have the assets to provide security on the $5,150,903.84 judgment. (Wearing Aff. ¶¶ 2, 3(a)-(g))

Second, he has cooperated with the Court. He has filed comprehensive post-trial motions. He has not opposed the plaintiff's numerous motions for extensions of time in connection with the filing of his opposition to those motions and to the filing of other pleadings.

Third, Chief Wearing resides in Connecticut and as demonstrated by his affidavit, the vast majority of his assets are located in Connecticut. (Wearing Aff. ¶¶ 3(a)-(g))

Fourth, Chief Wearing has demonstrated a substantial likelihood of success with his post-trial motions. His memoranda of law in support of his motion for a judgment as a matter of law, motion for a new trial and motion for remittitur, in the alternative, contain several grounds for either entering judgment in his favor or ordering a new trial. Those memoranda are incorporated

by reference. A review of those memoranda reveals that the grounds for entering a judgment in

favor of Chief Wearing include:

1. Under case law authored by judges within this circuit and applying Supreme Court precedent, the speech at issue is not protected by the First Amendment. In particular, a detailed review of the actual speech at issue reveals that it was not made by the plaintiff "as a citizen," on a matter of public concern. Rather, the speech was personal in nature and reflected the plaintiff's concern for his employment. (Chief Wearing's JMOL Mem. of Law, at 8-24);

2. Under Pickering v. Board of Educ., 391 U.S. 563 (1968), Chief Wearing's interest, as the head of the New Haven Police Department, in maintaining discipline in the police department outweighed the plaintiff's interest in his speech as a matter of law. (Chief Wearing's JMOL Mem. of Law, at 25-29);

3. Even assuming for the sake of argument that the speech at issue is protected by the First Amendment, that protection was not "clearly established" in August, 2002. Chief Wearing has cited decisions by multiple district judges in the Southern District of New York, including a current member of the Second Circuit, Judge Barrington Parker, rejecting any First Amendment protection under the circumstances at issue. Moreover, the United States Supreme Court heard argument on this issue in October, 2005. The status of the relevant jurisprudence in this area confirms that if there is any First Amendment protection that extends to a public employee's speech made as part of his official duties, it was not "clearly established" in August 2002. Thus, the claim against is barred by the doctrine of qualified immunity. (Chief Wearing's JMOL Mem. of Law, at 29-37);

4. As recognized by several circuit courts, the Pickering balancing analysis is complex. Accordingly, Chief Wearing's conduct was objectively reasonable because it cannot be held that all other Police Chiefs would conclude that Chief Wearing's conduct was unreasonable. Thus, Chief Wearing is entitled to qualified immunity. (Chief Wearing's JMOL Mem. of Law, at 29-37);

5. Chief Wearing is entitled to judgment as a matter of law on the award of emotional distress damages based on the plaintiff's failure to produce the requisite evidence at trial. In particular, there was no corroborating evidence that the plaintiff suffered

6

any emotional distress. His own testimony was insufficient to support emotional damages. (Chief Wearing's JMOL Mem. of Law, at 37-38); and

6. Chief Wearing is entitled to judgment as a matter of law on the punitive damages award based on a failure in the plaintiff's evidence at trial. In particular, there was no evidence that Chief Wearing acted in a malicious or outrageous manner (Chief Wearing's JMOL Mem. of Law, at 39-40).

A review of Chief Wearing's memoranda of law in support of his post-trial motions also confirms that there are several significant grounds for the ordering of a new trial. They include:

1. With regard to the Pickering-balancing test, on December 7, 2005, Chief Wearing's counsel moved under Rule 50 for a judgment as a matter of law. The Court denied that motion and indicated that the issue under Pickering was a question of fact for the jury. (Docket Entry No. 100, 12/7/05 Tr. at 147). Chief Wearing submitted a proposed jury instruction regarding the Pickering-balancing test. (Docket Entry No. 51-5, at pp. 4-6) Despite the Court's earlier analysis, it did not charge the jury on the Pickering-balancing test and did not provide it with interrogatories related to the issue. Chief Wearing's counsel took an exception when the Court did not instruct the jury regarding the Pickering-balancing test. (Docket Entry No. 101, 12/8/05 Tr. at 154). Under the Seventh Amendment, if the Pickering-balancing test issue was a question of fact, Chief Wearing had a right to have that issue decided by a jury. The Court's failure to charge the jury on the issue requires the ordering of a new trial. (Chief Wearing's New Trial Mem. of Law, at 5-7);

2. A new trial is required based on the Court's allowing testimony regarding indemnification by the City of New Haven. The allowing of the testimony was extremely prejudicial to Chief Wearing. It left the jury with a confusing impression regarding responsibility for damages and thus created the likelihood of an inflated verdict. The jury's note inquiring whether Chief Wearing or the City of New Haven would be paying any damage award confirms that the jury was confused and had been given the impression that any damages award would be paid by the City of New Haven. (Court Exhibit No. 1) Thus, the admission of the testimony and response to the jury's question was prejudicial and harmful error. Consequently, the verdict constituted a manifest injustice and the ordering of a

trial in all issues is required (Chief Wearing's New Trial Mem. of Law, at 7-9);

3.  A new trial is required based on the Court's admission of the inflammatory news articles. The Court committed prejudicial error by allowing the plaintiff to offer into evidence the news articles relating to the arrest of the ministers and the opinion of the police union. Those articles were clearly inadmissible, double hearsay. They were used, notwithstanding the plaintiff's counsel's offer to the contrary, extensively as part of the plaintiff's testimony. The admission of the articles resulted in Chief Wearing being tried with highly inflammatory, double hearsay evidence. The redactions of the articles did not fully address all the inflammatory materials. Thus, the admission of the articles constituted a manifest injustice for which a new trial is required. (Chief Wearing's New Trial Mem. of Law, at 9-10);

4.  A new trial is required based upon the Court's response to the jury's question regarding responsibility for the payment of damages. In response to the jury's question in Court Exhibit No. 1, the Court should have clearly instructed the jury that it should not assume that the City of New Haven would be paying for any award against Chief Wearing. By not expressly, clarifying this matter for the jury in response to the note, the Court left the jury with an impression regarding who was responsible for damages. As a result, the jury was given the free reign to issue an inflated award of damages. This constituted a manifest injustice and a new trial must be ordered. (Chief Wearing's New Trial Mem. of Law, at 13-15);

5.  A new trial is required based on the Court's admission of testimony and the exhibits regarding unrelated past incidents of disciplinary action or a lack of disciplinary action. The documents and testimony that were allowed into evidence did not involve situations similar to that at issue in this case. Rather, they involved a broad spectrum of factual situations, none of which involved either direct insubordination by an officer directly to the Chief of Police or First Amendment retaliation. Moreover, there was no curative instruction given the jury regarding the purpose of the evidence. Instead, the jury was presented with a broad and confusing spectrum of unrelated disciplinary incidents. This forced Chief Wearing into the position of having to explain the context and background of several different incidents or assume the jury could understand the evidence. In essence, he had to engage in

a number of mini-trials within this trial. The admission of this evidence constituted a manifest injustice and thus harmful error. Accordingly, the Court should order a new trial. (Chief Wearing's New Trial Mem. of Law, at 15-17);

6. A new trial is required because the award of the emotional distress/noneconomic damages was against the weight of the evidence (Chief Wearing's New Trial Mem. of Law, at 18);

7. A new trial is required because the award of punitive damages was against the weight of the evidence (Chief Wearing's New Trial Mem. of Law, at 18-19);

8. The punitive damages award of $5 million was constitutionally excessive and requires the ordering of a new trial (Chief Wearing's New Trial Mem. of Law, at 19-37); and

9. A new trial is necessary because the award of noneconomic damages was constitutionally excessive. (Chief Wearing's New Trial Mem. of Law, at 37-39).

Fifth, as demonstrated in Chief Wearing's affidavit in detail, the denial of a stay or the allowing of a stay conditioned on the posting of security, will irreparably harm Chief Wearing. He has limited assets. He does not have the assets to secure the current judgment. If he must commit any of his assets to securing a stay, Chief Wearing will have extreme difficulty in paying his other creditors and he will be required to consult with bankruptcy counsel. (Wearing Aff. ¶ 5) Given Chief Wearing's limited assets, if the Court requires Chief Wearing to provide security on the judgment in the amount of $5,150, 903.84, it would place his other creditors in an insecure position.

The Second Circuit has recognized that "an inflexible requirement for impressment of a lien and denial of a stay of execution less a supersedeas bond in the full amount of the judgment is posted can in some circumstances be irrational, unnecessary, and self defeating, amounting to a confiscation of the judgment debtor's property without due process." Texaco, 784 F.2d at 1154. "Accordingly, the district court has discretion to grant a stay of judgment with no

9

supersedeas bond or with only a partial supersedeas bond if doing so does not unduly endanger the judgment creditor's interest in ultimate recovery." Morgan Guar., 702 F.Supp. at 65. See Olympia Equip. Leasing Co. v. Western Union Telegraph Co., 786 F.2d 794, 798-99 (7th Cir. 1986); Federal Prescription Serv., Inc. v. American Pharmaceutical Assoc., 636 F.2d 755, 759 (D.C. Cir. 1980) (district court has power to dispense with security requirement).

Courts adhere to the principle that a bond or other security should not be required where the requirement would put the judgment debtor's other creditors in undue jeopardy. See Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979) ("if the judgment debtor's present financial condition is such that the posting a full bond would impose an undue financial burden, the court similarly is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection of the judgment creditor."); Olympia, 786 F.2d at 799 (wherein the court recognized that it was reluctant where allowing the plaintiff to execute his judgment before the defendant could appeal might not even increase the probability of the plaintiff's collecting the judgment in full and depending on what assets were seized might throw the appellant into bankruptcy); id. at 800 (Easterbrook, J., concurring) ("The supercedeas bond is not supposed to elevate the judgment creditor over other creditors ...."); id. ("The preference for the judgment creditor [over the defendant/debtor's other creditors as a result of the providing a bond] may send the debtor over the brink.").

The instant case involves a situation where reasoning from Texaco and the other decisions discussed above applies and weighs heavily in favor of entering a stay without requiring any security. It would be self defeating to deny a stay absent the posting of security. It would place Chief Wearing in a dangerous financial position. It would also result in a

confiscation of Chief Wearing's property without due process. As the $5 million punitive damages award is clearly excessive, the plaintiff should not be allowed to execute on or otherwise enforce it.

Sixth, the issuance of a stay without requiring the posting of security will not harm the plaintiff. More particularly, it will not unduly endanger the plaintiff's interest in ultimately recovering on the judgment, if the judgment is not modified or vacated. Given Chief Wearing's financial condition, the plaintiff's ability to collect the judgment will be no different if the judgment is stayed without security. Alexander v. Chesapeake, Potomac and Tidewater Books, Inc., 190 F.R.D. 190, 193-94 (E.D.Va. 1999). To the contrary, if the plaintiff is allowed to execute on a judgment in the amount of $5,150, 903.84, his ability to collect may ultimately be impaired by the damage to Chief Wearing's finances. See Olympia, 786 F.2d at 800 (Easterbrook, J., concurring) ("The ensuing scramble to realize on the debtor's assets may make everyone worse off.").

Finally, the public's interest weighs in favor of staying this action without security. In particular, the public's interest is damaged if Chief Wearing cannot pay his other creditors, cannot support his family and is forced into a precarious financial situation. (Wearing Aff. ¶¶ 4-5)

Silver is helpful in analyzing the case at bar. In it, the court denied the plaintiff's motion to require the defendants to post a bond for alternate security as a condition of continuing the stay of execution under Rule 62(b). Silver, 1992 WL 163285 at * 1. The plaintiff had obtained a judgment against the defendants in the amount of $1,690,670.00. Id. The defendants had filed post-trial motions and the court had granted their motion for a stay without requiring the posting of a bond. Subsequently, the plaintiff filed a motion seeking to have the court require the

defendants to file a bond in order to continue the stay. The court recognized that it had the authority under Rule 62(b) to order partially secured or unsecured stays if they did not unduly endanger the judgment creditor's interest in the ultimate recovery. Id. In continuing the stay without a bond, the court held that "it is entirely appropriate for a court to grant a stay without security if defendants are unable to satisfy judgment or obtain a bond." Id. This is particularly true where it is impossible or impracticable for the defendant to post bond or provide other security. See id. The reasoning in Silver applies in this case.

Moreover, in this case, the Court is in the unique position of knowing the actual value of the judgment. It will be ruling on Chief Wearing's post-trial motions and in particular, his motion for a new trial, which challenges the excessiveness of the punitive damages award. A review of cases from the Second Circuit and the District of Connecticut demonstrates that the $5 million punitive damages award should not stand. (Chief Wearing's New Trial Mem. of Law, at 19-37) Thus, that portion of the judgment should not prevent the Court from ordering a stay without requiring any security. Accordingly, under the criteria applied in ruling on a Rule 62(b) motion, the Court should grant Chief Wearing's motion and stay the enforcement and execution of the judgment without requiring any security.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD ORDER A STAY UPON THE POSTING OF A MINIMAL SECURITY TO SECURE ONLY THE COMPENSATORY DAMAGES PORTION OF THE JUDGMENT

For the reasons set forth above, if the Court does not grant a stay without requiring security, it should only require Chief Wearing to submit a minimal amount of security to secure the compensatory damages award. As set forth above in detail, Chief Wearing's post-trial motions demonstrate that at a minimum, the vast majority of the judgment, the $5 million punitive damages award, should be set aside as excessive and unconstitutional. Thus, in

determining what security is appropriate to stay enforcement and execution of the judgment, the Court has the greatest insight into what the judgment is actually worth. The judgment is not worth $5 million and that figure should not factor into the Court's determination of what a reasonable security would be under the circumstances and given Chief Wearing's assets. Nor should the plaintiff be allowed to execute on or enforce against that amount.

As discussed above and in Chief Wearing's affidavit, if the Court does not stay the execution without the posting of security, but rather, requires the posting of security sufficient to secure the $5 million punitive damages award, it will adversely affect Chief Wearing's ability to pay his other creditors and force him to consult with bankruptcy counsel. (Wearing Aff. ¶¶ 4-5) Under Rules 62(b) and 62(d), it is inappropriate to set a figure for security which in the face of the defendant's financial condition, will drive the defendant into financial ruin and bankruptcy. Moreover, a successful plaintiff does not have a right to interfere with the rights of the defendant's other creditors. This is particularly true where the damages award is punitive damages and thus a windfall for the plaintiff.

In those situations where the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, a district court may substitute some form of guarantee of judgment responsibility for the usual bond. See Poplar Grove, 600 F.2d at 1191; Alexander, 190 F.R.D. at 193. In these situations, the court "is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor." Poplar Grove, 600 F.2d at 1191; Alexander, 190 F.R.D. at 193. Thus, in this situation, the stay may issue where the judgment creditor/plaintiff "will be in nearly the same position at the conclusion of the appeal of th[e] case as they are currently." Alexander, 190

F.R.D. at 193.  See id. at 193-94 (ordering bond or escrow account in the amount of $16,175.50 on judgment in excess of $127,000.00, where defendants were insolvent, but had previously put aside the amount ordered).

As discussed above, in this case, requiring Chief Wearing to post security in order to obtain a stay will not result in the plaintiff being in a better position to collect the judgment after the ruling on the post-trial motions and disposition of any subsequent appeal.  Also, the plaintiff will not be in a better position to collect on the judgment if he is allowed to execute now.  To the contrary, if he is allowed to execute, he will damage Chief Wearing's financial condition and likely reduce his likelihood of collecting on the judgment.  See Olympia, 786 F.2d at 800 (Easterbrook, J., concurring) ("The ensuing scramble to realize on the debtor's assets may make everyone worse off.").  Accordingly, given Chief Wearing's financial condition, if it requires the posting of any security, the Court should exercise its discretion to require only a minimal amount of security to secure the compensatory damages portion of the judgment.  Morgan Guar., 702 F.Supp. at 65.

## III.    IF THE COURT DENIES THE MOTION, IT SHOULD ORDER THE PLAINTIFF TO POST A BOND TO SECURE ANY EXECUTION

If the Court does not grant Chief Wearing's motion for a stay, it should order that the plaintiff post a bond to secure any damages that result from his execution on or enforcement of the judgment.  As the Court is aware, the plaintiff is an individual.  If the plaintiff is allowed to execute on the judgment and obtain any monies from that execution, Chief Wearing's ability to retrieve those monies after he is successful on his post-trial motions and/or on appeal should be secured.  Chief Wearing has demonstrated a likelihood of succeeding on his post-trial motions. He has raised several significant legal issues in connection with both his motion for judgment as a matter of law, his motion for a new trial and his motion for remittitur, in the alternative.  At a

minimum, Chief Wearing has demonstrated that the $5 million punitive damages award should be vacated. It is clearly excessive and unconstitutional. Consequently, the plaintiff should not be allowed to execute on or enforce against a judgment in excess of $5 million, without providing security for the damages that will be inflicted on Chief Wearing if he is not able to obtain restitution after a judgment is entered in his favor or a new trial is ordered. In fact, even if he is able to obtain restitution, the damage done to Chief Wearing and his family may be irreversible. Accordingly, at a minimum, the Court should require the plaintiff to post a bond before executing on the judgment.

## CONCLUSION

For the foregoing reasons, the Court should grant Chief Wearing's motion and enter a stay without requiring the posting of any security. In the alternative, the Court should enter a stay with the posting of a minimal amount of security to secure only the compensatory damages portion of the judgment. If the Court denies the motion, it should order the plaintiff to post a bond to secure any execution he undertakes on the judgment.

Respectfully submitted,

**DEFENDANT
MELVIN WEARING**

By: _____
Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:    (203) 227-2855
Fax:    (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:    (860) 522-6103
Fax:    (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

His Attorneys

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ARPAD TOLNAY                              :        CIVIL ACTION NO.
        Plaintiff                    :        3:02-CV-1514 (EBB)
                                  :
V.                                        :
                                  :
MELVIN WEARING                            :
        Defendant                    :        MARCH 2, 2006

## AFFIDAVIT OF MELVIN WEARING

STATE OF CONNECTICUT      )
                               )    ss. Westport
COUNTY OF FAIRFIELD      )

    **MELVIN WEARING**, being duly sworn and upon personal knowledge, deposes and

states as follows:

    1.    I am the former Chief of Police for the City of New Haven.  I am over eighteen

(18) years of age and believe in the obligations of an oath.

    2.    I do not have the assets to pay the judgment for $5,150,903.84 that was entered in

the above-captioned action.

    3.    My assets can be summarized as follows:

        (a)    I own a home (together with my wife) in Connecticut.  It was purchased in

             1972 and there is a home equity loan on it with a balance of $13,962.62

             remaining;

        (b)    I own a vacation home (together with my wife), which is located outside

             of Connecticut.  There is a mortgage with a remaining balance of

             $137,628.43 on it;

    (c)    I own a motor vehicle, model year 2003, with monthly payments of $679.56 and a remaining balance of $18,046.68;

    (d)    I own an old pick-up truck, which is located outside of Connecticut;

    (e)    I have savings of approximately $40,000, which is held jointly with my wife;

    (f)    My pension pays me approximately $76,000 per year; and

    (g)    My current salary is $105,000 per year.

4.    In addition to my wife, I have two minor grandchildren who live with me and for whom I am financially responsible.

5.    If I were required to commit any of my assets as security for the judgment, it would have a significant and adverse impact on my ability to pay my other creditors and to support my family. If required to commit my assets in order to obtain a stay of execution on the judgment, I would be forced to consult with bankruptcy counsel.


_____
Melvin Wearing


Subscribed and Sworn to before me
this 2nd day of March 2006.


_____
Notary Public/
Commissioner of the Superior Court

798474_1 DOC

799986-1(HSFP)

2

## CERTIFICATION

This is to certify that on this 2nd day of March, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Jonathan H. Beamon, Esq.
Assistant Corporation Counsel
Office of the Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510

The Honorable Ellen B. Burns
United States District Court
  for the District of Connecticut
141 Church Street
New Haven, CT 06510
(Courtesy Copy, Via Hand Delivery)

_____
Ralph W. Johnson, III