raised in the prior motion for [JMOL]." Galdieri-Ambrosini v. Nat'l Realty and Development Corp., 136 F.3d 276, 286 (2d Cir. 1998) (internal quotations and citations omitted). Id. The requirement that the movant articulate grounds for the motion with specificity is obligatory as the movant must "give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." Id. This was not the first time that the Second Circuit cautioned parties that they must comply with the rule. See, e.g., Holmes v. United States, 85 F.3d 956 (2d Cir. 1996) (JMOL motion may not be made for the first time post-trial); McCardle v. Haddad, 131 F.3d 43, 51 (2d Cir. 1997) (The defendant was obligated to advance his JMOL with "sufficient particularity" to inform the court and the plaintiff of the grounds on which he relied).

Defendant filed a 40-page memorandum of law in support of his "Motion For Judgment As A Matter Of Law." As the foregoing authority establishes, however, the rules do not permit a post-judgment filing of a Rule 50 motion for judgment as a matter of law. Rule 50 (b) merely allows a party to renew a motion advanced pursuant to Rule 50 (a) prior to the submission of the case to the jury. Clearly, the rule, and the cases arising under the rule, are designed to prohibit parties ambushing their opponents in the court with a host of claims, arguments and law which, for whatever reason, they failed to articulate with particularity at trial. Perhaps this can be explained by the fact that the author of defendant's brief is an attorney who heretofore had nothing to do with this case.[5] While it

---

[5] The post-judgment was authored by Attorney Ralph W. Johnson III whose post-judgment appearance in this case is recent.

17

is easy for new counsel to pick apart the trial evidence and now litter the record with a host of case citations, it was incumbent upon the defendant at trial to advance, with particularity, the laws and the facts on which the purported entitlement to judgment is based. Among other reasons, one of the requirements for particularity, as the Second Circuit observed back in 1998, is to allow the other party, in this instance Tolnay, an opportunity to cure any defects in proof. See Galdieri-Ambrosini, supra at 286. Although defendant has mistitled his motion (as it is a renewed motion), it remains that the court's consideration of the motion is strictly limited to the facts and law advanced by defendant in support of his Rule 50 trial motion. The court is not obligated to entertain, ingest, or analyze 40 pages of factual and legal citations presented for the first time post-judgment. The Second Circuit has made it clear that this type of "terse presentation" of a JMOL during trial does not suffice to call for a court's review of the merits of such a motion. McCardle v. Haddad, 131 F.3d at 50.

In particular, in respect to defendant's time-of-trial claim to qualified immunity, defense counsel's articulation of the basis of that claim is terse to say the least. It consisted initially of the following unhelpful statement:

> Finally, we believe that the evidence shows that the defendant is entitled to qualified immunity as a reasonable employer. In the position of the defendant, we would believe that the plaintiff did not engage in protected speech. And that a reasonable employer, in the shoes of the defendant, we would believe that he could suspend the plaintiff based on his conduct, which occurred at the August 13, 2002 meeting.

12/7/05 Tr. at p. 141.

18

Counsel's statement advised the court and counsel of nothing. Moreover, as he did before during the summary judgment process, defendant based his claim of immunity solely on his underlying claim that the speech was unprotected as a matter of law. He did not, pretrial or during the trial, separate the two. Once again, defendant's persistent failing in this regard stems from his refusal or inability to acknowledge that the First Amendment claim was not predicated on plaintiff's allegedly "disrespectful" or "insubordinate" conduct toward defendant but was based on his expressions of opinion (as set forth both in his case-incident report and during his meeting with the Chief) regarding favorable treatment accorded to political supporters of the Mayor and those with connections to City Hall. At no time during his trial motion, did defense counsel even touch upon this issue much less articulate it and argue it with the type of particularity that is required. Defense persisted in framing the qualified immunity issue (without any citation to law) as centering on solely on the question of the applicability of immunity to discipline for conduct <u>unrelated to</u> the protected First Amendment expression.

By way of the "law" which defense counsel was to articulate under Rule 50 (a), counsel neither mentioned nor discussed any law. Indeed, only after plaintiff's counsel cited her inability to respond in substance given the wholly insufficient presentation, did defense counsel purport to address this failing. But all defense counsel did was refer the court and counsel to the "law" submitted in defendant's prior motion for summary judgment and in the "jury charges". What did he expect the court and plaintiff's counsel to do? Take a recess to read these documents to determine

19

which cases the defendant was relying on and how they applied to the facts and evidence at trial? Moreover, to the extent defense counsel expected the court and counsel to peruse his motion for summary judgment for enlightenment, defendant's memorandum of law in support of his motion for summary judgment was equally skeletal, terse and conclusory. As the court noted in its ruling denying summary judgment:

> Defendant ignores plaintiff's allegations in full, basing his entire claim to qualified immunity on the solitary August 13 meeting. He enigmatically argues that qualified immunity is available to him because: 'the myriad factors involved in this cause of action surely could not put a Chief of Police, who is the head of a paramilitary organization and is entitled to latitude as to the manner in which he/she disciplines employees, on notice that he/she is clearly violating the law through disciplinary actions.' Defendant seemingly fails to realize that the present 'cause of action' is a First Amendment retaliation claim, wherein Tolnay alleges the discipline opposed against him was motivated by Wearing's retaliatory desire to put an end to any charges or 'speculations' (as put by Wearing) of politically-based law enforcement in New Haven. Thus, Wearing's argument betrays a fundamental misconception of the application of the qualified immunity doctrine to constitutional claims for which intent is an element.

Ruling on Motion for Summary Judgment (Dkt. # at p. 49).[6]

The extent to which either the plaintiff or the court is now required to consider and analyze

---

[6] Indeed, the court noted that in his moving papers, defendant relied heavily, and indeed almost exclusively on the case of Heil v. Santoro, 147 F.3d 103 (2nd Cir. 1998) in support of his argument for qualified immunity. This court stated that it was "non-plussed by this reliance" because Heil v. Santoro was not a qualified immunity case nor was the doctrine of immunity even referenced in the opinion.

20

defendant's 40-page legal tome on the issue is a matter for the court in the end to decide but plaintiff submits that it really does not much matter as, for the reasons set forth below, defendant's post-verdict attempt for the first time to articulate the legal and factual bases for a grant of qualified immunity (and for a withdrawal of First Amendment protection for plaintiff's speech) is still, as before, entirely without merit.

**B.     DEFENDANT'S CLAIM THAT THE PLAINTIFF'S SPEECH WAS NOT PROTECTED BY THE FIRST AMENDMENT IS FRIVOLOUS AS IS DEFENDANT'S CLAIM OF ENTITLEMENT TO QUALIFIED IMMUNITY FOR WELL-ESTABLISHED AUTHORITY SUPPORTS THE COURT'S DETERMINATION THAT THE SPEECH WAS ON A MATTER OF PUBLIC CONCERN AND WAS THUS FULLY PROTECTED AND THAT AN ESTABLISHED INTENT TO RETALIATE FOR SUCH SPEECH PRECLUDES A GRANT OF QUALIFIED IMMUNITY.**

Defendant's arguments with respect to the issue whether plaintiff's speech was protected was not articulated at trial. Defendant's renewed Rule 50 motion, however, is nothing but an expanded version of claims and arguments recycled from defendant's earlier unsuccessful motion for summary judgment. The court has already considered, analyzed and rejected all of the arguments defendant now advances post-trial. Defendant has provided no basis for the court to revisit that decision except upon a misrepresentation of the evidentiary trial record. Defendant recycles his claim, advanced in his motion for summary judgment, that Tolnay's statements in his case/incident report concerning the ministers' arrests and his statements to Wearing during his meeting with the Chief were not on a matter of public concern and were motivated by an otherwise related merely to matters personal

21

interest. See Def.'s Brief at pp. 8-24. Among other arguments, defendant asserts that plaintiff's statements in his case/incident report were akin to a "CYA" memo and were otherwise nothing more than the type of report that is regularly filed as part of his job. Id. at pp. 12, 16. Elsewhere, defendant argues that plaintiff's speech is stripped of First Amendment protection because it was expressed internally within the walls of the NHPD. Defendant notes that Tolnay did not turn over his case/incident reports to the New Haven Register nor did he provide copies to any news station. Defendant further notes that Tolnay made no public statements nor ask for permission to speak with the media. Id. at p.2. Defendant, citing Ceballos v. Garcetti, 361 F.3d 1168, 1193 (9th Cir.), cert. granted 125 S.Ct. 1395 (2005) argues that Tolnay's speech was unprotected because the First Amendment "does not protect public employees' routine and required speech on behalf of the government". Any such argument is wholly inapplicable to this case, however, for it is uncontested that, as the jurors found, Tolnay incurred the wrath of Captain Ortiz and Chief Wearing by including his comments about political interference in his case/incident report precisely because neither man thought such comments belonged in there. In fact, Ortiz' own memorandum, upon which Wearing instigated the meeting with Tolnay, took umbrage with the propriety of Tolnay's inclusion in his case/incident report of comments regarding political interference. In particular, Ortiz wrote:

> **This officer's written report is unacceptable and his comments are inappropriate and have no relevance to the initial motor vehicle stop.**

Plaintiff's Exh. 16 (August 8, 2002 memorandum from Captain Ortiz to defendant Wearing.

22

Defendant claims that Tolnay's speech, in both instances, was unprotected because Tolnay was motivated by his personal interest in protecting himself. First, even if that were true, as the Hon. Janet C. Hall has noted, the existence of a second, personal, motive does not render speech unprotected, so long as the speech was also of public concern. See Russo v. City of Hartford, 341 F.Supp. 2d 85, 97-98 (D. Conn. 2004). Moreover, defendant's claim that plaintiff's speech was motivated purely by personal interest is based on defendant's self-serving cherry-picking of trial testimony. While defendant quotes testimony from Tolnay regarding the reasons why he included the subject comments in his case/incident reports and why he made the subject comments to the Chief in the meeting of August 13, 2002, see Def.'s Br. at pp. 2-3, defendant omits entirely the additional testimony Tolnay gave respecting his motivations. Notably, against the repeated objections of defense counsel, Tolnay testified that in forming and expressing his beliefs at set forth in the case incident reports, he was not only concerned about his own ability to enforce the law in New Haven but concerned about the ability of other officers to do so. Tr., Vol. II at pp. 204-206.[7]

The fact that Officer Tolnay did not communicate his comments and beliefs to the public or the press but expressed them internally in his reports and in his meeting with the Chief does not strip the expression of First Amendment protection. See Givhan v. Western Consolidated School District,

---

[7]Incredibly, defense counsel objected to Tolnay's testimony regarding his thoughts and motivations on the grounds of "hearsay." Indeed, the trial record, see Vol. II at pp. 208-213, shows defense counsel vigorously resisting the introduction of any evidence on this very point.

23

99 S.Ct. 693 (1979) (employee speech need not be "public" to be accorded first amendment protection); see also Dill v. City of Edmond, 155 F.3d 1193 (10th Cir.1998)(officer's internal memo to police chief stating he was aware of exculpatory evidence respecting department's prime suspect in murder case where investigators appeared bent on pursuing suspect was protected by the first amendment). Thus the fact that Officer Tolnay chose a private forum within the police department is of no consequence. See also Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988). "[P]olice officers have the same rights that other citizens have to reveal or bring forward information of general importance despite any contrary desire by their superiors". They are not "gagged by loyalty to the chain-of-command concept". Oladeinde v. City of Burmingham, 118 F. Supp. 2d 1185, (N. D. Ala. 1998). It is likewise immaterial that plaintiff's case incident reports, particularly the one involved in the Rodriguez motor vehicle stop, were made in the course of his duties as a police officer for at least a portion of the report was clearly designed to address an issue of perceived of improprieties on the part of superiors. See Dill v. City of Edmond, supra at 1202 ("Plaintiff's speech concerned possible wrongdoing by the police officers investigating the . . . homicides"); cf. Koch v. The City of Hutchinson, 847 F.2d 1436 (10th Cir. 1988) ( Fire Marshall's routine report regarding the cause of a fire was not of public concern since there was no evidence that the report was "motivated or inspired by . . . alleged improprieties or by the desire to expose those improprieties" Id. at 1448. And of course in Dillon v. Bailey, 445 F.Supp 2d 167 (D. Conn. 1999), Judge Arterton found the plaintiff law enforcement officer's disclosures of possible wrongdoing by other agents fully and absolutely

24

protected by the First Amendment although it was undisputed in that case that the disclosures by Dillon were included in a private internal memorandum to his boss.

Defendant's arguments run contrary to every established principle of qualified immunity and is completely unhinged from the factual allegations and trial evidence. It is well-established that qualified immunity is unavailable to a government official who subjects a public employee to discipline in retaliation for protected expressed activity. Defendant also appears to believe that credibility determinations by the jury, among others the issue of defendant's motive, are irrelevant to the issue of immunity. To the contrary, in a first amendment case alleging retaliation for first-amendment protected speech, the issue of intent, and thus, credibility predominates. Under the circumstances, of this case, Wearing's claim of entitlement to qualified immunity is not only wholly unsupported by case authority but is frivolous.

Qualified immunity, especially in a First Amendment case which turns on a defendant's state of mind, is a fact-bound issue. The Second Circuit Court of Appeals has rejected the notion that subjective intent is irrelevant to the inquiry into the objective reasonableness of a defendant's conduct. In Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001), the Court of Appeals observed:

> This argument betrays a fundamental misconception of the application of the qualified immunity doctrine to constitutional claims for which intent is an element. In the usual case where intent is not an element, bare allegations of malice coupled with otherwise legitimate government action do not yield a viable constitutional claim. In such a case, the qualified immunity doctrine focuses only on whether the government officials' actions were objectively reasonable in light of clearly established law, without regard for possible subjective malice. *[Citation omitted]* But where a more

25

> specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.

Id. 264 F.3d at 169.

Thus, the Court concluded, "[an] employer's actual subjective motive is <u>not</u> irrelevant in a qualified immunity inquiry on a First Amendment retaliation claim". <u>Id</u>. quoting <u>Sheppard v. Beerman</u>, 94 F.3d 823 (2d Cir. 1996). To accept defendant's approach to qualified immunity would, as the Court of Appeals noted, serve to "immunize all defendants in cases involving motive-based constitutional torts, so long as they could point to objective evidence showing that a reasonable official could have acted on legitimate grounds". <u>Id</u>.

In terms of the state of existing law at the time of the defendant's wrongful acts committed in April of 2001, without question it was well-established at that time that a government official may not take adverse punitive action against government employees in retaliation for the exercise of protected rights of expression. See <u>Velez v. Levy</u>, 401 F.3d 75 (2d Cir. 2005)("[i]f it is true ... that defendant acted deliberately to bring about plaintiff's removal and retaliation for her political views, defendant cannot avail himself of qualified immunity"). <u>Cobb v. Pozzi</u>, 363 F.3d 89 (2d Cir. 2003)(judgment as a matter of law is improper in cases where questions concerning the employer's state of mind predominate the inquiry); <u>Johnson v. Ganim</u>, 342 F.3d 105 (2d Cir. 2003)(prohibition against suspending employees for the content of their speech was clearly established since 1968); <u>Munafo v. Metro Transportation Authority</u>, 285 F.3d 201 (2d Cir. 2002)(defendant's motive and state

26

of mind is a fact-bound inquiry).

For years, the Second Circuit has repeated and emphasized the interplay between the elements of qualified immunity and the elements of a Section 1983 action involving adverse employment actions in retaliation for protected speech and activity, on each occasion making it clear that the element of state of mind not only drives the analysis but a jury's determination of the element governs the outcome. If a defendant is found to have maliciously retaliated against the employee on account of protected activity, immunity is unavailable. See, e.g., Vasbinder v. Ambach, 926 F.2d 1333 (2d Cir. 1991); Dobosz v. Walsh, 892 F.2d 1135 (2d Cir. 1989) (immunity denied to police chief who transferred whistleblowing officer to dog pound); Rookard v. Health and Hospitals Corp., 710 F.2d 41 (2d Cir. 1983); Piesco v. Koch, 12 F.3d 332 (2d Cir. 1993) (discussing Dobosz v. Walsh); Bieluch v. Sullivan, 999 F.2d 666 (2d Cir. 1993) (retaliatory transfer of state trooper to Litchfield); Cahill v. O'Donnell, 7 F. Supp. 2d 341 (S.D.N.Y. 1988) (involuntary transfer for report of corruption); Broderick v. Roache, 996 F.2d 1294 (1st Cir. 1993) (discussing impact of malicious intent to retaliate on qualified immunity analysis).

Defendant's motion and memorandum fail entirely to acknowledge, much less apply, these cases to the evidence and jury findings in the case. Clearly, defendant is not entitled to judgment and his motion should accordingly be denied.

Finally, defendant's claims with respect to the Pickering balance, see Def's. Br. at pp. 25 to 28, have already been addressed in Plaintiff's Objection And Memorandum of Law in Opposition to

27

Defendant's Motion for a New Trial and Motion for Remittitur dated March 20, 2006 (specifically at pages 47-50) and will not be repeated here. Likewise, in its March, 2005 ruling denying entirely Wearing's motion for summary judgment, the Court at length considered, addressed and rejected the argument defendant recycles in his renewed Rule 50 motion, see Ruling at pp. 40-45, and defendant has provided no reason, and the trial evidence no basis, upon which to reach a different conclusion. It is worth noting that in its ruling, the court took note of Wearing's complete failure to offer any evidence that Tolnay's protected speech had "an actual or potential effect of disruption with the Police Department." Id. At p. 44. At trial, Wearing failed to offer any such evidence, resting instead on his trial strategy of denying any nexus whatever between Tolnay's protected speech and the adverse actions. For the reasons set forth at pp. 47-50 in Plaintiff's Memorandum of Law as above-stated, Wearing provided no evidentiary basis useful to the Pickering balance, he failed to submit a proposed verdict form on the issue, and expressly approved of the form of verdict which went to the jurors. For the reasons set forth and upon the case authority cited in the court's earlier ruling, Wearing could not, consistent with that authority prevail under any stretch of the Pickering balance.

For the foregoing reasons, and those set forth in the court's previous ruling, defendant's motion must be denied.

THE PLAINTIFF

ARPAD TOLNAY

BY: /s/ Karen Lee Torre
KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street
Suite 307
New Haven, CT 06510
(203) 865-5541

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed on this 20th day of March, 2006 to:

Robert A. Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

John Burns Farley, Esq.
Ralph W. Johnson III, Esq.
Halloran & Sage
One Goodwin Square
225 Asylum St.
Hartford, CT 06103

/s/ Karen Lee Torre
KAREN LEE TORRE

29