UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARPAD TOLNAY | : |
| | : |
| Plaintiff, | : |
| | :   Civil No.  3:02CV1514 (EBB) |
| V. | : |
| | : |
| MELVIN WEARING | : |
| | :   April 21, 2006 |
| Defendant. | |

## MOTION FOR ORDER CLARIFYING AND LIMITING THE ROLE OF COUNSEL FOR NON-PARTY WITNESSES

### I.  INTRODUCTION

The plaintiff, by and through his undersigned counsel, hereby moves for an order of this court clarifying and limiting the role of counsel for non-party witnesses in this case in lieu of striking the appearance of counsel for non-parties.  In particular, plaintiff seeks an order from this court directing counsel for non-party witnesses Thomas W. Ude, Jr, Jonathan Beamon and Derek Slap to refrain from further overstepping his limited role as counsel for non-party witnesses and to limit his participation in the on-going evidentiary hearing before this court to the interposing of objections on the ground of attorney-client or attorney work-product privilege. Plaintiff also seeks, as part of the requested order, a directive that counsel for the non-party witnesses refrain from invoking privilege on behalf of the defendant Wearing as Wearing is represented by counsel in this case.  Plaintiff does not object to witness' counsel interposing objections on the ground of privilege insofar as the objection is based upon a claim that an answer to a question or other disclosure by one or more of his

clients will invade the privilege of someone or an entity other than Wearing.

As set forth below, this motion is well-founded on the record of the March 28, 2006 evidentiary hearing on defendant's motion for a stay of execution of the judgment by which defendant also demands relief from the obligation to post security for the plaintiff. The proceeding, which is ongoing and scheduled to resume on April 27, 2006, has been multiplied unnecessarily by the improper and obstructive conduct of counsel for non-party witnesses.

The plaintiff seeks the requested order pursuant to this court's inherent authority to control the proceedings and the conduct of counsel, especially counsel who have no automatic or recognized right under the federal or local rules to appear in an action for a non-party but who appear and are heard in the court's exercise of its inherent authority and discretion.

II.     **THE COURT'S AUTHORITY**

As an initial matter, there does not appear, either in the Federal Rules of Civil Procedure or in the Local Rules of this district, any provision granting a right to a non-party witness in a case to have his own private counsel appear in the action. As a matter of practice, however, and based upon the undersigned's own experience, judges in this district have permitted counsel for a non-party witness to file an appearance in the action and to be heard in appropriate cases and where reasonably necessarty.. This has usually occurred in the context of trial proceedings where, for example, a newspaper reporter has been subpoenaed and, through counsel, raises a First Amendment privilege by way of a motion to quash on such grounds. In this district, judges have routinely permitted such

attorneys the right to address the court on behalf of the witness but under very limited circumstances and for the sole issue of arguing the point of privilege. This is especially true where the reporter in such case cannot expect counsel for one of the parties to raise the first amendment issue as that interest is invoked not on behalf of a party but on behalf of the media industry which has a singular interest in the issue unrelated to the parties or the subject matter of the civil action. While the rules do not expressly speak to this issue (nor address the right of attorneys to file appearances for non-parties), plaintiff does not challenge the inherent authority of the court to permit such appearance and to entertain argument by counsel for a non-party under circumstances where invocation of privilege or the point of law advanced cannot be expected to be made by existing counsel of record for the

It is well-established that this court has considerable authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R.R. Co., 370 U.S. 626, 630-631 (1962). Moreover, "[t]he power of a court over members of its bar is at least as great as its authority over litigants." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980) A component of a District Court's inherent powers in this regard includes the power to "police" the conduct of attorneys. See United States v. Seltzer, 227 F.3d 36, 42 (2nd Cir. 2000) ("the inherent power of the District Court also includes the power to police the conduct of attorneys as officers of the court ... [including] other conduct with interferes with the court's power to manage the court's calendar and the courtroom without a finding of bad faith.")

3

III. **BACKGROUND AND CONDUCT OF COUNSEL DURING THE MARCH 28,**
     **2006 HEARING.**

On March 28, 2006, this court commenced an evidentiary hearing on defendant Wearing's motion, the purpose of which was to determine the truth with respect to Wearing's assets, including the availability to him of third party sources of payment, including municipal insurance and indemnification. In connection with the scheduled March 28 proceeding, the plaintiff subpoenaed attorneys Thomas W. Ude, Jr., and Jonathan Beamon,, who are non-party witnesses in this case.[1]

Attorney Beamon was co-defense counsel as Mr. Wearing was also represented at trial, and continues to be represented, by Attorney Robert Rhodes of the firm of Halloran & Sage, the appointed counsel of the Coregis Insurance Company which issued the liability policies applicable to this action.

Upon being served with subpoenas calling for their appearance at the March 28 hearing, Messrs. Ude ,Beamon and Slap engaged counsel, Attorney Hugh Keefe, to represent them. Attorney Keefe filed an appearance in this case, not on behalf of the defendant but for these non-party witnesses. It is readily apparent that the purpose of Mr. Keefe's appearance was to voice objections to certain documents requested and testimony required of these witnesses on the basis of attorney-client privilege. But the witnesses do not hold the privilege – the privilege belongs to the client, not

_____

[1]Attorney Beamon was once counsel of record for the defendant and, as his testimony has revealed, he withdrew as counsel after co-trying the case for Wearing and after judgment issued, citing a conflict of interest with his client. Attorney Ude is Mr. Beamon's superior and, as Corporation Counsel for the City of New Haven, was directly involved in the decision-making and defense of this case, including the decision to forego settlement in favor of taking the case to a jury..

4

the attorneys.  The privilege, as held by Wearing, is properly invoked by Wearing acting through his counsel of record.  Witnesses Ude, Beamon, and Slap are certainly free to invoke privilege on behalf of another "client", such as the City of New Haven or any of its officials with whom they had privileged communications regarding the subject matter of this litigation.

While plaintiff does not contend with the court's authority to permit private counsel for witnesses to be heard, plaintiff nevertheless submits that since Mr. Wearing is represented by Attorney Rhodes, the defendant, through Rhodes, is able to interject an objection on the grounds of privilege.  Indeed, it is Attorney Rhodes' responsibility to interpose such an objection to a question posed to witness, the answer to which would implicate the privilege.  Thus, plaintiff questions the necessity of Mr. Keefe's appearance but , for the reasons stated, does not move this court to strike the appearance but rather seeks an order appropriately designed to stem the abuse of that appearance.

Attorney Keefe, from the very commencement of the March 28 proceeding, stepped well outside the bounds of what should have been his very limited role in this case, causing this hearing to last much longer than necessary.  Rather than playing a limited role and for the sole purpose of interposing briefly and simply stated objections on the grounds of privilege, Mr. Keefe instead adopted the posture of the defendant and defendant's counsel in this case, invoking privilege on behalf of Wearing (as opposed to invoking it on behalf of another of Ude's or Beamon's clints) and Keefe went further and starting opinionating and arguing the merits of the case, unrelated to any issue of privilege.  In substance and posture, Attorney Keefe conducted himself as if he were co-counsel

5

for Wearing and double-teaming the plaintiff on the merits of the pending motion, indeed on the merits of the action itself. as if it were his role and right to voice his personal opinions on the matters (notwithstanding his complete lack of knowledge of and familiarity with the evidentiary background, Magistrate Judge-managed conferences, jury trial proceedings and prior court rulings in this case.)

The transcript of the March 28th proceeding shows that Mr. Keefe, at the very beginning of the hearing, was improperly voicing objections to the appearance for the plaintiff of Attorney Norman Pattis on the frivolous ground that a former law clerk of this court is now employed in Pattis' office. See Transcript of March 28, 2006 proceeding at pp. 5-9.[2]  While such a challenge, however meritless, may appropriately have been raised by Attorney Rhodes as counsel for a party, it was wholly inappropriate for Mr. Keefe to voice a position on this or any other matter on behalf of non-party witnesses.  Mr. Beamon and Mr. Ude are mere witnesses in this case; they are not parties.  The only parties are Wearing and Tolnay.  They are appropriately represented by counsel of record.

Although he was ostensibly present in court to invoke, where appropriate, a claim of attorney-client privilege, the record of the proceedings shows a persistent and ceaseless pattern of improper objections unrelated to an issue of privilege, interruptions, opinionating, and undue comments by Mr.

---

[2]Indeed, Mr. Keefe himself initially recognized that he may not have standing to speak to this issue, but nonetheless proceeded to bloviate on the issue, consuming the limited time of court and counsel See Transcript at p. 5. Thus, Attorney Keefe, before the hearing even got underway, gave every indication of his intent to hijack the proceeding for his own aims and intrude improperly on the role of counsel for the actual parties to the action.

Keefe.  In the course of many such interruptions, Attorney Keefe also improperly directly addressed plaintiff's counsel instead of addressing his comments to the court.  Apart from this breach of courtroom decorum, before the non-party witnesses whom  Mr. Keefe represents were even called to the stand, Mr. Keefe was interrupting the proceedings, speaking to the merits and responding to legal arguments made by the parties' counsel. See, e.g, Tr. at p.49 (showing Keefe arguing in response to plaintiff counsel's oral presentation of case law respecting judgment-creditors.)  Mr. Keefe went so far as to make long-winded speeches accusing plaintiff's counsel of a "convoluted theory".  This conduct occurred before any of the non-party witnesses he represents even took the stand.  Elsewhere, Mr. Keefe interrupts an examination of the defendant (who is not Keefe's client) with inappropriate comments.  See, e.g., Tr. at p. 54.  Indeed, although Chief Wearing is represented by  Mr. Rhodes, Mr. Keefe inappropriately peppered the examination of Mr. Wearing with objections, some on the purported basis of privilege and others not.  Since Mr. Wearing is represented by Mr. Rhodes, it is Mr. Rhodes who is properly responsible for objection to questions on the basis on behalf of his own client, not Mr. Keefe.  Mr. Keefe's inappropriate objections resulted in lengthy arguments back and forth between counsel which took up unnecessary time .

Elsewhere in the transcript is recorded patently improper speeches by Mr. Keefe directed at plaintiff's counsel.  Mr. Keefe was making demands of plaintiff's counsel, again inappropriately addressing himself to plaintiff's counsel and not the court.  Id. at pp. 69-71.   He proceeded throughout the examination of Chief Wearing  to interrupt and pepper the examination with

7

objections he had no right to make and which were properly the province of Mr. Rhodes.  Keefe went so far as to interrupt and object to a question posed to defendant regarding the source of funds to hire his private attorney, Hubert Santos.  Id. at p. 88.  This was entirely improper.  Later, Mr. Keefe interrupted again, opinionating about the propriety of the question to the witness, although the question had nothing whatever to do with Keefe's clients or the issues of privilege for that matter.  Id. at p. 89.

The proceedings were all the more multiplied and unproductive due to Attorney Keefe's intrusion into the role of defendant's counsel as shown by the seeming need of Mr. Rhodes to echo and parrot ,on behalf of Wearing, all of the comments and objections voiced by Keefe.  Indeed, every single time Keefe expressed an opinion or voiced an objection, the transcript reveals Mr. Rhodes standing up and taking up still more time stating for the record that he was joining in Keefe's objections.  This was entirely improper and an unnecessary waste of time and resources, not to mention the inconvenience to the plaintiff and the witnesses.

On behalf of the plaintiff, Attorney Pattis commenced the examination of non-party witness Thomas W. Ude, Jr.  Again, to the greatest extreme, Mr. Keefe, overstepping what should have been a very limited role , peppered the examination with objections that had nothing whatever to do with privilege.  Keefe interposed objections on the basis or "relevance", on the ground that a question was "asked and addressed" and otherwise interrupted Attorney Pattis repeatedly, making long speeches with personal insults sprinkled throughout.  Mr. Keefe's interruption of the examination on the

ground of his perception of what is "relevant" for this court was entirely improper.  See, e.g. Tr. at p. 121-22.  These improper objections led to unnecessary and time-consuming arguments between counsel.  Likewise improper were Keefe's objections on the grounds of "asked and answered."  See, e.g. Tr. at p. 126.  At another point, Attorney Keefe engaged in inappropriate comments and grandstanding, to wit, demanding to know if Attorney Pattis was "going to take the stand".  Id. at p. 145. Mr. Keefe further made comments by which he sought to recharacterize his client's testimony. Worse yet, Mr. Keefe was making comments that go to the merits of the issue before the court, the issue of indemnification, which he had no right to do and which, remarkably, were in direct contravention of the testimony of his own clients.  Indeed, a review of the transcript shows that it is perhaps ten times the pages it should because of Mr. Keefe's interruptions, improper objections and back and forth with counsel.  Mr. Keefe's objections on the grounds of relevance and "asked and answered" were more frequent and more strident as the examinations continued.  See, e.g., Tr. at pp. 87-192,

Later, Mr. Keefe once again interrupted the proceeding on a matter which had nothing to do with privilege, insisting on the right to engage in voir dire of Mr. Ude regarding the admissibility and authenticity of a document as to which there was no issue of privilege.. Id. at p. 209-210.

In the biggest attempt at overstepping his role, at the conclusion of plaintiff's examination of Mr. Ude, Attorney Keefe strode to the podium with the mind that he had the right to engage in an examination of the witness. Again improperly directing his comments to counsel and not the court,

9

Attorney Keefe derisively suggested that plaintiffs' counsel's objection to his conducting an examination of the witness was absurd, proclaiming that "of course" he has a right to do so, as if there were not a judge sitting on the bench. The court properly sustained the objection and Mr. Keefe was required to step away and was at last confined.

Attorney Keefe repeated the improprieties, however, during plaintiff's counsel's examination of witness Jonathan Beamon by persisting to interpose a variety of improper objections on the grounds of relevance and other undefined objections. He further interrupted with a bizarre motion to strike testimony from the record. As in the case of witness Ude, Mr. Rhodes felt compelled to interrupt for the purpose of echoing Mr. Keefe's opinions and objections for the record on behalf of Wearing, which served, as before, to turn what should have been an efficient and seamless examination into a fragmented and incoherent trial record. See, e.g., Tr. at 224 (showing Attorney Keefe interposing undefined objections or other objections on the ground of relevance coupled with inappropriate comments which again provoked Attorney Rhodes to interrupt for the purpose of parroting them.)

Mr. Keefe is of the opinion that he can interrupt whenever he pleases and and say anything he pleases under his own view that he has a right to "protect the record". Id. at p. 247. To the contrary, Mr. Keefe has no such right under the federal rules or the local rules of this court. He was allowed to file an appearance and participate in the proceeding although he has no absolute right to do so on his own terms. It is respectfully submitted that Mr. Keefe has abused that privilege for the

purpose, or at least to the effect, of obstructing (and certainly delaying) the truth-seeking goal of this proceeding which is to discover the real facts respecting the availability to Chief Wearing of third-party sources of payment..

On this point, this court is advised that on the issue of Chief Wearing's strategy of employing the attorney-client privilege as a shield to prevent any and all inquiry into the veracity of his averments with respect to sources of payments, plaintiff's counsel will shortly file a memorandum of law which shows that Wearing, under well-established authority, waived such privilege and accordingly, all objections by defense counsel and Attorney Keefe in this regard are without legal merit and ought not to be the basis of Wearing's, or any witness's refusal to answer questions or disclose evidence. On the authorities contained therein, counsel will indeed be asking the court to compel Wearing and all witnesses to answer all questions, and disclose any and all documents which they have refused to disclose thus far by invoking the shield of privilege.

In the event that this court disagrees with the position by plaintiff on the issue of Wearing's waiver of the privilege in this regard, plaintiff nevertheless submits that with respect to the upcoming April 27, 2006 continuation of this hearing, an appropriate order should issue with respect to the conduct of counsel for non-party witnesses which includes the following proposed or like directives:

1.  Counsel for non-party witnesses is prohibited from interposing any objections to evidence on the grounds of relevance, "asked and answered", defect in the form of the question or any other grounds

11

unrelated to the invocation, made on a good faith basis, of attorney-client privilege;

2.    Counsel for non-party witnesses will refrain from speaking objections but rather shall be limited to voicing brief and distinct objections on the ground of privilege without more unless additional argument is invited by the court;

3.    Counsel is to refrain from any further inappropriate statements of opinion about the merits of the case, the merits of defendant's pending motion or his personal view of the legal rights and obligations of the city of New Haven in respect to defendant Wearing.

Plaintiff's counsel respectfully submits that the requested order is appropriate and necessary both to an orderly and efficient proceeding and in furtherance of its truth-seeking purpose.

WHEREFORE, the undersigned counsel respectfully that this motion be granted and that the court issue the requested order with the terms proposed above or on such other terms as the court deems appropriate and necessary.

THE PLAINTIFF

ARPAD TOLNAY


BY:_____

     KAREN LEE TORRE
     Federal Bar No. ct01707
     Law Offices of Karen Lee Torre
     51 Elm Street, Suite 307
     New Haven, CT 06510
     (203) 865-5541

13

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, this 21st day of April, 2006, to:

Robert A. Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

Hubert J. Santos, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Norman A. Pattis, Esq.
649 Amity Road
P.O. Box 280
Bethany, CT 06524

_____
KAREN LEE TORRE

14