UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil No.  3:02CV1514 (EBB) |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
| | : | April 25, 2006 |
| Defendant. | | |

**PLAINTIFF'S MEMORANDUM OF LAW ON THE ISSUE OF DEFENDANT'S
INVOCATION OF THE ATTORNEY-CLIENT PRIVILEGE**

**I.    BACKGROUND**

This court commenced an evidentiary hearing on defendant's motion for a stay of execution

of the judgment against him by which he also seeks relief from the obligation to post security for the

plaintiff.  Plaintiff's position is that defendant, as a condition of the stay, must secure the plaintiff.

In support of his motion, defendant submitted an affidavit to this court in which he sets forth some

information about his personal assets.  The affidavit, however, makes no assertions regarding the

availability to defendant of third-party sources of payment, including municipal insurance and

indemnification.  To the contrary, defendant's affidavit was deliberately silent on these maters.

Instead, defendant made implied and ambiguous assertions on the issue of third-party sources only

through his counsel of record who signed and filed a memorandum of law in support of defendant's

motion which:  1) omits any representations to this court regarding municipal indemnification; and

2) includes an ambiguous representation to this court respecting the availability of insurance to cover

the entire judgment, to wit: a representation to this court that Chief Wearing is unaware or unsure of the extent to which insurance is available to him.  Defense counsel presumably offers this and other representations in his memorandum of law based on his standing as an officer of this court.  After reporting Wearing's  lack of awareness on the insurance issue, defense counsel proceeded to represent  that Coregis Insurance Company (the City of New Haven's insurer) takes the position that it is not responsible for payment of the entire judgment.  Defense counsel's representations on this latter point, however, cannot suffice as evidence for statements of counsel are not evidence under any circumstance; moreover, defense counsel's statements respecting the position of Coregis are hearsay as they are obviously based upon out-of-court statements made to him or others by officials of Coregis.

In the wake of defendant's filing of the motion and self-serving affidavit, plaintiff's counsel sought to depose Chief Wearing and examine him regarding not only the accuracy of the statements in his affidavit but facts which he omitted from his affidavit.  He was also to be examined regarding the factual bases for the representations made by his counsel in the memorandum of law submitted in support of his motion and generally on the very issue as to which Wearing avoided all mention in his moving papers: the availability to him of third party sources of payment.  See Notice of Deposition dated March 17, 2006 and accompanying demand for the disclosure of documents (attached hereto as Exhibit 1)

In response to the notice of deposition, Wearing's counsel promptly filed a motion for a

protective order seeking to block the examination.  Prior to this, defense counsel also stymied plaintiff's effort to gain disclosures by Wearing of all his assets, including third party sources of payment by interposing wholesale objections and otherwise refusing to cooperate.

Defense counsel incredibly objected to a deposition examination of Chief Wearing on the ground that Wearing had moved for a stay of execution of the judgment, a position which is so patently frivolous that it implicates a violation of Rule 11.  The plaintiff has a clear right under the unequivocal provisions of Federal Rule of Civil Procedure 69 to depose Wearing.  Notwithstanding this clearly established right, defense counsel sought once again to frustrate any inquiry into this matter by filing a patently improper motion.  In response to the persistent obstruction, plaintiff's counsel requested, and the Court conducted, a teleconference with counsel the result of which was the scheduling of an in-court evidentiary hearing on the issue at which Wearing and other witnesses could be examined regarding the true extent of Wearing's available sources of payment.

The evidentiary hearing commenced but did not conclude on March 28, 2006.  In the midst of these events, Attorney Jonathan Beamon filed a motion to withdraw his appearance for the defendant for unexplained reasons.[1]

Chief Wearing was examined at the March 28, 2006 hearing.  In sum, Wearing appears to be

---

[1] Attorney Beamon, however, did not comply with Local Rule 7(e) as he failed to include in his motion an attestation that a certified copy of it was served upon his client.  Plaintiff's counsel noted this failure by way of objection whereupon Attorney Beamon filed another motion to withdraw his appearance which complied with the local rule requirement.

3

at sea on the issue of the extent to which Coregis Insurance Company is the responsible source of payment for the entire judgment in this case.  On the issue of municipal indemnification, Chief Wearing expressed a seeming understanding that he is not, at present, fully indemnified by the City with respect to any judgment of punitive damages.  It appears without question that Wearing's assertions on these matters are based <u>entirely</u> on information conveyed to him by 1) the Coregis-appointed attorneys  who unsuccessfully defended him at trial, and 2)  one or more attorneys from the New Haven Corporation Counsel's office.  These communications are apparently both oral and written.

Wearing, however, and surprisingly, is invoking attorney-client privilege as the basis for refusing to answer many questions about his knowledge of these matters. He objects to the disclosure of any written communications between himself and the attorneys and further invokes the attorney-client privilege with respect to any oral communications. There is no evidence as yet which shows that defendant received communications directly from Coregis Insurance Company on this issue; rather, to the extent that Wearing knows anything about the issue whether he is, or has a right to be, fully indemnified by Coregis, it is based solely on what Coregis has conveyed to him through its appointed counsel from Halloran & Sage and what, if anything, was conveyed to him by city corporation counsel who have since withdrawn, citing their conflict of interest with their own client. As to the extent to which Wearing was and remains indemnified by the City of New Haven, including indemnification for punitive damages, it is equally obvious that the sole basis for Wearing's

4

knowledge and his attestations on the subject is that which was conveyed to him by city officials, including city counsel whether orally or in writing.

New Haven Corporation Counsel Thomas Ude and Assistant Corporation Counsel Jonathan Beamon were subpoenaed to testify at the March 28, 2006 hearing. They engaged the services of Attorney Hugh F. Keefe, who, throughout the hearing, repeatedly objected to questions posed to both witnesses on the ground of attorney-client privilege.[2]  The invocation of privilege in this respect becomes all the more bizarre in light of the now realized conflict of interest between both of these attorneys and Chief Wearing. Both attorneys are beholden to the interests of the City of New Haven and its Mayor. Both attorneys were responsible, along with Coregis-appointed counsel, for making the decisions 1) to forgo settlement in favor of trying the case to a jury, and 2) to reject out-of-hand the court's suggestion, and the efforts of plaintiff's counsel, to discuss settlement during the jury's deliberation after jurors sent a note which telegraphed the probability of a substantial plaintiff's verdict.

It has been established that, with respect to these decisions, Chief Wearing was kept out of the loop and was at the mercy entirely of the very attorneys who now suggest (but do not aver under penalty of perjury) that Wearing does not enjoy municipal indemnification nor the full resources of

---

[2]Attorney Keefe's conduct at the hearing and the issue of the proper scope of his role as counsel to non-party witnesses is the subject of Plaintiff's Motion For Order Clarifying And Limiting The Conduct of Counsel For Non-Party Witnesses filed April 21, 2006.

Coregis in satisfying any punitive damage judgment.

Notwithstanding this state of affairs, Wearing remarkably persisted (albeit not of his own initiative but through the very attorneys whose interests are in direct conflict with his own) to invoke attorney-client privilege in respect to all communications which form the basis for his understanding of his available sources of payment.[3]

The plaintiff's position throughout this hearing was that the history of this case, including, most especially, the carefully limited phrasing of Wearing's affidavit, the curious statements of defense counsel in his memorandum of law, the history of settlement negotiations in this case coupled with the city's demonstrated history of paying punitive judgments against its officials, strongly suggested a collaboration between Coregis, city officials, counsel and Wearing designed to frustrate the plaintiffs' efforts to gain security for his judgment and to further mislead the plaintiff and the court with respect to Wearing's insurance and indemnification for the improper purpose of influencing this court on the issue of remittitur, an issue yet to be decided by this court in connection with defendant's unrelated pending motion for a new trial. In sum, the plaintiff believes that the city and Coregis are hiding behind Wearing's personal assets for this purpose, with a "wait and see"

_____

[3]The Coregis-appointed counsel of record for Wearing largely echoed Attorney Keefe's objections on this ground throughout the March 28, 2006 hearing. This court quite properly expressed concerns about this matter and it was agreed that no further examination of Wearing should continue until such time as counsel appeared for him who was loyal only to Wearing's interests.

strategy which they hope will survive long enough for them to reassess their position once this court rules on the post-judgment motions. With the propriety of any such strategy aside and left for another day and perhaps another forum, the plaintiff submits that given the record as developed, Wearing must, as a matter of well-established law, be deemed to have waived attorney-client privilege and should accordingly be ordered to answer all questions and disclose all evidence related to his communications with city officials, city attorneys, Coregis-appointed counsel and all others with whom he communicated in any manner on the matter of the extent to which is has, or is entitled to, insurance coverage and municipal indemnification for the entire judgment in this case.

It is readily apparent that Wearing's affidavit, carefully word-smithed by his counsel, and defense counsel's *ipse dixit* ambiguous representations made in his memorandum of law have an ulterior purpose, which is to influence this court's decision with respect to a remittitur of the punitive damage award. It is plaintiff's position that this is wholly improper, especially since the record establishes that at the jury trial, defendant and his counsel initially started to put the issue of Wearing's assets before the jurors but then quickly abandoned the effort and retreated when plaintiff's counsel made clear her intention to cross-examine Wearing on the issue and offer other evidence to rebut any express or implied assertion that Wearing's personal assets are all that exist to satisfy any judgment. Having made that strategic decision, Wearing now attempts to have this court, for purposes of remittitur, hear evidence which he expressly declined to offer to the jury and thus asks this court, post-judgment, to perform what is quintessentially a jury function and decide not only the

7

issue of his available assets and sources of payment but the credibility of his and other witnesses' testimony on the issue, credibility questions which they did not wish the eight jurors in this case to decide.

It is plaintiff's position, therefore, that any and all evidence on this issue which has been offered and continues to be offered in the context of Wearing's pending motion for a stay of execution and relief from posting of security must be offered and considered by this court only in respect to that motion and not on the issue of remittitur. This court correctly advised the jurors that they were to make their decision with respect to the amount of compensatory and punitive damages without regard to the issue of the source of payment. That instruction to the jurors correctly reflected Wearing's mid-trial decision to stay silent on the issue.

With plaintiff's position on the scope and use of this evidence thus stated, plaintiff submits that Chief Wearing has improperly attempted to use the attorney-client privilege as both sword and shield in this case; in other words, he wishes to have his cake and eat it too. He demands that this court grant him a privilege and a generosity to which he is not entitled based upon a highly questionable affidavit which itself was carefully scripted to avoid any representations on the existence and extent of third party sources of payment. The affidavit, scripted as such, is itself a strong indication that defense counsel sought to avoid having Wearing make any clear statements under oath regarding the issue of third party payments. Thus, the subject was omitted entirely from the affidavit. Instead, defense counsel improperly made representations to this court in his memorandum of law,

8

statements which are not evidence (as they are statements of counsel) which were not examined and, remarkably, as to which defendant and his counsel refuse to allow any and all examination for purposes of testing their veracity.  In sum, defendant and his counsel have made express and implied representations to this court and respond to any challenge to these statements by throwing up the shield of attorney-client privilege.  This the defendant cannot do for the reasons set forth below.

## II.     ARGUMENT

### Having Filed A Motion And Asserted Factual Claims The Truth Of Which Can Only Be Assessed By Examination Of A Privileged Communication, The Defendant Must Be Deemed To Have Waived Attorney-Client Privilege.

The defendant has made assertions regarding his understanding of the availability to him of municipal indemnification to the full extent of his liability in this case.  Chief Wearing is also before the court asserting, through his counsel of record, that he is in a state of uncertainty over the extent to which he is or is entitled to insurance coverage and indemnification in respect to the punitive award.  On this latter point, the issue of insurance, Wearing makes these representations also through his counsel as set forth in defendant's memorandum of law in support of his motion.  Chief Wearing's understanding is informed solely by communications and information conveyed to him by city counsel and counsel from the firm of Halloran and Sage.[4]

_____

[4]To the extent Wearing's understanding of these matters is based in part on conversations with others in city government, such communications are obviously not privileged.

9

The various attorneys whose objections on the grounds of attorney-client privilege punctuated the March 28, 2006 hearing fail to acknowledge the overwhelming body of authority which, applied to this case, requires a finding of a waiver by defendant of any such privilege.  It is well established that a party who makes assertions which have their basis in otherwise privileged communications is deemed to have waived the privilege with respect to all such communications on the issue.  See, e.g., Walsh v. Seaboard Surety Co., 184 F.R.D. 494, 496 (D. Conn. 1999) (Plaintiffs waived attorney-client privilege "by making assertions that have put the communications 'at issue' in the case.") In Walsh, the Honorable Janet C. Hall discussed the "at issue" exception to the doctrine of privilege, noting that under the standard, "even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.".  Id. quoting Bowne v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993) (emphasis supplied).  In addition to waiving the privilege with respect to attorney-client communications, the same "at issue" exception applies equally to a party's refusal to disclose information based on the attorney work-product doctrine.  Id. at 497 (citations omitted).

Chief Wearing in this case cannot make assertions and then erect a shield of privilege in order to avoid an examination of or challenge to the truth and accuracy of those assertions as to allow a party to use the privilege as a shield under these circumstances is considered fundamentally unfair to his opponent.  See United States v. Bilzerian, 926 F.2d 1285. 1292 (2nd Cir. 1991) ("The privilege

10

may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.")

The case authority on this is voluminous, unambiguous and overwhelming.  See Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash. 1975) (asserting party put privileged information at issue by making it relevant to the case and application of the privilege would thereby deny the opposing party information vital to his defense).  The Hearn doctrine has been applied repeatedly and liberally in this circuit.  See Walsh, supra at 496 (Hon. Janet C. Hall holding the Hearn doctrine applicable in the state of Connecticut); Johnson Matthey, Inc. v. Research Corp., 2002 U.S. Dist. LEXIS 13560, 2002 WL 1728566 at *3 (S.D.N,Y. 2002) (privilege waived when party asserts a position the truth of which can be assessed by examination of privileged communications – claim of fraudulent concealment put in issue facts learned from counsel); In re: Kidderpeabody Secs. Litig., 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (same); Bank Brussels Lambert v. Credit Lyonnaise (Suisse), 1998 U.S. Dist. LEXIS 13611, 1998 WL 567862*1 (S.D.N.Y. 1998) (same); Weizmann Inst. Of Science v. Neschis, 2004 U.S. Dist. LEXIS 4254 (S.D.N.Y.) at **11-12 (party deemed to have waived privilege by placing directly in issue his assertions on communications with attorneys).

Moreover, "when a client selectively discloses portions of communications otherwise protected by the attorney-client privilege, the 'subject matter waiver' doctrine requires that other communications about the same subject matter also be disclosed." Nolan v. City of Yonkers, 1996 U.S. Dist. LEXIS 3221 at *5, citing In re: Von Bulow, 828 F.2d 94, 101-102 (2d Cir. 1987); Brock

11

Equities Ltd. v. Josephthal, Lyon & Ross, Inc., 1993 U.S. Dist. LEXIS 1245, *2, WL 350026, *1

(S.D.N.Y. 1993).  Aptly pertinent to the instant case was the court's observation that "[t]he purpose

of this 'fairness rule' is to ensure that fact finding, and the judicial process, are not distorted by the

introduction of selectively disclosed and intentionally misleading evidence." Nolan at *6, citing and

quoting in part Teachers Ins. & Annuity Ass'n v. Shamrock Broadcasting Co., 521 F.Supp. 638, 641

(S.D.N.Y. 1981).

        In this case, defendant has attempted to use the privilege as both "a sword" and "a shield" by

making assertions (or, in the case of available insurance, claiming lack of knowledge) which have no

factual basis or source other than attorney-client communications.  The privilege may not be used as

both sword and shield.  In re: Von Bulow, 828 F.2d at 103 (citations omitted).  See also Kabushiki

v. Gruen Ind., Inc., 1986 U.S. Dist. LEXIS 26343 (plaintiff may not use attorney-client privilege as

both sword and shield); Palazzetti Import/Export, Inc. v. Morson, 2000 U.S. Dist. LEXIS 10340

(S.D.N.Y.) at * 11 (party asserting privilege by withholding of documents unfairly sought to mislead

his opponent).

        Moreover, it is not even necessary to deem Wearing to have waived the privilege with respect

to any communications from Corregis Insurance Company or the City of New Haven, despite such

communications coming to Wearing through his counsel, for those communications merely relay

information obtained from a third party.  In this case, clearly Wearing was given information by

attorneys from Halloran and Sage with respect to the extent to which Corregis Insurance Company:

1) may be liable to pay for the entire judgment, and 2) Corregis' position on whether it is so liable. This is clearly borne out by defense counsels' own memorandum of law in which they make the dual claim that 1) Wearing "does not exactly which portion of the judgment that Corregis will indemnify" and 2) Wearing "can report that Corregis does not consider itself responsible to indemnify any punitive damages award."[5]  To the extent that attorneys from the firm of Halloran and Sage were passing on to Wearing the position of Corregis Insurance Company, such can hardly be considered privileged in the first instance, especially since, for their own self-serving purposes, Corregis-appointed counsel are including, by implication, these very communications in their brief to this court.  Under the above-cited and unequivocal authority, Wearing, having made claims and assertions the factual  basis of which  are the very communications from his counsel, has by law waived attorney-client privilege and must disclose all such communications.

Likewise, with the defendant having waived privilege as a matter of law, it is entirely inappropriate for Attorneys Ude and Beamon to refuse to answer any and all questions regarding their communications with Wearing or anyone else in this case regarding the City's position and strategy with respect to municipal indemnification for the punitive damages judgment.

The federal courts have consistently refused to allow a party to give his opponent only a glimpse into the content of such communications and then invoke the privilege against a fuller

---

[5]See Defendant's Memorandum of Law at p. 2; see also Transcript of March 28, 2006 hearing at p. 81.

disclosure, especially in circumstances where the invocation of a privilege "would be misleading to a court." <u>McGrath v. Nassau County Health Care, Corp.</u>, 204 F.R.D. 240, 245 (E.D.N.Y. 2001) (where substantive information gained from privileged communication has been revealed, partial disclosure is not allowed to the prejudice of the opposing party and where invocation of the privilege will result in an unfair proceeding or a party's misleading a court).

## <u>CONCLUSION</u>

For the foregoing reasons, and upon the cited authority, plaintiff respectfully submits that this court should overrule all objections on the ground of attorney-client privilege.

THE PLAINTIFF

ARPAD TOLNAY

BY:_____
KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510
(203) 865-5541

14

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, this 25th day of April, 2006, to:

Robert A. Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Norman A. Pattis, Esq.
649 Amity Road
P.O. Box 280
Bethany, CT 06524


_____
KAREN LEE TORRE