IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
|     Defendant | : | MAY 3, 2006 |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR THE AWARD OF ATTORNEYS' FEES AND COSTS

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:   (203) 227-2855
Fax:   (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:   (860) 522-6103
Fax:   (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,
Melvin Wearing*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 1

STANDARD OF REVIEW ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

    I.    THE HOURLY RATES REQUESTED ARE UNREASONABLE ........................... 4

        A.    The $350 Per Hour Rate Requested For The Plaintiff's Counsel Is Excessive ........................................... 4

        B.    The $125 Per Hour Rate For A Paralegal Is Excessive ........................... 8

    II.    THE NUMBER OF HOURS REQUESTED ARE EXCESSIVE ............................. 9

        A.    The Billing Records Contain Time That Does Not Relate To This Litigation Or Which Is Otherwise Inappropriate ........................... 9

        B.    The Billing Records Submitted Contain Inappropriate Block Or Bundled Billing ........................................................... 12

        C.    The Billing Records Submitted Contain Overly Vague Terms ........................................................................................ 15

        D.    The Billing Records Contain Tasks That Are Clerical Or Paralegal Tasks ........................................................... 19

        E.    The Time Expended Was Excessive On Several Specific Tasks ........................................................................ 21

        F.    The Time Claimed For The Fee Motion Is Inappropriate And Excessive ........................................................... 23

    III.    SEVERAL ASPECTS OF THE REQUESTS FOR COSTS SHOULD BE REJECTED ........................................................... 27

CONCLUSION ....................................................................................................................... 30

## PRELIMINARY STATEMENT

The defendant, Melvin Wearing, the former Police Chief for the City of New Haven, submits this memorandum of law in opposition to the plaintiff's motion for the award of attorneys' fees and costs dated January 30, 2006. In further support of his opposition, Chief Wearing also submits Exhibits 1 through 4, which are attached to an appendix filed under a separate cover.

If the Court grants Chief Wearings's post-trial motions and orders the entry of judgment in his favor and/or orders a new trial, the Court should deny the plaintiff's motion. If the Court denies Chief Wearing's post-trial motions, it should deny the plaintiff's motion in the manner described below.

## BACKGROUND

Following a jury verdict, a judgment was entered against Chief Wearing in the amount of $150,903.84 in compensatory damages and $5,000,000.00 in punitive damages. (Elec. Docket Entry No. 71). Chief Wearing filed a motion for judgment as a matter of law, a motion for a new trial and a motion for remittitur, in the alternative.

By his motion for attorney's fees and costs, the plaintiff seeks an award of $173, 219.14. Specifically, he seeks $168,805.00 for time (482.3 hours) expended by his attorney, $1637.50 for time (13.1 hours) expended by a paralegal and $2,776.64 in litigation expenses. The plaintiff further seeks to have his attorney's time billed at a lodestar rate of $350 per hour and to have a paralegal's time billed at a lodestar rate of $125 per hour. Both the time and the lodestar rates requested by the plaintiff are excessive and should be substantially reduced, if there is any award.

1

## **STANDARD OF REVIEW**

"A plaintiff who has 'prevail[ed]' in the litigation has only established his eligibility for, not his entitlement to, an award of fees." LeBlanc-Steinberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998). The district court retains the discretion to determine, under all the circumstances, what constitutes a "reasonable" fee, and in appropriate circumstances, the court may conclude that, even though a plaintiff has formally prevailed, no award of fees to that plaintiff would be reasonable. Id. In order to establish a reasonable amount to award by way of attorney's fees, the court must compute the "lodestar amount" by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Mr. and Mrs. B v. Weston Bd. of Educ., 34 F.Supp.2d 777, 781 (D. Conn. 1999). It is well established that "[t]he applicant bears the burden of demonstrating through proper documentation, that an appropriate amount of time was expended at an appropriate hourly rate." Weston Bd. of Educ., 34 F. Supp. 2d at 781 (citation and internal quotation marks omitted).

In Hensley v. Eckerhart, 461 U.S. 424, 430 (1983), the Supreme Court identified twelve factors that are appropriate to consider in ruling on a motion for attorney's fees under 42 U.S.C. § 1988. Those factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the "preclusion of employment" by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id.

Generally, a party seeking an award of fees has a burden of establishing his entitlement to the award. J.P. Sedlak Assoc. v. Connecticut Life & Cas. Ins. Co., 2000 WL 852331, at *2 (D.Conn. Mar. 31, 2000). Applications for fee awards should generally be documented by contemporaneously created time records that specify for each attorney, the hours expended, and the nature of the work done. Id. Fee applications must meet certain standards of specificity in order for a court to render a determination that the claimed fees represent time reasonably expended on the case, and charge a reasonable hourly rate considering the prevailing rate in the community and experience of the person rendering the services. Id. at *3. A fee applicant bears the burden of providing documentation to prove that an appropriate amount of time was billed and expended at a reasonable hourly rate. Id. at *6. Where a party fails to keep adequate records, courts do not award the full amount requested. J.P. Sedlak Assoc., 2000 WL 852331, at *6 (citing Weston Bd. of Educ.). Vague entries such as review of file, review of correspondence, research, conference with client, and preparation of brief do not provide a court with an adequate basis upon which to evaluate the reasonableness of a fee application. Id. When time entries are lacking in this regard, courts typically apply an across-the-board reduction. Id. Similarly, an applicant cannot recover for fees for hours that are excessive, redundant or otherwise unnecessary. Id. at *7.

In reviewing a fee application, the court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. Id. at *2. Unreasonable expenditures of time should be excluded from the lodestar calculation. Id. Counsel may recover fees only for the entries that "identify the general subject matter of [their] time expenditures." Hensley, 461 U.S. at 437. See Petronella v. Acas, 2004 WL 1688525 at *2 (D. Conn. Jan. 23, 2004). Fees should likewise not be awarded for

3

duplicative services and unnecessary expenditures of time, and the records submitted must be sufficient to permit the court to assess the reasonableness of the time expended. Weston Bd. of Educ., 34 F. Supp. 2d at 781.

Simply stated, as part of the calculation of the lodestar figure, "hours that simply should not have been spent at all," cannot be awarded. See Copeland v. Marshall, 641 F.2d 880, 902-03 (D.C. Cir. 1980)(en banc). It is appropriate to adjust downward the fees requested in order "to account for hours unreasonably spent or without appropriate detail." Crocco v. Xerox Corp., 1998 WL 264814, at *3 (D. Conn. May 12, 1998)(Burns, J.).

Further, "in the filing of a fee application, 'each individual who has billed time on the case must submit an affidavit indicating their training, level of experience, and swearing or affirming that the time contained in the time records attributed to each individual was actually billed... on the case.'" J.P. Sedlak, 2000 WL 852331 at *2 (citing Weston Bd. of Educ., 34 F. Supp. 2d at 783).

Moreover, where the result is the product of counsel's expertise, there is no basis for the enhancement of the lodestar figure. See Lepper v. Avco Lycoming Div., 691 F. Supp. 579, 583 (D. Conn. 1986)(Burns, J.). "That figure, . . ., is 'fully compensatory' for the time actually spent on th[e] action." Id.

## ARGUMENT

I. **THE HOURLY RATES REQUESTED ARE UNREASONABLE**

   A. **The $350 Per Hour Rate Requested For The Plaintiff's Counsel Is Excessive**

Reasonable fees are to be calculated based on prevailing market rates in the relevant community. Petronella, 2004 WL 1688525 at *1. In order to establish the prevailing rate in the community in which the action arose, one must provide the court with affidavits or other proof of

4

the same. Id. In the situation where no such documentation is provided, courts have determined reasonable rates based on their own knowledge of such rates. Id. In determining the reasonable rate to be awarded, courts look to fees awarded within the district and rely upon their own knowledge of the prevailing rates in the community. See Spicer v. Lenehan, 2004 WL 3112554, at *4 (D. Conn. Sept. 14, 2004). The courts in this district have been mindful of the Second Circuit's admonition that they should exercise moderation in their award of attorney's fees to avoid "a windfall award, which could result by awarding significantly more than the rates actually charged by counsel." Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 274 (D. Conn. 2002).

The plaintiff's request that his attorney be awarded a lodestar rate of $350 per hour and that the paralegal who worked on this case be awarded a rate of $125 per hour is excessive. **Exhibit 1** to the accompanying appendix is an affidavit by Attorney Norman Pattis dated June 3, 2005 and submitted in support of Attorney Karen Torre's fee request in Arlio v. Lively, No. 3:03-cv-02013 (JBA). As noted in Attorney Torre's affidavit in this case, in Arlio, Judge Arterton in a decision entered on September 28, 2005 set Attorney Torre's lodestar rate at $300 per hour, absent objection. See Arlio v. Lively, 392 F.Supp.2d 317, 325 (D.Conn. 2005). Arlio was a § 1983, First Amendment retaliation case brought by a police sergeant against the Chief of Police for the Town of Trumbull. See id.

Having had a judge in this district set Attorney Torre's lodestar rate at $300 per hour on September 28, 2005 and having had Attorney Pattis submit an affidavit that her lodestar rate should be set at $300 per hour, it is excessive to claim an entitlement to a lodestar rate of $350 per hour for a case that was tried in December 2005. (Ex. 1, Pattis Aff. ¶ 7 ("I believe that $300 per hour is the lodestar rate for an attorney of Attorney Torre's skill, training, and expertise."))

5

The rate requested is also inconsistent with the rates that the plaintiff's attorney actually charges her clients. At paragraph six of her affidavit in this case, the plaintiff's attorney indicated that she "currently bill[s] paying clients at the hourly rate of $300.00 ...." (Torre Aff. ¶ 6) Simultaneously, she conceded that "the clients that I represent never can pay for my services on an hourly rate basis since they tend to be government employees ...." (Torre Aff. ¶ 25) In her affidavit dated May 24, 2005 and submitted in the Arlio case, the plaintiff's attorney indicated that she was charging clients at a rate of $250 to $300 per hour. (Ex. 4, Torre Aff. ¶ 6) Accordingly, this Court should reject the request for a lodestar rate of $350 per hour.

Moreover, a $350 per hour lodestar rate for Attorney Torre is not the reasonable rate for an attorney with her experience in the District of Connecticut. On January 19, 2006, Judge Smith awarded a lodestar rate of $350 per hour for Attorney John Williams in a civil rights case. See Galazo v. Pieksza, 2006 WL 141652, at *3 (D. Conn. Jan. 19, 2002). Attorney Williams was admitted to the Connecticut bar and the bar of this Court in 1968 and his practice focuses on federal civil rights issues. See www.johnrwilliams.com/attorneys (website for John R. Williams and Associates LLC). He has at least nineteen years more federal court experience than Attorney Torre, who was admitted to the bar of this Court in 1987. (Torre Aff. ¶ 2) Thus, Attorney Torre should not receive a $350 per hour lodestar rate in the instant case. In fact, if there is any fee award, the defendant submits that Attorney Torre's lodestar rate should be set at an amount below $300 per hour.

Also, it is difficult to understand how the plaintiff's attorney should be awarded different hourly rates when she was working on both the present case as well as the Arlio during the same time period. (Compare Pl.'s Attorney's Billing Records in Arlio, attached as **Exhibit 2** to accompanying appendix with Ex.1 attached to Pl's Motion in this case). For example, on May

6

26, 2005, Attorney Torre worked on both cases. She worked on researching the post-trial motions in Arlio and on preparing her tasks list for the trial in this case. She billed 1.5 hours to each case that day.

Contrary to the plaintiff's argument at page 4 of his memorandum of law, the "outcome" in this case does not justify a $350 per hour lodestar rate for either the plaintiff's attorney or a lodestar rate of $125 per hour for the paralegal. First, it is well-recognized that the lodestar rate is considered the appropriate rate for a fee award. In fact, "[t]here is a strong presumption that the lodestar figure represents a reasonable rate." Tsombanidis, 208 F. Supp. 2d at 270. See Lepper, 691 F. Supp. at 581 (Burns, J.)("strong presumption"). Moreover, the "Second Circuit has cautioned that 'attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or appearance of awarding windfall fees.'" Tsombanidis, 208 F. Supp. 2d at 270 (citation omitted).

Second, the results obtained in this case do not justify an award above the lodestar rate. As demonstrated in Chief Wearing's memorandum of law in support of his motion for a new trial, the punitive damages award of $5 million was constitutionally excessive and against the weight of the evidence. (Def.'s Mem. Of Law in Support of New Trial Motion, at 18-37) The award of non-economic damages in the amount of $150,000 was also constitutionally excessive and not supported by the evidence. (Id. at 18, 37-39) Thus, the "outcome" or the verdict was inappropriate.

Finally, an upward adjustment is justified only in the "rare" or "exceptional" case. Lepper, 691 F. Supp. at 581 (Burns, J.). Other than a conclusory statement the result here was "extraordinary," the plaintiff has presented no analysis as to how this case is exceptional. (Pl.'s Mem. of Law, at 4) As noted above, the amount of the verdict is inappropriate and

7

unconstitutional. Where the result is the product of counsel's expertise, there is no basis for the enhancement of the lodestar figure. Id. at 583. In the instant case, the plaintiff has gone to great lengths to present his attorney as an experienced civil rights litigator. If there is to be any award, there is no basis for going above the lodestar rate, as that figure constitutes full compensation. Id.

The conclusory statement in the plaintiff's attorney's affidavit and in the plaintiff's memorandum of law that she "risked" not being able to take other cases as a result of her taking this case is irrelevant to the requisite analysis and does not justify an increased award or a billing rate of $350 per hour. (Torre Aff. ¶ 25). As noted above, the Supreme Court in Hensley identified the relevant consideration to be the actual "preclusion of employment." 461 U.S. at 430. There is no evidence that the plaintiff's attorney turned down any work as a result of having taken on this case, let alone lost a client who was willing to pay her on an hourly basis. In fact, at paragraph 25 of her affidavit, the plaintiff's attorney indicates that her clients cannot pay her on an hourly basis because they are usually municipal employees who cannot afford to pay on an hourly basis. (Torre Aff. ¶ 25) Moreover, the plaintiff's attorney's involvement in the Arlio case did not preclude her from taking the instant case.

Thus, if there is an award in this case, at most, the Court should set Attorney Torre's lodestar rate below $300 per hour.

**B.    The $125 Per Hour Rate For A Paralegal Is Excessive**

The request for an award of rate of $125 per hour for the plaintiff's attorney's paralegal is also inappropriate and excessive. As noted above, an affidavit needs to be submitted in support of any individual whose work is claimed as part of the fee application. J. P. Sedlak, 2000 WL 852331, at *2. In this case, other than vague references to the paralegal in Attorney Torre's

8

affidavit, there has been no information provided regarding the paralegal, let alone an affidavit that billing a paralegal at $125 per hour rate is an appropriate lodestar rate in a § 1983 case in the District of Connecticut. Consequently, the Court should disallow all the fees claimed for the paralegal.

If the court allows any of the paralegal's time, the rate assigned to that time should be substantially reduced. For example, in Tsombanidis, Judge Goettel indicated that a rate of $50 per hour was an appropriate rate for a paralegal in the District of Connecticut. 208 F. Supp.2d at 277. Similarly, in the fee application in Arlio, the Attorney Torre sought a rate of $65 per hour for the paralegal who worked on that case with her. (See Ex. 2 in accompanying appendix (Pl.'s Attorney's billing records in Arlio)).

As noted above, as part of a § 1988 fee application, an affidavit should be submitted to support the requested rate for each individual who worked on the case. J.P. Sedlak, 2000 WL 852331, at *2. Here, the only information provided regarding the paralegal is a passing comment in the plaintiff's counsel's affidavit. (Torre Aff. ¶ 27) That comment does not provide a basis for awarding $125 per hour for a paralegal in the District of Connecticut. Accordingly, the Court should disallow all of the time requested for the paralegal. In the alternative, if the Court awards any time for the work done by the paralegal, the rate should be no more than $50 per hour. See Detje v. James River Paper Corp., 167 F. Supp.2d 248, 251 (D.Conn. 2001)(Burns, J.)(reducing the rate requested for attorneys in the absence of mandatory affidavit).

## II.   THE NUMBER OF HOURS REQUESTED ARE EXCESSIVE

### A.   The Billing Records Contain Time That Does Not Relate To This Litigation Or Which Is Otherwise Inappropriate

The 482.3 hours of attorney time claimed in the thirteen pages of billing records includes time that does not relate to this litigation. Specifically, the first four entries on page one of the

9

billing records, the entries for June 21 and 23 and July 11 and 19, 2002 (totaling 4 hours), do not or should not relate to this litigation. The billing entries on those dates claim that the plaintiff's attorney "[r]eturned [a] telephone call to [her] client, left [a] message; [and engaged in] file review" on June 21, 2002. (Ex. 1 to Pl.'s Motion, Billing Records, at 1) On June 23, the records claim that the plaintiff's attorney had an "[o]ffice meeting with [her] client." (Id.) On July 11, the records state that the plaintiff's attorney engaged in "[f]acts investigation and document review." (Id.) On July 19, the plaintiff's attorney's billing records indicate that she "[c]ontinued facts investigation and document review." (Id.)

As the Court will recall, the arrest at the church occurred on July 26, 2002 and the meeting with Chief Wearing occurred on August 13, 2002. (Compl. ¶¶ 5, 25) Thus, there is no justification for the plaintiff to be requesting fees that were incurred prior to August 13, 2002. If the plaintiff continues to claim this time as part of his motion, he will have to explain to the Court why he was meeting with his attorney, why she was investigating facts and what documents she was reviewing more than one month before the July 26 arrest and the August 13 meeting. As there can be no appropriate explanation, the 4 hours at issue should be stricken from the plaintiff's fee request. See Copeland, 641 F.2d at 902-03.

In addition to the first four entries, there are other inappropriate entries. In particular, on October 10, 2003, there is an entry for .5 hours in which counsel writes the plaintiff regarding litigation expenses. It is respectfully submitted that it is inappropriate to bill a client regarding billing matters. As such, that time should be subtracted from the fee claim.

On December 24, 2003, there is an entry for .3 hours regarding the receipt and review of a marshal's bill and drafting a letter to the client with an enclosure of the bill. Again, it is submitted that it is inappropriate to bill a client regarding a billing matter.

10

Again on November 14, 2005, in the midst of a block billing entry, there is a reference to a "receipt and review memo from client and trial expenses- review same." In addition to being overwhelmingly vague, as this entry appears to reflect a matter related to expenses, it is inappropriate to bill a client for the matter.

On January 7, 2006, the billing entry for 4.7 hours of time includes a reference to the plaintiff's attorney reviewing the issue of the defendant's motion to correct/supplement the record and on the defendant's separate motion for remittitur, in the alternative. With a minor reference to working on motions for enlargement of time, the 4.5 hours entry for January 10, 2006 is devoted to drafting an opposition to the defendant's motion to correct/supplement the record, drafting a motion to strike the motion for remittitur in the alternative, and drafting an objection to the defendant's motion to file supplemental briefs. All of this time should be disallowed as the plaintiff was not the prevailing party on these motions. Specifically, in a Ruling entered on April 28, 2006, the Court held that the filing of a separate motion for remittitur was permissible. (Elec. Docket Entry No. 175, Ruling, at 4-5) On May 2, 2006, the Court entered an order granting the defendant's motion to correct/supplement the record. (Elec. Docket Entry No. 183)

On January 24, 2006, amongst the block billing for that day totaling 7.3 hours, there are references to "legal research on issue of defendant's separate motion for remittitur for drafting of a reply memorandum; notes to file re: points on reply to defendant's 1/23/06 pleadings." These entries are inappropriate as the plaintiff never filed a reply memorandum in support of his motion to strike. Thus, the research for it should be disallowed. Similarly, on January 26, 2006, there is an entry for one hour for "legal research and start drafting reply memorandum on plaintiff's motion to strike defendant's motion for remittitur." As noted above, no such reply memorandum

11

was ever filed. Moreover, as noted above, in a Ruling entered on April 28, 2006, the Court held that the filing of a separate motion for remittitur was permissible. (Elec. Docket Entry No. 175, Ruling, at 4-5) Thus, the plaintiff was not the prevailing party on the motion. Accordingly, the time requested should be eliminated.

Also, in the second entry for January 26, 2006, an 8 hour block entry, there is a reference to "attention to litigation expenses." As noted above, it is inappropriate to bill a client in connection with a billing issue. Consequently, all of the time identified above should be disallowed.

### B. The Billing Records Submitted Contain Inappropriate Block Or Bundled Billing

To decide on a fair and reasonable award of attorney's fees, the court employs a two step approach. First, the court determines the amount of hours reasonably spent in litigation. Hensley, 461 U.S. at 433. Second, the court multiplies that amount by a reasonable hourly rate which is presumed to be the market rate for the services provided. The plaintiff bears the burden of proving the rates requested are indeed the reasonable market value rates. The figure achieved by multiplying the hourly rate by the number of hours is generally known as the lodestar.

As noted above, the first step in the lodestar determination is to ascertain the number of hours originally spent on the litigation. Soler v. G & U, Inc., 658 F. Supp. 1093, 1096 (S.D.N.Y. 1987). This amount will not necessarily equal the number of hours actually spent. Id. (citing Copeland v. Marshall, 641 F. 2d 880, 891 (D.C. Cir. 1980)(en banc). "The court must scrutinize the hours claimed to distinguish 'raw [unbillable]' time from 'billable' time." Soler, 658 F. Supp. at 1096 (citation omitted). This distinction must be made because time not properly billable to a client cannot be billed to an adversary. Id. (citing Copeland, 641 F.2d at 891). The court must be alert to possible duplication of services or unfair billing. Soler, 658 F. Supp. at

1096. Moreover, in ascertaining the reasonableness of the fee application, the court must rely on its own knowledge, experience and expertise to approximate the time required to complete the activities. Id.

Block billing or bundled billing is an improper billing practice in the context of a fee application. It occurs when a number of different activities are grouped together with one single claim for time. This practice makes it impossible to determine how much time was allocated to each activity, leaving the court no way to separate the proper portions of the claim from the improper portions. Drake v. Perrin, 593 F. Supp. 1176, 1178 (E.D. Pa. 1984)(disallowing blocked billing entries from lodestar calculation). See Metro Data Systems, Inc. v. Durango Systems, Inc., 597 F. Supp. 244, 245 (D. Ariz. 1984)(combined time for different activities does not give court any guidance as to how much time was devoted to each activity).

Courts have recognized that the "commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities." Soler v. G & U, Inc., 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992). See id. at 1062 (excluding block billing from award); Drake, 593 F. Supp. at 1178 (same). See also Weston Bd. of Educ., 34 F. Supp. 2d at 781 (records submitted must be sufficient to permit the court to assess the reasonableness of the time expended).

The time records submitted in support of the plaintiff's fee motion are fatally deficient. Specifically, excluding the first four entries, which do not relate to this litigation, the thirteen pages of billing records contain 151 entries. Of the 151 entries, 116 entries, or 77%, contain block or bundled billing. More specifically, 33 of the entries (totaling 82.05 hours) block two tasks together in one entry. 29 of the entries (totaling 60.8 hours) block 3 tasks together in one entry. 19 of the entries (totaling 53.0 hours) block four tasks together in one entry. 13 of the

entries (totaling 54.0 hours) block 5 tasks together in one entry. 6 of the entries (totaling 39.5 hours) block 6 tasks together in one entry. 10 of the entries (totaling 48.7 hours) block 7 tasks being performed together in one entry. 2 of the entries (totaling 24.55 hours) block 8 tasks together in one entry. 1 of the entries (totaling 6.0 hours) blocks 9 tasks together in one entry. 2 of the entries (totaling 22.3 hours) block 11 tasks together in one entry. 2 of the entries (totaling 13.0 hours) block 12 tasks together in one entry and 1 of the entries (totaling 8.0 hours) blocks 14 tasks together in one entry.

The specific block or bundled entries at issue are identified in **Exhibit 3** submitted in support of this memorandum and contained in the accompanying appendix. The 116 entries constitute 411.9 hours of the 482.3 hours of attorney time claimed by the plaintiff. All of this time should be eliminated from the plaintiff's fee application. If not, at a minimum, a substantial percentage of this time should be eliminated.

A review of the billing records also reveals that on twelve days, the plaintiff's counsel had multiple entries of work done on the day; in particular, January 14, April 30, October 2 and November 21, 2003, November 14, November 17, November 26 and December 14, 2005, and January 3, January 19, January 25, and January 26, 2006. On ten of these days, the plaintiff's counsel had two entries for the day. On two of these days (November 17, 2005 and January 25, 2006), the plaintiff's counsel had three entries for the day. Thus, although the text of entries was also a block of tasks, on certain occasions, the plaintiff's counsel did have multiple entries for a day and cannot claim an unfamiliarity with the practice.

As the plaintiff seeks to have his attorney awarded the highest lodestar rate for a civil rights litigator in the District of Connecticut, as recognition for her experience in the area, the plaintiff's counsel should certainly be aware of the need to provide this Court with the necessary

14

billing records in support of a fee application and the prohibition against block billing in a motion for fees. In other words, the plaintiff cannot have it both ways. If the plaintiff's counsel is to be recognized as an experienced civil rights litigator, counsel must be held to the case law governing fee motions. Thus, there is no excuse for the blocked billing and Chief Wearing should not be required to pay a fee award based on inappropriate billing records.

Finally, the plaintiff cannot correct any of the deficiencies (identified above and below) in his motion in his reply brief. If he were allowed to do so, Chief Wearing would not have had an opportunity to respond to the plaintiff's motion for fees. Consequently, the Court should disallow all of time in the blocked entries. In the alternative, if the Court does not disallow all of the block entry time, it should apply a substantial percentage deduction to all the time requested in order to address the block entries.

### C. The Billing Records Submitted Contain Overly Vague Terms

Applications for attorney's fees "must be accompanied by contemporaneous time records that specify for each attorney, the date, hours expended, and nature of the work done." Weston Bd. of Educ., 34 F.Supp.2d at 781. Where adequate records have not been kept, the court should not award the full amount requested. Id. (citation omitted) "Entries stating such vague references as 'review of file,' 'review of correspondence,' 'research,' 'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter." Id. "Courts have applied an across-the-board reduction where entries fail to indicate the issue researched or the subject of a conference call, telephone call, or meeting." Id. See Smart SMR of New York, Inc. v. Town of Stratford, 9 F. Supp. 2d 143, 152 (D. Conn. 1998) (applying a 30% reduction to the fee award because the descriptions in counsel's time records are vague and insufficient).

Counsel may recover fees only for the entries that "identify the general subject matter of [their] time expenditures." Hensley, 461 U.S. at 437 n.12. "To survive a dispute about the sufficiency of time entries, lawyers should include a reference line in their description of the work they perform." Smart SMR, 9 F. Supp. 2d at 153. Truncated descriptions, such as "document review," "research," "telephone with [client]" and "letter to [client]" are insufficient. See id.

In the case at bar, in addition to having blocked billing, the billing records contain numerous vague references which are inappropriate and should thus, be eliminated from the calculation. These vague references occur in 44 of the entries, as follows:

08/20/2002 - "File & document review"

08/21/2002 - "Extensive office meeting with client; document review; ...; telephone conference with client."

04/03/2003 - "Continued file review"

04/04/2003 - "File and document review for discovery"

07/08/2003 - "Extensive document review"

07/09/2003 - "File review and preparation for plaintiff's deposition"

09/02/2003 - "File review re: [summary judgment motion]; consult re: same."

09/16/2003 - "Legal research and conference re: defense's motion for summary judgment."

09/18/2003 - "File review; document review"

10/02/2003 - "Document review"

10/02/2003 - "File and document review"

10/17/2003 - "Document review"

10/31/2003 - "Work on opposition to motion for summary judgment; telephone conference with client; telephone conference interview of witness."

16