11/01/2003 - "Legal research for opposition"

11/02/2003 - "Continued legal research and writing in opposition to defendant's motion for summary judgment"; "extensive document review."

11/03/2003 - "Continued research and document review for opposition to defendant's motion for summary judgment."

11/04/2003 - "Continued research and writing on [opposition to summary judgment]"

11/10/2003 - "File review"; "document review"

11/17/2003 - "Legal research"; "document review and preparation of opposition to motion for summary judgment"

11/21/2003 - "Continued legal research and writing; opposition to defense's motion for summary judgment."

04/20/2005 - "File review"

05/19/2005 - "Office conference with client"

06/01/2005 - "Draft letter to client"; "telephone call to chambers and conference re: same"

11/10/2005 - "File review"

11/17/2005 - "Trial preparation"; "document review"; "extensive conference with client"

11/17/2005 - "Document review"; "trial preparation and conference with client"

11/18/2005 - "Conference with client"

11/19/2005 - "File review and preparation for trial"

11/26/2005 - "Trial preparation"

11/26/2005 - "Telephone conference with witness"

11/27/2005 - "Trial preparation"; "conference with client"

11/28/2005 - "Trial preparation and numerous conferences with defense counsel"

11/29/2005 - "All day trial preparation"; "telephone conference with client"; "set up meeting"

11/30/2005 - "All day trial preparation"

12/01/2005 - "Conference with client"

12/02/2005 - "Conference with client"

12/03/2005 - "Conference with client"

12/04/2005 - "Trial preparation; conference with client; exhibit review"

12/05/2005 - "Conferences with client"

12/06/2005 - "Telephone conference with client"; "telephone interview of witness"

12/08/2005 - "Conference with client"

12/12/2005 - "Extensive after conference with client"

12/13/2005 - "Conference with client, 2 times"; "conference with union president"

12/14/2005 - "Telephone conference with client"

As the plaintiff seeks to have his attorney awarded the highest lodestar rate for a civil rights litigator in the District of Connecticut, as recognition for her experience in the area, the plaintiff's counsel should certainly be aware of the need to provide this Court with the necessary billing records in support of a fee application and the prohibition against vague billing entries in a motion under § 1988. In other words, the plaintiff cannot have it both ways. If the plaintiff's counsel is to be recognized as an experienced civil rights litigator, counsel must be held to the case law governing fee applications under § 1988. Thus, there is no excuse for the vague billing entries and Chief Wearing should not be required to pay a fee award based on inappropriate billing records. See Metro Data Systems, 597 F. Supp. at 247 (counsel has a duty to the court and the client "to make a good faith effort to exclude hours that were excessive, redundant, or otherwise unnecessary."). See also Hensley, 461 U.S. at 434 (good faith effort). Accordingly, the Court should cut the application by a significant percentage to account for them.

**D.    The Billing Records Contain Tasks That Are Clerical Or Paralegal Tasks**

Hours requested in a § 1988 fee application may be compensated at reduced rates for "purely clerical or secretarial tasks" and for paralegal work such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989). The Supreme Court in Jenkins, recognized the need to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Id. at 288 n.10. In particular, the Court recognized that "'[s]uch non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.'" Id. (quoting Johnson v. Georgia Highway Express. Inc., 488 F.2d 714, 717 (5th Cir. 1974)).

In the instant case, a review of the plaintiff's attorney's billing records reveals numerous tasks that should not be billed at an attorney's rate, as they amount to secretarial or paralegal tasks. Those tasks include the following:

04/04/2003 - "Telephone call to marshal's office; arrange for service, check status of service"

04/14/2003 - "Docket same"

04/24/2003 - "Conference with staff - oversee service by fax and mail"

08/20/2003 - "Copy and send to client; [fax] investigation re: same"

10/03/2003 - "Arrange for marshal service"

10/06/2003 - "Telephone call to court reporter and notice to same; attention to status of service."

10/07/2003 - "Telephone conference with marshal's office"

10/16/2003 - "Conference with...court reporter"; "confirm depositions of witnesses"

11/04/2003 - "Preparation of index and exhibit volumes in opposition to summary judgment"

11/10/2003 - "Telephone call to court reporter re: transcript arrival"

11/18/2003 - "Final preparation and ordering of exhibits"; "conference with staff re: same"

11/21/2003 - "Gather exhibits for motion"

04/11/2005 - "Conference with staff re: dates for [settlement conference]"

06/01/2005 - "Telephone calls, 2 times, to Marshall re: status of subpoena service"

09/01/2005 - "Conference with staff re: [appearance of new counsel]; note on system and files"

11/10/2005 - "Telephone conference with Marshall, 3 times, re: status of subpoena service; conference with staff re: same"

11/14/2005 - "Attention to USDC filing and chambers copies; fax copy to chambers, check court filing of 11/0/05"

11/22/2005 - "Receipt and review Marshall returns on subpoenas; note to staff re: same; conference with staff re: joint trial memorandum"

11/29/2005 - "Check status of witnesses; attention to marking and order of exhibits;" "set up meeting"

11/30/2005 - "Oversee organizing and preparation of juror and bench evidence books"

12/06/2005 - "Arrange for appearance; conference with staff;" "arrange for witness's travel"

01/09/2006 - "Conference with staff re: preparation of litigation expense report and supporting documents for fee application;" "arrange for filing of motions and pleadings"

01/12/2006 - "Conference with staff re: [witness fee]"

01/19/2006 - "Conference with staff re: research on defendants' motion for remittitur"

01/23/2006 - "Check status of motions"

01/25/2006 - "Fax documents to Atty. Garrison re: [fee application]"

01/26/2006 - "Check status of plaintiffs' motions on docket;" "conference with staff re: [scheduling of settlement conference]"; "attention to scheduling issue"

01/30/2006 - "Attention to USDC filing of [motion for fees]"

(Ex. 1 to Pl's Motion, attorney billing records)

As the plaintiff seeks to have his attorney awarded the highest lodestar rate for a civil rights litigator in the District of Connecticut, as recognition for her experience in the area, the plaintiff's counsel should certainly be aware of the need to provide this Court with the necessary billing records in support of a fee application and the Supreme Court's ruling in <u>Jenkins</u>. In other words, the plaintiff cannot have it both ways. If the plaintiff's counsel is to be recognized as an experienced civil rights litigator, counsel must be held to the case law governing fee applications under § 1988. Thus, there is no excuse for the failure to take account for the secretarial/paralegal tasks that are included in the billing entries and Chief Wearing should not be required to pay a fee award based on inappropriate billing records. As these tasks are secretarial/paralegal in nature, they should not be calculated at an attorney's billing rate. <u>See</u> <u>Metro Data Systems</u>, 597 F. Supp. at 247 (counsel has a duty to the court and the client "to make a good faith effort to exclude hours that were excessive, redundant, or otherwise unnecessary."). <u>See also</u> <u>Hensley</u>, 461 U.S. at 434 (good faith effort). Accordingly, a significant and additional percentage cut should be applied in any award calculation.

E.    **The Time Expended Was Excessive On Several Specific Tasks**

The billing records also reflect excessive time being requested for the performance of several specific tasks throughout the litigation. In particular, it is submitted that excessive time was billed for the drafting of the complaint, the preparation for the depositions of the mayor and Chief Wearing and the drafting of the opposition to the motion for summary judgment.

21

The complaint dated August 29, 2002 is eleven pages in length, of which nine pages are substantive text. The complaint was not a complex or overly detailed document. Nevertheless, the plaintiff seeks 10.3 hours of attorney's time for the drafting of the complaint. In particular, 2.5 hours billed on August 20, 2002, 4.5 hours of block billing on August 21, 2002, 1.3 hours on August 23, 2002 and 2 hours on August 28, 2002. The complaint also contained state law claims (Compl. ¶¶ 31, 33). The plaintiff stipulated to a dismissal on those claims. (Elec. Docket Entry No. 10) Thus, the time requested for the drafting of the complaint is excessive and should be reduced by a significant amount. Moreover, as the plaintiff seeks to have his attorney awarded the lodestar rate of an experienced civil rights litigator, that experience must factor into the examination of the time expended on completing certain tasks. The time requested for the drafting of this complaint is excessive for an experienced civil rights attorney.

The plaintiff seeks a total of 13 hours in connection with the preparation of the depositions of the mayor and Chief Wearing. In particular, 7 hours of preparation time were billed on April 30, 2003 and 6 hours in preparation time were billed on May 1, 2003. (Pl.'s Ex. 2, Billing Records, at 2) The billing entry for May 2, 2003 reflects that the depositions of the Mayor and Chief Wearing took a combined total of 6.4 hours. (Id.) Thus, it is submitted that 13 hours of preparation time is excessive and should be cut by a significant amount.

The plaintiff seeks 73.7 hours for the document review, research and drafting of the memorandum of law in opposition to the motion for summary judgment and related pleadings filed in opposition to the motion for summary judgment. It is submitted that this time is excessive. In particular, the time for work on the opposition for the motion for summary judgment is contained in entries on September 2, 16, October 31, November 1-5 and November 17-21, 2003. The research entries for this work never identify exactly what issues are being

researched. Thus, in addition to being excessive, they are vague. It is submitted that the 73.7 hours claimed for the preparation of the opposition is excessive for an experienced civil rights attorney and should be cut by a significant percentage.

F.     **The Time Claimed For The Fee Motion Is Inappropriate And Excessive**

"Compensation for time spent on the fee request may be denied all together when the 'fee claims are exorbitant or the time devoted to presenting them is unnecessarily high,' or when the plaintiff's counsel completely failed to keep to adequate or contemporaneous time records." Martin A. Schwartz & John E. Kirklin, SECTION 1983 LITIGATION: STATUTORY ATTORNEY'S FEES, § 4.10, at 215 (3d ed. 1997)(footnotes omitted)(quoting Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979)).

It is submitted that the fees requested for the preparation of the plaintiff's motion for attorney's fees and costs are inappropriate and excessive. At the outset, **Exhibit 4** to the accompanying appendix is collectively, copies of the motion for award of attorney's fees and costs, the affidavit of Attorney Karen Torre and the memorandum of law in support of the motion for attorney's fees and costs submitted in Arlio v. Lively, No. 3:03-CV-2013 (JBA). A comparison of the motion, memorandum of law and Attorney Torre's affidavit in this case with the motion, affidavit, and the memorandum of law submitted in Arlio reveals that the two sets of documents are almost identical. Nevertheless, the plaintiff is making a claim for an award for no less than 23.1 hours of attorney time and 1 hour of paralegal time expended in preparing the fee motion in this case.

As the preparation of the fee motion and supporting pleadings in the instant case appears to almost identical to the fee motion in Arlio, the requested time is inappropriate and excessive. Since his attorney expended time in the Arlio case to prepare a memorandum of law in support

Case 3:02-cv-01514-EBB    Document 185-2    Filed 05/03/2006    Page 8 of 15


of a fee application, the opening motion itself, and an attorney's affidavit, the plaintiff in not entitled to have his counsel receive another award for that work in this case. More specifically, the Court should not order an award against Chief Wearing for work on a fee motion that was largely prepared in another case, in which an award was already ordered by Judge Arterton, Arlio, 392 F.Supp.2d at 325. See Soler, 658 F. Supp. at 1096 (cannot bill adversary for that which a client could not be charged).

In particular, the hours requested for the preparation of the fee motion break down as follows:

1.  January 3, 2006 - 1 hour related to a telephone conference with Attorney Garrison regarding a supporting affidavit, exchanging emails with him and researching the deadline to file a fee application.

2.  January 4, 2006 - 1 hour telephone conference with Attorney Kathleen Eldergill regarding a supporting affidavit. Attorney Eldergill did not, however, provide a supporting affidavit in this case. She did provide an affidavit in the Arlio case.[1]

3.  January 6, 2006 - 3 hours related to drafting the fee motion.

4.  January 19, 2006 - 1.7 hours related to drafting a fee application affidavit of counsel in support thereof.

5.  January 22, 2006 - 3.5 hours regarding attention to preparation of the application and extensive document review to check accuracy of accounting.

6.  January 27, 2006 - 1 hour of research related to fee application conducted by paralegal.

7.  January 30, 2006 - 4.5 hours related to legal research in the fee issue, final preparation of pleadings related to motion and attention to filing of motion with the clerk's office.

In addition to this 14.7 hours of attorney time and 1 hour of paralegal time, the billing records include numerous other references to work being conducted on the fee application

---

[1] This time includes a telephone conference between the plaintiff's attorney and the plaintiff "re: status."

amongst the block billing entries. In particular, there are references to work being done on the fee application in the entries for January 9, January 11, January 12 and January 25 (two entries) and January 26, 2006. These entries highlight the difficulties in properly analyzing a fee application that are produced by block billing.

In the January 9, 2006 entry, 11 tasks are identified totaling 7.5 hours. Of the 11 tasks, 3 relate to the fee motion. Thus, at the very minimum, 2 hours of work were expended on the fee application that day.

In the January 11, 2006 entry 2 tasks are identified for a total of .9 hours. 1 of the 2 tasks relates to the fee motion. Thus, at a minimum, rounding up, an additional .5 hours is being charged for the fee motion.

In the January 12, 2006 entry, there are four tasks identified for 1.5 hours of work. Of the four tasks, one relates to the fee motion. Thus, at a minimum, rounding up, another .4 hours is being claimed for the fee motion.

In the first entry on January 25, 2006, there are 9 tasks identified for 6 hours of work. 3 of the 9 tasks relate to the fee motion. Thus, at a minimum, an additional 2 hours of work is being charged for the fee motion.

In the second January 25, 2006 entry, there are 5 tasks identified totaling 2.5 hours. Of the 5 tasks 2 relate to the fee motion. Thus, at least 1 hour is being charged for the fee motion.[2]

In the January 26, 2006, entry there are 13 tasks identified for a total of 8 hours of work. 4 of the 13 tasks relate to the fee motion. Thus, at least 2.5 hours of time is being charged for the fee motion.

---

[2]/     A review of the language of this entry strongly suggests that the greater amount of time was spent on the fee application.

Thus, at the very least, these 6 entries contain an additional 8.4 hours of attorney time claimed for the fee motion. That makes the total claim for the fee motion at least 23.1 hours of attorney time and 1 hour of paralegal time.

A review of the entries related to the fee motion in this case contains several references to research being done related to the fee application. At page four of the memorandum of law submitted in support of the fee motion in this case, there are two citations which appear that do not appear in the memorandum of law in the Arlio case. The text on that page largely relates to the plaintiff's efforts to have his counsel's lodestar rate increased from the rate awarded in Arlio case. As noted above, a comparison of the pleadings from the Arlio case and the instant case demonstrates that the principal pleadings for fee motion in the instant case are almost identical to the principal pleadings filed in the Arlio fee motion.

The unique work in the instant fee motion would appear to be the printing out of the time sheets and the preparation of Attorney Garrison's three page affidavit. The references throughout the billing entries related to the work on the fee application including extensive checks of accuracy are belied by the fact that the first four entries in the billing records submitted in this case should not relate to this litigation, as they are from points in time prior to the arrest of the ministers on July 26, 2002, and by the fact that 116 of the 151 time entries (77%) are block entries with between 2 and 14 tasks being combined in one time entry.

Given the comparison of the pleadings in the Arlio case, the inaccuracy in first 4 entries of the billing records, and the extensive block billing, the Court should disallow all the time (23.1 hours of attorney time and 1 hour of paralegal time) requested for the preparation of the fee motion and the documents submitted in connection with it. See Metro Data Systems, 597 F. Supp. at 247 (counsel has a duty to the court and the client "to make a good faith effort to

exclude hours that were excessive, redundant, or otherwise unnecessary.").[3]  In the alternative, at a minimum, the time requested is excessive given the experience of the plaintiff's attorney and should be significantly reduced.

## III.    SEVERAL ASPECTS OF THE REQUESTS FOR COSTS SHOULD BE REJECTED

Local Rules 54(c)(2)-(3) indicate that costs incurred solely for the convenience of the attorney are not recoverable.  See Arlio, 392 F.Supp.2d at 325 (party may recover costs "necessarily obtained for the preparation of the case and not for the convenience of counsel.").  Furthermore, unsupported and vague expenses are not recoverable.

In the instant case, the plaintiff's request for an award of costs is also excessive.  The request for costs seeks the reimbursement of expenses which, as demonstrated by the receipts attached in support of the plaintiff's motion, constitute expenses incurred solely for the convenience of the attorney, or which are so vague that the expense incurred is not ascertainable.  As such, these expenses should be disallowed by the Court.

First, the request for $163.60 for the services of a marshal on October 7, 2003 (documented by an invoice dated May 26, 2004) is inappropriate because there is no identification as to who was served and what the purpose of the service was.  (See Plaintiff's "Itemization of Litigation Expenses" attached as Exhibit B to the Pl's Motion for Fees)  Nor does the receipt that was provided.    Accordingly, this expense should be disallowed.

Second, the expenses of having papers sent via courier to the Court also constitute expenses for the "convenience of counsel" rather than recoverable litigation costs.  In particular,

---

[3]/      If the Court eliminates the block billing entries for January 9, 11, 12, and the two entries on January 25 and January 26, the time for those dates will be accounted for.  If the Court does not eliminate the block billing for those dates, or only partially eliminates the block billing time, the Court should further reduce the time from those dates to factor in the work on the fee application.

27

the request for an award of the expenses associated with courier services on November 10, 2003 ($52.00) and November 24, 2003 ($77.00) are inappropriate. (Pl's Ex. B, setting forth the following expenses: "11/10/03 – GoFor Services – Delivery to Fed Court in Bridgeport - - $52.00;" "11/24/03 – GoFor Services – Delivery to Fed Court in Bridgeport - - $77.00."). Those expenses should be disallowed.

Third, there is a duplicate fee charged for the witness fee of Lieutenant Leo Bombalicki. The plaintiff has not explained why two witness fees were appropriate for Lieutenant Leo Balicki. (Pl.'s Ex. B, compare "11/17/05 – Lt. Leo Bombalicki – Witness Fee - - $50.00;" with "12/08/05 – Lt. Leo Bombalicki - - 130.00.") Only one such fee is properly listed as an expense. The defendant submits that the $50.00 fee is the properly billed fee, rather than the $130.00 fee, inasmuch as the lower figure is in line with the only other witness fee listed as an expense, the $41.00 witness fee charged for Chief Ortiz.

Finally, the extra expense of alternative format deposition transcript copies should be eliminated, as such expenses are solely for the convenience of counsel. (See Pl.'s Ex. B., Invoice corresponding to "5/2/03 – Morgillo & Flynn – Deposition of John DeStefano and Melvin Wearing," listing $7.10 and $9.30 as extra expenses for the ordering of condensed deposition transcripts; see also Invoice corresponding to "10/17/03 – Morgillo & Flynn – Deposition of David Newman & Sherri Murowski," listing $5.20 and $2.40 as condensed transcript costs) Within the request for reimbursement for the deposition transcripts for the mayor and Chief Wearing, the invoice indicates that the plaintiff was charged $7.10 and $9.30 for condensed transcript copies. Similarly, in the request for reimbursement for the costs of the deposition transcripts of David Newman and Sherri Murowski, the invoices include costs of condensed transcripts, totaling $7.60. These amount should be eliminated from the request. See Drown v.

T.F.C. Conway, 2005 WL 3019147, at *1 (D. Conn. Oct. 26, 2005).  See also Local Rule 54(c)(7)(iii).

In sum, the total amount of expenses that should be disallowed is $446.60, as set forth above.  If there is an award of costs, the plaintiff's request for reimbursement of expenses should be adjusted accordingly from $2776.64 to $2330.04.

29

## CONCLUSION

If the Court grants Chief Wearing's pending post-trial motions, it should deny the plaintiff's motion for attorney's fees and costs. If the Court denies Chief Wearing's post-trial motions, it should deny the plaintiff's motion for attorneys' fees and costs in the manner set forth above in detail.

Respectfully submitted,

**DEFENDANT**
**MELVIN WEARING**

By: _____

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:    (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:     (860) 522-6103
Fax:    (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

His Attorneys

## CERTIFICATION

This is to certify that on this 3rd day of May, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT  06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT  06106


_____
Ralph W. Johnson, III

818167_1 DOC

31