IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
|     Defendant | : | MAY 11, 2006 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO QUASH AND, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:    (203) 227-2855
Fax:    (203) 227-6992
E-Mail:   rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:    (860) 522-6103
Fax:    (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

                                                            **PAGE**

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ......................................................................................................... 1

ARGUMENT ............................................................................................................... 3

    I.    THE SUBPOENA SHOULD BE QUASHED BECAUSE IT FAILS TO ALLOW REASONABLE TIME FOR COMPLIANCE ............................................................. 3

    II.   THE SUBPOENA SHOULD BE QUASHED BECAUSE IT IS OVERLY BROAD, AND UNDULY BURDENSOME ........................... 3

    III.  THE SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS IRRELEVANT INFORMATION AND DOCUMENTS ........................................................................ 6

    IV.  THE SUBPOENA SHOULD BE QUASHED BECAUSE IT IMPROPERLY SEEKS INFORMATION AND DOCUMENTS THAT ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE ................................................... 10

    V.   IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A PROTECTIVE ORDER LIMITING THE INFORMATION THAT MUST BE DISCLOSED ........................ 11

CONCLUSION .......................................................................................................... 13

## PREMILINARY STATEMENT

Pursuant to Rules 26(c) and 45 of the Federal Rules of Civil Procedure and Local Rule 7, the defendant, Melvin Wearing, submits this memorandum of law in support of his motion to quash the subpoena served on his attorneys, the law firm of Halloran & Sage LLP, on May 8, 2006 and to the extent the subpoena is not quashed in its entirety, for the entry of a protective order. In sum, the subpoena should be quashed because it is improper and because the information and documents sought are (a) irrelevant to the issues before the Court and (b) protected by the attorney-client privilege and work product doctrine. A copy of Attorney Robert A. Rhodes's affidavit in support of the instant motion is attached hereto as Exhibit A.

## BACKGROUND

Following a jury verdict, a judgment was entered against Chief Wearing in the amount of $150,903.84 in compensatory damages and $5,000,000.00 in punitive damages. (Elec. Docket Entry No. 71) Chief Wearing filed a motion for judgment as a matter of law, a motion for a new trial and a motion for remittitur, in the alternative. On or about January 30, 2006, the plaintiff filed a motion for attorney's fees and costs. By the motion, the plaintiff seeks an award of an additional $173,219.14 for his attorney's fees and costs as of January 30. Chief Wearing filed a memorandum of law in opposition to the plaintiff's motion on May 3, 2006.

At approximately 4:00 p.m. on Friday, May 5, the plaintiff's attorney faxed a subpoena with an attached document production request to the Westport office of Halloran & Sage, one of the law firms representing Chief Wearing in this case. The subpoena was served on the firm's Hartford office on Monday, March 8. It notices the deposition of Halloran & Sage for Friday, May 12 and commands that the firm designate "one or more officers, directors, or managing agents, or other persons who consent to testify in (sic) its behalf for the purpose of disclosing and

authenticating the documents which the deponent is commanded to produce at the said time and place and which are more fully described in Schedule A attached hereto." (Exhibit B, Subpoena directed to Halloran & Sage, LLP, attached hereto)

In addition to questioning Chief Wearing's attorneys, Schedule A to the subpoena, demands that the following categories of documents be produced within 4 days of service:

1) Any and all billing records, accountings, statements and other like records, including those generated and stored electronically, which show the amount of time expended by any partner, associate, or other attorney in the defense of this action.

2) Any and all billing records, accountings, statements and other like records, including those generated and stored electronically, which show the amount of time expended by any paralegal or other non-lawyer in the defense of this action, where such expenditure of time was a billable event.

3) Any and all records which show the hourly rates billed for time expended and work performed by any and all attorneys and paralegals in connection with the defense of this case.

4) Any and all records which show the standard hourly rates billed to the firm's clients for time expended and work performed by any attorney or paralegal who performed services in the defense of this case.

5) Any and all affidavits or accountings filed by any attorney or other employee in the firm of Halloran & Sage in any Connecticut state or federal court in the past two years wherein a representation was made regarding the hourly rates of attorneys and partners in the firm.

(Ex. B)

Attorney Robert A. Rhodes spoke with the plaintiff's attorney on May 10 and attempted to resolve this discovery dispute without having to engage in motion practice. He was unable to resolve the matter with the plaintiff's attorney and his affidavit is attached hereto as Exhibit A.

2

## ARGUMENT

### I. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT FAILS TO ALLOW REASONABLE TIME FOR COMPLIANCE

The issuance of a subpoena and an accompanying document production request for a deposition to take place 4 days after service is inappropriate under the Federal Rules of Civil Procedure. Rule 45 states that "on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . fails to allow a reasonable time for compliance." Indeed, Rule 45 generally contemplates that a party to whom a subpoena is issued and which commands the production of documents, will have 14 days to serve written objections. See Fed. R. Civ. P. 45(c)(2)(B). The plaintiff's attorney's subpoena commands production 4 days after the service of the subpoena. Four days notice from the date of service does not constitute reasonable time for compliance and this Court should not condone such tactics. See Fed. R. Civ. P. 45(c)(1)(duty of attorney serving a subpoena not to impose undue burdens; court "shall" enforce the duty). Accordingly, the subpoena should be quashed in its entirety under Rule 45(c)(3)(a)(i).

### II. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT IS OVERLY BROAD AND UNDULY BURDENSOME

It is well-established that an attorney's fee application should not result in a "'second major litigation.'" Martin A. Schwartz & John E. Kirklin, SECTION 1983 LITIGATION: STATUTORY ATTORNEY'S FEES, § 5.11, at 282 (3d ed. 1997) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). Thus, "'it is not expected that the fee contests should be resolved after the type of searching discovery that is typical where issues on the merits are presented.'" Id. (quoting Nat'l Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1329 (D.C. Cir. 1982)). Moreover, if the district court concludes that discovery is being

3

"pursued solely to cause delay or for other improper purposes, it may apply appropriate sanctions." Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1329.

Here, subjecting Chief Wearing's attorneys to open-ended questioning by the plaintiff's attorney regarding the billing records that relate to conversations between a client and his attorney and the legal research that has been and is being conducted, would be inappropriate. It is also inconsistent with the prohibition against a "second litigation" in the context of a fee motion. The case law simply does not authorize a deposition of Chief Wearing's attorneys under the guise of a claimed need to "authenticate" the documents demanded by the document production request. (Ex. B)

Moreover, the document requests themselves are inappropriate and should be quashed in their entirety. Schedule A attached to the subpoena lists five, broad categories of documents. Each request is prefaced by the phrase "any and all." It is well-recognized that a demand for the production of "any and all" documents is inappropriate. Such a vague phrase puts an undue burden on the party to whom it is directed. See United States. v. Pena, 910 F. Supp. 535, 541 (D. Kan. 1995) (term "any and all evidence" as a preface to discovery requests is an indicium of a "fishing expedition"). More specifically, as one court has noted:

> Phrases like "any and all" and "each and every" mean no more than "all" and "each", respectively, but their constant use predictably gives the appearance of a broad, far-ranging request, and symbolically imposes upon the respondent potential liability for omitting even a scintilla of information that might be considered relevant. More importantly, if "any and all" of the documents on a given subject are not required, the requester should refrain from asking and, instead, perform the more difficult task of specifically framing the question in a manner designed to elicit the precise information needed.

Griffin v. Hitachi Koki, USA, Ltd., 2006 WL 1098881, *3 (M.D. Ala. April 26, 2006).

In the case at bar, all of the requests are overly broad and unduly burdensome on their face by use of the phrase "any and all" as a predicate to each category of documents sought. The

4

document production requests are also overly vague. The terms used in the requests are undefined and overly broad. To comply with the requests as written would result in the second major litigation or the full-scale discovery that courts do not allow in the context of a fee application. In particular, in the first three document requests, the plaintiff seeks "[a]ny and all billing records, accountings, statements and other liker records, including those generated and stored electronically, ..." which show (a) the amount of time expended by any attorneys, paralegals or other non-lawyers on the instant case and (b) the hourly rates billed for those individuals in connection with this case. (Ex. B) The terms used in all of the requests are undefined.

In the fourth request, the plaintiff seeks "[a]ny and all records which show the standard hourly rates billed for time expended and work performed by any attorney or paralegal who performed services in the defense of this case." Thus, the plaintiff's attorney seeks copies of any and all documents that identify the standard hourly rates (another undefined term) of each attorney or paralegal who has worked on this case in <u>all</u> cases that they have worked on at Halloran & Sage, regardless of the client and for an unlimited period of time. For example, under a literal reading of the request, if an attorney working on this case joined Halloran & Sage in 1986, the plaintiff's attorney is demanding copies of all billing records in all cases that that attorney may have worked on over the 20 year period. Putting aside the fact that the information is irrelevant, proprietary and protected by the attorney-client privilege and the work product doctrine, the process of locating and compiling those documents could take months.

In the fifth request, the plaintiff's attorney wishes to be given copies of all affidavits or "accountings," (a vague and undefined term), "filed by any attorney or other employee in the firm of Halloran & Sage in any Connecticut state or federal court in the past two years wherein a

5

representation was made regarding the hourly rates of attorneys and partners in the firm." Putting aside the fact that the information is irrelevant, the location and compilation of those documents could take months.

Simply stated, the case law does not authorize the plaintiff's attorney unlimited access to Chief Wearing's attorneys' billing invoices. Nor does it authorize imposing any burdens upon Chief Wearing's attorneys to search their files from other cases to provide the plaintiff's attorney with any information regarding those cases. The plaintiff, in applying for attorney's fees, submitted his counsel's bill in this case. The defendant then objected to this application for several reasons, none of which brings into issue the rates or fees charged by defense counsel. In response to this opposition, the plaintiff now seeks defense counsel's bills in this case, plus any and all records concerning the bills, any and all records concerning rates charged by other attorneys employed by Halloran & Sage, LLP without any limitation to as to subject matter or practice area, and with no limitation to time (request no. 4). In short, the plaintiff now seeks the disclosure of records from defense counsel which are well beyond the depth and scope of the bills which the plaintiff has filed in support of his application for fees. Accordingly, the subpoena should be quashed under Rule 45(c)(3)(A)(iv) as it subjects Halloran & Sage to an undue burden and to inappropriate and unnecessary expenses.

### III.   THE SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS IRRELEVANT INFORMATION AND DOCUMENTS

By the subpoena, the plaintiff's attorney seeks discovery from Chief Wearing's attorneys for the ostensible purpose of supporting the motion for attorneys' fees. Chief Wearing's May 3 opposition to the plaintiff's fee motion did not put his attorney's fees at issue. Nonetheless, the plaintiff's attorney has issued a subpoena commanding the production of Halloran & Sage's billing documents within 4 days of service. Those documents pertain not only to the billing rates

in this case, but also the narrative and descriptive billing entries of each attorney, paralegal, or other personnel who worked on this case. The document requests further seek documents related to the rates, billing entries, and other information relating to other cases handled by the Halloran & Sage.

Simply stated, the information sought at the deposition and the documents sought by the requests for production are irrelevant to the adjudication of plaintiff's fee motion. See Fed. R. Civ. P. 26(b)(1). The rates charged and hours billed by an attorney for a defendant are not relevant to the calculation of a reasonable fee for a plaintiff's attorney. Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059-60 (2d. Cir. 1989). See Johnson v. Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983) (affirming district court's quashing of subpoena seeking records relative to fees and hours of defense counsel in proceedings on prevailing plaintiff's fee application). "The amount of hours that is needed by one side to prepare adequately may differ substantially from that for opposing counsel, since the nature of the work may vary dramatically. The case may have far greater precedential value to one side than the other. With respect to the hourly rate, one side may employ far more experienced counsel." Johnson, 706 F.2d at 1208. For these reasons and others, "the fee charged by a [defendant's] attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer." Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1300 (11th Cir. 1988). See Mirabal v. General Motors Acceptance Corp., 576 F.2d 729, 731 (7th Cir. 1978)(fees one side is paid has "little relevance" to other side's fee application).

In the instant case, the plaintiff's request for documents from Halloran & Sage is particularly irrelevant to the plaintiff's fee application inasmuch as the defendant's attorneys'

7

fees have never been put at issue. Generally speaking, only the plaintiff is seeking recovery of attorneys fees, and as such, the fees and billing information of the defendant are irrelevant. Moreover, the issues raised in the defendant's May 3 opposition memorandum did not put his attorneys' billing records at issue. Specifically, the defendant challenged the plaintiff's request for an hourly rate of $350 based on a comparison of the lodestar rate for the plaintiff's attorney set by Judge Arterton in another case on September 28, 2005, and based on Attorney Norman Pattis's affidavit filed in that case. That affidavit is part of the court file and notably was not obtained through discovery of the plaintiff's attorney's records.

The defendant also challenged the plaintiff's inclusion in his request for fees, time spent apparently on another case, inasmuch as billing entries preceded the events upon which the claims in this case were based. Defendant's counsel's fees bear no relevance to whether the plaintiff has improperly or incorrectly sought fees for time spent on another case.

The defendant challenged the plaintiff's attorney's use of block-billing and vague entries because such billing makes it impossible for the defendant and for the Court to assess the propriety of the billing entries as they do not indicate how much time was spent on individual tasks, or what the nature of the tasks were. Again, the defendant's counsel's bills and fees have no relevance to these issues because the format of the defendant's counsel's billing is not before the Court. The plaintiff has the burden of presenting billing records that can be analyzed. The format and content of the defendant's billing records are irrelevant to the deficiencies in the plaintiff's attorney's billings.

The defendant also challenged the excessive time billed by the plaintiff relative to certain, specific events during the course of this litigation and which occurred prior to Halloran & Sage filing an appearance. Those tasks include the billing of more than 73 hours for the preparation of

8

an opposition to the defendant's motion for summary judgment. The defendant's challenge is not based on any assertion of the time spent by the defendant's counsel relative to any similar billing events to those challenged. Rather, the defendant challenges the actual time spent as excessive in light of the plaintiff's counsel's representations concerning her experience as a civil rights litigator. Furthermore, as the Eleventh Circuit has concluded "[t]he amount of hours that is needed by one side to prepare adequately may differ substantially from that for opposing counsel, since the nature of the work may vary dramatically. The case may have far greater precedential value to one side than the other. With respect to the hourly rate, one side may employ far more experienced counsel." Johnson, 706 F.2d at 1208. Consequently, "the fee charged by a [defendant's] attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer." Norman, 836 F.2d at 1300.

With respect to the time spent on the plaintiff's motion for fees itself, the defendant did not put his attorneys' billing records at issue. Rather, the opposition memorandum demonstrates that the plaintiff's fee motion is virtually identical to a motion for fees filed by the plaintiff's attorney in another case and ruled upon by Judge Arterton on September 28, 2005. Notably, the copies of the pleadings from the Arlio case are publicly available and there was no need for discovery demands upon the plaintiff's attorney.

Thus, because the defendant's counsel's fees and billing records are not at issue in this case, and are irrelevant to the issues raised by the plaintiff's fee motion, the subpoena requesting such information should be quashed for creating an undue burden and unnecessary expense under Rule 45(c)(3)(A)(iv).

Furthermore, to the extent the subpoena demands "affidavits or accountings filed by any attorney or other employee in the firm of Halloran & Sage in any Connecticut state or federal

9

court in the past two years wherein a representation was made regarding the hourly rates of attorneys and partners in the firm," it should be quashed because (1) to the extent such information exists, it would be publicly available in court files and would be just as easily obtainable by the plaintiff without resort to discovery; (2) the defendant's counsel's fees and billings from other cases are irrelevant; (3) the request is unduly burdensome as it would require interviewing the approximately 90 attorneys employed at Halloran & Sage and potentially searching the firm's files and archives; and (4) such a broad sweeping and vague request would require months to comply with. Additionally, this search would include practice areas such as construction law, commercial law, real estate, matrimonial law, personal injury litigation and other areas which are completely irrelevant to the present matter. Consequently, any hypothetical benefit from the deposition and document production is outweighed by the burden and expense that would be imposed. In re Priceline.Com Inc. Securities Litigation, 2005 WL 1366450, at *1 (D. Conn. June 7, 2005).

Accordingly, the subpoena should be quashed in its entirety.

## IV.    THE SUBPOENA SHOULD BE QUASHED BECAUSE IT IMPROPERLY SEEKS INFORMATION AND DOCUMENTS THAT ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE

The document production requests set forth in Schedule A to the subpoena each seek information which is protected from disclosure by the attorney-client privilege and/or the work product doctrine. As set forth in the objections to the document requests, which are attached hereto as Exhibit C, each document request seeks information and documents that relate to communications between the defendant and his attorney, and amongst the defendant's attorneys, as well as the defendant's attorneys' mental impressions, conclusions, opinions, and legal theories.

10

The attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of legal adviser to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. Staveley NDT Technologies, Inc. v. Namicon, S.R.L., 2000 WL 852436, at *1 (D.Conn., Apr. 10, 2000). Similarly, "[t]he work product rule operates as a privilege against discovery cloaking all documents prepared by a party, his representative or an attorney in anticipation of litigation. This doctrine is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation free from unnecessary intrusion by his adversaries." In re Priceline.Com Inc., 2005 WL 1366450, at *3. See Fed. R. Civ. P. 26(b)(3); 45(c)(3)(A)(iii).

The plaintiff's subpoena improperly seeks to compel the production of documents and information that is clearly protected by the attorney-client privilege and the work product doctrine. Giving the plaintiff's attorney access to this information and these documents would inappropriately prejudice Chief Wearing. There is no justifiable reason for the Court to do so. Accordingly, the subpoena should be quashed in its entirety. See Fed. R. Civ. P. 26(b)(3); 45(c)(3)(A)(iii).

## V.  IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A PROTECTIVE ORDER LIMITING THE INFORMATION THAT MUST BE DISCLOSED

If the Court does not quash the subpoena in its entirety, it should issue a protective order that significantly limits the information and documents that Halloran & Sage must produce, based on the arguments set forth above. If the Court does not quash the subpoena and document requests in their entirety, it should hold a conference or hearing to analyze the scope of the information that actually needs to be produced. Under no event should there be a deposition. If the plaintiff wishes to claim his motion for attorney's fees and costs for an evidentiary hearing,

11

he should do so. Notably absent from the plaintiff's motion was a request for such a hearing or even a request for oral argument on the motion. See Local Rule 7(a)1 (requiring notation requesting oral argument on cover of motion). In fact, if the Court believes that any information should be provided, the Court should limit the production of that information to an *in camera, ex parte* conference between counsel from Halloran & Sage and the Court. That conference could occur after the Court's rulings on the dispositive post-trial motions.

Moreover, the timing of the plaintiff's subpoena creates unnecessary issues for the Court. If necessary at all, the plaintiff's motion for an award of attorney's fees and costs can be resolved after the Court rules upon the dispositive post-trial motions. Moreover, on the current state of the record, the plaintiff's document requests are overly broad because they seek billing entries by Halloran & Sage after January 30, 2006. As noted above, the plaintiff's motion for fees only seeks fees for services by his attorney through January 30. Thus, there is no basis for the plaintiff's attorney to claim a right of access to billing records after January 30. If the plaintiff files a supplemental request for fees, he would be asking this Court to engage in a piecemeal approach to the motion for fees and costs. That is a waste of the Court's time and resources.

There is simple no authority for giving the plaintiff's attorney access to billing entries protected by the attorney-client privilege and work product doctrine. If the Court believes that the plaintiff's attorney should receive any information from Halloran & Sage's billings, it would be inappropriate for the plaintiff's attorney to receive that information while substantive briefs are being researched and while the parties are in the midst of a contested hearing on the motion for stay. Moreover, if Halloran & Sage is required to engage in any searching of its files or interviewing of its attorneys, the plaintiff should be required to incur the cost of that exercise and

that cost should not be subject to a supplemental fee/cost request. The plaintiff should also have to pay that cost in advance.

Finally, information regarding Halloran & sage's billing rates and its billing records are confidential and proprietary. As such, they are protected from production under Rule 26(c)(7). If any information or documents regarding Halloran & Sage's rates or billings has to be produced to the plaintiff's attorney, that information should be subject to a protective order which prohibits dissemination or use beyond this case and requires the return of all information and documents within 10 days. Moreover, if the Court does require the production of any documents, it should require the plaintiff to pay for the cost of assembling and copying those documents in advance and that cost should not be subject to a supplemental fee/cost request.

## CONCLUSION

For the foregoing reasons, Chief Wearing requests that the Court grant his motion and quash the subpoena and document production requests in their entirety. In the alternative, the defendant requests that Court enter a protective order significantly limiting the information that must be produced. Moreover, if any information is required to be produced, it should be produced directly and exclusively to the Court in *in camera* proceedings held after the Court's issues its rulings on the principal, post-trial motions.

DEFENDANT
**MELVIN WEARING**

By: *[signature]*
Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:   (203) 227-2855
Fax:   (203) 227-6992
E-Mail:   rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:   (860) 522-6103
Fax:   (860) 548-0006
E-Mail:   johnsonr@halloran-sage.com

His Attorneys

## CERTIFICATION

This is to certify that on this 11th day of May, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

The Honorable Ellen B. Burns
United States District Court
 for the District of Connecticut
141 Church Street
New Haven, CT 06510
(Courtesy Copy, Via Hand Delivery)

Robert A. Rhodes

829253_1 DOC

15