IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
|     Defendant | : | JUNE 30, 2006 |

## <u>DEFENDANT'S REPLY/SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR REMITTITUR, IN THE ALTERNATIVE</u>

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:    (203) 227-2855
Fax:   (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:    (860) 522-6103
Fax:   (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 1

I.    IN THE ALTERNATIVE, THE COURT SHOULD
      ORDER A SIGNIFICANT REMITTITUR ON THE
      NON-ECONOMIC AND PUNITIVE DAMAGES
      AWARDS .................................................................................................... 1

II.   THE EMOTIONAL DISTRESS DAMAGES WERE
      AT MOST A "GARDEN-VARIETY" CLAIM AND
      THE AWARD MUST BE SIGNIFICANTLY REDUCED
      AS MANDATED BY THE CASELAW .......................................................... 2

      A.    Tolnay's Analysis Is Without Merit ................................................ 2

      B.    Tolnay's Emotional Distress Award Fails Under
            The Governing Principles Recognized By The
            Second Circuit .................................................................................. 4

      C.    Tolnay's Emotional Distress Damages Award
            Fails Under The Analysis Employed By The
            District Courts In This Circuit ......................................................... 7

      D.    The Evidence At Trial Does Not Support The
            Emotional Distress Damages Award ............................................... 14

III.  IN ADDITION TO THE GUIDEPOSTS ANALYSIS
      UNDER STATE FARM AND GORE, THE COURT
      MUST REMIT THE NONECONOMIC AND PUNITIVE
      DAMAGES AWARDS UNDER THE "SHOCK THE
      CONSCIENCE"ANALYSIS APPLIED BY THE SECOND
      CIRCUIT .................................................................................................... 16

IV.   THE COURT MUST ORDER A SIGNIFICANT
      REMITTITUR OF THE PUNITIVE DAMAGES AWARD
      TO PREVENT THE FINANCIAL RUIN OF CHIEF
      WEARING .................................................................................................. 18

CONCLUSION ...................................................................................................... 21

i

## PRELIMINARY STATEMENT

The defendant, Melvin Wearing, the former Chief of Police for the City of New Haven,

submits this reply/supplemental memorandum of law in further support of his motion for a

remittitur, in the alternative. Chief Wearing has also submitted reply/supplemental memoranda

of law in support of his motion for judgment as a matter of law under Rule 50(b) and his motion

for a new trial under Rule 59. He has also submitted a memorandum of law regarding Garcetti v.

Ceballos, 126 S.Ct. 1951 (2006). Those memoranda address issues relevant to this motion.

Accordingly, they are incorporated by reference.[1] For the reasons set forth below and in the

other memoranda, the Court should grant Chief Wearing's motion and order a substantial

remittitur on the non-economic and punitive damages awards, if it does not enter judgment in

Chief Wearing's favor and/or order a new trial on all the issues.

## ARGUMENT

I.    **IN THE ALTERNATIVE, THE COURT SHOULD ORDER A SIGNIFICANT REMITTITUR ON THE NON-ECONOMIC AND PUNTIVE DAMAGES AWARDS**

As demonstrated in detail in Chief Wearing's initial and reply/supplemental memoranda

of law in support of judgment as a matter of law and for a new trial, the jury's award of non-

economic, compensatory "emotional distress damages," $150,000, and its award of punitive

damages, $5 million, were: (1) not supported by the evidence and (2) constitutionally excessive

under State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003) and BMW of N.

Am., Inc. v. Gore, 517 U.S. 559 (1996). Moreover, under the standard applied by the Second

Circuit in addition to the guideposts, the awards at issue are so high as to "shock" the judicial

---

[1]    To the extent that Chief Wearing does not respond to any of the arguments contained in Tolnay's opposition, he relies on his initial memorandum of law.

1

conscience and constitute a denial of justice. O'Neil v. Krzemski, 839 F.2d 9, 13 (2d Cir. 1988).

They are also "intrinsically" excessive.

Consequently, to the extent the Court does not order a new trial outright, it should substantially reduce the $150,000 award of non-economic compensatory damages and the $5 million award of punitive damages and offer the plaintiff the opportunity to accept that remittitur in lieu of a new trial. At most, the emotional distress damages award should be less than $5,000. Moreover, the ratio between the compensatory damages award and any punitive damages award should be less than 1 to 1.

## II. THE EMOTIONAL DISTRESS DAMAGES WERE AT MOST A "GARDEN-VARIETY" CLAIM AND THE AWARD MUST BE SIGNIFICANTLY REDUCED AS MANDATED BY THE CASELAW

### A. Tolnay's Analysis Is Without Merit

In support of the award of $150,000 in non-economic damages, Tolnay claims that that amount "is tucked well within, and indeed on the very low end of, the range." (Pl.'s Mem. at 14) In further support of his argument Tolnay lists a string of cases where there was allegedly a large award of emotional distress damages. (Id. at 14-15) Finally, Tolnay submits his counsel's characterizations of the alleged emotional damages he allegedly suffered. (Id. at 16-17)

Tolnay's claim is without merit. Notably absent from his argument is a discussion of the emotional distress evidence submitted in the cases he cites or a citation to a single page of his testimony from the trial. An analysis of the governing case law and the actual testimony at the trial confirms that there was no basis for any award of any emotional distress damages in this case. Consequently, Chief Wearing is entitled to a judgment as a matter of law or, at a minimum, a new trial. If a new trial is not ordered, a substantial remittitur should be ordered. At best, Tolnay's claim amounts to what courts in this Circuit have categorized as a "garden-

2

variety" emotional distress claim. Under the governing case law, the acceptable value of such claims ranges between $5,000 and $30,000. If the Court does not agree that the evidence does not support an award of any damages, it should remit the $150,000 award to an amount less than $5,000.

Tolnay's discussion of alleged damage to his law enforcement career, is also misplaced. (Pl.'s Mem. at 16-17) First, it is the classic speculation that cannot support a damages award. Tolnay never testified that he applied for any job, let alone that he was rejected from a position because of the discipline on his record. To the contrary, he testified that being a New Haven police officer was the "only job" he wanted to do. (12/1/05 Tr. at 246-47) Nor did Tolnay seek any injunctive relief in connection with his personnel file. Moreover, Lieutenant Leo Bombalicki testified that he received a promotion from Chief Wearing despite having a written reprimand in his personnel file. (12/6/05 Tr. at 145-46) Second, damage to Tolnay's career would not constitute "non-economic damages." The Court's instructions to the jury on what could be awarded as non-economic damages referenced "mental anguish, humiliation, personal indignity, embarrassment, and reputational harm." (12/8/05 Tr. at 145) Finally, contrary to Tolnay's suggestion, Lieutenant Bombalicki did not testify regarding any emotional distress allegedly suffered by Tolnay. (12/6/05 Tr. at 109-151)

Tolnay's string citation to decisions with large emotional damages awards does not contribute anything to the analysis that this Court must engage in to evaluate the non-economic damages award in this case. (Pl.'s Mem. at 14-15) In fact, a review of the cases Tolnay cites reveals that they support the vacating of the $150,000 award in the case at bar. For example, in Ismail v. Cohen, 899 F.2d 183 (2d Cir. 1990), the court recognized that the review of the reasonableness of a jury's award requires a reference to "similar cases." Id. at 186. The Ismail

court noted that the plaintiff in that case had claimed "chronic and permanent" mental distress damages and had advanced testimony from qualified experts "which showed that, given the nature of the injuries, … treatment would not have helped." Id. Moreover, the plaintiff testified that his failure to seek counseling for his mental anguish was "due to his ethnic and religious heritage rather than to a desire to exacerbate his damages." Id. at 187.

Similarly, in Arlio v. Lively, 392 F. Supp. 2d 317 (D. Conn. 2005), the plaintiff testified that his embarrassment was "ongoing, as his coworkers and other members of the community still tease him about [being accused of sleeping while on duty]." Id. at 322.[2] "[The plaintiff] also stated that he suffered anxiety during the time [the defendant] suspended him without a hearing, because of his uncertainty about whether he would be able to take the Lieutenant test or whether he would even get his job back." Id. This testimony stands in stark contrast to Tolnay's brief and conclusory testimony in the instant case. (See § D, below)

**B.    Tolnay's Emotional Distress Award Fails Under The Governing Principles Recognized By The Second Circuit**

"A plaintiff is not permitted to throw himself on the generosity of the jury. If he wants damages, he must prove them." Bracey v. Board of Educ., 368 F.3d 108, 119 (2d Cir. 2004)(citation and internal quotation marks omitted). In Annis v. County of Westchester, 136 F.3d 239 (2d Cir. 1998), the Second Circuit affirmed a jury finding of liability for gender discrimination but vacated the entire award of compensatory and punitive damages, noting that:

---

[2]    Tolnay's reliance on Arlio is highly selective. Despite the fact that it is a First Amendment retaliation case from this District, between a police sergeant and a police chief and the ruling on the post-trial motions was issued approximately two months before the verdict in this case, Tolnay did not address the facts of the case, the amount of the verdict or the ratio between the compensatory and punitive damages in that case as part of his analysis of the punitive damages issue. The ratio between the compensatory ($150,000) and punitive damages ($100,000) in Arlio was 1 to .66. 392 F.Supp.2d at 323.

> The only evidence of Annis's emotional distress - her own
> testimony - is insufficient to warrant an award of compensatory
> damages for that injury. She has not alleged any physical
> manifestations of her emotional distress... She testified that she
> needs and she has had counseling, but introduced no affidavit or
> other evidence to corroborate her testimony...In short, her
> testimony fails to establish that she suffers from any concrete
> emotional problems.

136 F.3d at 249.

In this case, as in <u>Annis</u>, the only evidence of Tolnay's emotional distress was his own testimony. He does not deny this in his opposition brief. As in <u>Annis</u>, Tolnay's testimony "fails to establish that [plaintiff] suffer[ed] from any concrete emotional problems." <u>Id.</u> See <u>Ortiz-Del Valle v. National Basketball Association</u>, 42 F.Supp. 2d 334, 341 (S.D.N.Y. 1999). As in <u>Annis</u>, Tolnay offered no testimony about a single physical manifestation of his alleged emotional damage. Unlike <u>Annis</u>, Tolnay here did not even offer any evidence that he needed or has undergone any counseling or psychiatric treatment. Consequently, pursuant to <u>Annis</u>, as a matter of law, Tolnay is not entitled to damages for his alleged emotional distress. See <u>Ortiz-Del Valle</u>, 42 F.Supp. 2d at 341.

It is well-established that the mere fact that a constitutional deprivation has occurred does not justify the award of emotional distress damages; the plaintiff must establish that he suffered an actual injury caused by the deprivation. <u>Patrolmen's Benevolent Assoc. of the City of N.Y. v. City of New York</u>, 310 F.3d 43, 55 (2d Cir. 2002). See <u>Carey v. Piphus</u>, 435 U.S. 247, 263-64 (1978). A damage award "must be supported by competent evidence concerning the injury." <u>Carey</u>, 435 U.S. at 264 n.20. "A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages." <u>Patrolman's Benevolent Assoc.</u>, 310 F.3d at 55. "Rather, the plaintiff's testimony of emotional injury must be substantiated by

other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress, . . ., or the objective circumstances of the violation itself." Id.

Moreover, when the only evidence in support of an award of compensatory damages for emotional distress based on a constitutional violation is the plaintiff's testimony, such evidence must "establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages." Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(cited in Patrolmen's Benevolent). See id. at 1246 (reversing compensatory damages award in § 1983 suit and awarding nominal damages where plaintiffs' emotional distress consisted exclusively of their own conclusory statements). Damages under § 1983 are intended to compensate for actual injuries caused by constitutional violations; therefore, a § 1983 plaintiff alleging emotional distress must demonstrate that the emotional duress resulted from the constitutional violation itself. See Carey, 435 U.S. at 263. The plaintiff must adduce sufficient evidence "that such distress did in fact occur and that its cause was the constitutional deprivation itself and cannot be attributable to other causes." Price, 93 F.3d at 1250.

"[T]he case law reveals that courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." Id. at 1251. If, as in the instant case, the plaintiff's testimony is the sole evidence of mental distress, that testimony must reasonably and sufficiently explain the circumstances of the injury and may not resort to mere conclusory statements, and vague recitations of "depression" or "hurt feelings" as evidence of emotional distress offered by the plaintiff. Id. Such evidence fails to meet the necessary standard. Id. "A plaintiff asserting a constitutional violation, therefore, must

produce evidence of '*demonstrable* emotional distress,' or 'demonstrable mental anguish.'" Id.

(emphasis original). The plaintiff must also demonstrate a causal connection between the

constitutional violation and his demonstrable emotional distress to recover compensatory

damages. Id. Plaintiffs, therefore, cannot automatically recover compensatory damages for

emotional distress simply because they proved a violation of a constitutional right. Id. Rather,

"the evidence of the emotional distress must be demonstrable, genuine, and adequately

explained." Id. at 1252. See Annis, 136 F.3d at 249 (reversing award of compensatory damages

based on lack of evidence and citing Price); Patrolmen's Benevolent, 310 F.3d at 55 (citing

Price).

In Price, the Fourth Circuit held that the evidence could not support an award of

compensatory damages. 93 F.3d at 1255. The court concluded that it was "confronted with the

bald, conclusory assertions that [the plaintiffs] felt betrayed and deceived, but there was no

evidence concerning any demonstrable injury suffered. Such vague, conclusory statements do

not constitute sufficient evidence." Id. Accordingly, the Fourth Circuit reversed the award of

punitive damages. Id. at 1256.

As demonstrated below in § D, the evidence submitted by Tolnay does not satisfy this

standard established by the Second Circuit and articulated by the Fourth Circuit in Price. Thus,

the emotional distress damages award should be vacated or at least drastically remitted.

### C.    Tolnay's Emotional Distress Damages Award Fails Under The Analysis Employed By The District Courts In This Circuit

In analyzing a jury verdict, a court must consider the reasonableness of the sums awarded

by comparing the facts presented to the jury with the facts that led to the awards in other cases.

A review of the evidence in this case and the decisions from district courts within this Circuit

confirms that Tolnay's evidence regarding emotional distress did not support any award of

damages. Thus, judgment should enter in favor of Chief Wearing. In the alternative, the evidence demonstrates, at most, that Tolnay presented a "garden-variety" claim. Based on the limited and conclusory evidence, the Court should order a new trial. If it does not, it should order a substantial remittitur to an amount less than $5,000.

A "garden variety" emotional distress claim is one that did not require medical treatment. Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 359462, at *12 (S.D.N.Y. Feb. 18, 2003). In some cases dealing with typical emotional distress, courts have remitted jury awards for emotional distress to between $5,000 and $30,000. Id. (citing cases). In all of these cases, the emotional distress evidence is generally limited to the plaintiff's testimony, described in vague or conclusory terms, without evidence of the duration, severity or consequences of the condition, and minimal or no evidence of medical treatment. Id. at *13.

In Rainone v. Potter, 388 F.Supp.2d 120, 126 (E.D.N.Y. 2005), the court ordered a new trial in damages, unless the plaintiff agreed to the reduction of the emotional distress award from $175,000 to $50,000. As part of its analysis, the Rainone court recognized that there was a "spectrum" or "continuum" of damages awards for emotional distress. Id. at 122. The spectrum of damages awards ranges from $5,000 to more than $100,000, representing "garden-variety," "significant," and "egregious" emotional distress claims. Id. At the low end of the continuum are what have become known as "garden-variety" distress claims in which district courts have awarded damages for emotional distress ranging from $5,000 to $35,000. Id. "Garden-variety" remitted awards have typically been rendered in cases where the evidence of harm was presented primarily through the testimony of the plaintiff, who describes his or her distress in vague or conclusory terms and fails to describe the disparity or consequences of the injury. Id.

8

In <u>Reiter v. Metropolitan Transp. Auth. of New York</u>, 2003 WL 22271223 (S.D.N.Y. Sept. 30, 2003), the jury awarded the plaintiff $140,000 for pain and suffering. <u>Id.</u> at *6. The plaintiff had testified to being "humiliated and embarrassed." <u>Id.</u> at *5. He described the period after his transfer from his original position as "stressful" because of "having nothing to do, of not feeling right about the job, …, about yourself, what you're doing, what you can do." <u>Id.</u> at *7. He stated that he felt "[n]ervous, anxious, tense, on edge," and sometimes his body felt "clammy." <u>Id.</u> He admitted that he did not suffer from sleeplessness or loss of appetite, and he never sought counseling for any emotional problem. <u>Id.</u>

The <u>Reiter</u> court concluded that the award of $140,000 was so "shockingly excessive" in light of the evidence. <u>Id.</u> at *8. It noted that while respecting the jury's role in determining damages, a court may reduce an award where there is sparse evidence with respect to the magnitude and duration of emotional injury or mental distress in order to guard against awards based on speculation. It is the court's function, while appropriately respecting the jury's crucial role, to guard against such speculative damages awards. <u>Id.</u>

As part of its analysis, the <u>Reiter</u> court recognized that "[i]n evaluating the reasonability of a jury award in a retaliation or discrimination suit, it is useful to look at 'the duration, extent and consequences of the mental anguish suffered by plaintiff' and to see whether the case fits into a class of 'so-called "garden variety" mental-anguish claims, in which the awards hover in the range of $5,000 to $30,000.'" <u>Id.</u> at *9. In such cases, "the evidence usually is limited to the testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or consequences of the condition." <u>Id.</u> The <u>Reiter</u> court concluded that the plaintiff's injuries in the case fell at the low end of the spectrum of "garden-variety'" claims. <u>Id.</u> The

plaintiff in Reiter had testified to feeling "stressed," "nervous," "on edge," and "clammy," but he also admitted that he never had trouble eating or sleeping and he never sought medical or psychological help. Id. Accordingly, the Reiter court, based on a review of comparable cases and the evidence presented in the case, held that an award for compensatory damages in excess of $10,000 would shock the judicial conscience. Id. at *11.

In Ortiz-Del Valle v. National Basketball Assoc., 42 F.Supp.2d 334, 336 (S.D.N.Y. 1999), a jury awarded the plaintiff $750,000 for emotional distress. With regard to the plaintiff's federal law claim, the court held that as in Annis, the only evidence of the plaintiff's emotional distress was her own testimony. Id. at 341. Moreover, as in Annis, the testimony failed to establish that the plaintiff suffered from any concrete emotional problems. Id. Also, as in Annis, the plaintiff here offered no testimony about a single physical manifestation of her emotional damage. Id. Unlike in Annis, the plaintiff in Ortiz did not even offer any evidence that she needed or has undergone any counseling or psychiatric treatment. Id. Accordingly, pursuant to Annis, as a matter of law, the district court held that the plaintiff was not entitled to damages for her alleged emotional distress in connection with her federal law claim. Id. With regard to the plaintiff's claim under New York State law, the court ordered a new trial unless the plaintiff accepted an award for emotional damages not exceeding $20,000. Id. at 343. See EEOC v. Yellow Freight Sys., Inc., 2002 WL 31011859, at *33-34 (S.D.N.Y. Sept. 9, 2002)(refusing to award any emotional distress damages).

In Carter v. Rosenberg & Estis, P.C., 1998 WL 150491 (S.D.N.Y. Mar. 31, 1998), the court recognized that the first issue on a remittitur motion must be to address whether the jury award is "excessive" such that it "shocks the judicial conscience." Id. at *19. A court makes this determination by comparing the award at issue with other verdicts in similar cases and

examining the evidentiary record to ascertain whether there is adequate evidentiary support for the award. Id. The jury in Carter awarded the plaintiff $75,000. Id. at *21. The court's review of other cases revealed that the plaintiff had presented neither the quality nor quantity of evidence to support the award. Id. In particular, the plaintiff testified only that she was "very upset," "a mess," and suffered from "uncontrollable crying." Id. at *23. However, she gave no indication, or at least altogether inadequate detail, as to the magnitude, duration, or severity of her mental anguish. Id. In addition, the plaintiff eluded only to extremely minor perceived physical ailments that could possibly have been related to either her termination or her mental distress from that event. Id. "Most important, [the plaintiff] offered no testimony that she suffered any of the sorts of serious mental and physical injuries -- such as suicidal ideations, heavy drinking, deteriorating family relations, increased blood pressure, and difficulty sleeping -- that afflicted the plaintiffs in [other] cases, and which in any event supported only far smaller awards." Id.

Consequently, the Carter court concluded that lacking substantial, specific, and corroborated evidence of the magnitude and duration of the plaintiff's mental anguish, the jury was forced to speculate in awarding her compensatory damages, an impermissible basis for an award under all relevant authority. Id. Thus, the court was convinced that the $75,000 in compensatory damages was unsupported by the evidence adduced as to the plaintiff's mental anguish, and was grossly disproportionate to awards in similar cases. Id. at *25. Accordingly, it remitted the award to $15,000, the maximum amount the court found would not be excessive under controlling cases. Id. If the plaintiff did not agree to the remitted amount, the court ordered that there be a new trial on both liability and damages. Id.

In Trivedi v. Cooper, 1996 WL 724743 (S.D.N.Y. Dec. 17, 1996), the court remitted

from $700,000 to $50,000 a compensatory damages award rendered in favor of a plaintiff who

had filed claims under 42 U.S.C. §§ 1981 and 1983 and New York State law, for harassment and

failure to promote on the basis of race or national origin, and for retaliation. Id. at *2.

Moreover, if the plaintiff did not accept that amount, the court held that a new trial would be

ordered and that that new trial would address both the issues of liability and damages. Id. at

*10.[3] The court in Trivedi found the plaintiff had introduced "scant evidence on the issue of

emotional distress," including "no evidence of psychological counseling, [or] physical

manifestations of distress," and introduced only the testimony that he felt "starved of

professional growth," "like a woman would feel if her child was lost," "insulted," "indignant,"

"unhappy," and "emotionally upset." Id. at *9.[4]

The judges within the District of Connecticut have also recognized and applied the

"garden-variety" criteria. In Schanzer v. United Technologies Corp., 120 F.Supp. 2d 200, 218

(D. Conn. 2000)(Arterton, J.), the court recognized that in determining the proper amount of a

---

[3]/    The court concluded that it was not possible to hold a new trial on damages without also
retrying the issue of liability because the amount of damages was "integrally linked to the
liability and actions of [the defendant]. A jury would need to consider the causation between
[the defendant's] actions and [the plaintiff's] injuries, as well as the extent of the harassment and
what amount of recovery it warrants. Put another way, liability is not a separate issue in this
case. A jury will need to determine the extent of [the defendant's] liability in order to determine
the extent of [the plaintiff's] injuries, and award damages for those injuries." Trivedi, 1996 WL
724743 at *10.

[4]/    See also Tanzini v. Marine Midland Bank, 978 F.Supp. 70, 79-80 (S.D.N.Y.
1997)(reducing compensatory damage award from $2,000,000 to $30,000 where "plaintiff
presented no evidence detailing the duration or magnitude of his emotional injuries, nor any
evidence of medical or psychological treatment."); McIntosh v. Irving Trust Co., 887 F.Supp.
662, 664-65 (S.D.N.Y. 1995)(reducing compensatory damage award in Title VII case, alleging
discriminatory failure to promote and retaliation from $219,000 to $20,000 because plaintiff's
conclusory statements of emotional injury and resulting family problems constituted only "sparse
evidence with respect to the magnitude and duration of any emotional injury").

compensatory damages award, courts have looked to a number of factors, including whether the plaintiff submitted evidence regarding the duration, severity, and consequences of the emotional harm suffered. Id. at 218 (citing Ortiz-Del Valle and noting that that court remitted $750,000 award to $20,000). See Howell v. New Haven Bd. of Educ., 2005 WL 2179582, at *9 (D. Conn. Sept. 8, 2005)(Arterton, J.)(recognizing "garden-variety" criteria).

In Schanzer, Judge Arterton reduced the compensatory damages awards from $175,000 to each of two plaintiffs to $40,000 and $45,000, respectively. 120 F.Supp.2d at 219. Specifically, Judge Arterton remitted the awards because the evidence showed neither extreme trauma nor permanent injury. Id. at 218. One plaintiff testified about his shock at being laid off and losing his career and that losing his career felt like losing his security blanket. Id. That same plaintiff testified that his termination and forced idleness made him feel useless. Id. He further testified that his relationships were changing both at work and at home, but did not provide any details or indicate that his termination caused problems to his family life. Id. Nor did that plaintiff have any physical manifestations of his emotional distress, or seek counseling or medical help. Id. The second plaintiff testified that the loss of his job felt like a kick in the stomach. Id. He also testified that the shock of being laid off and being forced to tell his family was very hurtful to him. Id. His family relationships were injured by his termination in that his wife could no longer talk to their daughter via long distance telephone on a regular basis, and he could not help his son with the expenses of his upcoming marriage when he previously promised to do so. Id.

Judge Arterton recognized that the plaintiffs' shock and humiliation at losing long-time employment that they believed was so secure, compounded by vague feelings of age victimization and the ensuing economic difficulties, were cognizable as injuries, but however,

13

the only evidence regarding the nature and degree of the emotional distress they suffered was their own subjective testimony. Id. at 219. Consequently, she remitted the damage award under Connecticut law from $175,000 for each of the plaintiffs to $40,000 for one and $45,000 for the other. Id. In fact, in setting these figures, Judge Arterton noted that "[t]hese amounts "approach, but do not reach, the level of excessive." Id.

Similarly, in Otero v. Housing Authority of the City of Bridgeport, 263 F.Supp.2d 440 (D. Conn. 2003), the court granted a motion for a new trial. As part of its analysis, the court concluded that the jury's award of emotional distress damages was excessive. In particular, the only evidence of emotional distress was the plaintiff's being upset and crying at a meeting and being shocked at her discharge. Id. at 444. The court concluded that the jury's calculation of emotional distress damages amounted to $145,900. Id. at 445. It held that this amount could not be found to follow in the range of reasonable compensation for the most distress the jury could have credited. Id. The court noted that the maximum amount that could have been awarded would have been $10,000. Id.

In this case, as demonstrated below, the evidence submitted by Tolnay was at best conclusory. Thus, it was insufficient to support any award of emotional distress damages. Accordingly, the verdict should be vacated, or, at least, remitted to a nominal amount.

**D.    The Evidence At Trial Does Not Support The Emotional Distress Damages Award**

In the instant case, Tolnay's testimony comprises 317 pages of the trial transcript. (12/1/05 Tr. at 64-247; 12/2/05 Tr. at 7-141) A review of those pages of transcript, as opposed to Tolnay's characterization of that testimony in his opposition brief, confirms that Tolnay did not introduce evidence that can support a $150,000 emotional distress damages award. Specifically, Tolnay's evidence regarding his alleged emotional distress is limited to his

testimony at pages 33-34, 36 and 40 of the December 2, 2005 trial transcript. At pages 33-34, he

testified "Yes, it was," in response to his counsel's question as to whether it was "embarrassing"

to him when the head of the Internal Affairs Division escorted him to his locker to retrieve his

badge and handgun at the time of his suspension after the second meeting with Chief Wearing.

(12/2/05 Tr. at 33-34) At page 36, Tolnay testified that his assignment in the lock-up section

was "depressing to [him]." (12/2/05 Tr. at 36) Finally, at page 40, Tolnay testified: "Yes, I did."

in response to his attorney's question as to whether he suffered "any upset or embarrassment"

over a news article regarding his suspension. (12/2/05 Tr. at 40)

These three conclusory statements are the *only* evidence submitted in support of Tolnay's

claim for emotional distress damages against Chief Wearing. Contrary to Tolnay's argument,

Chief Wearing cannot be held liable for either the conduct of any other person or any alleged

damage to anyone other than the plaintiff in this case. Moreover, even accepting Tolnay's

counsel's broad-sweeping characterizations of the emotional distress damages in this case, those

characterizations amount to no more than speculation. Under the case law set forth above,

Tolnay's conclusory testimony (amounting to 8 or 9 words) cannot support *any* award for

emotional distress damages. In the alternative, at most, this testimony fits squarely within the

"garden-variety" emotional distress cases for which the courts in the Second Circuit have limited

damages to between $5,000 and $30,000. Here, based on the complete lack of evidence, the

Court should enter judgment in favor of Chief Wearing on the non-economic damages award of

$150,000. In the alternative, the court should reduce that award to less than $5,000.

**III. IN ADDITION TO THE GUIDEPOSTS ANALYSIS UNDER <u>STATE FARM</u> AND <u>GORE</u>, THE COURT MUST REMIT THE NONECONOMIC AND PUNITIVE DAMAGES AWARDS UNDER THE "SHOCK THE CONSCIENCE" ANALYSIS APPLIED BY THE SECOND CIRCUIT**

As noted in Chief Wearing's initial memorandum of law in support of his Rule 59 motion (Def.'s Initial Rule 59 Mem. at 22-23) and not challenged by Tolnay, the Second Circuit engages in analysis beyond the guideposts established in <u>State Farm</u> and <u>Gore</u>. Specifically, after applying the <u>Gore</u> guideposts, the court in <u>Mathie v. Fries</u>, 121 F.3d 808, 816 (2d Cir. 1997) recognized that that analysis "does not end our inquiry." Rather, "even where the punitive damages award is not beyond the outer constitutional limit marked out, however, imprecisely, by the three <u>Gore</u> guideposts, we retain an appellate responsibility to review punitive awards for excessiveness in applying federal statutes such as section 1983." <u>Id.</u> at 816-17. "That task requires comparison with awards approved in similar cases ... to determine, as with compensatory awards whether the punitive award is "so high as to shock the judicial conscience and constitute a denial of justice." <u>Id.</u> at 817.

In <u>Mathie</u>, the plaintiff, a former inmate, brought a § 1983 action against the correctional facility's director of security alleging constitutional violations, assault and battery, and intentional infliction of emotional distress based on a claim that the director raped the plaintiff while he was an inmate. 121 F.3d at 810-11. After a bench trial, the district court awarded the plaintiff $250,000 in compensatory damages and $500,000 in punitive damages. <u>Id.</u>

After describing the additional analysis that it was required to engage in, beyond the <u>Gore</u> guideposts, the Second Circuit, as part of its analysis of the punitive damages award, reviewed cases reported in official reporters and one case reported on in the <u>New York Law Journal</u> which involved awards for: (1) sexual assaults by private individuals and (2) misconduct by law enforcement officers. <u>Id.</u> at 817. Although the Second Circuit believed that the defendant's

16

conduct was "an outrageous abuse of power and authority," it concluded that the Supreme Court in <u>Gore</u> had counseled for restraint with respect to the size of punitive awards. <u>Id.</u> Accordingly, based on its comparison analysis, the Second Circuit held that the punitive damage award in <u>Mathie</u> could not exceed $200,000. <u>Id.</u>

In the instant case, with regard to the noneconomic, compensatory damages, the comparison analysis has been set forth in detail, above and in Chief Wearing's initial brief in support of his new trial motion. The evidence at trial did not support an award of any emotional distress or related damages. If it did, based on the evidence and a review of similar emotional distress damages awards, any award above $5,000 would "shock the judicial conscience and constitute a denial of justice." <u>See id.</u> at 813-14 (conducting comparison analysis on compensatory damages award).

With regard to the $5 million punitive damages award, the comparison analysis was conducted in Chief Wearing's initial and reply/supplemental memoranda in support of his Rule 59 motion. (Def.'s Initial Rule 59 Mem. at 25-32) That analysis demonstrates that the awards in First Amendment retaliation cases from the District of Connecticut and the Second Circuit do not support the punitive damages awarded in this case. The $5 million awarded is excessive and is so high as to "shock the judicial conscience and constitute a denial of justice." <u>Mathie</u>, 121 F.3d at 817.

In particular, the two most recent First Amendment retaliation cases from this District with punitive damages awards, both of which involved Police Chiefs and both of which Tolnay did not address in his opposition, highlight the extreme excessiveness of the $5 million punitive damages award in the case at bar. The Court need only compare the instant case to the situations in <u>Russo v. City of Hartford</u>, 419 F.Supp.2d 134 (D. Conn. 2006) and <u>Arlio v. Lively</u>, 392

17

F.Supp.2d 317 (D. Conn. 2005). As discussed in Chief Wearing's other submissions, the First

Amendment rights at issue were far greater and the injuries far worse in both of those cases.

Nevertheless, in <u>Russo</u>, the jury returned a verdict against the former Hartford police chief of

$22,500 in compensatory damages and $75,000 in punitive damages. 419 F.Supp.2d at 153. In

<u>Arlio</u>, the jury awarded $150,000 in compensatory damages and $100,000 in punitive damages

against the former police chief for the Town of Trumbull. 392 F.Supp.2d at 321-23.

Similarly, in <u>Bisignano v. Korff</u>, 2001 WL 1772172 (S.D.N.Y. Mar. 22, 2001), a First

Amendment freedom of association case, the court held that a $160,000 punitive damage award

against a Mayor was excessive when compared to other awards in other cases where municipal

officials had abused their power. <u>Id.</u> at *2. In those cases, punitive damages awards ranged from

$1,000 to $3,000 after reductions. <u>Id.</u> at *2-3. Accordingly, finding the case to be a "garden-

variety" political hiring case, and that the $160,000 punitive damages award shocked the judicial

conscience, the <u>Bisignano</u> court vacated the punitive damages award. <u>Id.</u>

Based on the comparison analysis mandated by <u>Mathie</u>, if judgment is not entered in

favor of Chief Wearing and/or a new trial ordered on all issues, the Court should remit the

noneconomic, compensatory damages to less than $5,000 and the punitive damages to an amount

less than the amount awarded for compensatory damages.

## IV.    THE COURT MUST ORDER A SIGNIFICANT REMITTITUR OF THE PUNITIVE DAMAGES AWARD TO PREVENT THE FINANCIAL RUIN OF CHIEF WEARING

Tolnay's claim of improper "'pour-mouthing'" and his claim that the issue of Chief

Wearing's personal finances is not before the Court are both misplaced. (Pl.'s Mem. at 40-41, 45

n.19)

18

The Second Circuit has recognized that it will not affirm punitive damages awards that "result in the financial ruin of the defendant." Patterson v. Balsamico, 440 F.3d 104, 122 (2d Cir. 2006). Thus, while a defendant's conduct is obviously germane to the damages issue, "even outrageous conduct will not support an oppressive or patently excessive award of damages." Vasbinder v. Scott, 976 F.2d 118, 121 (2d Cir. 1992). Further, because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute "a windfall to the individual litigant." Id. Finally, in applying these principles, courts must engage in an independent and "detailed appraisal of the evidence bearing on damages." Id.

Here, contrary to Tolnay's claim of waiver, the record from the trial contains sufficient evidence upon which the Court can conclude that the $5 million punitive damages award would result in a financial ruin for Chief Wearing. In particular, the Chief testified that as of July 26, 2002 he had been a law enforcement officer for approximately 33 years. (12/6/05 Tr. at17; 12/2/05 Tr. at 205) He retired as the Chief of the New Haven Police Department on May 1, 2003. (12/6/05 Tr. at 46) At the time of the trial, he was 62 years of age and employed by the Bridgeport Board of Education as its Director of School and Police Security. (12/7/05 Tr. at 195) With this testimony and judicial notice of the general salaries of municipal employees, the Court can find that a person who has been a municipal employee for approximately 37 years would be financially ruined by a punitive damages award of $5 million. Accordingly, the Court should remit the punitive damages award to less than $5,000.

Moreover, assuming the Court does not agree that the trial record is sufficient to allow for a remittitur because the award will cause financial ruin, Chief Wearing submits that the Court should consider the evidence submitted to it in connection with his motion for a stay of the execution and enforcement of the judgment filed on March 2, 2006. (D. Ct. Elec. Docket Entries

Nos. 123-24) In particular, Chief Wearing's affidavit and testimony at the hearing contain detailed evidence of his personal assets. Chief Wearing's affidavit is on file as Docket Entry No. 125. The transcripts for the four days of hearings held on March 28, April 27, May 1 and May 23, 2006 are on file as Docket Entries Nos. 169, 191, 187 and 199, respectively. Those transcripts and the exhibits from the 4 days of hearings and the affidavit regarding insurance, which was requested by the Court, are designated as exhibits to this reply/supplemental memorandum. Specifically, in addition to his affidavit, Chief Wearing testified about his personal finances at pages 22 through 32 of the March 28, 2006 transcript. Tolnay had an opportunity to cross-examine Chief Wearing and Tolnay presented his own evidence during the hearing.

Based on a review of the testimony and evidence from the motion for stay proceedings, the Court should substantially remit the punitive damages award because affirming it would result in the financial ruin of Chief Wearing.

## CONCLUSION

For the foregoing reasons, the Court should grant Chief Wearing's motion and order a substantial remittitur on the non-economic and punitive damages awards, if it does not enter judgment in Chief Wearing's favor and/or order a new trial on all issues.

Respectfully submitted,

**DEFENDANT**
**MELVIN WEARING**

By: _____
Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:      (203) 227-2855
Fax:      (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:      (860) 522-6103
Fax:      (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

His Attorneys

## CERTIFICATION

This is to certify that on this 30th day of June, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

_____
Ralph W. Johnson, III

844409_1 DOC

22