Amendment because the "Plaintiff's statements did not have a broad public purpose, were not made in a public forum, were not made while he was off-duty, were not given to the media, and were not circulated throughout the police department." (3/9/05 Ruling, at 33)  In rejecting these arguments, the Court noted that it had found no authority to support the arguments that the duty status of the plaintiff was relevant to the First Amendment analysis. (Id. at 34)  It further indicated that there was no authority for the proposition that a failure to contact the media or a lack of circulation throughout the police department impacted the protection afforded to Tolnay's speech under the First Amendment. Id.

At page 34 of the ruling, the Court summarized Chief Tolnay's arguments regarding the lack of First Amendment protection as being based upon the fact that Tolnay's statements related "only to **his** job performance, **his** future employment, and **his** personal grievances." (emphasis original). Similarly, at page 36 of the ruling, the Court indicated that an "examination of the content, form, and context of Plaintiff's given statement," led the Court to hold that the speech was protected under the First Amendment.[15]

The March 9 ruling dealt with the issue of the Pickering balancing test at pages 40-45. It addressed the issue of qualified immunity at pages 46-51. In particular, it recognized that the threshold question in the qualified immunity analysis is the determination of whether there has been a constitutional violation. (3/9/05 Ruling, at 47)  It further recognized that the next sequential step is to ask if the right was "clearly established." (Id. (quoting Saucier v. Katz, 533

---

[15]/     Moreover, at pages 38-40 of the ruling, the Court discussed in detail the Seventh Circuit's decision in Cygan v. Wisconsin Department of Corrections, 388 F.3d 1092 (7th Cir. 2004). At page 1099 of its decision, the Seventh Circuit recognized that "in evaluating whether speech is constitutionally protected, it had to first under Connick, "determine whether the employee spoke *as a citizen* upon matters of public concern."  It further recognized that when determining whether speech addresses a matter of public concern, content is the most important factor. Id. An employee's choice of forum and motivation for speaking are also relevant considerations. Id.

U.S. 194, 201 (2001))) In particular, it concluded that the "proper inquiry in this context, then, is whether it was clearly established in 2002 that suspension from the police force, and other disciplinary actions, based on speech alleging possible political misconduct by high officials in the City, including the Mayor and Chief of Police, in enforcing the laws of this jurisdiction, was violative of Plaintiff's First Amendment rights." (Id. at 47-48)[16]

In addition, in footnote 33 of the March 9 Ruling, the Court also noted that Chief Wearing had cited "nine cases from nine courts of appeal for the proposition that 'A majority of circuits have held that the Pickering test for First Amendment retaliation cases requires a fact-sensitive, context specific balancing of competing interests and the law regarding public-employee free speech claims will rarely be sufficiently 'clearly established' to preclude qualified immunity under Harlow v. Fitzgerald, … and its progeny.'" (3/9/05 Ruling, at 51 n.33)[17]

Thus, in the instant case, the arguments presented in the Rule 50(b) motion are properly before the Court based on: (a) the oral Rule 50(a) motion, (b) the colloquy and argument during the motion, (c) the Court's ruling on that motion, (d) the Court's summary judgment ruling and the parties' pleadings in connection with that motion and the jury charge. The arguments raised in the Rule 50(b) are the central issues in the case and the Court and plaintiff were aware of them. Consequently, the purposes of Rule 50 have been satisfied.

---

[16]/     As part of the analysis of the qualified immunity issue, the Court also rejected Chief Wearing's argument that he was not put on notice that he was clearly violating the law through disciplinary actions. (3/9/05 Ruling, at 49)

[17]/     In response to this argument, the Court noted that it was "unfortunate for Defendant that the Second Circuit Court of Appeals, which Circuit controls this case, (and not the nine appellate courts he relies on) is in the 'minority', having never so recognized such a broad proposition." Contrary to the Court's statement, the Second Circuit is not within the minority on this issue. Having never addressed the issue, it would be a matter of first impression for the Second Circuit. It is respectfully submitted that this Court must analyze and address the issue which is raised in Chief Wearing's initial brief.

Moreover, it would constitute a manifest injustice for the Court not to consider the issues raised in the Rule 50(b) motion. In particular, it would constitute a manifest injustice to not fully analyze whether the speech at issue was actually protected under the First Amendment. It would also constitute a manifest injustice not to consider the <u>Pickering</u> analysis or the complete qualified immunity analysis, including whether any right was clearly established in August 2002. Further, it would constitute a manifest injustice to allow an award of compensatory and punitive damages in the absence of sufficient evidence. Finally, at a minimum, the grounds asserted in the Rule 50(b) motion provide bases for a new trial.

## II.    THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF CHIEF WEARING

### A.    Chief Wearing Is Entitled To The Entry Of A Judgment In His Favor Based On <u>Garcetti v. Ceballos</u>

As noted above, the arguments in Chief Wearing's memorandum regarding <u>Garcetti</u> are incorporated by reference. That memorandum demonstrates that Chief Wearing is entitled to the entry of judgment as a matter of law because: (1) Tolnay's speech was not protected by the First Amendment, (2) the <u>Pickering</u> balancing analysis weighs in favor of Chief Wearing and (2) the doctrine of qualified immunity bars Tolnay's claim.

### B.    The Decisions Regarding Police Reports Demonstrate That The Plaintiff's Speech Was Not Protected Under The First Amendment

Since the filing of Chief Wearing's initial brief, additional district judges within the Second Circuit have adopted the reasoning from <u>Kelly v. City of Mount Vernon</u>, 344 F.Supp. 2d 395 (S.D.N.Y. 2004) and <u>Cahill v. O'Donnell</u>, 75 F.Supp. 2d 264 (S.D.N.Y. 1999). Those decisions which deal largely with police officers' reports confirm that Tolnay's speech was not protected by the First Amendment. <u>See</u> <u>also</u> <u>Sigsworth v. City of Aurora</u>, 2005 WL 2420363, at *1-3 (N.D. Ill. Sept. 29, 2005).

In <u>Ethier v. City of Cohoes</u>, 2006 WL 1007780 (N.D.N.Y. Apr. 18, 2006)(McAvoy, J.),

the court recognized that "[s]peech that arises in the usual course of a public official's duties is

generally not protected [under the First Amendment]." <u>Id.</u> at *5 (citing <u>Kelly</u> and <u>Cahill</u>). In

particular, the plaintiff in <u>Ethier</u> was a police officer. He pulled over a car that was being driven

by the corporation counsel (Doherty). <u>Id.</u> at *6. The plaintiff smelled alcohol emanating from

the driver and, therefore, instructed the driver to exit the vehicle to perform sobriety tests.

According to the plaintiff, the corporation counsel failed the tests. Based upon directions by a

sergeant (who had received orders from another supervisor), the plaintiff did not arrest the

corporation counsel and, instead, drove him to the police station where he was then released.[18]

The <u>Ethier</u> court recognized that "[n]ot only must the speech be related to matters of

public interest, but the purpose of the expression must be to present such issues as matters of

'public' concern." 2006 WL 1007780, at *6. Thus, even if the plaintiff subjectively believed

that he was engaged in protected speech, the defendant "would not reasonably have understood

Plaintiff's memorandum as complaining about government integrity or concealing the drunk

driving of a political figure. There [wa]s no indication that there was endemic problems

concerning the covering up by the [police department] of the criminal activities by politicians or

other systemic problems in the [police department]." <u>Id.</u> Consequently, the court concluded that

the "only reasonable conclusion [wa]s that Plaintiff was speaking as a public employee and not

---

[18]/    In support of his First Amendment retaliation claim, the plaintiff in <u>Ethier</u> cited a
memorandum dated March 16, 1999 written from him to one of his supervisors. <u>Id.</u> A review of
the memorandum revealed that it was the plaintiff's fact-based recount to a supervisor of the
events of the evening. <u>Id.</u> "Nowhere in that memorandum d[id] Plaintiff indicate that he wanted
to arrest Doherty, that he thought Doherty should be arrested, that he disagreed with the decision
to let Doherty go, that he was complaining about pervasive problems within the police
department, or that he was discussing any problem within the [police department]." <u>Id.</u>

as a public citizen." Id. Accordingly, the court held that the plaintiff did not engage in protected speech and dismissed the First Amendment claim. Id.

In Fusco v. City of Rensselaer, 2006 WL 752794 (N.D.N.Y. Mar. 22, 2006)(McAvoy, J.), the court granted summary judgment for the defendants on the plaintiff's First Amendment retaliation claim. Id. at *8-9. The plaintiff, a chief of police, claimed that he was retaliated against for filing disciplinary charges alleging sexual harassment by two police officers and sleeping on the job by another officer. Id. at *3, 5. The Fusco court recognized that "speech about individual isolated problems within the police department, or one of its officers, are not matters of public concern." Id. at *8. "While a claim of systemic or endemic problems in a public department might rise to the level of protected public speech," the Fusco court held that the plaintiff had failed to marshal evidence indicating that his speech was intended to "address anything more than the isolated events concerning the conduct of the three employees in issue." Id. Moreover, the court recognized that the uncontested facts indicated that the "context in which Plaintiff 'spoke' on these issue[s] was wholly within the scope of his normal duties as the Chief of Police and not on a matter of public concern." Id. at *9. See id. at *8-9 (citing Cahill and Kelly).[19]

In DeFilippo v. New York State Unified Court Sys., 2006 WL 842400 (E.D.N.Y. Mar. 27, 2006), the plaintiff, a senior court security officer, alleged that the defendants retaliated against him in violation of the First Amendment, based on *inter alia*, his submission of an

---

[19]    Fusco also concluded that it was "well settled that issues of personal importance to a public employee are not matters of public concern." Id. at *9. "'Even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight.'" Id. (citing Cahill). The plaintiff in Fusco had failed to present any evidence from which it could be concluded that his public comments about the defendants' retaliatory and discriminatory actions against him were made "for any reason other than to further his own situation." Id.

Unusual Occurrence Report. Id. at *15. In particular, the plaintiff based his retaliation claim upon his speech alleging sexual discrimination on the part of a sergeant by her entrance into the men's locker room and upon the report he filed asserting that the sergeant and another officer damaged property at the courthouse. Moreover, he alleged that adverse employment actions against him all resulted from his speaking out against court employees' violation of the law. Id. at *15.

The DeFilippo court entered summary judgment against the plaintiff because it concluded that the plaintiff's complaint was speech about a personal matter between him and the sergeant. Id. (citing Ezekwo v. NYC Health and Hosps. Corp., 940 F.2d 775, 781 (2d Cir. 1991)). Specifically, the speech in the report was directed at the sergeant and the other court officer alone, "and did not address or assert a problem of a system-wide theft within the Unified Court System." Id. at *16. Moreover, the court noted that the report was filed in the ordinary course of the plaintiff's duties as a court officer. Id. The record also confirmed the plaintiff's speech concerning the sergeant's and the other officer's alleged involvement in damaging court property was not meant to bring to light a matter of political, social, or other concern to the community. Id. at *17. "Rather, it was likely an attempt by the Plaintiff to gain an advantage in his antagonistic relationship with Sergeant Cochran. In any event, it was not meant to alert the public to a systemic problem within UCS of theft." Id. (citing Cahill).[20]

---

[20]/    DeFilippo concluded that like the situation in Cahill, the plaintiff had raised what might be legitimate concerns about the conduct of court employees. Nevertheless, the court recognized:

> Although 'arguably the plaintiff['s] comments were motivated by apparent concerns over [employee] wrongdoing, the substance, tenor and purpose of the speech…was not public speech in any realistic sense but was motivated by private interests or pertained to routine business and normal police duties.'

Ethier, Fusco, DeFilippo and Sigsworth support the entry of judgment in favor of Chief Wearing. Specifically, a review of Tolnay's testimony, which is detailed in Chief Wearing's Garcetti brief, confirms that Tolnay made his speech in the ordinary course of his employment as a police officer. The preparation of a report regarding a motor vehicle stop is a quintessential aspect of the duties of a police officer. The same is true for an officer's meeting with his superiors to review and analyze the conduct of an arrest and a motor vehicle stop and to address a citizen's complaint.

Moreover, in none of the 2 or 3 instances of speech at issue (depending on whether the comment regarding Captain Ortiz was withdrawn), could the listener or recipient of the speech have realized (based on its substance and tenor) that Tolnay was speaking about anything but a matter of solely personal interest to him or pertaining to routine business and normal police duties. He was not trying to bring to light any matters of public concern. Also, as Tolnay's speech, at most, related to his grievances with Chief Wearing and/or Captain Ortiz, it was not protected. As discussed below, an "employee's beef" with or criticism of a supervisor is not protected.

C.    **Tolnay's Speech Fails The Content, Form And Context Analysis**

Tolnay's speech fails every aspect of the content, form and context analysis identified in Connick v. Myers, 461 U.S. 138 (1983). In Cioffi v. Averill Park Central Sch. Dist. Bd. of Educ., 444 F.3d 158, 166 (2d Cir. 2006), the Second Circuit recently emphasized the importance of the content-based aspect of the inquiry. Here, a close review of what Tolnay actually said confirms that his speech was not protected. His speech was made as an employee not as a citizen. In other words, Tolnay's speech arose out of his or was pursuant to his job. Moreover,

---

DeFilippo, 2006 WL 842400, at *18 (quoting Cahill).

other than fulfilling his duties, the sole purpose for his speaking was to protect his personal interests. He was not trying to bring anything to light and he was not reporting on department wide problems. At most, he spoke either about isolated incidents that were solely of personal concern to him or about matters that were part of his routine police duties. In particular, he included the last portions of the August 3, 2002 case incident report because he was concerned about the ramifications that he might suffer. (12/1/05 Tr. at 176, 183) As the report itself states, Tolnay wanted to "document" what happened. (Def.'s Post-Trial Ex. 5)

Also, as in Ethier, Tolnay never expressed any intention to give Rodriguez a ticket. He also confirmed that no one ordered him not to give Rodriguez a ticket. (12/2/05 Tr. at 87-88) Rather, Tolnay testified that he and another officer pulled the jeep over to give the driver a warning about the children's safety. (12/1/05 Tr. at 159-60) After what the report describes as 45 seconds, Tolnay used his discretion and let Rodriguez go with a verbal warning. (Def.'s Post-Trial Ex. 5) Nor did Tolnay ever express any disagreement with the dropping of charges from the July 26 arrests. Thus, under Ethier, Fusco and DeFilippo, none of Tolnay's speech is protected by the First Amendment.

Tolnay's speech also fails the form and context components of the analysis under Connick. As discussed in detail in Chief Wearing's Garcetti brief and above, the form of Tolnay's speech was official and job-related. In the words of Garcetti, both his report and his statements in the meeting were Tolnay's "work product." 126 S.Ct. at 1960. Thus, he spoke as a government employee and not as a citizen. The First Amendment does not protect speech in this form. With regard to context, neither the Mayor's speech at the church, Captain Ortiz's meeting with Reverend Rodriguez to take his citizen's complaint nor Chief Wearing's meeting with the state prosecutor are the context for either Tolnay's August 3 report or his statement(s) at the

25

August 13 meeting. The context of Tolnay's speech is that it arises out of his employment. He wrote the report as part of his job. He meets with the Chief under an order to do so. The August 13 meeting was an official meeting. It was a business meeting with a HR manager and other law enforcement officers present. Tolnay invoked his rights under a contract to have a union representative accompany him. The focus of the discussion was reviewing the July 26 arrests and August 3 stop. At the meeting, Tolnay maintained that his whole intent was to answer Chief Wearing's questions. He further maintained that his tone was "professional" during the entire meeting and that he referred to Chief Wearing as Chief or Sir. Although protected speech can occur in a private setting, the fact that the purpose of the speech was not to inform or to bring something to light, "is a relevant factor to the analysis." Bateman v. Fialkievicz, 2006 WL 1359157, at *5-8 (D. Conn. May 15, 2006)(citing Connick). Here, the purpose of Tolnay's speech was not to inform. He sought to protect himself by writing the last portion of the August 3 memo. In the August 13 meeting, he reacted to questioning by the Chief. He did not request the meeting to start a dialogue. He was ordered to appear at the Chief's office. According to Bombalicki, Tolnay was defending himself. Tolnay described his situation as one of feeling jeopardized.

"In th[e Second C]ircuit, courts have consistently held that the First Amendment does not protect disgruntled public employees who voice essentially personal complaints about their employers." Beckwith v. Erie County Water Authority, 413 F.Supp.2d 214, 221 (W.D.N.Y. 2006)(citing Ezekwo). In resolving the public employee's alleged violation of his First Amendment right to free speech, "the fundamental question is whether the employee is seeking to vindicate personal interests or bring to light a matter of political, social, or other concern to the community." Id. "Thus, a court must 'focus on the motive of the speaker and attempt to

26

determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.'" Id. (quoting Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999)).[21]

In Ezekwo, a physician commenced a § 1983 action against a hospital and related defendants alleging inter alia that she was passed over for chief resident in retaliation for her writing memoranda protesting her treatment and complaining about inadequacies in the residency program and the maintenance of the hospital. 940 F.2d at 777-78. She also wrote to the hospital's Equal Employment Opportunity Officer. Id. at 778. The Second Circuit affirmed the entry of judgment in favor of the defendants on the First Amendment retaliation claim. Id. at 781. It concluded that:

> "*[v]iewed objectively and as a whole,* Ezekwo's statements did not address matters of public concern. Her complaints were personal in nature and generally related to her own situation within the [hospital] residency program. Our review of her prolific writings convinces us that Ezekwo was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and individual development as a doctor.
>
> . . .
>
> The district court correctly reasoned that the mere fact that one or two of Ezekwo's comments could be construed broadly to implicate matters of public concern does not alter the general nature of her statements....

---

[21]/    Accordingly, the judges in this District have consistently held that an employee's speech is not protected by the First Amendment when he speaks as an employee upon matters of personal interest. See, e.g., Fago v. City of Hartford, 2006 WL 860126, at *9 (D. Conn. Mar. 31, 2006); Robinson v. Jones, 2006 WL 726673, at *3-4 (D. Conn. Mar. 20, 2006). When an employee "is not on a mission to protect the public welfare" but rather seeks to 'protect his own in his job, that speech is not protected under the First Amendment. See Fox v. Town of East Haven, 2006 WL 287208, at *6-7 (D. Conn. Jan. 6, 2006). See also Hellstrom v. United States Dep't of Veterans Affairs, 178 F.Supp.2d 164, 169 (N.D.N.Y. 2001), aff'd 46 Fed. Appx. 651 (2d Cir. 2002); McGee v. Public Water Supply Dist. #2, 2006 WL 18703, at *7 (E.D. Mo. Jan. 4, 2006); Bates v. University of Texas Medical Branch, 2003 WL 24299290, at *15 (S.D. Tex. Dec. 18, 2003).

Id. at 781 (emphasis added). See Bateman, 2006 WL 1359157, at *5-8 (citing Ezewko and

Cioffi). See also Linhart v. Glatfelter, 771 F.2d 1004, 1010 (7th Cir. 1985)(Connick test

"requires us to look at the *point* of the speech in question: was it the employee's point to bring

wrongdoing to light? Or to raise other issues of public concern, because they are of public

concern? Or was the point to further some purely private interest?").

Again, a review of Tolnay's speech, which is set forth in Chief Wearing's Garcetti brief,

and Tolnay's testimony as to "why" he wrote the case incident report for the August 3, 2002

motor vehicle stop, confirms that Tolnay's sole purpose for his report and statement(s), (other

than fulfilling his professional duties), was his personal issues. He testified that he wrote the last

portion of his report because he was "frightened" of the ramifications and needed to explain

because he knew what he was in store for. (12/1/05 Tr. at 176, 183) According to Tolnay's and

Bombalicki's testimony, Tolnay was defending himself at a meeting that Chief Wearing had

ordered him to attend. (12/1/05 Tr. at 247; 12/6/05 Tr. at 121) He did not seek a meeting with

the Chief or anyone else to begin a dialogue. Rather, he was answering questions posed to him

by Chief Wearing. To the extent Tolnay's comment regarding Captain Ortiz is at issue (and has

not been withdrawn as a result of Tolnay's closing argument (12/8/05 Tr. at 6-7)), that statement

amounted to a personal issue between Tolnay and the Captain. Bateman, 2006 WL 1359157, at

*5-8. The public was not concerned with that dispute or with how a police radio was utilized.

Piercy v. Federal Reserve Bank, 144 Fed. Appx. 897, 900 (2d Cir. 2005).

### D. The First Amendment Did Not Protect Tolnay's Speech Because It Was Merely Criticism Of A Supervisor And Related To An Employment Grievance Or "Employee Beef"

"Speech pertaining to internal personnel disputes and working conditions ordinarily will

not involve matters of public concern." Hellstrom v. United States Dep't of Veterans Affairs, 46

Fed. Appx. 651, 655 (2d Cir. 2002). "Carping criticism and abrasive conduct have no place in a small organization that depends upon common loyalty [and] 'harmony among coworkers.'" Janusaitis v. Middlebury Volunteer Fire Dep't., 607 F.2d 17, 26 (2d Cir. 1979). Accordingly, a plethora of cases recognize that the criticism of a governmental employer by an employee is not protected speech.[22] In other words, an "employee beef" is not protected speech. Lewter v. Kannensohn, 159 Fed. Appx. 641, 646 (6th Cir. 2005). See Sands v. Runyon, 1997 WL 716091, at *3 (2d Cir. Nov. 17, 1997)(distribution of a flier criticizing supervisors not a matter of public concern); Bateman, 2006 WL 1359157, at *5-8.

Moreover, even if the employee's criticism of a supervisor is determined to be protected speech, the employer is still protected by the Pickering balancing analysis and/or the doctrine of qualified immunity. More specifically, with regard to the Pickering balancing, the Second Circuit has itself recognized that "[i]f the speech was on matters of purely personal concern, 'the government is granted wide latitude to deal with the employee without any special burden of justification.'" Locurto v. Giuliani, 447 F.3d 159, 172 (2d Cir. 2006). Moreover, in Hesse v. Board of Educ., 848 F.2d 748, 752-54 (7th Cir. 1988), the court set aside a jury verdict in favor of the plaintiff and entered judgment for the defendants under the Pickering balancing analysis. In that case, the plaintiff, a public school teacher, sent a memorandum criticizing school board officials to them. Id. at 750-51. Although the Seventh Circuit acknowledged that educational policies in public school are matters of public concern, it concluded that all but one of the

---

[22]/    See Matsey v. Westmoreland County, 2006 WL 1371575, at *5 (3d Cir. 2006)("simpl[e] criticism of the job performance of a supervisor is not protected speech"); Lewter v. Kannensohn, 159 Fed. Appx. 641, 645-46 (6th Cir. 2005)(criticism by county attorney of judge's leniency towards criminal defendants not protected speech); Campbell v. Prince George's County, 2001 WL 706039, at *3-4 (D. Md. May 31, 2001)(Complaints to supervisors which could easily have been interpreted as personnel action related, not clearly established as deserving First Amendment protection).

plaintiff's memoranda and statements were directed to the defense of his personal treatment methods and his resentment of the evaluations and criticisms of those methods. Id. at 751-52.

The court noted that there was a "difference between criticism directed at the institution in general and disputes with which the complainant has an intimate personal involvement." Id. at 752. The fact that a public employee's verbalized reason for his lack of cooperation was a criticism of an institution did not significantly alter the essentially private nature of the dispute. Id. The Seventh Circuit believed that under Connick, a court is required to "look at the *point* of the speech in question: Was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" Id. A public employee may not transform a personal grievance into a matter of public concern "'by invoking a supposed popular interest in the way public institutions are run.'" Id. Based on its analysis of the plaintiff's memorandum, the Hesse court concluded that it was clear that the plaintiff "was not attempting to speak out as a citizen concerned with the problems facing the school district, but was instead attempting to articulate his own private disagreement with policies and procedures which he had either failed to apply or refused to follow." Id.[23]

One of the plaintiff's memoranda in Hesse argued that the school district's grading policy allowed students to pass regardless of whether they possessed the basic skills required of high

---

[23]/ The holding in Hesse is consistent with numerous decisions which recognize that employees' criticisms do not constitute protected speech because they fail to pass the Pickering balancing test. See Hanton v. Gilbert, 36 F.3d 4, 7 (4th Cir. 1994)(plaintiff's complaints related to her personal dissatisfaction with the terms of her employment); Larkin v. Town of West Hartford, 891 F.Supp. 719, 725-26 (D. Conn. 1995)(granting summary judgment under Pickering to claims based on plaintiff's criticism of fellow firefighters and departmental purchases of equipment); Hanton v. Gilbert, 842 F.Supp. 845, 851 (M.D.N.C. 1994), aff'd 36 F.3d 4 (4th Cir. 1994)(Pickering analysis must consider "whether the supervisor reasonably believed that the employee's speech threatened the supervisor's authority to run the office").

school graduates. Id. at 752. The court reviewed this memorandum "not only under all of the circumstances, but also in isolation." Id. It assumed that the memoranda dealt with a matter of public concern. Id. Thus, applying Pickering, it had to determine whether the school board was justified in taking the alleged retaliatory action that it did against the plaintiff. Id. The court found that by the time of the memorandum, the plaintiff's hostility had created an atmosphere detrimental to workplace harmony and cooperation. Id. at 752-53. The court held that it had to conclude that the interests of the school officials in promoting the efficiency of its public educational services far outweigh the interests of the plaintiff as a citizen in commenting upon the grading policies. Id.

In the instant case, a close examination of Tolnay's case incident report for the August 3, 2002 motor vehicle stop and his statement or statements during the August 13, 2002 meeting, under all the circumstances and in isolation, confirm that Tolnay's speech was not protected by the First Amendment. As Tolnay testified, the *point* of his speech or the reason "why" he said what he did and wrote what he did was to defend himself and to protect his job status. In fact, his counsel emphasized this point in her questioning of Captain Ortiz. (12/7/05 Tr. at 66-67) This speech, as well as Tolnay's comment about Captain Ortiz, are the classic employment grievances or "employee beefs" that are not protected by the First Amendment. Moreover, Tolnay's speech was solely of a personal interest. He did not seek to expose any alleged wrongdoing. He was not a whistle blower. He did not approach the media, any other law enforcement agencies or a prosecutor's office. Nor did he seek permission to speak with the media. As such, Tolnay's speech is not protected by the First Amendment. Even if he had any right, it was outweighed under Pickering by the police department's interests in discipline, loyalty and respect for the chain of command.

**E.    Tolnay's Unexpressed Concerns Are Not Entitled To Protection Under The First Amendment**

Tolnay's claim that his unexpressed concern for his fellow officers entitles him to First Amendment protection is misplaced. (Pl.'s Mem. at 23-24) Tolnay merely testified that at some unidentified point in time, he felt a concern about whether his fellow officers would enforce the law against the two ministers. (12/1/05 Tr. at 205) He never testified that he ever made any statement to anyone in which he expressed this alleged concern for his fellow officers. For example, Officer Abate did not know anything about any alleged political statements by Tolnay prior to the August 13 meeting. Moreover, when asked directly by his attorney *why* he included the information in the final portion of his case incident report, Tolnay testified in terms of being afraid of the ramifications. (12/1/05 Tr. at 176, 183) Thus, Tolnay's unexpressed concerns or feelings do not provide a basis for a First Amendment retaliation claim. The case law supports this conclusion.

It is well established that "[i]n the retaliation context, speakers simply may not invoke the protections of the First Amendment based on unexpressed viewpoints or un-uttered thoughts. Government officials are not mind readers." Wernsing v. Thompson, 423 F.3d 732, 753 (7th Cir. 2005), cert. denied, 126 S.Ct. 1476 (2006). In other words, "[s]peech unexpressed can hardly raise a subject of public concern or be a basis for retaliation." Flynn v. Menino, 944 F.Supp. 81, 93 (D. Mass. 1996), aff'd in relevant part, 140 F.3d 42 (1st Cir. 1998). In fact, this is the standard applied by the Second Circuit.

In Giacalone v. Abrams, 850 F.2d 79, 86-87 (2d Cir. 1988), the plaintiff, a former assistant attorney general, claimed that he was fired for expressing doubts about the ethical and legal correctness of the State's Department of Law's handling of a dispute with the IRS. Id. at 85. He also alluded to department officials' allegedly improper reliance on political concerns in

the formulation of policy. Id. In particular, the plaintiff's most disturbing allegation was that an

IRS investigation was somehow hushed up to protect the Attorney General's political interests.

Id. at 86. The Second Circuit reversed the district court's denial of qualified immunity and

applying, the Pickering balancing analysis, concluded that "it was not clearly established in

December 1982 that [the plaintiff's] discharge under the circumstances constituted a First

Amendment violation. The Pickering balancing test and decisions construing it at that time

would more likely have suggested to [the plaintiff's] superiors that his limited First Amendment

interest was outweighed by the disruption his action fostered." Id. at 88. In particular, in

conducting the balancing analysis and evaluating the weight to be given to the plaintiff's alleged

speech, the court noted that the plaintiff never raised his allegation that an IRS investigation was

somehow hushed up to protect the attorney general's political interests with his superiors. Id. at

86-87. Thus, the court found that the plaintiff's "emphasis on [one of the defendant's] purported

political motivation is therefore off the mark because the Pickering balancing test looks to the

employee's interest in speaking. Abstract concern about a particular subject carries no weight if

the employee chooses not to articulate it." Id. at 87.[24]

    Here, a review of what Tolnay actually said confirms that it was not regarding a matter of

public concern. In sum, Tolnay's speech, which is set forth in detail in Chief Wearing's Garcetti

brief, was either made pursuant to his professional duties or involved solely personal issues.

---

[24]/    Similarly, in Heil v. Santoro, 147 F.3d 103 (2d Cir. 1988), the Second Circuit affirmed
then-District Judge Barrington Parker's granting of summary judgment where he relied on and
quoted Giacalone for the proposition that part of a Pickering balancing analysis, the plaintiff's
"abstract concern about a particular subject carries no weight if the employee chooses not to
articulate it." Id. at 108. See Heil v. Santoro, 1997 WL 102451, at *5 n.4 (S.D.N.Y. Feb. 28,
1997)(Parker, J.), aff'd 147 F.3d 103 (2d Cir. 1998). In particular, in Heil, Judge Parker would
not consider the plaintiff's claim that he was concerned that the elimination of a number of
sergeant positions would jeopardize the public's health and safety, because the plaintiff did not
raise the issue in his speech. Id. (quoting Giacalone 850 F.2d at 86-87).

That speech is not protected by the First Amendment. Similarly, Tolnay's unexpressed and abstract concerns about others cannot be the basis for a First Amendment claim against Chief Wearing.

**III.   CHIEF WEARING IS ENTITLED TO A JUDGMENT UNDER THE <u>PICKERING</u> BALANCING ANALYSIS**

Tolnay's opposition to Chief Wearing's claim that he is entitled to judgment as a matter of law under the <u>Pickering</u> balancing analysis consists of a citation to the Court's ruling denying the summary judgment motion and the incorporation of his argument in opposition to Chief Wearing's motion for a new trial. (Pl.'s Mem. at 27-28) More specifically, with respect to his latter argument, Tolnay contends that Chief Wearing "provided no evidentiary basis useful to the <u>Pickering</u> balance, he failed to submit a proposed verdict form on the issue, and expressly approved of the form of verdict which went to the jurors." (<u>Id.</u> at 28) These arguments are primarily addressed in Chief Wearing's reply/supplemental memorandum in support of his new trial motion.

In particular, Tolnay's argument regarding the governing legal standard is without merit. In <u>Waters v. Churchill</u>, 511 US. 661 (1994)(plurality opinion), the Supreme Court recognized that in analyzing First Amendment claims, the government employer's "reasonable predictions of disruption" must be "given substantial weight." <u>Id.</u> at 673. Thus, the extent of the injury caused by the employee's speech "need not be actual; rather the government's burden is just to show that the speech *threatened* to interfere with government operations." <u>Locurto</u>, 447 F.3d at 178, 183 (emphasis original). <u>See Vanderpuye v. Cohen</u>, 94 Fed. Appx. 3, 5-6 (2d. Cir. 2004). As part of its analysis, <u>Locurto</u> determined that "[b]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more

34

latitude in their decisions regarding discipline and personnel regulations than an other ordinary government employer." 447 F.3d at 179.

As demonstrated in his initial memorandum and based on his testimony summarized above, under the circumstances of this case, Chief Wearing is entitled to the entry of a judgment as a matter of law under the <u>Pickering</u> balancing test. In sum, the Chief's and police department's interests in discipline, loyalty and respect for the chain of command outweighed any interest Tolnay had in protecting his job status and his advancing his personal grievances with the Chief and/or Captain Ortiz. <u>See Giacalone</u>, 850 F.2d at 86-88. Here, it is undisputed that Tolnay decided to declare the meeting over and to declare his intention to obtain legal counsel. He did not have a right to do either under the circumstances.

## IV.    CHIEF WEARING IS ENTITELD TO QUALIFIED IMMUNITY

Tolnay claims that qualified immunity is "unavailable" to Chief Wearing in this case. (Pl.'s Mem. at 25-27) In support of this claim, he advances two arguments. First, Tolnay maintains that at the time of the conduct at issue "it was well-established ... that a government official may not taken adverse punitive action against government employees in retaliation for the exercise of protected rights of expression." (<u>Id.</u> at 26) Second, he contends that if "a defendant is found to have maliciously retaliated against the employee on account of protected activity, immunity is unavailable." (<u>Id.</u> at 27) Tolnay's arguments are without merit. As demonstrated in his initial brief and below, Chief Wearing is entitled to qualified immunity.

### A.    Any First Amendment Right Was Not Clearly Established

In <u>Crawford-El v. Britton</u>, 523 U.S. 574 (1998), the plaintiff, a prisoner, alleged a § 1983 free speech retaliation claim that was subject to the defense of qualified immunity. The Court recognized that the standard for qualified immunity "eliminates all motive-based claims in which

35

the official's conduct did not violate clearly established law." Id. at 592. In particular, it

concluded as follows.

> Even when the general rule has long been clearly established (for
> instance, the First Amendment bars retaliation for protected
> speech), the substantive legal doctrine on which the plaintiff relies
> may facilitate summary judgment in two different ways. First,
> there may be doubt as to the illegality of the defendant's particular
> conduct (for instance, whether a plaintiff's speech was on a matter
> of public concern).... Second, at least with certain types of claims,
> proof of an improper motive is not sufficient to establish a
> constitutional violation -- there must also be evidence of causation.
> Accordingly, when a public employee shows that protected speech
> was a 'motivating factor' in an adverse employment decision, the
> employer still prevails by showing that it would have reached the
> same decision in the absence of the protected conduct.

Id. at 592-93. Thus, Crawford-El recognized that "evidence of improper motive is irrelevant on

the issue of qualified immunity." 523 U.S. at 589. The determination of whether an official's

alleged conduct violated clearly established law is a legal question. Id.

In Sound Aircraft Services, Inc. v. Town of East Hampton, 192 F.3d 329 (2d Cir. 1999),

the court held that the district court erred in rejecting the defendants' qualified immunity on the

basis of issues of fact with respect to their motivation. Id. at 334. As matters to be considered

on remand, the Second Circuit suggested that the district court first determine whether the

plaintiff had alleged the deprivation of an actual constitutional right at all, and if so, to then

proceed to determine whether that right was clearly established at the time of the alleged

violation. Id. See African Trade & Information Ctr., Inc. v. Abromaitis, 294 F.3d 355, 362, 364

(2d Cir. 2002)(finding right not clearly established and granting qualified immunity on First

Amendment claim).

In Mozzochi v. Borden, 959 F.2d 1174 (2d Cir. 1992), the Second Circuit reversed the

district court's denial of qualified immunity in a free speech case. Id. at 1178. The district court

36

had framed the qualified immunity question on this issue "as whether 'a citizen possessed a clearly established constitutional right not to have his speech regulated because the state actor disagreed with its content.'" Id. The Second Circuit recognized that "[p]osed in that manner, the question answer[ed] itself. Content based regulation of speech is clearly prohibited by the First Amendment." Id. The district court's statement of the issue was, "however, … more general than [wa]s appropriate in a qualified immunity inquiry." Id. It had addressed the plaintiff's free speech claim in "the abstract manner that the Supreme Court cautioned against in Anderson." Id. Thus, the Second Circuit concluded that its "first task, therefore, [wa]s to focus the inquiry to the appropriate 'level of generality.'" Id. The framing of the issue at the "proper level of generality" required the consideration of the facts of the case. Id. at 1179.

Thus, the analysis of whether a right is clearly established "must be undertaken in light of the case's specific context, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). Accordingly, courts within the Second Circuit are to consider:

> (1) whether the right in question was defined with 'reasonable specificity;' (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Pena v. Deprisco, 432 F.3d 98, 115 (2d Cir. 2005).[25]

In the case at bar, Chief Wearing is entitled to qualified immunity. The conclusion that a First Amendment right was clearly established in August 2002 based on a general reference to

---

[25]/    In Richardson v. Selsky, 5 F.3d 616 (2d Cir. 1993), the court held that the right at issue was not clearly established at the time in question. Id. at 622-23. As part of its analysis, it noted that "[i]f the district judges in the Southern District of New York, who are charged with ascertaining and applying the law, could not determine the state of the law with reasonable certainty, [it] seem[ed] unwarranted to hold prison officials to a standard that was not even clear to judges, especially since prescience on the part of prison officials is not required with respect to the future course of constitutional law." Id. at 623.

the prohibition against retaliation and the public's general interest about alleged wrongdoing, would be inconsistent with the analysis in Saucier and Mozzochi. As this Court recognized in its ruling on summary judgment, despite "exhaustive research" it could not find a factually similar decision. (3/9/05 Ruling, at 43) Given the analysis of several district judges within this Circuit (including a current member of the circuit court) in the decisions addressing police reports and memoranda, not to mention Garcetti, Chief Wearing cannot be found to have had the notice of any "clearly established" rights held by Tolnay. To the contrary, the case law recognizes that Tolnay had no First Amendment rights for speech related to his job, speech that was solely motivated by his personal interests or speech that constituted his grievance with his superiors. Moreover, it was not clearly established in August 2002 that the public was concerned about Tolnay's fears about his job status or Tolnay's disagreement with Captain Ortiz's decision to use one of three radio channels to communicate with Tolnay's immediate supervisor, Sergeant Burgh. Nor was the public concerned with Tolnay defending himself at the meeting with the Chief. Accordingly, Chief Wearing is entitled to qualified immunity.

**B.    Chief Wearing Is Entitled To Qualified Immunity In Connection With The Pickering Balancing Analysis**

Chief Wearing is also entitled to qualified immunity under the Pickering test. Oladeinde v. Birmingham, 230 F.3d 1275 (11th Cir. 2000) confirms this conclusion.[26] In Oladeinde, the plaintiffs, a police officer and sergeant, had requested that a captain grant them permission to report to the district attorney that one of them had seen two fellow officers looking at jail records concerning the arrest of the mayor's daughter. Id. at 1291. The officer refused the captain's request that she disclose what she had observed. The sergeant also refused to reveal what the

---

[26]/    Tolnay cited the district court decision in Oladeinde (Pl.'s Mem. at 24) without reference to its reversal on appeal.

officer had told her about the conduct of the two other officers. The captain denied the plaintiffs'
request to go to the district attorney, and directed them to make a report to the Internal Affairs
Division. Id. Although the plaintiff officer had failed to disclose any facts concerning
observations, including the names of the officers, she did inform the captain that her observations
related to the investigation of the chief of police's alleged tampering of arrest records. Id. at
1292.

The Eleventh Circuit recognized that the Pickering analysis is affected by the special
concerns of quasi-military organizations such as police departments. Id. at 1293. In a law
enforcement agency, there is a heightened need for order, loyalty, morale and harmony, which
affords a police department more latitude in responding to the speech of its officers than other
government employers. Id. In fact, in the context of law enforcement, the government's interest
is "particularly acute," as is a heightened interest in maintaining discipline and harmony among
the employees. Id.[27] In quasi-military organizations such as law enforcement agencies,
comments concerning co-workers' performance of their duties and superior officers' integrity
can directly interfere with the confidentiality, esprit de corps and efficient operation of the
agency or department. Id. at 1293-94. Consequently, the Oladeinde court concluded that the
plaintiffs' speech was not protected under the First Amendment because their interest in
speaking out was outweighed by the ... Police Department's interest in maintaining "order,
loyalty, morale, and harmony." 230 F.3d at 1294. Accordingly, the court held that the
defendants were entitled to qualified immunity.

---

[27]/    Thus, "'[i]t surely cannot be doubted that individuals who work in the highest echelons of
the command of a police department must be assured of the loyalty of their immediate
subordinates, as these subordinates are entrusted with carrying out their orders, at times under the
most trying conditions.'" Id. at 1294.

In the instant case, Chief Wearing's testimony, summarized above, confirms that he should receive qualified immunity under the <u>Pickering</u> analysis. He had serious concerns about the negative impact of Tolnay's direct insubordination to the Chief of Police. For example, it was undisputed that Tolnay declared that the meeting was over and that he would be obtaining legal representation. The Chief also considered Tolnay's comment about Captain Ortiz to be disrespectful. Moreover, it is undisputed that Tolnay declared the meeting over and declared his intention not to communicate any further without any attorney. Given the need for loyalty and respect for the chain of command in law enforcement agencies, Chief Wearing should receive qualified immunity. <u>See</u> <u>Locurto</u>, 447 F.3d at 178-79, 183.

### C.    Chief Wearing's Conduct Was Objectively Reasonable

In the wake of <u>Garcetti</u>, the case law cited by Tolnay should not bar this Court from holding as a matter of law that Chief Wearing is entitled to qualified immunity because his conduct was objectively reasonable. "Even if a clearly established statutory or constitutional right is violated, qualified immunity is nonetheless a defense if the officers' unlawful actions were *objectively reasonable* 'as measured by reference to clearly established law,' ..., and 'the information the officers possessed.'" <u>Lee v. Sandberg</u>, 136 F.3d 94, 101 (2d Cir. 1997). Based on a review of the testimony and the other evidence presented at trial, it is submitted that the Court can and should find as a matter of law that Chief Wearing's conduct was objectively reasonable under the circumstances, and, in particular, based on <u>Garcetti</u>. 126 S.Ct. at 1959-62.

## CONCLUSION

For the foregoing reasons, the Court should grant Chief Wearing's motion and enter judgment as a matter of law in favor of Chief Wearing.

Respectfully submitted,

**DEFENDANT**
**MELVIN WEARING**


By:     _____
        Robert A. Rhodes, Esq.
        CT Fed. Bar No. 13583
        **HALLORAN & SAGE LLP**
        315 Post Road West
        Westport, CT 06880
        Tel:      (203) 227-2855
        Fax:      (203) 227-6992
        E-Mail:  rhodes@halloran-sage.com

                and

        Ralph W. Johnson III, Esq.
        CT Fed. Bar No. 15277
        **HALLORAN & SAGE LLP**
        One Goodwin Square
        225 Asylum Street
        Hartford, CT  06103
        Tel:      (860) 522-6103
        Fax:      (860) 548-0006
        E-Mail:  johnsonr@halloran-sage.com

        His Attorneys

## CERTIFICATION

This is to certify that on this 30th day of June, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

_____
Ralph W. Johnson, III

849695_1 DOC

42