In his affidavit, which was submitted as plaintiff's Exhibit 1 in opposition to the summary judgment motion, Tolnay stated at paragraph 5 that his statement during the August 13 meeting that he believed that the meeting was "solely political" was "made toward the end of the meeting in response to the Chief's question regarding the reasons why I did not arrest or issue a summons to Daniel Rodriguez ...." (Pl.'s Aff., at ¶ 5) In that same paragraph, Tolnay stated that he "responded" to Chief Wearing's question "by stating that I did not take enforcement action because I feared being 'called into a second meeting with [the Chief].'" (Id.)[6]

In Tolnay's deposition transcript, which was submitted as plaintiff's Exhibit 2, Tolnay described his statement regarding Captain Ortiz as being that he felt that Ortiz's use of the radio was unprofessional. (Pl.'s S.J. Exh. 2, Tolnay 7/9/03 Depo. Tr. at 56) Shortly after the motor vehicle stop, Ortiz radioed Sergeant Burgh regarding the stop and issued orders for the Sergeant to communicate to Tolnay. (Id. at 45-46, 54-56) In his deposition, Tolnay maintained that at the August 13 meeting, he informed Chief Wearing that there was an "etiquette" that "need[ed] to be followed on the radio, no matter who you are, no matter what your rank is in th[e] department." (Id. at 56) Tolnay considered Ortiz's comments to Burgh over the radio to be degrading, even though Ortiz did not mention Tolnay by name. (Id. at 56) Tolnay informed Chief Wearing that he felt that Captain Ortiz "acted inappropriately over the radio." (Id. at 57) Tolnay believed that if Ortiz wanted to discuss it, Tolnay could have met with Ortiz and taken whatever criticism Ortiz had. (Id. at 56)

Lieutenant Leo Bombalicki's affidavit, which was submitted by Tolnay as plaintiff's Exhibit 13, indicated at paragraphs 3 and 4 that Bombalicki was a member of the executive

---

[6] At pages 19-20 of the March 9 Ruling, the Court acknowledged that Tolnay referenced Captain Ortiz's statement to Sergeant Bush on the radio, as part of his answering a question from Chief Wearing.

20

board of the police union. Paragraph 4 further indicated that the union is notified whenever an officer is to be interviewed or interrogated under circumstances that might lead to disciplinary action. Paragraph 5 of the affidavit stated that Bombalicki attended the August 13 meeting in his capacity as Tolnay's union representative. Paragraph 6 of Bombalicki's affidavit confirms that during the August 13 meeting, Chief Wearing questioned Tolnay about the July 26 arrests and August 3 motor vehicle stop.

Finally, at page 28 of his memorandum of law in opposition to the summary judgment motion, Tolnay argued that it was "immaterial that plaintiff's case incident reports, particularly the one involved in the Rodriguez motor vehicle stop, were made in the course of his duties as a police officer for at least a portion of the report was clearly designed to address an issue of perceived ... improprieties on the part of superiors." (Docket Entry No. 24, Pl.'s Oppo. Mem. of Law, at 28 (citing Koch v. City of Hutchinson, 847 F.2d 1436, 1448 (10th Cir. 1988))

Thus, in addition to the analysis in the March 9 Ruling, Tolnay's pleadings, admissions and arguments confirm that Chief Wearing is entitled to summary judgment under Garcetti and the decisions that have applied it. They demonstrate that all of the speech at issue arose out of or owes its existence to Tolnay's job duties. In particular, Tolnay's argument at page 28 of his opposition memorandum is dispositive under Garcetti. At page 28 Tolnay admits that both of his case incident reports "were made in the course of his duties as a police officer." As such, the August 3 Case Incident Report is not protected by the First Amendment. Similarly, Tolnay's answering questions about the July 26 arrests and August 3 motor vehicle stop at a business meeting he was "ordered" to attend (and at which he was provided union representation under the normal procedures governing such meetings) is not protected by the First Amendment.

21

Accordingly, under Rule 60(b)(1), after <u>Garcetti</u>, the Court should reconsider its denial of summary judgment and enter summary judgment in favor of Chief Wearing.

### 2. Chief Wearing Is Entitled To Qualified Immunity

After <u>Garcetti</u>, under Rule 60(b)(1), the Court should also reconsider its holding in the March 9 Ruling that Chief Wearing was not entitled to qualified immunity.

At pages 47-48 of its March 9 Ruling, the Court framed the qualified immunity inquiry as whether it was "clearly established in 2002 that ... disciplinary action[s], based on speech alleging possible political misconduct by high officials in the City, including the Mayor and Chief of Police, in enforcing the laws of this jurisdiction, was violative of the Plaintiff's First Amendment rights." The Court held that the question as it framed it had to be answered in the affirmative.

At the outset, it is respectfully submitted that the Court should re-examine what Tolnay actually wrote and said. Such a re-examination will confirm that actual speech at issue does not match the Court's characterization of it in its framing of the qualified immunity inquiry. The actual speech at issue is not protected by the First Amendment.

After <u>Garcetti</u>, the Court must reconsider its analysis of qualified immunity. <u>Garcetti</u> and the decisions that have applied demonstrate that (a) Tolnay did not have any First Amendment rights in the speech at issue; (b) if he did, those rights were not "clearly established" in August 2002 and (c) if they were clearly established, Chief Wearing's conduct was objectively reasonable, as a matter of law, given the circumstances and the status of the case law.

The March 9 Ruling recognized, consistent with Supreme Court and Second Circuit precedent that the framing of the issue for the qualified immunity analysis, and in particular, the clearly established analysis, cannot be a generalized or overly broad statement of the right and

22

circumstances at issue. (3/9/05 Ruling, at 47 (The "inquiry requires this Court to define the Constitutional right with specificity.")) See Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Pena v. DePrisco, 432 F.2d 98, 114-15 (2d Cir. 2005). A more particularized or specific analysis is required. The March 9 Ruling further acknowledged that "[t]he facts of this case are strikingly dissimilar to any other case analyzed through exhaustive research by this Court, ...." (3/9/05 Ruling, at 43) That statement alone is dispositive of the clearly established analysis.

After Garcetti, there is no question that any First Amendment right held by Tolnay under the circumstances at issue was not clearly established in August 2002. In the wake of Garcetti, this Court cannot identify any Supreme Court or Second Circuit decision that recognizes a police officer's First Amendment right under the circumstances at issue, i.e., a case incident report explaining a motor vehicle stop, prepared while the officer is on duty and which is expressly incorporated by reference into a memorandum the officer was ordered to prepare to explain the stop.[7] Nor can the Court identify a Supreme Court or Second Circuit decision that clearly establishes that a police officer has a First Amendment right in his statements at an official meeting with the Chief of Police that the officer was ordered to attend and at which the officer was answering questions about an arrest and a motor vehicle stop.

Even assuming for the sake of argument that the August 3, 2002 case incident report and the statements at the August 13, 2002 meeting are dissected and artificially divided, the speech arises out of or owes its existence to Tolnay's job duties. Ryan, 2006 WL 1888326, at *14. At a minimum, the speech "falls" within that "category." Garcetti, 126 S.Ct. at 1961. Thus, any First

---

[7]   In particular, Garcetti did not hold that prior to May 2006 governmental employees had a First Amendment right in speech that arises out of or owes its existence to their job responsibilities, as defined by a practical test. To the contrary, Garcetti declared that the "[p]roper application of [Supreme Court] precedents...leads to the conclusion that the First Amendment does not prohibit managerial discipline based on an employee's expression made pursuant to official responsibilities." 126 S.Ct. at 1961.

23

Amendment protection was not clearly established in August 2002. Accordingly, the Court should reconsider its March 9 Ruling and enter summary judgment in favor of Chief Wearing based on qualified immunity.

### 3. The Plaintiff's Claim Fails Under The <u>Pickering</u>-Balancing Analysis

After <u>Garcetti</u>, the Court must also reconsider its application of the <u>Pickering</u> balancing test in its March 9 Ruling. If <u>Garcetti</u> did not eliminate any First Amendment protection for the speech at issue, it drastically reduced the strength of any such protection that must be considered as part of the balancing analysis. Thus, that speech does not outweigh the interest in maintaining the chain of command and loyalty. Moreover, as discussed above, <u>Garcetti</u> re-affirms that the federal courts should not engage in "judicial oversight" of the managerial decisions made by governmental employers. <u>Garcetti</u> also confirms that governmental employers can discipline employees for what the employers consider to be inflammatory or misguided speech. 126 S. Ct. at 1961.

At pages 43-44 of the March 9 Ruling, the Court analyzed the <u>Pickering</u> issue based solely on the alleged feelings of the patrol officers in the New Haven Police Department. In support of its analysis, the Court quoted a news article which maintained that officers and/or their union felt "sold out" by the Mayor and Chief and the handling of the incidents involving the ministers. The Court held that there was no evidence of "'likely interference' with the operations of the Police." The Court reached this holding, despite acknowledging that it was undisputed that "Tolnay stated that the [August 13] meeting was over and that he thought he needed legal counsel, after which we would speak with Wearing again." (3/9/05 Ruling, at 20; <u>see id.</u> at 37)

<u>Garcetti</u> recognizes that governmental employers can discipline employees for what the employers consider to be inflammatory or misguided speech. 126 S. Ct. at 1960-61. It further

24

recognizes that the First Amendment "does not empower [public employees] to 'constitutionalize the employee grievance.'" Id. at 1959. A Pickering balancing analysis in the context of a police department (a quasi-military agency) and direct insubordination to the Chief of Police requires a consideration of the effect of the speech and conduct on the "chain of command" and loyalty. Here, it was undisputed that Tolnay declared that the August 13 meeting with Chief Wearing was over. Page 58 of Tolnay's deposition transcript, which the Court cited in its March 9 Ruling, includes Tolnay's testimony that at the August 13, 2002 meeting he stated "this meeting is over with." Tolnay also "said, 'I think that I'm done, and I think I need legal counsel. The next time I speak with you, it will be after I've spoken with legal counsel.'"

Tolnay's undisputed, unilateral ending of a meeting with the Chief of Police and demanding of legal representation before speaking any further with the Chief constituted direct insubordination to the highest ranking officer in the chain of command. When weighed against speech arising out of Tolnay's job duties, the Pickering analysis weighs overwhelmingly in favor of Chief Wearing. As part of the chain of command, patrol officers do not have the right to end meetings with the Chief of Police and refuse to speak further without consulting an attorney. See Williams v. Seniff, 342 F.3d 774, 784 (7th Cir. 2003)(in police department "discipline and respect for the chain of command are critical to accomplishing the entity's mission of maintaining order and public safety."). See also Locurto v. Guliani, 447 F.3d 159, 178-79 (2d Cir. 2006); Kokkinis v. Ivkovich, 185 F.3d 840, 846 (7th Cir. 1999). Nor do patrol officers get to decide what "etiquette" should be used by Captains or what orders are and are not proper. See Garcetti, 126 S. Ct. at 1966-67 (Souter, J., dissenting)(police officer's balking at superior's unconstitutional orders not protected by the First Amendment after Garcetti); Bailey v. Department of Elementary and Secondary Educ., 451 F.3d 514, 520-22 (8th Cir. 2006).

25

The impact of direct insubordination on the balancing analysis cannot be understated. As part of the Pickering balancing analysis, supervisors are not required to tolerate open insubordination. Nor are supervisors required to wait before insubordination worsens before responding. See Connick, 461 U.S. at 152. In fact, in Connick, the Supreme Court recognized that "[w]hen a government employee personally confronts his immediate supervisor, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message, but also by the manner, time, and place in which it is delivered." 461 U.S. at 153. Such statements and conduct have a "detrimental impact on close working relationships for which personal loyalty and confidence are necessary." Rankin v. McPherson, 483 U.S. 378, 388 (1987).

It is respectfully submitted that the Court's Pickering analysis in its March 9 Ruling constituted the "judicial oversight" of governmental employers that Garcetti prohibits. Accordingly, after Garcetti and under Rule 60(b)(1), the Court should enter summary judgment in favor of Chief Wearing under the Pickering balancing analysis.

### 4. Chief Wearing Is Entitled To Qualified Immunity In Connection With The Pickering Balancing Analysis

At page 43 of its March 9 Ruling, the Court recognized that "[t]he facts of this case are strikingly dissimilar to any other case analyzed through exhaustive research by this Court, making the Pickering balancing test an anomaly." That conclusion alone required the entry of summary judgment in favor of Chief Wearing based on Pickering and the doctrine of qualified immunity. Moreover, as discussed above, Garcetti and the decisions that have applied it, confirm that Tolnay's speech: (a) was not protected by the First Amendment; (b) if it was, that the protection was not clearly established in August 2002 and (c) any protection was, at most, minimal as the speech arose out of or owed its origins to Tolnay's job duties. Thus, any

26

balancing under Pickering, in the face of direct insubordination, would weigh overwhelmingly in favor of Chief Wearing. In addition to the direct Pickering analysis, after Garcetti, Chief Wearing is entitled to summary judgment based on the application of qualified immunity to the Pickering balancing analysis. Garcetti and the decisions that have applied it confirm that it was not clearly established in August 2002 that under the circumstances at issue, the balancing would weigh in favor of the employee's speech. Moreover, under such circumstances and given the status of the law, Chief Wearing's actions were objectively reasonable, as a matter of law.

Accordingly, after Garcetti and under Rule 60(b)(1), the Court must reconsider its denial of summary judgment and enter judgment in favor of Chief Wearing.

### B.  The Court Should Reconsider Its Denial Of Chief Wearing's Rule 50(a) Motion In Light Of Garcetti

In addition to reconsidering its denial of the summary judgment motion, the Court should also reconsider its denial of Chief Wearing's Rule 50(a) motion at the end of the plaintiff's case. As demonstrated in detail in Chief Wearing's June 30 memorandum regarding Garcetti, after Garcetti it is clear that: (a) Tolnay's speech is not protected by the First Amendment; (b) Tolnay's claim fails under the doctrine of qualified immunity; (c) Tolnay's claim fails under the Pickering balancing analysis; and (d) Tolnay's claim fails when qualified immunity is applied to the Pickering analysis.

Moreover, any claim of prejudice by Tolnay is misplaced. The granting of the Rule 50(a) motion, as demonstrated by Chief Wearing's June 30 memorandum, is appropriate based on Tolnay's testimony and the testimony and evidence introduced by Tolnay. It is well-established that a plaintiff does not have a right to manufacture a question of fact by contradicting his own testimony and other evidence. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)(factual allegations made for first time in affidavit which contradicts prior deposition

27

testimony will not defeat summary judgment). Thus, Tolnay cannot recant the testimony or evidence he submitted. Based on Tolnay's testimony and the other testimony and evidence he introduced in his case in chief, there is no room for "serious debate" under Garcetti's practical test for determining when speech arises out of employment duties. Ryan, 2006 WL 1888326, at *14. Consequently, it is clear that the speech at issue arose out of or owes its existence to Tolnay's job duties. Accordingly, after Garcetti and under Rule 60(b)(1), the Court should reconsider its denial of Chief Wearing's Rule 50(a) motion. With that reconsideration, the Court should enter judgment in favor of Chief Wearing.

### C. The Court Should Relieve Chief Wearing From The Judgment In Light Of Garcetti

As part of his Rule 50(b) motion, Chief Wearing relied on Judge O'Scannlain's special concurrence in the Ninth Circuit's decision in Garcetti. Based on the analysis above and in Chief Wearing's June 30 memorandum regarding Garcetti, the Court should relieve Chief Wearing from the judgment against him and enter a judgment in his favor under Rules 50(b) and 60(b)(1). It should further grant him a new trial, as an alternative ruling. See Fed. R. Civ. P. 50(c), 59.

### II. THE COURT SHOULD GRANT CHIEF WEARING'S MOTION UNDER RULE 60(b)(6)

"A district court should grant relief from operation of a judgment under Rule 60(b)(6) when it determines in its sound discretion that substantial justice would be served." Cincinnati Ins. Co. v. Byers, 151 F.3d 574, 578 (6th Cir. 1998). See id. (reversing district court's denial of Rule 60(b)(6) motion based on significant change in state law). In Sergeant, the Second Circuit identified four factors relevant to consider in determining the propriety of recalling a mandate when faced with an intervening change of law. 75 F.3d at 90. They are: (1) whether the new law is "beyond any question inconsistent" with the earlier decision; (2) whether the moving party

notified the court of a pending case or motion that may alter the decisional law; (3) whether "substantial" time has elapsed between the earlier decision and the pending motion; and (4) whether equity strongly favored the moving party. Id. District courts have considered these factors when analyzing a Rule 60(b)(6) motion. See Scott v. Gardner, 344 F.Supp.2d 421, 425-26 (S.D.N.Y. 2004)(applying Sergeant factors in ruling on Rule 60(b)(6) motion); DeVino, 215 F.Supp. 2d at 418 (same).

As demonstrated above, several courts have recognized that Garcetti *changed* or *clarified* the analysis that must be applied to a First Amendment retaliation claim. Here, a review of the record confirms that under Garcetti's reasoning: (a) Tolnay's speech was not protected by the First Amendment; (b) if it was, any right under the First Amendment was not clearly established in August 2002 and thus Chief Wearing is entitled to qualified immunity; (c) Chief Wearing's conduct was objectively reasonable, as a matter of law, under the circumstances and the status of the law; (d) the Pickering balancing analysis weighs overwhelmingly in Chief Wearing's favor; (e) the application of the qualified immunity doctrine to the Pickering analysis bars Tolnay's claim against Chief Wearing; and (f) this Court cannot hold as a matter of law that Tolnay's speech did not arise out of or owes its existence to his duties as a police officer. Thus, allowing the judgment to stand in the wake of Garcetti would constitute a manifest injustice. Accordingly, the Court should relieve Chief Wearing from the judgment and enter a judgment in his favor. Moreover, the Court should also grant Chief Wearing a new trial on all issues, as an alternative ruling. See Fed. R. Civ. P. 50(c), 59.[8]

The application of the Sergeant factors further confirms that the Court should grant Chief Wearing's motion under Rule 60(b)(6). First, as discussed above, based on the record (and in

---

[8] Chief Wearing initially made his motions under Rules 60(b)(5) and 60(b)(6) at the oral argument on July 21, 2006.

particular, Tolnay's testimony, the August 3 Case Incident Report and Tolnay's August 3 memo to Captain Ortiz), under Garcetti it is clear that Tolnay's speech is not protected by the First Amendment and that Chief Wearing is entitled to qualified immunity. This Court's holdings to the contrary in its March 9 Ruling and its denial of the Rule 50(a) motion are inconsistent with that conclusion. At a minimum, Garcetti has significantly clarified the law. See Adams, 888 F.2d at 702; Manhattan Cable, 824 F. Supp. at 36. It is clear under the new or clarified standard that: Tolnay's speech was not protected by the First Amendment; Chief Wearing is entitled to qualified immunity; the Pickering balancing analysis strongly favors Chief Wearing; and the application of qualified immunity to the Pickering analysis requires the entry of judgment in favor of Chief Wearing.

Second, Chief Wearing's Rule 50(b) motion notified the Court of the pendency of the Garcetti case before the Supreme Court. It also expressly relied upon Judge O'Scannlain's special concurrence to the Ninth Circuit's decision. The day after the Supreme Court issued its decision in Garcetti, this Court ordered the filing of briefs addressing the impact of the decision in Garcetti on the case at bar.

Third, a substantial time has not elapsed between the trial (December 2005) and the issuance of Garcetti (May, 2006). Chief Wearing's Rule 50(b) and Rule 59 motions are still pending. In fact, Garcetti was issued less than 13 months after the March 9, 2005 Ruling denying summary judgment.

Finally, equity strongly favors Chief Wearing. A defendant cannot be liable under 42 U.S.C. § 1983 *unless* he has violated a constitutional right and that right was clearly established at the time in question. Four of the core issues before this Court have always been: (1) whether Tolnay's speech was protected by the First Amendment; (2) whether Chef Wearing was entitled

30

to qualified immunity; (3) whether the Pickering balancing analysis weighed in favor of Chief Wearing; and (4) whether the qualified immunity and Pickering analysis require the entry of a judgment in favor of Chief Wearing. This Court must apply the law as it stands at the time it issues a ruling (and as articulated by the Supreme Court) on those issues. Under Garcetti, the Supreme Court's most recent pronouncement in this area, it is clear that Tolnay's speech was not protected by the First Amendment and even if it was, any such right was not "clearly established" in August 2002. Garcetti is also dispositive of the Pickering and Pickering/qualified immunity issues. It would constitute a manifest injustice to allow a plaintiff to obtain a judgment under § 1983 where there has been no constitutional violation and/or where the defendant was entitled to qualified immunity based on the law as defined by the Supreme Court.

Thus, in sum, Garcetti is a "supervening change in governing law [that] calls into serious question the correctness of the court's judgment" and the Rule 60(b)(6) motion should be granted. Scott, 344 F. Supp. 2d at 426 (quoting Sargent, 75 F.3d at 90). See CMI Corp. v. Cedarapids, Inc., 149 F. Supp. 2d 1284, 1288 (W.D. Okla.)(granting Rule 60(b)(6) motion based on new rule of law), appeal dismissed 21 Fed. Appx. 925 (Fed. Cir. 2001). At a minimum, Garcetti is a significant clarification of the law which requires the granting of the Rule 60(b)(6) motion. See Manhattan Cable, 824 F. Supp. at 36 (granting Rule 60(b)(6) motion).

The granting of the Rule 60(b)(6) motion is particularly appropriate in the instant case because the change or clarification of the law goes to the very core of or basis for the plaintiff's First Amendment claim, i.e., whether the speech was protected and if so, whether the claim was barred by qualified immunity. See Adams, 888 F.2d at 702.

Accordingly, the Court must relieve Chief Wearing of the judgment and enter a judgment in his favor. Moreover, under Garcetti, the Court cannot hold as a matter of law that Tolnay's

31

speech did not arise out of or owes its existence to his job duties. Consequently, the Court must also order a new trial on all issues, as an alternative ruling. See Fed. R. Civ. P. 50(c), 59.

### III. THE COURT SHOULD GRANT CHIEF WEARING'S MOTION UNDER RULE 60(b)(5)

Based on the analysis set forth above, if the Court does not grant Chief Wearing's motion under Rule 60(b)(1) or Rule 60(b)(6), it should grant his motion under Rule 60(b)(5). It is respectfully submitted that a judgment in excess of $5 million has perspective applications. Moreover, as discussed above, the equities clearly weigh in favor of vacating the judgment based on the reasoning of the Supreme Court in Garcetti.

## CONCLUSION

For the foregoing reasons, the Court should grant Chief Wearing's motion and enter judgment in his favor. The Court should also order a new trial on all issues as an alternative ruling.

                Respectfully submitted,

                **DEFENDANT**
                **MELVIN WEARING**

By: _____
     Robert A. Rhodes, Esq.
     CT Fed. Bar No. 13583
     **HALLORAN & SAGE LLP**
     315 Post Road West
     Westport, CT 06880
     Tel:    (203) 227-2855
     Fax:   (203) 227-6992
     E-Mail:  rhodes@halloran-sage.com

              and

     Ralph W. Johnson III, Esq.
     CT Fed. Bar No. 15277
     **HALLORAN & SAGE LLP**
     One Goodwin Square
     225 Asylum Street
     Hartford, CT  06103
     Tel:    (860) 522-6103
     Fax:   (860) 548-0006
     E-Mail:  johnsonr@halloran-sage.com

     His Attorneys