# EXHIBIT A



FILED
CLERK, U.S. DISTRICT COURT
JAN 3 0 2002
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
JAN 3 0 2002
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Priority   ✓
Send       ✓
Enter      ✓
Closed
JS-5/JS-6  ✓
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CEBALLOS,<br><br>Plaintiff,<br><br>v.<br><br>GIL GARCETTI, et. al.,<br><br>Defendants. | CASE NO. CV 00-11106 AHM (AJWx)<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING REMAINING CLAIMS<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

## INTRODUCTION

Defendants Gil Garcetti, Frank Sundstedt and Carol Najera (collectively "Defendants") have filed a Motion for Summary Judgment, or, in the alternative, Summary Adjudication of Issues. Plaintiff Richard Ceballos's (alternatively "Plaintiff" or "Ceballos") Second Amended Complaint (SAC) alleges two claims against the defendants: (1) a section 1983 claim based on violations of his First and Fourteenth Amendment rights, and (2) a state law claim for intentional infliction of emotional distress (IIED).[1] As to Plaintiff's section 1983 claim,

---

[1] The SAC names as Defendants the three individuals who bring this motion and the City of Los Angeles ("City"). However, neither the section 1983 claim nor the IIED claim – the sole remaining causes of action in the SAC – are brought

Defendants argue they are entitled to summary judgment under the doctrine of qualified immunity. As to Plaintiff's IIED claim, Defendants argue there is no evidence of either outrageous conduct or severe emotional distress and they are entitled to immunity under California Government Code Section 821.6. Because the Court finds Defendants are entitled to qualified immunity as to Plaintiff's section 1983 cause of action, the Court GRANTS Defendants' motion as to that claim. In addition, as summary judgment in favor of Defendants is warranted on Plaintiff's sole federal cause of action, the Court declines to further exercise its supplemental jurisdiction over Plaintiff's remaining state law claim for Intentional Infliction of Emotional Distress (IIED). As a result, that claim is hereby DISMISSED without prejudice.

## FACTS

Plaintiff has been employed as a Deputy District Attorney with the Los Angeles County District Attorney's Office ("DA's Office") since 1989. (Plaintiff's Statement of Genuine Issues ("SGI") ¶ 1). In 2000, when Plaintiff was assigned as a calendar deputy at the Pomona branch of the DA's office, he was approached by Richard Escobedo, a criminal defense attorney representing one of the defendants in the case of *People v. Cuskey*. (SGI ¶ 2). Mr. Escobedo told Plaintiff that he believed the arresting deputies in the *Cuskey* case may have lied in the search warrant affidavit and requested that plaintiff review the case. (SGI ¶ 3). After speaking with Mr. Escobedo, Plaintiff reviewed the affidavit and other documentary evidence in the case, and he personally visited the crime scene. He determined that, at a minimum, the deputies had grossly misrepresented the truth. (SGI ¶ 4). Thereafter, Plaintiff discussed the matter with Defendant Frank Sunstedt, the then-Head Deputy District Attorney, and

---

against the City. As a result, Defendants' motion addresses the entirety of Plaintiff's action.

2

1  Defendant Carol Najera, Plaintiff's immediate supervisor. (SGI ¶ 5). Both
2  Najera and Sunstedt agreed there was a problem with the case. (*Id.*).
3  On March 2, 2000, Plaintiff prepared a memorandum setting forth a
4  summary of his investigation and his conclusion that the affidavit was falsified
5  and misleading, and recommending that the *Cuskey* case be dismissed. (SGI ¶ 6).
6  The memorandum was sent to Defendant Sunstedt. (*Id.*). Upon reviewing the
7  memorandum, Sunstedt recommended Plaintiff revise the document so that it was
8  less accusatory of the deputies involved in the case. (SGI ¶ 7; Ceballos Depo. at
9  90 (Ex. 4, Pl.'s Appendix of Exhibits)). After the plaintiff complied with
10 Sunstedt's request, Sunstedt contacted the Sheriff's Department Industry Station
11 and requested a meeting to review the matter.[2]
12 On March 9, 2000, a meeting regarding the *Cuskey* case was held in Mr.
13 Sunstedt's office. (SGI ¶ 9). The meeting was attended by several
14 representatives of the Sheriff's Department, including the deputy sheriff who
15 prepared the search warrant affidavit, as well as Plaintiff and Defendants Sunstedt
16 and Najera. (SGI ¶ 9). After the meeting, Sunstedt was no longer sure that
17 dismissal of the *Cuskey* case was appropriate, and decided the best course of
18 action was to proceed with the Motion to Traverse the warrant which had already
19 been filed by the defense. (SGI ¶ 10). Plaintiff later testified at the Motion to
20 Traverse hearing, and the Motion was denied. (SGI ¶ 14). Ultimately, one
21 defendant was convicted at trial and two pled guilty.
22 Both during the March 9th meeting and thereafter, Plaintiff alleges the
23 defendants subjected him to several acts of retaliation on account of his March 2,
24 2000 memorandum. (SAC ¶ 13). The alleged acts of retaliation are as follows:

---

[2] Plaintiff contends the meeting was held in response to a demand by the Sheriff's Department. (SGI ¶ 8). However, that dispute is immaterial to the resolution of this motion.

3

1. At the March 9, 2000 meeting, Defendants Sunstedt and Najera did not object in any manner to the request of a Sheriff's Department Lieutenant that Plaintiff be removed from the *Cuskey* case. (SAC ¶ 14; SGI ¶ 17).

2. On March 14, 2000, Defendant Sunstedt allegedly told Plaintiff that he would no longer be a calendar deputy at the Pomona branch and would be re-assigned as a trial deputy. (SAC ¶ 15; SGI ¶ 17).

3. On March 15, 2000, Defendant Najera informed the plaintiff that one of his murder cases would be re-assigned to a lower level Deputy District Attorney. (SAC ¶ 17; SGI ¶ 18).

4. On March 16, 2000, Plaintiff reiterated to Defendant Najera his belief that the Sheriff's Department deputies had lied in the *Cuskey* matter. (SAC ¶ 17). Thereupon, Defendant Najera verbally reprimanded and berated Plaintiff and told him that his actions and statements would get Plaintiff "in trouble with the District Attorney's office." (SAC ¶ 17; Ceballos Depo. at 124-125).

5. Following the Motion to Traverse hearing on March 20, 2000, Defendants Sunstedt and Najera did not assign any further murder cases to Plaintiff. (SAC ¶ 18; SGI ¶ 19).

6. On August 25, 2000, Plaintiff was denied a promotion to Grade IV. (SAC ¶ 19; SGI ¶ 19).

7. In late August and early September, Defendant Najera informed Plaintiff that he could not remain in the Pomona branch unless he agreed to filing misdemeanors. (SGI ¶ 25; Ceballos Depo. at 24). Plaintiff was given a choice of filing misdemeanors in Pomona or working as a felony-filing deputy in the El Monte branch. (SGI ¶ 25). Because Plaintiff felt the Pomona position was demeaning, he did not choose between the two offers and was transferred to the El Monte branch on September 5, 2000. (SGI ¶ 26 - 27; Ceballos Depo. at 29).

Plaintiff contends the defendants took the above actions in retaliation for his March 2, 2000 memorandum regarding the *Cuskey* case. As such, the SAC alleges Defendants are liable under 42 U.S.C. § 1983 for violating Plaintiff's right to free speech under the First and Fourteenth Amendments to the United States Constitution. (SAC ¶ 27). In addition, Plaintiff's Second Cause of Action alleges the actions of Defendants Sunstedt and Najera constitute IIED under California law. Defendants contend that there is no genuine issue for trial as to each claim.

## MOTION STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary

judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 1603, 143 L.Ed.2d 966 (1999) (*citing Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id*.; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551-52, 143 L.Ed.2d 731 (1999) (*citing Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

I.  **THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SECTION 1983 CLAIM.**

Defendants argue they are entitled to summary judgment based on qualified immunity. In support of their claim, Defendants make three arguments: (1) Plaintiff's speech (the March 2, 2000 memorandum) was not protected by the

6

1 First Amendment; (2) even if the Court finds such speech was protected, the right
2 violated was not "clearly established;" and (3) Defendants' actions were
3 reasonable under the circumstances. Because the Court finds Defendants are
4 correct that Plaintiff's speech was not entitled to First Amendment protection, and
5 that even if it was, the First Amendment right allegedly violated was not "clearly
6 established," the Court finds summary judgment is proper as to Plaintiff's Section
7 1983 claim.

### A. Legal Standard for Qualified Immunity

Public officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). If the asserted constitutional right was not clear, the officials cannot be liable.

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001), the Supreme Court stated that in ruling on a summary judgment motion based on qualified immunity, the court must first ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

### B. Plaintiff's Speech Was Not Protected by the First Amendment

Whether speech is protected by the First Amendment is a question of law for the court to decide. *Connick v. Myers*, 461 U.S. 138, 148 fn. 7, 103 S. Ct. 1684 (1983). In determining whether a public employee's speech is protected by the First Amendment, the threshold inquiry is whether the statements at issue substantially address a matter of public concern. *Brewster v. Board of Education*

7

*of the Lynwood Unified School District*, 149 F. 3d 971, 978 (9th Cir. 1998). If the statements do not address a matter of public concern, the First Amendment is not triggered and it is unnecessary to scrutinize the reasons for the employer's action. *Id*. However, even if the plaintiff is able to show that his statements were of public concern, that is not sufficient, standing alone, to warrant constitutional protection. *Id*. at 979. Rather, that showing merely ensures that the court will test the reasons for restriction against First Amendment standards. *Id*. In doing so, the court must engage in a balancing test; it must weigh the interests of the employee in commenting on matters of public concern with the interest of the State, as an employer, in promoting the efficiency of the public services it performs. *Id*. (citing *Pickering v. Bd. of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731 (1968)). In balancing these considerations, the court must give government employers "'wide discretion and control over the management of [their] personnel and internal affairs.'" *Id*. (quoting *Connick*, 461 U.S. at 151, 103 S. Ct. 1684).

Here, Defendants argue that Plaintiff's March 2, 2000 memorandum is not entitled to First Amendment protection because it did not address a matter of public concern and even if it did, the *Pickering* balancing test weighs in favor the defendants. (Mot. at 8-11).

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah County, Oregon*, 48 F. 3d 420, 422 (9th Cir. 1995) (quoting *Connick*, 461 U.S. at 146, 103 S. Ct. 1684). In determining whether an employee's speech involves a matter of public concern, the court must scrutinize the content, form and context of [the] statement. *Id*. (citing *Connick*, 461 U.S. at 146, 103 S. Ct. 1684).

Here, there are no significant factual disputes regarding the communication at issue – Plaintiff's March 2, 2000 memorandum regarding the *Cuskey* case. The memorandum set forth a summary of Plaintiff's investigation and his conclusion

8

that the affidavit in *Cuskey* was falsified and misleading. (SGI ¶ 6). In addition, in the memorandum Ceballos recommended that the *Cuskey* case be dismissed. (*Id.*). The memorandum was sent to Defendant Sunstedt and formed the basis for his decision to convene a meeting with representatives of the Sheriff's Department to discuss the case. (SGI ¶ 6, ¶ 8). There is no evidence in the record that plaintiff caused the memorandum to be delivered to anyone other than Defendants Sunstedt and Najera. (SGI ¶ 6-8).[3]

At first blush, and looked at from a perspective not shaped by judicial precedent, Plaintiff's speech clearly involved a matter of public concern. For reasons that need not be recited - - the code word "Rampart" says it all - - there can be no doubt that, in Southern California, police misconduct is a matter of great political and social concern to the community. In recent years, various local law enforcement agencies have been severely criticized for what many believe to be serious misconduct on the part of police officers. Plaintiff's speech dealt with an example of what he believed to be such misconduct.

Despite the intrinsic and important public interest in excluding perjured evidence from court proceedings, however, the mere significance of that issue does not establish that Ceballos's views addressed an issue of public concern for purposes of the First Amendment, because (as Defendants argue) he wrote it as part of his job. (Reply at 3). This argument is premised on *Connick*, *supra*, where the Supreme Court held that "when a public employee speaks not as a citizen upon matters of public concern but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision

---

[3] Plaintiff contends he sought to turn the memorandum over to defense counsel in the *Cuskey* case, for use on the Motion to Traverse the warrant. (SGI ¶ 7; Ceballos Depo. at 120-125). However, there is no evidence before the Court that he ever did so.

9

taken by a public agency allegedly in reaction to the employee's behavior." 461 U.S. at 147.[4] In support of this argument, Defendants point to several cases in which federal courts have held that speech engaged in not merely as a concerned citizen but within the scope of the plaintiff's employment does not address a matter of public concern, even if the incident that triggered the speech may itself be a matter of public concern. Thus, in *Gonzalez v. City of Chicago*, 239 F. 3d 939, 941 (7th Cir. 2001) the court held that where the scope of the plaintiff's ordinary job duties included writing reports regarding police misconduct those reports did not address matters of public concern. And in *Buazard v. Meridith*, 172 F. 3d 546, 548-49 ((8th Cir. 1999), the court ruled that two written statements by the plaintiff-police officer reflecting his conversations with certain witnesses and other officers and prepared at the request of the plaintiff's boss did not address matters of public concern. Finally, in *Thomson v. Scheid*, 977 F. 2d 1017, 1020 (6th Cir. 1992), a former investigator for the Erie County Department of Human Service ("Department") filed a section 1983 claim, alleging he was retaliated against for speaking out to his supervisors regarding his desire to personally file charges against a County Commissioner he had investigated. After a grand jury declined to file an indictment, plaintiff continued to press for filing charges but his supervisors warned him not to do so on account of his duty of confidentiality. *Id.* at 1019. Although the plaintiff argued that his comments addressed alleged fraud by a public official, the Sixth Circuit found the

---

[4]On the other hand, a public employee does not forfeit his First Amendment rights merely because he arranges to communicate his views privately with his employer rather than express them publicly. *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415-16, 99 S. Ct. 693 (1979); *Johnson*, 48 F. 3d at 425-26 (holding that the employee's statements addressed matters of public concern even where they were directed solely to the plaintiff's co-workers).

10

1   conversation with his supervisors to be substantially addressed to the nature of
2   the plaintiff's duties as an employee of the Department. *Id.* at 1021.
3   In *Buazard* the speech at issue was expressly requested by the plaintiff's
4   superior. Here, there are no facts demonstrating that Plaintiff's superiors
5   requested him to prepare the memorandum. But to prepare such a memorandum,
6   about possible perjured testimony, *was* part of Ceballos's job, as in *Gonzalez*.
7   Indeed, when Plaintiff looked into the defense lawyer's allegations and when he
8   urged that the prosecution be dropped he was complying with his (and the
9   government's) duties under the due process clause of the Fifth and Fourteenth
10  Amendments not to introduce or rely on evidence known to be false. *See, Brady
11  v. Maryland*, 373 U.S. 83, 87 (1963) (a prosecutor has duty to disclose evidence
12  favorable to an accused and material to either guilt or punishment). A prosecutor
13  has the duty to disclose exculpatory evidence even without being requested to do
14  so. *Singh v. Prunty*, 142 F.3d 1157, 1161 (9th Cir.). And a memorandum the
15  government prepares about a witness's integrity can be *Brady* material. *United
16  States v. Brunel-Alvarez*, 991 F.2d 1452, 1456-58 (9th Cir. 1992).
17  The parties did not introduce evidence about just what a calendar deputy's
18  functions or duties are, but at the hearing on this matter, Ceballos's lawyer
19  acknowledged that a "disposition memo," which is what Ceballos prepared on
20  March 2, 2000 is common. Indeed, Plaintiff admits that it was "pursuant to his
21  duties as a prosecutor . . . [that] he wrote the memo expressing his concerns about
22  the veracity of the officers in this case." (SGI ¶ 4). (In a commendable display of
23  candor, Plaintiff's counsel reiterated that admission at the hearing on this
24  motion.) As in *Gonzalez*, the memorandum was an "internal report [that was]
25  simply a summary of his findings following his official investigations." 239 F.3d
26
27
28

11

1  at 941-942.[5] It was not an abstract discourse on the responsibilities of
2  prosecutors and law enforcement officers in light of the Rampart scandal.
3       The foregoing authorities and the precise context in which plaintiff uttered
4  his speech establish that, in fact, it was not *constitutionally-protected*.

    **C.    Even If Plaintiff's Speech Was Protected Under The First Amendment, That Right Was Not "Clearly Established"**

7       For a right to be "clearly established," "the contours of the right must be
8  sufficiently clear that a reasonable official would understand that what he is doing
9  violates that right." *Saucier*, 121 S. Ct. at 2156. (citation deleted). Supreme
10 Court and Ninth Circuit decisions make clear that the "clearly established"
11 inquiry must be undertaken in a context-specific manner. *Id.*; *Brewster v. Board*
12 *of Education of the Lynwood Unified School District*, 149 F. 3d 971, 978 (9th Cir.
13 1998). Thus, "[i]n assessing claims of qualified immunity, reviewing courts must
14 not view constitutional rights in the abstract but rather 'in a more particularized,
15 and hence more relevant, sense.'" *Brewster*, 149 F.3d at 978 (*quoting Anderson*
16 *v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)). "If officers of
17 reasonable competence could disagree on the issue [whether a chosen course of
18 action is constitutional], immunity should be recognized." *Brewster*, 149 F. 3d at
19 977 (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)).

20      The Court concluded above that the speech in question was not protected.
21 Even if the Court is wrong, however, defendants are nevertheless entitled to
22 summary judgment because given the authorities discussed above it was not
23 "clearly established" that Plaintiff's March 2, 2000 memorandum addressed a
24 matter of public concern. As a result, a reasonable official may have believed –

---

[5] At the hearing, the Court requested and obtained a copy of the memorandum. In it, Ceballos requested "permission to dismiss the information [i.e., the charges] against defendants Cuskey and Longoria..." Plaintiff obviously recognized that he needed Sundstedt's permission to do so, which reinforces the conclusion that the memorandum was prepared as part of his job.

even if incorrectly – that the speech was not protected by the First Amendment. This is sufficient to establish that the defendants are entitled to qualified immunity for their actions.[6]

**II.  BECAUSE SUMMARY JUDGMENT HAS BEEN GRANTED TO DEFENDANTS ON PLAINTIFF'S SOLE FEDERAL CAUSE OF ACTION, THIS COURT DECLINES TO EXERCISE JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIM FOR IIED.**

"The Supreme Court has stated, and we have often repeated, that 'in the unusual case in which all federal-law claims are eliminated before trial, the balance of factors...will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Associates, Inc.*, 114 F. 3d 999, 1001 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 fn. 7 (1988)). Because summary judgment has been granted to Defendants on Plaintiff's sole federal claim, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim for Intentional Infliction of Emotional Distress (IIED). As a result, that claim is hereby dismissed without prejudice.

---

[6] Given this finding and conclusion, the Court need not reach the issue of whether it was "clearly established" that Plaintiff's interest in freedom of speech outweighed the State's interest in administrative efficiency.

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 claim. In addition, as there is no longer a basis for federal jurisdiction over Plaintiff's state law claim for IIED, that claim is hereby DISMISSED. A judgment reflecting this ruling will be lodged and shall be entered by the Clerk unless by February 8, 2002 any party files a written objection to its form.

IT IS SO ORDERED.

DATE: January 30, 2002

_____
A. Howard Matz
United States District Judge