# EXHIBIT 1

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT   OCT 10 P 3: 57

U.S. DISTRICT COURT
BRIDGEPORT CT

|  |  |  |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02-CV-1514 (EBB) |
|  | : |  |
| V. | : |  |
|  | : |  |
| MELVIN WEARING | : | OCTOBER 10, 2006 |

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR RELIEF FROM JUDGMENT

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:     (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:     (860) 522-6103
Fax:     (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

# TABLE OF CONTENTS

PAGE

ARGUMENT ................................................................................................................. 1

I.    THE PLAINTIFF'S ARGUMENTS ARE NOT
SUPPORTED BY THE EVIDENCE ............................................................. 1

II.    ADDITIONAL CASE LAW SUPPORTS THE
GRANTING OF CHIEF WEARING'S MOTION
BASED ON <u>GARCETTI V. CEBALLOS</u> ................................................. 2

      A.    The Additional Case Law .......................................................... 2

      B.    The Court Should Grant Chief Wearing's
Motion ........................................................................................... 6

III.    THE CASE LAW CITED BY THE PLAINTIFF EITHER
SUPPORTS THE GRANTING OF CHIEF WEARING'S
MOTION OR IS INAPPOSITE ..................................................................... 8

IV.    THE PLAINTIFF'S GENERAL FIRST AMENDMENT
ANALYSIS IS WITHOUT MERIT ............................................................. 16

V.    CHIEF WEARING IS ENTITLED TO A JUDGMENT
AND A NEW TRIAL UNDER THE <u>PICKERING</u>
BALANCING ANALYSIS ............................................................................. 21

VI.    CHIEF WEARING IS ENTITLED TO QUALIFIED
IMMUNITY .................................................................................................... 24

## ARGUMENT

### I.    THE PLAINTIFF'S ARGUMENTS ARE NOT SUPPORTED BY THE EVIDENCE

At the outset, the Court should view Tolnay's opposition with great skepticism. There is a glaring omission in it.[1] Although it contains grand pronouncements about the evidence, Tolnay's opposition does not contain a single quotation from or citation to the trial transcript. Nor does it quote any of the documentary evidence.

Instead of relying on his *actual* speech, Tolnay's opposition is based on a characterization of his speech and the evidence. Indeed, Tolnay's opposition contains multiple examples of "storytelling" or spin. For example, Tolnay's opposition repeatedly claims that his speech included complaints about misconduct or "improprieties" engaged in by Chief Wearing, the Mayor and Captain Ortiz. (Pl.'s Mem. at 7)[2] However, a review of Tolnay's actual testimony and the documentary evidence, which are quoted and cited in detail in Chief Wearing's memorandum regarding Garcetti v. Ceballos, 126 S.Ct. 1951 (2006), confirms that Tolnay never complained about any misconduct or improprieties by anyone.[3] With regard to Captain Ortiz, during a meeting, Tolnay merely expressed an employment grievance about the Captain's issuance of an order over the radio. By the order, Ortiz directed a sergeant to advise Tolnay to do his job and for Tolnay (and Tolnay alone) to stay away from the ministers who Tolnay had arrested a few days before and who had filed a citizen's complaint against Tolnay.

---

[1]    To the extent that Chief Wearing does not reply to any of the arguments contained in Tolnay's opposition, he relies on his previous memoranda of law.

[2]    A copy of the version of Tolnay's opposition that was served on counsel is attached hereto as Exhibit A. Citations to the opposition are to the pages in the attached version. The version of the opposition on the Court's electronic docket does not have page numbers.

[3]    The testimony of the other witnesses and the concessions in Tolnay's pleadings are also quoted and cited in detail in Chief Wearing's other memoranda. Accordingly, Chief Wearing does not engage in a point by point response to Tolnay's characterizations of the record.

In sum, Tolnay's characterization of the evidence is part of an effort to lull the Court into "buying into" an emotional story that has no support in the record.[4] The Court's rulings on the post-trial motions cannot be based on such a story. Nor can the rulings be based on abstract interpretations or extrapolations of Tolnay's speech arrived at years after it occurred. See Mastrovincenzo v. City of New York, 435 F.3d 78, 95 (2d Cir. 2006)(First Amendment analysis is to be made "in the real world" and policemen "must be able to understand the law…without recourse to principles of aesthetics."). Rather, the Court's analysis must focus on what Tolnay actually wrote and said, with full consideration of the context in which the speech was made, i.e., as part of his doing his job, complying with orders and answering questions during a job meeting with his superior, which occurred while a citizen's complaint was pending against him.

## II. ADDITIONAL CASE LAW SUPPORTS THE GRANTING OF CHIEF WEARING'S MOTION BASED ON GARCETTI V. CEBALLOS

### A.    The Additional Case Law

In addition to the case law cited in his opening memorandum, more recent case law supports the granting of Chief Wearing's motion based on Garcetti. For example, in Tomicich v. Pueblo City County Library Dist., 2006 WL 2734250 (D. Colo. Sept. 25, 2006), the plaintiff was the director of human resources for a library district. She attended a meeting of the board of trustees that governed the district. During it, she answered questions that were directed to her and which related to the potential termination of the executive director. Id. at *2. Ultimately,

---

[4]    Similarly, contrary to Tolnay's claim, (Pl.'s Mem. at 29), there is no evidence in the record that Tolnay had an option to prepare a case incident report for the motor vehicle stop. Even assuming for the sake of argument that Tolnay had the discretion not to write a report, it would not mean that his preparation of the report was not pursuant to his job duties. In addition to Captain Ortiz's order, in general, a police officer's ability to exercise his discretion on whether to do something or how to do it, does not mean that the act or inaction was not pursuant to his job duties. Indeed, the duties of a police officer are inherently discretionary. See, e.g., Fedor v. Kudrak, 421 F.Supp.2d 473, 481 (D.Conn. 2006); Skrobacz v. Sweeney, 49 Conn. Supp. 15, 32 (2003).

2

the executive director was rehired. Subsequently, the plaintiff commenced a lawsuit claiming

retaliation by the executive director based on her statements at the meeting. Id. The Tomicich

court dismissed the plaintiff's claim under Garcetti. Specifically, it concluded as follows:

> The claim for retaliation for [the plaintiff's] speech is defeated by
> the fact that she was asked her views as the Human Resources
> Director and *gave a response in fulfillment of her duty* in that
> position. The Supreme Court has made it clear that statements
> made as an employee *in the course of performing the duties of the
> position* are not protected under the First Amendment.

Id. at *2 (emphasis added). See Nolan v. Terry, 2006 WL 2620002, at *5 (W.D.Va. Sept. 13,

2006)(under Mills, "[i]f plaintiff was speaking as part of his or her public job,…, the inquiry is

over.").

In Freitag v. Ayers, 2006 WL 2614120 (9th Cir. Sept. 13, 2006), the court recognized

that Garcetti "*modified prior First Amendment jurisprudence* with respect to the first element

[of a retaliation claim] -- employee protected speech." Id. at *11 (emphasis added). See

Benvenisti v. City of New York, 2006 WL 2777274, at *7 (S.D.N.Y. Sept. 23, 2006)

("clarified"). The plaintiff in Freitag, a correctional officer, had reported hostile inmate conduct

to the Department of Corrections, including the completion of internal reports of misconduct and

documentation of the prison's failure to respond. 2006 WL 2614120 at *12-13. A jury returned

a verdict in favor of the plaintiff in 2003 and oral argument on the appeal was heard months

before the issuance of Garcetti. The Ninth Circuit believed that it was confronted with two

issues: (1) whether the jury was instructed to consider only speech that, in light of Garcetti, was

protected under the First Amendment, and (2) whether, if the jury was permitted to consider

speech that was not protected, the instruction was harmless. Id. at *12.

With regard to the plaintiff's speech, the Ninth Circuit concluded that some of her

statements were protected under the First Amendment. However, it held that "[t]o the extent that

the jury may have considered *internal forms* prepared by [the plaintiff], it [wa]s clear that, under [Garcetti], such activity [wa]s *not* constitutionally protected." Id. at *13 (emphasis original).[5] "For purposes of First Amendment analysis, [the plaintiff] submitted those reports pursuant to her official duties as a correctional officer and thus not in her capacity as a citizen." Id.

In Milde v. Housing Authority of the Town of Greenwich, 2006 WL 2583086 (D. Conn. Sept. 5, 2006), the court partially granted summary judgment on the plaintiff's First Amendment retaliation claim.[6] As part of its analysis, the court rejected the plaintiff's argument that because the defendants disciplined her for her speech at a board meeting, she could not have been acting pursuant to her duties. Id. at *6. It also rejected the argument that the First Amendment protected the plaintiff's internal discussions regarding recreation services at the facility prior to the meeting, because during that period she was not performing expected job duties. Id. at *7. It appeared that the plaintiff was suggesting that she was acting as a citizen when she raised the issue of recreation services at a staff meeting and later in an exchange of memoranda with her

---

[5]/     Moreover, with regard to a letter from the plaintiff to the Director of the Department, the Ninth Circuit remanded the issue for reconsideration in light of Garcetti. Id. at *11, 13-14. Freitag also addressed an issue that was raised in Chief Wearing's opening brief in support of his Rule 59 motion and which was incorporated into his Rule 60 motion. Specifically, Freitag held that because the instructions permitted the jury to consider, along with speech that was constitutionally protected, at least some unprotected speech, on remand, the district court had to determine whether it was more likely than not that the jury verdict was affected by the erroneous inclusion of the 2 or 3 examples of unprotected speech. Id. at *14. Here, if the Court finds that some of Tolnay's speech to be protected, a new trial would be required, as having allowed the jury to consider some unprotected speech was harmful.

[6]/     The plaintiff in Milde alleged that she had been terminated from her position as an administrator of a housing authority's facility because of her statements at a public meeting of the board of directors and because of her statements to a newspaper. With regard to the plaintiff's statements at the meeting, the Milde court held that under Garcetti the plaintiff's statements were not protected by the First Amendment. Id. at *6-7. In particular, the plaintiff attended the meeting because state licensing requirements mandated that the administrator be present, presumably to address the board when necessary. Id. at *6.

superior. Id. In support of this notion, the plaintiff pointed to evidence that the defendant

disciplined her for some of her actions during this period and concluded that she therefore must

have been acting as a citizen, and not pursuant to her official duties. In rejecting the plaintiff's

arguments, Milde recognized that [the plaintiff's]:

> argument simply d[i]d not take into account *the reality that one
> can perform one's official duties inadequately or in an
> insubordinate manner, and still be subject to lawful disciplinary
> action.* Applying [plaintiff's] logic, the First Amendment would
> be implicated in every instance in which a government employee
> spoke and was disciplined. This argument cannot be reconciled
> with the Supreme Court's holding that 'when public employees
> make statements pursuant to their official duties...the Constitution
> does not insulate their communications for employer discipline.'

Id. at *6 (emphasis added).

In Price v. Macleish, 2006 WL 2346430 (D. Del. Aug. 14, 2006), a jury returned a

verdict in favor of the plaintiff on his First Amendment retaliation claim, the day after Garcetti

was released. Subsequently, the court held that it was required to apply Garcetti and granted the

defendants' Rule 50(b) and Rule 59 motions in relevant part.[7] The plaintiffs in Price were state

troopers. They spoke within the chain of command and to a state auditor regarding the

conditions at a shooting range located at a state trooper facility. Id. at *6-8. The court held that

"speaking out within the chain of command about any hazardous range conditions was squarely

within [the plaintiff's] official duties." Id. at *7. With regard to the plaintiff's statements to a

---

[7] The Price court noted that "'[w]hen [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and *must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] analysis of the rule.*'" Id. at *4 n.1 (quoting Harper v. Va. Dep't. of Taxation, 509 U.S. 86, 97 (1993)). As such, the court recognized that it had to decide the defendants' post-trial motions under the rule announced in Garcetti. Id. Moreover, because its analysis of the defendants' motion for summary judgment had been grounded in pre-Garcetti retaliation law, it also vacated that opinion. Id.

state auditor, the court recognized that all three of the plaintiffs had been "ordered" to aid the investigation. Id. at *8. Thus, the plaintiffs' speech was within the scope of their official duties.

In Taylor v. City of Prosser, 2006 WL 2527636 (E.D. Wash. Aug. 30, 2006), the court granted the defendants' motion for summary judgment. The plaintiff was the Chief of Police. He based his claim on statements he made at a meeting with the state auditor's office in connection with an investigation. Id at *2. As part of its analysis, the court rejected the plaintiff's argument, which required the court to artificially divide the speech at issue. Id. Specifically, Taylor recognized:

> [i]n effect, [the plaintiff] is asking the Court to *'compartmentalize'* the comments he made at the 2004 meeting; *that is to say, consider them separately from the other comments* he made during the course of his inquiries. This request finds little support in Garcetti. There, the deputy district attorney's memo was not his only communication concerning the deputy sheriff's alleged misrepresentations. His request for dismissal of the criminal case precipitated a heated meeting with members of the sheriff's department. Later, he testified at a hearing concerning the validity of the search warrant. *The Supreme Court did not treat either his comments during the meeting or his testimony at the hearing as analytically distinct instances of speech.* Nor is there any reason to separate the statements [the plaintiff] made at the 2004 meeting from other statements he made during the course of his inquiries. These have been under way for a number of months by the time he spoke with the representative of the state Auditor's Office. They continued for a number of months thereafter. [The plaintiff's] *comments at the meeting were incidental* to his inquiries.

Id. at *2 (emphasis added). Accordingly, the court held that the plaintiff's statements during the course of a meeting he attended in his capacity as the Chief of Police were not protected by the First Amendment. Id.

## B.    The Court Should Grant Chief Wearing's Motion

The additional case law supports the granting of Chief Wearing's motion. In particular, the record demonstrates that like the plaintiffs in Tomicich and Milde, Tolnay was responding to

questions at the meeting with Chief Wearing. The meeting was a business meeting. And as

Lieutenant Bombalicki confirmed such meetings were not uncommon after a citizen's complaint

is filed. (12/6/05 Tr. at 149-50) Tolnay, like the plaintiffs in Price, was "ordered" to attend the

meeting and the Chief's questions to him were concerning the arrests and the motor vehicle stop.

Also, like the plaintiff in Taylor, Tolnay attended the meeting in his capacity as a police officer.

Thus, he was speaking in the "course of performing" his duties and his claim fails under Garcetti.

See Tomicich, supra, at *2; Nolan, supra, at *5. The same is true for Tolnay's preparation of the

case incident report. In addition to it being part of Tolnay's compliance with an order, the report

was speech prepared in the "course" of Tolnay's performing his job. The detailed review of the

content of the report in Chief Wearing's Garcetti memorandum confirms this.[8]

     Similarly, Freitag supports the granting of the motion. It confirms that Garcetti changed

the law. Freitag and Price demonstrate that this Court is *required* to apply Garcetti. Moreover,

Freitag confirms that the preparation of official forms by an officer, like the case incident report

prepared by Tolnay, is not protected by the First Amendment under Garcetti.

     Milde rebuts Tolnay's argument that because Chief Wearing allegedly reacted negatively

to the content of the case incident report and Tolnay grievance with Captain Ortiz, his speech

could not have been made as part of his job duties. As Milde demonstrates, Tolnay's argument

---

[8]/    See Benvenisti, supra, at *9 (duties include keeping supervisors apprised of unit's status);
Deprado v. City of Miami, 2006 WL 2709586, at *1-2 (S.D. Fla. Sept. 20, 2006)(under Garcetti,
testimony which police officer is obligated to give is not protected); Kentner v. Timothy R.
Downey Ins., Inc., 2006 WL 2669468, at 7 (S.D. Ind. Sept. 18, 2006)(claim failed under Garcetti
as "communication was made during the scope of [plaintiff's] employment); Dillon v. Fermon,
2006 WL 2457516, at *4 (C.D. Ill. Aug. 23, 2006)(claim failed under Garcetti as plaintiff was
"directed" to attend meeting); Dunleavy v. Wayne County Comm'n, 2006 WL 2375679. at *4
(E.D. Mich. Aug. 16, 2006)(rejecting notion that job duties had to "explicitly require[]"
plaintiff's speech in order for speech to be subject to Garcetti); Springer v. City of Atlanta, 2006
WL 2246188, at *3 (M.D. Ga. Aug. 4, 2006)(speech made "pursuant to official duties" is speech
made "primarily in plaintiff's role as an employee.").

fails under both the express language in <u>Garcetti</u> and common logic. Both <u>Garcetti</u> and common logic recognize that an official can perform his duties inadequately or in an insubordinate manner and still be subject to lawful discipline by his employer. <u>Garcetti</u>, 126 S.Ct. at 1960-61.

Finally, <u>Taylor</u> undermines the core of Tolnay's claim. Tolnay's claim is dependent on a "compartmentalize[d]" analysis of his speech. It requires the Court to artificially carve out and focus exclusively on 2 paragraphs from the case incident report, which is a 5-page detailed form, and stray and incidental comments that were part of answers to questions, which were asked at a business meeting that included many questions and answers. <u>Taylor</u> confirms that this type of analysis is improper. The focus of <u>Garcetti</u> is the capacity of the speaker, as a "practical" matter. Here, the evidence demonstrates that Tolnay wrote the report as an employee and more specifically, in his capacity as a police officer. In addition to Captain Ortiz's order, Tolnay wrote the report at a sub-station immediately after he used his authority to stop a motor vehicle and while he was on duty. He had the records unit of the NHPD fax him a report related to the arrests at the church so he could complete the report he was working on and cross-reference the first report. The report that Tolnay bases his claim on, details the stop, the laws involved and the conduct of the officers involved. As matter of law, Tolnay prepared the report as part of his job and in his capacity as a police officer. The same is true for his responding to questions from the Chief at the meeting. It was a meeting that Tolnay was ordered to attend. As the testimony of all present confirms, questions were being asked of Tolnay about the arrests and the motor vehicle stop. He answered them as part of his job. Thus, his claim fails under <u>Garcetti</u>.

## III. THE CASE LAW CITED BY THE PLAINTIFF EITHER SUPPORTS THE GRANTING OF CHIEF WEARING'S MOTION OR IS INAPPOSITE

A thorough review of the case law that Tolnay cites reveals that it either supports the granting of Chief Wearing's motion, is inapposite or is distinguishable. For example, Tolnay's

reliance (via a letter to the Court) on Barclay v. Michalsky, 2006 WL 2616302 (D. Conn. Sept. 12, 2006) is misplaced. The decision is distinguishable on several grounds.

First, the facts in Barclay do not resemble the facts in this case. Specifically, the court held that a material issue of fact existed "as to whether plaintiff's complaints were made in the context of her job responsibilities." Id. at *6. It reached this conclusion because there was evidence that while a work rule imposed a duty on employees to report rule violations to their supervisors, the plaintiff testified that when she first started at the hospital she filed reports concerning incidents of use of force and her supervisor ripped them up and told her "'we don't do this kind of thing here.'" Id. at *6. The plaintiff further testified that when she asked whether there was a form that needed to be filled out to report a violation, she was told by her supervisor that that was not done at the hospital. Id. There is no such evidence in this case.

Second, Barclay misapplies Garcetti and does not acknowledge, let alone address the case law, such as Mills v. City of Evansville, 452 F.3d 646 (7th Cir. 2006), which rejects a narrow reading of Garcetti.[9] Finally, contrary to Tolnay's claim, Barclay does not engage in any qualified immunity analysis regarding the issues raised by Garcetti. 2006 WL 2616302 at *9-10. Indeed, Barclay concludes that the issue of qualified immunity could be revisited. Id. at *10. Moreover, Barclay's recognition that a fact question existed as to whether the plaintiff's complaints "were *made in the context of her job responsibilities*" supports the granting of Chief

---

[9]    Specifically, Barclay denied the defendants' motion because the "record d[id] not establish *incontrovertibly* that plaintiff made her complaints…as part of the discharge of her duties as a nurse." Id. (emphasis added). Contrary to the analysis in Barclay, Garcetti did not hold that the standard was whether a plaintiff's speech had to be "*particularly within the province* of [a] plaintiff's professional duties, more so than that of other…employees." Id. (emphasis added). Moreover, Garcetti deals with the elements that a plaintiff must establish in order to succeed on a retaliation claim. Thus, the burden is on the plaintiff to produce the requisite evidence. If a record is deficient, the plaintiff's claim fails under Garcetti and a defendant is entitled to a judgment. The defendants do not have the burden to demonstrate anything under Garcetti, let alone, to prove something "incontrovertibly."

Wearing's motion. Id. at *6 (emphasis added). As demonstrated in Chief Wearing's Garcetti memorandum, Tolnay's speech was clearly made "in the context of his job responsibilities."

Tolnay's reliance on Pittman v. Cuyahoga Valley Career Ctr., 2006 WL 2468358 (N.D. Ohio Aug. 25, 2006) is similarly misplaced. Pittman cites no authority to support its narrow interpretation of Garcetti. Id. at *19. Garcetti discusses the need for a "practical" test. 126 S.Ct. at 1961. It does not hold that its reasoning only applies "[i]f the public employee's speech was required by his or her job." Pittman, supra, at *19.

Nonetheless, even under Pittman's standard, Chief Wearing is entitled to a judgment in his favor. Tolnay was required to write the case incident report on which he bases his claim. (3/9/05 Ruling, at 14) Specifically, he testified and concedes in his opposition, that he was ordered by Captain Ortiz to prepare a memorandum explaining the traffic stop. (Pl.'s Mem. at 25) A review of the memorandum reveals that it is a cursory document which expressly refers Captain Ortiz to the case incident report for the detailed explanation. (3/9/05 Ruling, at 14) Thus, the case incident report was part of Tolnay's compliance with an order and satisfies Pittman's "required" standard. (Id.) Similarly, as Tolnay testified, he was under an order to meet with Chief Wearing. As a matter of law, a police officer is "required" to answer questions from a superior regarding arrests and motor vehicle stops.[10] Indeed, Tolnay has never denied or challenged this point. Thus, under Pittman's reasoning, Chief Wearing is entitled to a judgment as a matter of law and a new trial.

---

[10]/    See Franklin v. Clark, 2006 WL 2819820, at 3 (D. Md. Oct. 2, 2006)(if responding to questions is part of employee's job, doing so is not protected by First Amendment); Chotiner v. Philadelphia Housing Auth., 2004 WL 2915296, at *7 (E.D. Pa. Dec. 15, 2004)(no right to demand attorney before responding to superior's questions).

10

Much of Walters v. County of Maricopa, 2006 WL 2456173 (D. Ariz. Aug. 22, 2006), supports the granting of Chief Wearing's post-trial motion. First, Walters acknowledged that Garcetti *changes the law* in th[e Ninth C]ircuit." Id. at *18 (emphasis added). Second, it applied the "objectively reasonable" prong of the qualified immunity analysis to the plaintiff's First Amendment retaliation claim. Id. at *19. In particular, it recognized that qualified immunity would apply if a defendant established that a reasonable officer could have believed that he was not violating a constitutional right. Id.

Some of Walters is inapposite. For example, its holding does not apply to the facts of the case at bar. Tolnay did not engage in whistleblowing. Specifically, Walters recognized that the plaintiff, a police sergeant, was not employed to report misconduct "to higher-ups in a separate governmental agency who do not have employment authority over [the plaintiff]." 2006 WL 2456173, at *14.[11] Thus, as the plaintiff's speech could not be part of his "job responsibilities," Walters held that Garcetti did not apply. Id. at *14.

Walters' analysis of the clearly established test is misplaced and inapplicable to the instant case. Walters concluded that Garcetti could not retroactively make the plaintiff's rights to be a whistleblower, as defined by 2003 Ninth Circuit precedent, any less clearly established. Id. at *18. Walters' analysis misconstrues the impact of Garcetti on the qualified immunity analysis. Garcetti expressly recognized that its holding that speech pursuant to job duties is not protected by the First Amendment was based upon the "proper application of [its] prior precedents." 126 S.Ct. at 1961. Any case law to the contrary was in error. Indeed, the Supreme Court granted *certiorari* in Garcetti to resolve a split of authority on this issue. Id. at 1957.

---

[11]/    Indeed, Walters acknowledged that some post-Garcetti case law, including Mills, has interpreted employees' job duties in a manner that would encompass the statements of the plaintiff. Id. at *14 n.10.

Moreover, Garcetti indicates that the Court was not taking the opportunity to establish a "comprehensive framework" for defining when an employee's speech is made pursuant to his duties. Id. at 1961.[12]

In the instant case, Chief Wearing is entitled to qualified immunity because (in addition to Tolnay not having a right), at a minimum, it was not clearly established in 2002 that under the circumstances at issue, Tolnay's speech was protected by the First Amendment, as it related to his job and occurred as part of his fulfillment of his duties, i.e., that which he was employed to do. Connick v. Myers, 461 U.S. 138, 147 (1983). Indeed, if the Supreme Court and the Second Circuit have yet to define what constitutes speech "pursuant to an employee's duty" for the purposes of First Amendment analysis, Tolnay's right in the speech he engaged in while carrying out his duties in 2002 was not clearly established and Chief Wearing's conduct was objectively reasonable, as at a minimum, reasonable police chiefs could disagree under the circumstances.[13]

Black v. Columbus Public Schools, 2006 WL 238539 (S.D. Ohio Aug. 17, 2006), is distinguishable. First, it is premised on a fundamental misreading of Garcetti. Garcetti addresses the elements that a plaintiff must establish in order to prove a *prima facie* case under the First Amendment. Freitag, supra, at *11. See Reuland v. Hynes, 460 F.3d 409, 415 n.5 (2d Cir. 2006)(under Garcetti, "before an employee's speech is entitled to First Amendment protection, we must also determine that he was not speaking pursuant to his duties as an

---

[12]/    Tolnay's argument notwithstanding, (Pl.'s Mem. at 42 n.30), the fact that Chief Wearing brought the existence of the proceedings in Garcetti to this Court's attention in December 2005 supports the granting of his motion under Rule 60. Under the standard governing Rule 60(b)(6) motions, courts consider whether a party advised the court of the proceedings before the issuance of a decision by the Supreme Court. (Def.'s 8/15/06 Mem. at 28-31)

[13]/    Furthermore, unlike the situation in Walters, neither Tolnay nor the Court has ever identified a Second Circuit decision which demonstrates that he had any rights that were clearly established in 2002 under the particularized circumstances of this case. (3/9/05 Ruling, at 43)

employee."). <u>Garcetti</u> does not, contrary to <u>Black</u>, deal with an affirmative defense that can be waived. Second, <u>Black</u> fails to acknowledge that courts are required to apply <u>Garcetti</u>. <u>Price</u>, <u>supra</u>, at *4 n.1. Third, <u>Black</u> is based on a conclusion that <u>Garcetti</u> did not change Sixth Circuit law.[14] By contrast, Tolnay has not cited a Second Circuit decision that mirrors the holding from <u>Garcetti</u>. Rather, he refers to authority within the circuit.[15] Contrary to Tolnay's argument, the district court decisions cited by Chief Wearing support the conclusion that Tolnay had no right under the First Amendment and/or that the right was not "clearly established" in 2002. (Pl.'s Mem. at 46) Specifically, if the district judges within this circuit were issuing decisions that eliminate any claim by Tolnay in this case, at a minimum, Tolnay's right was not clearly established and Chief Wearing's conduct and interpretation of the law was objectively reasonable. <u>See</u> <u>Richardson v. Selsky</u>, 5 F.3d 616, 623 (2d Cir. 1993).

Finally, <u>Black</u>'s conclusion that the plaintiff's testimony that her reporting of misconduct was her duty was not sufficient to apply <u>Garcetti</u> is inconsistent with <u>Garcetti</u>'s conclusion that the appropriate test for determining whether a speech was pursuant to an employee's duties should be a "practical" one. 126 S.Ct. at 1961. Nevertheless, even under <u>Black</u>'s "only official duties" test, Tolnay's claims fail. His testimony and this Court's summary judgment ruling confirm that he wrote the case incident report as part of his compliance with an order from

---

[14]/    <u>Black</u> cited <u>Thomson v. Scheid</u>, 977 F.2d 1017, 1020-21 (6th Cir. 1992). <u>Thomson</u> relied exclusively on <u>Connick</u>, 461 U.S. at 147. Page 147 in <u>Connick</u> was the same page cited by the district court in <u>Garcetti</u>. Chief Wearing's proposed jury instructions on the First Amendment claim quoted and cited page 147 of <u>Connick</u>. His Rule 50(a) motion relied on the case law cited in the instructions.

[15]/    Indeed, Tolnay's apparent concession, (Pl.'s Mem. at 40, 46), that binding pre-<u>Garcetti</u> precedent mirrored the holding in <u>Garcetti</u>, requires this Court to grant all of Chief Wearing's post-trial motions and to reconsider its denial of summary judgment, on the *prima facie* case, the <u>Pickering</u> balancing analysis and on qualified immunity.

Captain Ortiz. (3/9/05 Ruling, at 14) Similarly, he appeared at the meeting with Chief Wearing pursuant to an order. As a matter of law, a police officer's answering questions from his superior regarding an arrest and a vehicle stop are part of his "official duties." See Tomicich, supra, at *2; Nolan, supra, at *5. The same is true for his preparation of official forms and reports. Freitag, supra, at *13.

Allen v. Oregon Health Sciences Univ., 2006 WL 2252577 (D. Or. Aug. 4, 2006) is inapposite, as the court did not apply Garcetti. Id. at *5. The same is true for Fuerst v. Clarke, 454 F.3d 770 (7th Cir. 2006).[16] Fuerst expressly stated that Garcetti was "inapposite" to the analysis in that case. 454 F.3d at 774. Thus, Fuerst does not interpret Garcetti and does not limit the Seventh Circuit's holding in Mills. In fact, Fuerst does not even cite Mills.

Hare v. Zitek, 2006 WL 2088427 (N.D. Ill. July 24, 2006) is distinguishable. The court held that the plaintiff's speech was not pursuant to his professional responsibilities, as he was not employed by the state's attorney's office. Id. at *3.[17] Rather, he was a police officer. Thus, his

---

[16] Indeed, Fuerst supports the granting of Chief Wearing's post-trial motions under Pickering. It reconfirms that "[o]fficials have a right to demand from their subordinates a wholehearted commitment to the agency's mission as defined by the officials. A public criticism of top management may, depending on the occasion, content, and content of the criticism, violate that commitment and, what is particularly harmful in a paramilitary organization such as a police agency, may undermine command authority." Fuerst, 454 F.3d at 774.

[17] In fact, a portion of Hare supports the granting of Chief Wearing's motion. Hare applied Garcetti to bar the plaintiff from arguing at trial that the Chief of Police retaliated against him because of his findings related to the evidence room. The plaintiff was in charge of the room and in that capacity, audited the room and noted various problems and discrepancies. Id. at *6. The Hare court held that the speech about the evidence room "would not be protected under Garcetti as it was unquestionably *made in the course of [the plaintiff's] carrying out his job duties*." Id. (emphasis added). It came to this conclusion despite the fact that the plaintiff alleged that when he tried to tell the Chief of Police about the problems and tried to get the Chief to let him take corrective measures, the Chief was "dismissive and, basically, told him to drop the issue." Id. Thus, Hare like Milde, rebuts Tolnay's claim, (Pl.'s Mem. at 8, 46), that because Chief Wearing allegedly reacted negatively to speech, the speech could not have been prepared pursuant to Tolnay's duties.

statements to the prosecutor's office reporting misconduct were not part of his employment duties with the police department. Id.[18] That is not the situation in this case. Also, Hare's conclusion that Garcetti does not impact the "clearly established" prong of the qualified immunity analysis misconstrues the impact of Garcetti in the same way that Walters did.

Batt v. City of Oakland, 2006 WL 1980401 (N.D. Cal. July 13, 2006) is inapposite. It concluded that in applying Garcetti, courts must determine whether the employee is "actually expected to perform" the potentially protected act. Id. at *4. Batt held that whether the plaintiff had a duty to report misconduct by fellow police officers was a question of fact because "[t]he central premise of plaintiff's case is that notwithstanding any official policy of [the department], the culture of [the department] and the express commands of his direct supervisors established that plaintiff had a duty *not* to report misconduct." Id. (emphasis original). Consequently, Batt is inapposite to the analysis in this case. Tolnay did not advance a "culture of silence" theory. Nor did he present any evidence that he was ever ordered not to report anything prior to his preparing the case incident report or prior to his meeting with Chief Wearing. To the contrary, Tolnay spoke as the result of orders. Thus, Batt is inapposite. In fact, Batt supports the granting of a new trial, to the extent the Court has any question about whether Tolnay's speech was related to his duties.[19]

---

[18]/    Hare is inconsistent with case law from this district. Dillon v. Bailey, 45 F.Supp.2d 167, 174 (D. Conn. 1999)(officers have "legal obligation" to report unlawfulness).

[19]/    Contrary to Tolnay's claim, Day v. Borough of Carlisle, 2006 WL 1892711 (M.D. Pa. July 10, 2006) supports the granting of Chief Wearing's Rule 60 motion based on a change in the law. Day recognized that after Garcetti, the legal analysis that the lower federal courts must apply has changed. Id. at *6. See id. at *5 ("accordingly, *courts now have an additional consideration*...")(emphasis added). Day also supports the conclusion that Chief Wearing is entitled to a judgment under Pickering. 2006 WL 1892711, at *7.

Tolnay's citation to <u>Kodrea v. City of Kokomo</u>, 2006 WL 1750071 (S.D. Ind. June 22, 2006) is misplaced. <u>Kodrea</u> merely concluded that there were factual issues about whether the plaintiff's "ordinary job responsibilities" included overseeing another employee's hours of work and refunds related to a softball association. <u>Id.</u> at *8. The court noted that neither activity appeared to have been part of the plaintiff's "core function" as a recreational program director. <u>Id.</u> To the extent <u>Kodrea</u> attempts to limit the scope of an employee's duties to only the "core function," such an analysis violates <u>Garcetti</u>'s "practical" test.[20]

## IV.    THE PLAINTIFF'S GENERAL FIRST AMENDMENT ANALYSIS IS WITHOUT MERIT

Tolnay's reliance on <u>Reuland v. Hynes</u>, 460 F.3d 409 (2d Cir. 2006) and <u>Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.</u>, 444 F.3d 158 (2d Cir. 2006) is misplaced. (Pl.'s Mem. at 8, 25-26) Both cases support the granting of Chief Wearing's post-trial motions. In particular, they confirm that an employee's personal motivation is to be factored into the content, form and context analysis. <u>Cioffi</u> recognized that "[m]otive may inform [a court's] inquiry." 444 F.3d at 166. <u>See id.</u> at 167 (under <u>Ezekwo</u>, motive is a factor that is considered).[21] <u>Reuland</u> merely concluded that motive could not be the "only factor" that is considered. 460 F.3d at 416.

---

[20]    Tolnay's argument notwithstanding, <u>Montle v. Westwood Heights Sch. Dist.</u>, 437 F.Supp.2d 652 (E.D. Mich. 2006) did not apply <u>Garcetti</u>. Tolnay's citation to <u>Wilcoxon v. Red Clay Con. Sch. Dist. Bd. of Educ.</u>, 437 F.Supp.2d 235 (D. Del. 2006) is also misplaced. The court denied the defendant's motion to dismiss based upon <u>Garcetti</u> because the journal was not "written pursuant to [the plaintiff's] official duties as a teacher. He was not employed to monitor the absences of fellow teachers and defendants d[id] not allege that he was required to do so." <u>Id.</u> at 243. Thus, the case is distinguishable.

[21]    <u>Reuland</u> confirmed that prior Second Circuit decisions have focused on employees' private motives related to employment grievances. <u>Id.</u> at 417. Accordingly, <u>Ezekwo v. NYC Health & Hosps. Corp.</u>, 940 F.2d 775, 781 (2d Cir. 1991) is good law and binding precedent on this Court. Under those cases, where an employee is not on a mission to protect the public welfare, but rather, primarily seeks to protect his own reputation or to address his dissatisfaction with the conditions of his employment, the analysis weighs against a finding against speech

Moreover, district court decisions issued after <u>Reuland</u> and <u>Cioffi</u> hold that the personal motivation behind an employee's speech (as measured objectively) can contribute to a holding that the speech does not address a matter of public concern. For example, the analysis in <u>Coles v. Moore</u>, 2006 WL 2790436 (D. Conn. Sept. 25, 2006) confirms that Chief Wearing is entitled to a judgment in his favor. <u>Coles</u> recognized that the more persuasive aspects of the public concern analysis were the facts that nothing in the plaintiff's CHRO complaints implicated systematic discrimination by her employer, indicated that the plaintiff wanted to debate issues of discrimination, or suggested that plaintiff filed her suit as part of a larger effort to combat discrimination at her employer. <u>Id.</u> at *4. Rather, the content of the plaintiff's complaints led the <u>Coles</u> court to conclude that the plaintiff was "'motivated by and dealt with her individual employment situation.'" <u>Id.</u> Consequently, it granted summary judgment because "[t]here is no First Amendment protection for speech calculated to address personal grievances in the employment context." <u>Id.</u> at *5.[22]

Similarly, in <u>Bateman v. Fialkievicz</u>, 2006 WL 1359157 (D. Conn. May 15, 2006), the court recognized that in determining whether speech is protected, the court evaluates whether the speech "'was calculated to address personal grievances or whether it had a broader public purpose.'" <u>Id.</u> at *5.[23] Consequently, contrary to Tolnay's argument, the fact that an employee

---

relating to a matter of public concern. <u>See</u> <u>Reuland</u>, 460 F.3d at 416-18. Here, Tolnay's testimony confirms he was not advancing a public purpose. Rather, he only spoke in compliance with his job duties and based on his private interests.

[22]    Indeed, "where the employee's private motives are expressed in the context of an employee grievance, the Second Circuit has consistently held that the speech at issue does not address a matter of public concern." <u>Id.</u> at *4 (citing <u>Reuland</u> and <u>Ezekwo</u>).

[23]    The plaintiff's statements "were made in the context of addressing her own difficult working relationship with (her supervisor), and were not calculated to, nor made with the intention of, furthering a broader public purpose." <u>Bateman</u>, <u>supra</u> at *5. <u>See</u> <u>id.</u> at *6. Here, the record confirms that the same is true of Tolnay's speech.

chooses to discuss privately his concerns with his employer as opposed to expressing his views publicly does not alter the analysis, -- "whether the purpose of a speaker was to inform the public is a relevant factor." Id.

Benvenisti v. City of New York, 2006 WL 2777274 (S.D.N.Y. Sept. 23, 2006) also supports the granting of Chief Wearing's motions. In it, the defendants conceded that the plaintiff's threat to file a formal complaint with another agency was not made pursuant to his duties. Id. at *10. Nevertheless, the court concluded that the plaintiff's claim failed under the traditional public concern analysis. Specifically, it concluded that the plaintiff's testimony discussing his plans to file a complaint with another agency revealed that he "was not interested in contributing to the 'debate on public issues.'" Id. at *11.[24] Rather, the plaintiff had received no satisfaction within his agency and sought to remedy the issues that were plaguing his unit. Id. However, the court recognized that "[t]he plaintiff cannot now convert what were essentially internal office affairs into matters of public concern through a revisionist interpretation of his complaints that draws on the incidental connection between events that transpire within a government office and public issues." Id. In other words, an abstract concern about a particular subject carries no weight if an employee chooses not to articulate it. Id. When placed in context, Benvenisti concluded that even the plaintiff's threat to complain about an alleged conflict of interest could not be said to touch upon a matter of public concern. Id. at *11. First, although a private conversation with an employer does not preclude a finding that a public employee was speaking on a matter of public concern, the court recognized that "[n]onetheless, the forum that a

---

[24] "Nothing in Garcetti suggests that courts should ignore the capacity in which a person speaks in situations where, for example, an employee's speech may be close to -- but not squarely within -- his or her official duties." Benvenisti, 2006 WL 2777274, at *10 n.12

plaintiff chooses is one factor in determining whether the speech implicated a matter of public concern." Id. at *12.[25]

In the instant case, Tolnay's arguments are based on a similar revisionist interpretation of his speech. More specifically, Tolnay did not seek to inform the public of anything. All of his speech was internal and focused on his personal employment situation. In fact, there is no evidence that he intended to initiate any speech, let alone a dialogue or public debate. Rather, Tolnay prepared the case incident report in connection with his job and in compliance with an order. He did not seek the meeting with the Chief. Tolnay was ordered to attend and he was answering questions when he spoke. He did not initiate any speech. His speech was reactive.

Tolnay's claim, (Pl.'s Mem. at 12 n.10), that he did not need to speak with clarity in order to receive protection under the First Amendment is based upon a fundamental misunderstanding of the governing law. See Giacalone v. Abrams, 850 F.2d 79, 86-87 (2d Cir. 1988)(unexpressed concerns are not protected). Under Tolnay's theory, it does not matter that the only comprehensible portion of his speech related to matters of exclusively personal concern to him and internal to the NHPD, (the preservation of his job and his employment grievance), because Chief Wearing allegedly somehow knew "what" Tolnay was talking about, even though Tolnay never actually said it or wrote it. Indeed, under Tolnay's theory, the lack of a statement

---

[25]/    In Benvenisti, although the plaintiff threatened to complain publicly, he first discussed the decision to do so with his supervisor and then delayed filing of the complaint at his supervisor's request. This fact detracted from the threatened complaint's public character. Id. at *12. Moreover, the thrust of the threatened complaint was not that the alleged conflict was an independent problem that needed to be brought to the public's attention. Rather, the plaintiff was concerned about the impact of the alleged conflict on his unit's performance and his team's morale. Thus, the court held that "[w]hile speech alleging a conflict of interest might implicate a matter of public concern, *where the speech is buried in a context that overwhelmingly suggests the plaintiff was merely speaking as an employee on matters of internal office affairs, such speech is not entitled to First Amendment protection.*" Id. (citing Ezekwo)(emphasis added).

concerning a matter of public concern can be supplemented years later by arguments in memoranda of law.

Tolnay's argument notwithstanding, the actual content of a plaintiff's speech is a critical component of a First Amendment case. The words used by a plaintiff must be comprehensible and be objectively understood to be expressing a matter of public concern. The speech cannot be "buried" in an official report and in an employment grievance. Benvenisti, supra, at *12. And a mere connection to a topic of interest is not enough. Id. Absent a "communicative element" to the speech, a First Amendment claim fails as a matter of law.[26]

An examination of Tolnay's actual statements (written and oral), confirms that there was no "communicative element" to put Chief Wearing on alert that a matter of public concern was being raised. Rather, at the meeting, as part of his responses, Tolnay merely expressed an employment grievance about Captain Ortiz and made an incidental and passing comment which speculated that "he" (Tolnay) was at the meeting because of the connections of the ministers. (12/1/05 Tr. at 241-45 ("T")) Likewise, an officer's statement that he cannot or has difficulties performing his duties is made within the scope of or pursuant to his duties. See Benvenisti, supra, at *9 (keeping supervisors apprised of unit's status). Tolnay was not alleging misconduct and he was not seeking to bring anything "to light." See Connick, 461 U.S. at 148. Instead, he (1) wrote an official report explaining the vehicle stop and (2) answered questions regarding the arrests and the traffic stop at a meeting. Both were done pursuant to orders. But for the orders,

---

[26]     Schad v. Jones, 415 F.3d 671, 675 (7th Cir. 2005) emphasized that courts have long recognized that they cannot rely on a plaintiff's speech concerning the general topic of law enforcement, to find that the speech addresses a matter of public concern. Id. Rather, courts *"must 'delve deeper into the precise content'* to determine whether what was said on this topic was of public concern." Id. (emphasis added). Thus, "[t]here must be a communicative element to speech that puts the listener on alert that a matter of public concern is being raised." Id.

there was no evidence that Tolnay ever intended to say anything to anyone. Accordingly, Tolnay's speech did not address a matter of public concern.

## V.    CHIEF WEARING IS ENTITLED TO A JUDGMENT AND A NEW TRIAL UNDER THE PICKERING BALANCING ANALYSIS

Tolnay's claim that Chief Wearing waived his right to have the jury involved in the Pickering analysis by not "propos[ing] fact-based questions [for] the jury" is without merit. (Pl.'s Mem. at 49-50) It is another example of Tolnay's avoiding the actual record in this case. Tolnay's claim notwithstanding, the record demonstrates that (1) as part of its ruling on the Rule 50(a) motion, the Court acknowledged that the Pickering analysis was a question of fact for the jury; (2) Chief Wearing submitted proposed jury interrogatories and instructions that addressed the Pickering analysis; and (3) after the Court did not charge the jury on Pickering and did not involve the jury with the analysis, Chief Wearing took an exception. (12/8/05 Tr. at 154)[27]

Moreover, even assuming for the sake of argument that the Court does not enter a judgment based directly on Garcetti, the reasoning and holding in Garcetti require the entry of a judgment in favor of Chief Wearing under the Pickering balancing analysis. This is true for both the direct analysis and as part of the application of qualified immunity to the Pickering analysis. Specifically, as discussed in detail in his previous memoranda, the case law, including Fuerst, overwhelmingly supports the strength of the interest of a Police Chief in maintaining loyalty and obedience to the chain of command. Indeed, other courts' recognition of the importance of loyalty and the chain of command in police departments is not mere words that can be brushed aside or ignored.

---

[27]/    Indeed, Reuland, which Tolnay cites and which is binding precedent on this Court, *mandates* the ordering of a new trial. 460 F.3d at 419 (factual questions in connection with Pickering analysis "must be submitted to the jury").