As part of the balancing analysis, the Court must also identify Tolnay's interest in making the statements he *actually* wrote and spoke. When viewed in light of Garcetti and the case law regarding plaintiffs' private motivations and the absence of First Amendment protection for employment grievances and internal matters, it is clear that Tolnay had no interest in engaging in the speech at issue. Again, the countervailing consideration is Tolnay's interest in the speech, speech that he never made or intended to make public, not an abstract interest in the speech, after the content of the speech has been dramatically recharacterized in legal memoranda. See Giacalone, 850 F.2d at 86-87.

When analyzing a plaintiff's claim, the capacity within which the plaintiff spoke cannot be ignored even of the speech was close to, but not squarely within, the scope of the plaintiff's employment duties. Benvenisti, 2006 WL 2777274, at *10 n.12. See Mills, 452 F.3d at 647-48. Similarly, the analysis of the content of the speech cannot be "compartmentalize[d]" into only the incidental comments that the plaintiff wishes to acknowledge or emphasize. Taylor, 2006 WL 2527636, at *2. See Chotiner, 2004 WL 2915296, at *7 (employee has no right to refuse to speak with superior until after he obtains legal representation). Nor can a claim be based on concerns that were not articulated. Giacalone, 850 F.2d at 86-87.

Here, the application of the foregoing principles confirms that Tolnay had no protectable interest in the speech. Even assuming for the sake of argument that the speech was not pursuant to his duties, it is as close as it could be. Thus, there is no (or little) protection for it under the First Amendment as interpreted by Garcetti. Moreover, a review of Tolnay's actual speech, (all of it and not just the portion which he has recharacterized), reveals that it merely involved (a) his preparing an official report in compliance with an order, and (b) his making passing comments about his employment situation. The comments were part of Tolnay's answering questions from

the Chief of Police, during a meeting that he was ordered to attend. The speech also included Tolnay's unilateral ending the meeting with the Chief and refusing to speak any further until he had an attorney.

Tolnay's testimony confirms that he made the small portion of his overall speech that he bases his claim on because of his private interests. Even assuming there is something else within the speech, it is, at most, "buried" within Tolnay's private interests, his employment grievance and his compliance with his duties. Personal motivations and employment grievances are not protected by the First Amendment; neither is speech related to job duties or demands for an attorney. Thus, Tolnay's claim is dependent on an improper "compartmentalize[d]" presentation of the speech. It improperly requires the Court to artificially carve out and focus exclusively on an answer to a question, (and more specifically, a *post facto* characterization or interpretation of an incidental comment), while ignoring the complete conversation and ignoring the context within the speech was made. Similarly Tolnay asks the Court to focus only on two paragraphs of the report, while ignoring the remaining 4 or 5 pages and while ignoring the context in which the report was prepared. Thus, in the end, there is nothing to weigh against Chief Wearing's overwhelming and well-establsihed interest in loyalty and the chain of command.

Similarly, under the case law discussed above and in the other memoranda, even if the Court were to conclude that Tolnay has some interest (which has never been articulated by him), then Chief Wearing would be entitled to qualified immunity. Even assuming that Tolnay had a constitutional right, it was not clearly established in a particularized manner that would give fair warning. Even if the right was clearly established, Chief Wearing's conduct was objectively reasonable because under the case law and the circumstances, at a minimum, reasonable police chiefs could disagree about the results of the Pickering balancing analysis.

## VI.  CHIEF WEARING IS ENTITLED TO QUALIFIED IMMUNITY

With regard to Chief Wearing's entitlement to qualified immunity, Tolnay's opposition is limited to two claims. (Pl.'s Mem. at 34-39)  First, he contends that Garcetti cannot factor into a determination of what law was clearly established in 2002.  Second, he argues that Chief Wearing's arguments are barred by Hope v. Pelzer, 536 U.S. 730 (2002).

Both of Tolnay's claims are without merit.[28]  His first claim was addressed above in connection with the discussion of Walters and Hare.  Tolnay's claim under Hope is based on a mischaracterization of Chief Wearing's argument.  A review of all Chief Wearing's post-trial briefs reveals that his qualified immunity arguments are based upon the standard for qualified immunity articulated by the Supreme Court and the Second Circuit and by this Court in its summary judgment ruling.  Indeed, Brosseau v. Haugen, 543 U.S. 194, 198-99 (2004), which distinguishes Hope, quoted Saucier v. Katz, 533 U.S. 194, 201-02 (2001) to identify the standard for qualified immunity.  Brosseau recognized that:

> ...Rather, we emphasized in Anderson [v. Creighton,] 'that the right the officials alleged to have violated must have been 'clearly established' *in a more particularized*, and hence more relevant, sense: The *contours of the right must be sufficiently clear* that a reasonable official would understand that what he is doing violates the right.'...

---

[28]/      Tolnay's reliance on Lonegan v. Hasty, 436 F.Supp.2d 419 (E.D.N.Y. 2006) and Auleta v. LaFrance, 233 F.Supp.2d 396 (N.D.N.Y. 2002) is misplaced.  Lonegan quotes and cites Saucier.  436 F.Supp.2d at 426.  Moreover, Lonegan finds that the right at issue was clearly established based on its analysis of decisional case law.  Id. at 430-33, 436-39.  Auleta does the same.  233 F.Supp.2d at 404.  In fact, Auleta supports the need for this Court to engage in the objectively reasonable prong of the qualified immunity analysis.  Auleta included a First Amendment retaliation claim.  233 F.Supp.2d at 399.  The court recognized that "[n]ot withstanding the alleged violation of clearly established law, Defendant may still be entitled to qualified immunity if Plaintiff does not allege facts that could support a finding that Defendant's actions were objectively unreasonable."  Id. at 404.

543 U.S. at 198-99 (emphasis added). In Brosseau, the Court held that the right at issue was not clearly established, but rather was "hazy" at best, even in the face of three decisions. Id. at 200-01. The Court explained that Hope was not dispositive because the right was clearly established in Hope, even without a body of case law, as it was an "obvious" case. Id. at 199. By contrast, the case at bar is not an obvious case. If under the circumstances at issue (speech in an official report and in response to questions from a superior at a business meeting), Tolnay had any right in his speech made either pursuant to his duties or very closely related to his duties, it was not clearly established under the case law. Id. at 199-201. Garcetti confirms this and this Court acknowledged as much at page 43 of its summary judgment ruling. Consequently, Chief Wearing is entitled to qualified immunity. See Connick, 461 U.S. at 147.

Moreover, contrary to Tolnay's previous claim, Reuland, a Second Circuit decision cited by Tolnay, confirms that the "objectively reasonable" prong of the qualified immunity analysis must be considered in First Amendment retaliation cases. Reuland addressed the issue of whether a reasonable defendant would have understood that his conduct was unlawful. 460 F.3d at 420. In particular, the Second Circuit addressed the question of whether it was "objectively reasonable" for the defendant to believe that the plaintiff's statement was not a matter of public concern. Id. It also examined the issue of whether it would have been "objectively reasonable" for the defendant to believe that he could prevail on the balancing analysis under Pickering. Id. at 420-21.

Consequently, as Chief Wearing's conduct was objectively reasonable both with regard to the substance of Tolnay's First Amendment claim (including the capacity issues raised by Garcetti) and with regard to the issue of whether Chief Wearing could believe that he could prevail under the Pickering balancing analysis, he is entitled to qualified immunity.

Respectfully submitted,

**DEFENDANT**
**MELVIN WEARING**

By: _____

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:      (203) 227-2855
Fax:      (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel:      (860) 522-6103
Fax:      (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

His Attorneys