D.    DEFENDANT IMPROPERLY RESORTS TO RULE 60 IN AN ATTEMPT TO PRESENT ISSUES HE FAILED TO RAISE IN HIS MOTION FOR SUMMARY JUDGMENT AND FURTHER TO CURE A WHOLLY INADEQUATE RULE 50(a) MOTION ADVANCED AT TRIAL.

1.    <u>Defendant's Own Pre-Garcetti Briefs Belie His Claim That Garcetti Provides A Basis For Rule 60 Relief Based Upon An Intervening Change in Governing Law And Defendant Engages In A Mere Ambush Under The Guise of Rule 60 To Mask His Failure To Assert Claims and Advance Legal Arguments In A Timely Manner, In Accordance With The Rules, And Under Circumstances Where The Plaintiff Could Respond To Them Before The Close Of The Trial Evidence.</u>

By the following argument plaintiff does not wish to be heard as conceding the merits of any "Garcetti"-type claim defendant could have but did not make in this case. For the reasons already discussed at length in plaintiff's 48-page brief on the issue of the application of <u>Garcetti</u> submitted to this court on June 30, 2006, the holding and reasoning of <u>Garcetti</u> do not apply to the facts of this case. The numerous cases cited and discussed herein (<u>see</u> Argument A) demonstrate that District Courts have properly distinguished <u>Garcetti</u> from circumstances akin to Officer Tolnay's speech. As plaintiff's June 30, 2006 brief and July 21, 2006 oral argument showed, the notion that speech ordinarily expressed pursuant to one's official job duties is not, under <u>Connick</u>, constitutionally protected (as one is speaking as an employee and not as a citizen) was hardly novel throughout the country; indeed, as Chief Wearing's own belated arguments demonstrate, authority recognizing this principle existed in our own circuit.

40

Chief Wearing's December 28, 2005 post-trial Motion for Judgment As A Matter of Law

bears this out. In his memorandum of law submitted in support of that motion, Chief Wearing sets

forth a host of reasons why judgment should enter in his favor notwithstanding the verdict - reasons

he had failed to raise at any time earlier in these proceedings.[29] New counsel for Wearing, after

dissecting the trial record and mining for new claims with which to ambush the court and the plaintiff,

advances a "Garcetti" claim based on already existing authority in this circuit. For example, for the

first time post-judgment, *and before the Supreme Court issued its opinion in Garcetti*, defense

counsel, relying on several in-circuit cases and numerous out-of-circuit cases, argued the very

proposition he now tries to characterize as "new" per force of the Garcetti holding. See Defendant's

Memorandum of Law in Support of Motion for Judgment As A Matter of Law dated December 28,

2005 at pp. 1-24 (Argument IA).

---

[29]As plaintiff points out in his opposition to Wearing's post-judgment Rule 50 motion, the motion
was mistitled as a "Motion for Judgment As A Matter of Law" and should (and only could) properly
be titled and considered as a *renewal* of Wearing's Rule 50(a) motion advanced at trial. A party may
not advance an evidentiary basis or legal grounds for judgment in a Rule 50(b) renewal which he did
not advance in his Rule 50(a) motion at trial. As plaintiff has shown, Wearing ambushed the
plaintiff and this court with his post-judgment Rule 50 motion by setting forth evidentiary grounds
and law which his trial counsel never even mentioned, much less explicated, at trial. The "new and
improved" Rule 50 motion and grounds therefore was of course the work product not of Wearing's
trial counsel but of another attorney who entered the stage post-verdict, conducted an autopsy on the
case and dissected the trial record, mining for new factual issues and new legal claims. Such tactic
is strictly disallowed not only under the clear language of Rule 50 but the unequivocal command of
the Second Circuit. See Plaintiff's Objection and Memorandum of Law in Opposition to
Defendant's Motion for Judgment As A Matter of Law dated March 20, 2006 at pp. 16-21 and cases
cited therein.

41

At the very beginning of Wearing's December 28, 2005 brief, filed shortly after the verdict and judgment entered, he makes the specific assertion and argument that Tolnay's speech in all respects was unprotected because it was allegedly expressed "**as part of his official duties**", and therefore could not be considered speech as a citizen but was instead job-required speech of an employee. Id. at p. 8. Wearing proceeds at length in that brief to expound upon this claim with analysis of the trial record, documentary evidence and legal analysis. But the holding and opinion in Garcetti did not issue until June of 2006. Wearing instead based his belated and post-trial claim on existing authority in this circuit (and others). Among other cases, Wearing cited to Kelly v. City of Mt. Vernon, 344 F. Supp. 2d 395 (S.D.N.Y. 2004), Cahill v. O'Donnell, 75 F.Supp 2d 264 (S.D.N.Y. 1999), and Pappas v. Guiliani, 290 F.3d 143 (2d Cir. 2002) as standing for the very proposition confirmed by the Supreme Court in Garcetti. See Def.'s 12/28/05 Memo. at pp. 9-16 (discussing Kelly, Cahill, and Pappas.)[30] A review of these cases reveals that the very argument

---

[30]Notably, Wearing, in his Rule 50 brief of December 28, 2005, also cited a string of cases and noted that numerous other circuits have also held that job-required speech expressed pursuant to ones' official job duties is unprotected. See Def.'s Memo. of Law at p.19, n.2 ( noting that , in addition to the authority in our own circuit on this point, at least six other circuits recognized this principle.) Remarkably, Wearing also cited the pendency before the Supreme Court of Garcetti v. Ceballos and discussed and quoted Judge O'Scannlain's special concurrence in the Ninth Circuit's opinion in Garcetti. All this of course raises the question: where was Wearing with these claims, arguments and case authority during the summary judgement phase and the later jury trial? Was it just oversight or was it a calculated strategy designed to deprive plaintiff of the opportunity to effectively dispose of and put to rest any such claims and position himself to later cry "error" upon a verdict adverse to him.

Wearing now advances pursuant to Garcetti was not only available for him to advance at trial but available during the summary judgment phase as well given the dates of these holdings. Indeed, the fact that Wearing advanced the "speech pursuant to official job duty" argument in his December, 2005 pleadings filed in the immediate wake of the jury verdict pointedly undercuts the claim he makes now, viz. that Garcetti provides a "new" rule of law which renders this court's previous rulings erroneous and which requires this court to grant him judgment or a new trial.

At no time during the summary judgment proceeding did Wearing assert that Tolnay's speech was unprotected because it was job-required. [31] At no time during the presentation to this court of his Rule 50(a) motion at trial did Wearing's counsel make such a claim. In fact, a review of the transcript shows that Wearing's counsel did not even purport to make this claim in a generalized fashion, much less in the particularized manner required by Rule 50 with specific reference to the facts and law upon which judgment is sought on such a basis. To the contrary, the trial record reveals the reaction of plaintiff's counsel to Wearing's Rule 50(a) motion, which was essentially a complaint that the motion

---

[31] Wearing instead focused his moving papers on the claim that Tolnay's speech was unprotected because it was not of public concern - not because it was job-required speech however, but because, according to Wearing, it was "CYA" speech of personal concern to Tolnay only. Wearing further advanced the legally baseless argument that Tolnay's speech was unprotected because it was internal, that is, because Tolnay did not go to the press with it, an argument that was disposed of by the Supreme Court long ago in Givhan. The balance of Wearing's moving papers was devoted to Wearing's insistence that Tolnay's speech had nothing to do with the discipline and transfer - that is, Wearing denied any nexus between the two, an argument which violated a basic precept of summary judgment law for that issue - Wearing's motivation - was quintessentially a jury question, not a matter for the court to decide.

was so conclusory and void of content that a response thereto was difficult to formulate as defense counsel, apart from offering generalized statements, did not enlighten counsel or the court as to the actual basis for his motion. Moreover, against a requirement that a Rule 50 movant state the "law" upon which his motion is based, the record shows defense counsel advising the court and his opponent to rely on whatever law he set out in his proposed jury charge[32]. But a review of Wearing's proposed jury charge reveals nothing apart from a shorthand boilerplate statement of first amendment law, an express denial by Wearing that Tolnay's speech had anything to do with the adverse actions and a patently erroneous proposal that the jury decide issues of law (among them whether Wearing was entitled to qualified immunity and whether the employer's asserted interests outweighed the value of Tolnay's speech in the Pickering balance - questions which the Second Circuit has repeatedly reminded us are for the court, not jurors, to decide). Instead, Wearing brings in new counsel who makes these claims via a mistitled motion for JMOL upon the verdict.

---

[32]As if, before responding to the Rule 50(a) motion, the court and plaintiff's counsel were supposed to recess and read defendant's proposed jury charge to figure out what "law" defense counsel was referring to. Moreover, the proposed charge includes no language on the issue of "speech pursuant to official job duties", no indication that Wearing was making such a claim and not a single citation to the authority for that principle of first amendment law which Wearing offers and argues for the first time in his December 28, 2005 Motion for JMOL. See Plaintiff's March 20, 2006 Memorandum of Law In Opposition to Defendant's Motion for Judgment As A Matter Of Law at pp. 13-16 (quoting and discussing defense counsel's Rule 50(a) motion advanced at trial on December 7, 2005); see also Trial Transcript for 12/07/05 at pp. 141-42.

2.    **Apart From The Lack Of Merit In The Claim That Tolnay's Speech Was Undisputedly Expressed Pursuant To His Official Job Duties, Wearing's Failure To Make Such Claim And Advance Such An Argument At Any Time Before Submission Of The Case To The Jury Constitutes A Waiver.**

The plaintiff submits that this Court should follow the reasoning of the District Court in Black v. Columbus Public Schools, 2006 U.S. District LEXIS 57778 (S.D. Oh - August 17, 2006), discussed *infra* at Argument A, for Wearing's post-judgment tactics, culminating in his latest repetitive arguments re-submitted under the guise of Rule 60, are no different in character from those of the defendant in Black. Wearing similarly engaged the Court and the plaintiff in summary judgment proceedings with a strategy that did not include any factual assertions or legal claims he now asserts. Wearing thereafter proceeded through an entire jury trial employing a strategy designed to convince jurors that no link existed between the protected speech and the adverse actions, confining his legal arguments to the court under Rule 50(a) to amorphous and conclusory arguments which omitted any and all reference to the trial evidence, excluded any claim that the case involved job-required speech and was otherwise silent on the very "law" he now advances. As demonstrated above and by Wearing's own legal briefs submitted in the immediate aftermath of the verdict, he could have, but did not, raise at trial the very evidentiary claims and legal arguments he now puts forth to evade the judgment. Having gambled on a trial strategy and lost, he now presents Garcetti as a holding which changes everything, mandates judgment in his favor or provides him a basis to retry the case. But the core holding in Garcetti and the reasoning which underlies it can be found,

45

by Wearing's own admission, in the case law of no less than six circuits, including our own, as Wearing's counsel set forth in his lengthy brief of December 28, 2005. Wearing thus seeks judgment or a retrial on bases that he could have developed and asserted at a time when plaintiff's counsel would have had the opportunity to respond before the case was submitted to the jury. As in Black, Wearing did not do so. He instead, post-judgment, wants this court to rule, as a matter of undisputed fact, that Tolnay's speech was expressed pursuant to an official job duty despite the fact that the Garcetti court expressly stated that its holding turned on an undisputed fact and stipulation between the parties as to the job-required character of Cebellos' speech and further cautioned that the court's holding would not extend to situations where such factual issue was fairly in dispute.

Thus, Wearing now seeks judgment as a matter of law which turns entirely on resolution of a key factual matter after a summary judgment proceeding and full jury trial during which he not only stayed silent on the issue of Tolnay's speech as it related to his official job duties but both implicitly and expressly hinted, if not conceded, that the speech was not job-required. Wearing and Captain Ortiz are on record as having criticized Tolnay for engaging in the speech to begin with as neither man thought it appropriate for Tolnay to be expressing his opinion on the matter of "political speculations". Wearing slammed Tolnay for engaging in "trash-talking" of Ortiz. Wearing's counsel argued to jurors in summation that Tolnay had a "right" (not an obligation) to engage in the speech but simply challenged Tolnay's choice of forum (in a awkward attempt to deal with the possibility that the jurors saw a link between the speech and the discipline while still maintaining Wearing's core

46

defense of outright denial of a nexus between the two)

References to the written comments and oral trial testimony of both Wearing and Ortiz are glaringly absent from all of defense counsel's briefing for the obvious reason that the actual evidence is inconsistent with the very arguments they now advance. Just what is it that Wearing intends to do if granted a retrial? Is he, in flat contradiction to the record he already established, going to tell a second jury that he did indeed punish Tolnay for his political comments and testify that the comments were in fact expressed as part of Tolnay's official job duties but they nevertheless warranted discipline for their destructive and disruptive effect on NHPD operations?

He would have to confess to perjury in the first trial and then offer conclusive evidence on the alleged "job-required" nature of Tolnay's speech, in the process inventing some creative way to disavow his previous written comments and those of Captain Ortiz.

In sum, Wearing's attempt to use Garcetti to escape the judgment is entirely without merit as judgment in Wearing's favor based on Garcetti would require this Court to declare that Tolnay's speech in all respects was, as a matter of undisputed fact, expressed pursuant to his official job duties, findings which the trial record does not permit nor establish. And it would be entirely unfair for defendant to insist that the Court make such a declaration when Wearing ambushed his opponent with a claim of law made for the first time post-judgment, and deprived the plaintiff of an opportunity to dispose of any such claim at the time of trial. Instead Wearing created a trial record which he wants to court now to interpret in a light most favorable to him on a core factual question on which the

47

Garcetti rule turns. At trial Wearing chose to stay clear of any question related to the speech at issue being called for as part of Tolnay's official job duties and the evidence strongly suggests that this decision was calculated (especially when, within days of the verdict, Wearing's counsel was raising the issue and citing pre-existing in-circuit and out-of-circuit authority for the very principle of law for which Garcetti stands after omitting all such arguments in his Rule 50(a) motion thus depriving plaintiff of notice and opportunity to respond or to cure any actual or alleged evidentiary uncertainty respecting Tolnay's official job duties).[33]

As the post-Garcetti decisions discussed *infra* demonstrate, this court cannot on this record declare that among Tolnay's official job duties was the duty to join the media and public discourse on Wearing's and Mayor DeStefano's official and political misdeeds. To the extent that Wearing had an opportunity to offer or adduce evidence to establish or support such a proposition, he failed or elected not to do so and accordingly should be held to have waived any such claims.

---

[33]Wearing, perhaps unwittingly, proves plaintiff's point in this regard when he notes that back in December of 2005, he was not only making a Garcetti-type argument but citing to the forthcoming decision from the U.S. Supreme Court in Garcetti. The Supreme Court did not grant certiorari the day after the defendant's Rule 50(a) argument; the writ was granted much earlier. Thus, defendant was well aware of the forthcoming decision and, as before stated was, shortly after the verdict citing authority within our own circuit that is akin to the Garcetti holding and decided to deprive the court and the plaintiff of these claims and arguments until after they saw what the jury's verdict was.

E.    WEARING'S QUEST FOR JUDGMENT BASED ON THE PICKERING BALANCING OF INTERESTS WAS AND REMAINS MERITLESS AS WEARING FAILED TO PROVIDE A FACTUAL PREDICATE FOR ANY SUCH BALANCING—IN THE FIRST INSTANCE, ELECTED NOT TO SUBMIT FACT-BASED INTERROGATORIES TO THE JURY FOR THIS PURPOSE, GAMBLED ON A FAILED TRIAL STRATEGY AND NOW SEEKS IMPROPERLY TO ESCAPE THE JURY'S DETERMINATION THAT HE LIED IN CLAIMING THAT TOLNAY WAS DISCIPLINED AND TRANSFERRED BECAUSE HE ALLEGEDLY "WALKED OUT" OF A MEETING.

Under the guise of Rule 60, Chief Wearing now seeks to escape his failed trial strategy by unfairly accusing the court of having erred in applying the <u>Pickering</u> analysis in its rulings denying Wearing's motion for summary judgment and in his Rule 50(a) motion at trial. <u>See</u> Def.'s Brief at pp. 24-26. Wearing persists in his fundamental misunderstanding of the <u>Pickering</u> balance test. Plaintiff has already fully briefed this matter in his March 20, 2006 Memorandum of Law In Opposition to Defendant's Rule 59 Motion for a New Trial and Remittitur. <u>See</u> Pltf.'s Memo. at pp. 45-50 (discussing applicable Second Circuit authority and Wearing's failure to provide an evidentiary and legal basis for a striking of such balance in his favor and further noting the consequences of Wearing's trial strategy of denying a nexus between the speech and the adverse actions.) Thus, plaintiff will not here repeat those arguments but incorporates them fully herein.

The Second Circuit's recent post-<u>Garcetti</u> decision in <u>Reuland v. Hynes</u>, 2006 U.S. App.

49

LEXIS 21346 August 21, 2006), not only disposes of defendant's other claims but effectively disposes of his claim of error on the part of this court on the <u>Pickering</u> balance. By failing to propose fact-based questions to the jury related to any alleged actual or threatened disruption resulting from the actual speech which Tolnay asserted was protected, defendant waived any such right to jury determination of facts necessary to review of the court's application of <u>Pickering</u>.

THE PLAINTIFF

ARPAD TOLNAY

BY: _____

KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm St., Suite 307
New Haven, CT 06510
(203) 865-5541

His Attorney

50

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed on this 11th day of September, 2006 to:

Robert A. Rhodes, Esq.
Ralph W. Johnson, III, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

Hubert J. Santos, Esq.
Santos & Seeley, P.C.
51 Russ St.
Hartford, CT 06106

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

KAREN LEE TORRE

51

## CERTIFICATION

This is to certify that on this 10th day of October, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT  06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT  06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT  06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT  06106

The Honorable Ellen B. Burns
United States District Court
    for the District of Connecticut
141 Church Street
New Haven, CT  06510
(*Courtesy copy, via Hand Delivery*)

Ralph W. Johnson III

894368_1 DOC

27

# EXHIBIT 2

FILED

IN THE UNITED STATES DISTRICT COURT,
FOR THE DISTRICT OF CONNECTICUT 2006 OCT 10 P 3: 57

U.S. DISTRICT COURT
NEW HAVEN, CT

ARPAD TOLNAY                          :    CIVIL ACTION NO.
          Plaintiff                   :    3:02-CV-1514 (EBB)
                                      :
V.                                     :
                                      :
MELVIN WEARING                         :
          Defendant                   :    OCTOBER 10, 2006

## THE DEFENDANT'S MOTION FOR ACCEPTANCE OF HIS REPLY MEMORANDUM IN EXCESS OF PAGE LIMITATION OR, IN THE ALTERNATIVE, MOTION TO STRIKE THE PLAINTIFF'S OPPOSITION MEMORANDUM

Pursuant to Local Rule 7, the defendant, Melvin Wearing, the former Chief of Police for

the City of New Haven, hereby moves the Court to accept his reply memorandum of law in

further support of his motion for relief from judgment, which exceeds the page limitation under

the Local Rules. In the alternative, Chief Wearing moves the Court to strike the plaintiff's

opposition memorandum, as it exceeds the page limitation under the Local Rules by 10 pages

and violates this Court's express admonition in its April 27, 2006 Ruling. The plaintiff's

opposition memorandum was filed without leave from the Court. For the reasons set forth

below, the Court should grant Chief Wearing's motion and accept his reply memorandum. In the

alternative, it should strike the plaintiff's opposition memorandum.

In support of his motion, Chief Wearing states as follows:

1.      The memorandum of law at issue is Chief Wearing's reply memorandum in

further support of his motion for relief from judgment, pursuant to Rule 60. The reply

memorandum is 25 pages of text. It exceeds the page limitation under Local Rule 7(d) by 15

pages. It has been filed contemporaneously with this motion.

2.    This case involves a judgment in excess of $5.1 million. The case is deserving of and requires additional briefing. Indeed, the Court has previously recognized that the issues in this case are significant and that given the size of the verdict, it would be "hard-pressed" to deny a request for additional briefing. (4/27/06 Ruling, at 4) Despite diligence and considerable efforts, Chief Wearing's counsel could not prepare a reply memorandum within the 10-page limitation established by Local Rule 7(d) and still adequately respond to the plaintiff's opposition memorandum.

3.    In particular, the additional pages were necessary to respond to the plaintiff's 50-page opposition memorandum and the numerous decisions cited in it. In his opposition memorandum, the plaintiff cited no less than 36 decisions. After the opposition was filed on September 11, 2006, and despite claiming at page 3 of the opposition that Chief Wearing had no "right to rebrief the issue[s] everytime he thinks a new opinion aids his cause," the plaintiff cited an additional decision to the Court via a letter dated September 14, 2006. Moreover, the plaintiff's opposition went beyond the issues raised by Chief Wearing's Rule 60 motion and advanced arguments related to the pre-Garcetti v. Ceballos analysis. Those arguments and the recent Second Circuit decisions cited by the plaintiff had to be replied to.

4.    As part of the reply memorandum, Chief Wearing also needed to bring to the Court's attention the recent case law applying the Supreme Court's decision in Garcetti v. Ceballos, 126 S.Ct. 1951 (2006).

5.    As noted above, the plaintiff's 50-page opposition memorandum violates Local Rule 7(a)2's 40-page limit on a response memorandum. It also violates this Court's express admonition in its April 27, 2006 Ruling. (4/27/06 Ruling, at 3 ("This ruling does not excuse either party for observing and conforming to all relevant page limitations now and in the

future.")) This is the second occasion on which the plaintiff has violated the page limitation under Local Rule 7(a)2 and this Court's admonition in the April 27 Ruling. As the opposition twice acknowledges, the plaintiff's <u>Garcetti</u> memorandum filed on June 30, 2006 was 48-pages in length. (Pl.'s Oppo. Mem. at 4, 40)

6.    In addition to having to respond to a 50-page opposition, when considered in context, Chief Wearing's total, proposed briefing in connection with his Rule 60 motion is reasonable. In particular, under Local Rule 7, a movant is generally allowed a total of 50 pages of briefing in support of a motion, 40 pages in the initial memorandum and 10 pages in the reply memorandum. Here, Chief Wearing's initial memorandum was 32 pages of text and his reply memorandum is 25 pages of text, for a total of 57 pages of briefing. Thus, Chief Wearing's total, proposed briefing in support of his Rule 60 motion, 57 pages, is reasonable.

7.    The plaintiff's two violations of Local Rule 7 and the Court's April 27 Ruling alone justify the granting of the instant motion. Moreover, as demonstrated above, independent, good cause exists for allowing Chief Wearing to exceed the page limitation and for the Court to accept the reply memorandum at issue. Accordingly, the Court should grant Chief Wearing's motion and accept his reply memorandum.

8.    In the alternative, if the Court does not grant the instant motion, Chief Wearing requests that the Court strike the plaintiff's opposition memorandum of law dated September 8, 2006 and filed on September 11, 2006. (Elec. Docket Entry No. 232) The copy of the opposition served on counsel is attached as Exhibit A to Chief Wearing's reply memorandum. The copy of the opposition on the Court's electronic docket does not have any page numbers. It also has other formatting issues. For example, 5 pages of it are single-spaced in violation of Local Rule 7(a)2.

9.    The opposition should be stricken as it violates Local Rule 7(a)2's 40-page limit on a response memorandum.  Specifically, as noted above, the opposition is 50-pages in length.  As previously noted, the plaintiff's opposition also violates this Court's express admonition in its April 27 Ruling.  (4/27/06 Ruling, at 3 ("This ruling does not excuse either party for observing and conforming to all relevant page limitations now and in the future."))

10.    The plaintiff did not seek leave from the Court to exceed the page limitation in connection with the opposition.  As the text of the 50-page opposition confirms, this is the second time that the plaintiff has violated both Local Rule 7(a)2 and the April 27 Ruling.  Specifically, the plaintiff's memorandum regarding Garcetti filed on June 30, 2006 was 48-pages in length.  (Pl.'s Oppo. Mem. at 4, 40)  As with the opposition at issue, the plaintiff's 48-page Garcetti memorandum was filed without leave from the Court.

11.    Accordingly, if the Court does not accept Chief Wearing's reply memorandum of law, it should strike the plaintiff's opposition memorandum of law.

WHEREFORE, for good cause shown, Chief Wearing requests that the Court grant his motion and accept his reply memorandum of law in further support of his motion for relief from judgment under Rule 60. In the alternative, Chief Wearing requests that the Court strike the plaintiff's opposition memorandum of law.

Respectfully submitted,

DEFENDANT
MELVIN WEARING

By: _____
Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
HALLORAN & SAGE LLP
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:     (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:     (860) 522-6103
Fax:     (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

His Attorneys

## CERTIFICATION

This is to certify that on this 10th day of October, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT  06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT  06106

The Honorable Ellen B. Burns
United States District Court
  for the District of Connecticut
141 Church Street
New Haven, CT  06510
*(Courtesy Copy, Via Hand Delivery)*

Ralph W. Johnson, III

895916_1 DOC

6