D.   DEFENDANT IMPROPERLY RESORTS TO RULE 60 IN AN ATTEMPT TO PRESENT ISSUES HE FAILED TO RAISE IN HIS MOTION FOR SUMMARY JUDGMENT AND FURTHER TO CURE A WHOLLY INADEQUATE RULE 50(a) MOTION ADVANCED AT TRIAL.

1.   <u>Defendant's Own Pre-Garcetti Briefs Belie His Claim That Garcetti Provides A Basis For Rule 60 Relief Based Upon An Intervening Change in Governing Law And Defendant Engages In A Mere Ambush Under The Guise of Rule 60 To Mask His Failure To Assert Claims and Advance Legal Arguments In A Timely Manner, In Accordance With The Rules, And Under Circumstances Where The Plaintiff Could Respond To Them Before The Close Of The Trial Evidence.</u>

By the following argument plaintiff does not wish to be heard as conceding the merits of any "Garcetti"-type claim defendant could have but did not make in this case. For the reasons already discussed at length in plaintiff's 48-page brief on the issue of the application of <u>Garcetti</u> submitted to this court on June 30, 2006, the holding and reasoning of <u>Garcetti</u> do not apply to the facts of this case. The numerous cases cited and discussed herein (<u>see</u> Argument A) demonstrate that District Courts have properly distinguished <u>Garcetti</u> from circumstances akin to Officer Tolnay's speech. As plaintiff's June 30, 2006 brief and July 21, 2006 oral argument showed, the notion that speech ordinarily expressed pursuant to one's official job duties is not, under <u>Connick</u>, constitutionally protected (as one is speaking as an employee and not as a citizen) was hardly novel throughout the country; indeed, as Chief Wearing's own belated arguments demonstrate, authority recognizing this principle existed in our own circuit.

40

Chief Wearing's December 28, 2005 post-trial Motion for Judgment As A Matter of Law bears this out. In his memorandum of law submitted in support of that motion, Chief Wearing sets forth a host of reasons why judgment should enter in his favor notwithstanding the verdict - reasons he had failed to raise at any time earlier in these proceedings.[29] New counsel for Wearing, after dissecting the trial record and mining for new claims with which to ambush the court and the plaintiff, advances a "Garcetti" claim based on already existing authority in this circuit. For example, for the first time post-judgment, *and before the Supreme Court issued its opinion in Garcetti*, defense counsel, relying on several in-circuit cases and numerous out-of-circuit cases,  argued the very proposition he now tries to characterize as "new" per force of the Garcetti holding. See Defendant's Memorandum of Law in Support of Motion for Judgment As A Matter of Law dated December 28, 2005 at pp. 1-24 (Argument IA).

---

[29] As plaintiff points out in his opposition to Wearing's post-judgment Rule 50 motion, the motion was mistitled as a "Motion for Judgment As A Matter of Law" and should (and only could) properly be titled and considered as a *renewal* of Wearing's Rule 50(a) motion advanced at trial. A party may not advance an evidentiary basis or legal grounds for judgment in a Rule 50(b) renewal which he did not advance in his Rule 50(a) motion at trial. As plaintiff has shown, Wearing ambushed the plaintiff and this court with his post-judgment Rule 50 motion by setting forth evidentiary grounds and law which his trial counsel never even mentioned, much less explicated, at trial. The "new and improved" Rule 50 motion and grounds therefore was of course the work product not of Wearing's trial counsel but of another attorney who entered the stage post-verdict, conducted an autopsy on the case and dissected the trial record, mining for new factual issues and new legal claims. Such tactic is strictly disallowed not only under the clear language of Rule 50 but the unequivocal command of the Second Circuit. See Plaintiff's Objection and Memorandum of Law in Opposition to Defendant's Motion for Judgment As A Matter of Law dated March 20, 2006 at pp. 16-21 and cases cited therein.

41

At the very beginning of Wearing's December 28, 2005 brief, filed shortly after the verdict and judgment entered, he makes the specific assertion and argument that Tolnay's speech in all respects was unprotected because it was allegedly expressed "**as part of his official duties**", and therefore could not be considered speech as a citizen but was instead job-required speech of an employee. Id. at p. 8. Wearing proceeds at length in that brief to expound upon this claim with analysis of the trial record, documentary evidence and legal analysis. But the holding and opinion in Garcetti did not issue until June of 2006. Wearing instead based his belated and post-trial claim on existing authority in this circuit (and others). Among other cases, Wearing cited to Kelly v. City of Mt. Vernon, 344 F. Supp. 2d 395 (S.D.N.Y. 2004), Cahill v. O'Donnell, 75 F.Supp 2d 264 (S.D.N.Y. 1999), and Pappas v. Guiliani, 290 F.3d 143 (2d Cir. 2002) as standing for the very proposition confirmed by the Supreme Court in Garcetti. See Def.'s 12/28/05 Memo. at pp. 9-16 (discussing Kelly, Cahill, and Pappas.)[30] A review of these cases reveals that the very argument

---

[30]Notably, Wearing, in his Rule 50 brief of December 28, 2005, also cited a string of cases and noted that numerous other circuits have also held that job-required speech expressed pursuant to ones' official job duties is unprotected. See Def.'s Memo. of Law at p.19, n.2 ( noting that , in addition to the authority in our own circuit on this point, at least six other circuits recognized this principle.) Remarkably, Wearing also cited the pendency before the Supreme Court of Garcetti v. Ceballos and discussed and quoted Judge O'Scannlain's special concurrence in the Ninth Circuit's opinion in Garcetti. All this of course raises the question: where was Wearing with these claims, arguments and case authority during the summary judgement phase and the later jury trial? Was it just oversight or was it a calculated strategy designed to deprive plaintiff of the opportunity to effectively dispose of and put to rest any such claims and position himself to later cry "error" upon a verdict adverse to him.

42

Wearing now advances pursuant to Garcetti was not only available for him to advance at trial but available during the summary judgment phase as well given the dates of these holdings. Indeed, the fact that Wearing advanced the "speech pursuant to official job duty" argument in his December, 2005 pleadings filed in the immediate wake of the jury verdict pointedly undercuts the claim he makes now, viz. that Garcetti provides a "new" rule of law which renders this court's previous rulings erroneous and which requires this court to grant him judgment or a new trial.

At no time during the summary judgment proceeding did Wearing assert that Tolnay's speech was unprotected because it was job-required. [31] At no time during the presentation to this court of his Rule 50(a) motion at trial did Wearing's counsel make such a claim. In fact, a review of the transcript shows that Wearing's counsel did not even purport to make this claim in a generalized fashion, much less in the particularized manner required by Rule 50 with specific reference to the facts and law upon which judgment is sought on such a basis. To the contrary, the trial record reveals the reaction of plaintiff's counsel to Wearing's Rule 50(a) motion, which was essentially a complaint that the motion

---

[31] Wearing instead focused his moving papers on the claim that Tolnay's speech was unprotected because it was not of public concern - not because it was job-required speech however, but because, according to Wearing, it was "CYA" speech of personal concern to Tolnay only. Wearing further advanced the legally baseless argument that Tolnay's speech was unprotected because it was internal, that is, because Tolnay did not go to the press with it, an argument that was disposed of by the Supreme Court long ago in Givhan. The balance of Wearing's moving papers was devoted to Wearing's insistence that Tolnay's speech had nothing to do with the discipline and transfer - that is, Wearing denied any nexus between the two, an argument which violated a basic precept of summary judgment law for that issue - Wearing's motivation - was quintessentially a jury question, not a matter for the court to decide.

43

was so conclusory and void of content that a response thereto was difficult to formulate as defense counsel, apart from offering generalized statements, did not enlighten counsel or the court as to the actual basis for his motion. Moreover, against a requirement that a Rule 50 movant state the "law" upon which his motion is based, the record shows defense counsel advising the court and his opponent to rely on whatever law he set out in his proposed jury charge[32]. But a review of Wearing's proposed jury charge reveals nothing apart from a shorthand boilerplate statement of first amendment law, an express denial by Wearing that Tolnay's speech had anything to do with the adverse actions and a patently erroneous proposal that the jury decide issues of law (among them whether Wearing was entitled to qualified immunity and whether the employer's asserted interests outweighed the value of Tolnay's speech in the Pickering balance - questions which the Second Circuit has repeatedly reminded us are for the court, not jurors, to decide). Instead, Wearing brings in new counsel who makes these claims via a mistitled motion for JMOL upon the verdict.

---

[32]As if, before responding to the Rule 50(a) motion, the court and plaintiff's counsel were supposed to recess and read defendant's proposed jury charge to figure out what "law" defense counsel was referring to. Moreover, the proposed charge includes no language on the issue of "speech pursuant to official job duties", no indication that Wearing was making such a claim and not a single citation to the authority for that principle of first amendment law which Wearing offers and argues for the first time in his December 28, 2005 Motion for JMOL. See Plaintiff's March 20, 2006 Memorandum of Law In Opposition to Defendant's Motion for Judgment As A Matter Of Law at pp.13-16 (quoting and discussing defense counsel's Rule 50(a) motion advanced at trial on December 7, 2005); see also Trial Transcript for 12/07/05 at pp. 141-42.

2. **Apart From The Lack Of Merit In The Claim That Tolnay's Speech Was Undisputedly Expressed Pursuant To His Official Job Duties, Wearing's Failure To Make Such Claim And Advance Such An Argument At Any Time Before Submission Of The Case To The Jury Constitutes A Waiver.**

The plaintiff submits that this Court should follow the reasoning of the District Court in Black v. Columbus Public Schools, 2006 U.S. District LEXIS 57778 (S.D. Oh - August 17, 2006), discussed *infra* at Argument A, for Wearing's post-judgment tactics, culminating in his latest repetitive arguments re-submitted under the guise of Rule 60, are no different in character from those of the defendant in Black. Wearing similarly engaged the Court and the plaintiff in summary judgment proceedings with a strategy that did not include any factual assertions or legal claims he now asserts. Wearing thereafter proceeded through an entire jury trial employing a strategy designed to convince jurors that no link existed between the protected speech and the adverse actions, confining his legal arguments to the court under Rule 50(a) to amorphous and conclusory arguments which omitted any and all reference to the trial evidence, excluded any claim that the case involved job-required speech and was otherwise silent on the very "law" he now advances. As demonstrated above and by Wearing's own legal briefs submitted in the immediate aftermath of the verdict, he could have, but did not, raise at trial the very evidentiary claims and legal arguments he now puts forth to evade the judgment. Having gambled on a trial strategy and lost, he now presents Garcetti as a holding which changes everything, mandates judgment in his favor or provides him a basis to retry the case. But the core holding in Garcetti and the reasoning which underlies it can be found,

45

by Wearing's own admission, in the case law of no less than six circuits, including our own, as Wearing's counsel set forth in his lengthy brief of December 28, 2005. Wearing thus seeks judgment or a retrial on bases that he could have developed and asserted at a time when plaintiff's counsel would have had the opportunity to respond before the case was submitted to the jury. As in <u>Black</u>, Wearing did not do so. He instead, post-judgment, wants this court to rule, <u>as a matter of undisputed fact</u>, that Tolnay's speech was expressed pursuant to an official job duty despite the fact that the <u>Garcetti</u> court expressly stated that its holding turned on an undisputed fact and stipulation between the parties as to the job-required character of Cebellos' speech and further cautioned that the court's holding would <u>not</u> extend to situations where such factual issue was fairly in dispute.

Thus, Wearing now seeks judgment as a matter of law which turns entirely on resolution of a key factual matter after a summary judgment proceeding and full jury trial during which he not only stayed silent on the issue of Tolnay's speech as it related to his official job duties but both implicitly and expressly hinted, if not conceded, that the speech was not job-required. Wearing and Captain Ortiz are on record as having criticized Tolnay for engaging in the speech to begin with as neither man thought it appropriate for Tolnay to be expressing his opinion on the matter of "political speculations". Wearing slammed Tolnay for engaging in "trash-talking" of Ortiz. Wearing's counsel argued to jurors in summation that Tolnay had a "right" (not an obligation) to engage in the speech but simply challenged Tolnay's choice of forum (in a awkward attempt to deal with the possibility that the jurors saw a link between the speech and the discipline while still maintaining Wearing's core

46

defense of outright denial of a nexus between the two)

References to the written comments and oral trial testimony of both Wearing and Ortiz are glaringly absent from all of defense counsel's briefing for the obvious reason that the actual evidence is inconsistent with the very arguments they now advance. Just what is it that Wearing intends to do if granted a retrial? Is he, in flat contradiction to the record he already established, going to tell a second jury that he did indeed punish Tolnay for his political comments and testify that the comments were in fact expressed as part of Tolnay's official job duties but they nevertheless warranted discipline for their destructive and disruptive effect on NHPD operations?
He would have to confess to perjury in the first trial and then offer conclusive evidence on the alleged "job-required" nature of Tolnay's speech, in the process inventing some creative way to disavow his previous written comments and those of Captain Ortiz.

In sum, Wearing's attempt to use <u>Garcetti</u> to escape the judgment is entirely without merit as judgment in Wearing's favor based on <u>Garcetti</u> would require this Court to declare that Tolnay's speech in all respects was, as a matter of undisputed fact, expressed pursuant to his official job duties, findings which the trial record does not permit nor establish. And it would be entirely unfair for defendant to insist that the Court make such a declaration when Wearing ambushed his opponent with a claim of law made for the first time post-judgment, and deprived the plaintiff of an opportunity to dispose of any such claim at the time of trial. Instead Wearing created a trial record which he wants to court now to interpret in a light most favorable to him on a core factual question on which the

47

Garcetti rule turns. At trial Wearing chose to stay clear of any question related to the speech at issue being called for as part of Tolnay's official job duties and the evidence strongly suggests that this decision was calculated (especially when, within days of the verdict, Wearing's counsel was raising the issue and citing pre-existing in-circuit and out-of-circuit authority for the very principle of law for which Garcetti stands after omitting all such arguments in his Rule 50(a) motion thus depriving plaintiff of notice and opportunity to respond or to cure any actual or alleged evidentiary uncertainty respecting Tolnay's official job duties).[33]

As the post-Garcetti decisions discussed *infra* demonstrate, this court cannot on this record declare that among Tolnay's official job duties was the duty to join the media and public discourse on Wearing's and Mayor DeStefano's official and political misdeeds. To the extent that Wearing had an opportunity to offer or adduce evidence to establish or support such a proposition, he failed or elected not to do so and accordingly should be held to have waived any such claims.

---

[33]Wearing, perhaps unwittingly, proves plaintiff's point in this regard when he notes that back in December of 2005, he was not only making a Garcetti-type argument but citing to the forthcoming decision from the U.S. Supreme Court in Garcetti. The Supreme Court did not grant certiorari the day after the defendant's Rule 50(a) argument; the writ was granted much earlier. Thus, defendant was well aware of the forthcoming decision and, as before stated was, shortly after the verdict citing authority within our own circuit that is akin to the Garcetti holding and decided to deprive the court and the plaintiff of these claims and arguments until after they saw what the jury's verdict was.

E.    WEARING'S QUEST FOR JUDGMENT BASED ON THE PICKERING BALANCING OF INTERESTS WAS AND REMAINS MERITLESS AS WEARING FAILED TO PROVIDE A FACTUAL PREDICATE FOR ANY SUCH BALANCING IN THE FIRST INSTANCE, ELECTED NOT TO SUBMIT FACT-BASED INTERROGATORIES TO THE JURY FOR THIS PURPOSE, GAMBLED ON A FAILED TRIAL STRATEGY AND NOW SEEKS IMPROPERLY TO ESCAPE THE JURY'S DETERMINATION THAT HE LIED IN CLAIMING THAT TOLNAY WAS DISCIPLINED AND TRANSFERRED BECAUSE HE ALLEGEDLY "WALKED OUT" OF A MEETING.

Under the guise of Rule 60, Chief Wearing now seeks to escape his failed trial strategy by unfairly accusing the court of having erred in applying the <u>Pickering</u> analysis in its rulings denying Wearing's motion for summary judgment and in his Rule 50(a) motion at trial. <u>See</u> Def.'s Brief at pp. 24-26. Wearing persists in his fundamental misunderstanding of the <u>Pickering</u> balance test. Plaintiff has already fully briefed this matter in his March 20, 2006 Memorandum of Law In Opposition to Defendant's Rule 59 Motion for a New Trial and Remittitur. <u>See</u> Pltf.'s Memo. at pp. 45-50 (discussing applicable Second Circuit authority and Wearing's failure to provide an evidentiary and legal basis for a striking of such balance in his favor and further noting the consequences of Wearing's trial strategy of denying a nexus between the speech and the adverse actions.) Thus, plaintiff will not here repeat those arguments but incorporates them fully herein.

The Second Circuit's recent post-<u>Garcetti</u> decision in <u>Reuland v. Hynes</u>, 2006 U.S. App.

49

LEXIS 21346 August 21, 2006), not only disposes of defendant's other claims but effectively disposes of his claim of error on the part of this court on the <u>Pickering</u> balance. By failing to propose fact-based questions to the jury related to any alleged actual or threatened disruption resulting from the actual speech which Tolnay asserted was protected, defendant waived any such right to jury determination of facts necessary to review of the court's application of <u>Pickering</u>.

THE PLAINTIFF

ARPAD TOLNAY

BY: _____
KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm St., Suite 307
New Haven, CT 06510
(203) 865-5541

His Attorney

50

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed on this 11th day of September, 2006 to:

Robert A. Rhodes, Esq.
Ralph W. Johnson, III, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

Hubert J. Santos, Esq.
Santos & Seeley, P.C.
51 Russ St.
Hartford, CT 06106

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

KAREN LEE TORRE

51

## CERTIFICATION

This is to certify that on this 10th day of October, 2006, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

The Honorable Ellen B. Burns
United States District Court
    for the District of Connecticut
141 Church Street
New Haven, CT 06510
(*Courtesy copy, via Hand Delivery*)

Ralph W. Johnson III

894368_1 DOC

27