UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARPAD TOLNAY : | |
| : | |
| Plaintiff, : | |
| : | Civil No. 3:02CV1514 (EBB) |
| V. : | |
| : | |
| MELVIN WEARING : | |
| : | August 2, 2007 |
| Defendant. | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
SUPPLEMENTAL APPLICATION FOR AN AWARD OF
ATTORNEY'S FEES AND COSTS**

The plaintiff, Officer Arpad Tolnay, hereby submits his reply to Chief Wearing's June 8, 2007 objection and memorandum in opposition to Officer Tolnay's supplemental application for an award of attorney's fees and costs dated March 19, 2007.

**I.   INTRODUCTION**

Chief Wearing's numerous objections are without merit and many are frivolous. This Court is intimately familiar with this case, having managed it from its beginnings, seen it through summary judgment proceedings, presided over a full jury trial and later relived the trial and all its details in assessing and disposing of defendant's many post-judgment motions.[1]

---

[1] These motions included a Rule 50 Motion for Judgment as a Matter of Law, a Rule 59 Motion for a New Trial, a separate (and improper) "Motion for Remittitur" and, on top of the parties' extensive briefing in the wake of the U.S. Supreme Court's decision in Garcetti v. Cebalos, 125 S.Ct. 1951 (2006), still another motion from defendant Wearing seeking relief from the judgment under Fed.R.Civ.Pro. 60. This Court disposed of all of defendant's motions in its 47-page ruling of February 5, 2007.

Accordingly, in reviewing the time accountings and descriptions of work performed by plaintiff's counsel, this Court is in the best position and well-suited to remember and understand the amount of time this litigation has cost plaintiff's counsel.

II. <u>ARGUMENT</u>

    A. **THE TASKS PERFORMED WERE MORE THAN ADEQUATELY DESCRIBED.**

Employing a "cut and paste" method of argument, Chief Wearing repeats over and again the same pasted argument, to wit: if plaintiffs' counsel are the experienced litigators they claim to be, they should know what the rules are regarding fee applications and the extent and nature of descriptions of work required. Citing but several out-of-circuit rulings, and misrepresenting them at that, defense counsel wants this court to announce a new standard in the District of Connecticut with respect to descriptive details of tasks performed by attorneys.

There is a reason why Wearing's counsel does not cite a single case from within this district to support his argument. It is because the members of Connecticut's civil rights bar, including the undersigned counsel, have been submitting fee applications to the judges of this District for almost two decades with such content and in such form as the applications pending before the Court in this case. If anything, the undersigned's applications in this case contain even more detail than those of prior applications which were granted without controversy. Notably, defendant cites repeatedly to the undersigned's application in <u>Arlio v. Lively</u>, No. 3:03CV02013. That application, granted in full, contained an indistinguishable form of

accounting and method of description. Judge Arterton had no problem whatsoever with the descriptions. Nor has any other judge and yet defense counsel accuses plaintiff's counsel of violating a known standard of accounting and task description. Plaintiff's counsel has relied on the standard established by judges in this District.

Indeed, a review of Wearing's memorandum and his excruciatingly detailed exhibits shows that defense counsel who, unlike plaintiff's counsel, is timely paid by the hour, evidently spent far more time perusing and nit-picking hundreds of entries at a cost to his clients (or the insurance companies) that outweighs any savings he purportedly seeks by a requested reduction in the award.

It seems absurd for defendant to challenge, as insufficiently described, such entries as: 1) "AM preparation for settlement conference"; 2) "Document review of defendant's objections to discovery"; or 3) "Continued drafting of opposition to defendant's Rule 50 motion." What more of a description does defense counsel need? Indeed, defense counsel vociferously objects to turning over their own billing records for comparison. Plaintiff's counsel has little doubt that defense counsel likewise employ similarly sufficient descriptions of tasks performed in their own billing and probably billed more hours.[2]

---

[2] Defendant challenges a March 22, 2006 entry claiming 1.2 hours for review and research on Rule 11 implications of a letter and "motion to dismiss" from defense counsel, asserting this entry must relate to another case because no motion to dismiss was filed in Tolnay. See Def.'s Memo. at p. 9. The undersigned investigated the matter and can represent to the court that the reference to a "motion to dismiss" was in fact an input error and the entry should have indicated "defendant's *motion for protective order*". The entry and time expended was in connection with Tolnay and not another case, as it related to communications between counsel and research regarding defense counsel's motion

**B.     THE REQUESTED HOURLY RATES APPROPRIATELY REFLECT THE SKILL AND EXPERIENCE OF BOTH COUNSEL AS WELL AS THE LENGTH AND COMPLEXITY OF THE PROCEEDINGS**.

Not only was this not a garden-variety case, but numerous legal issues erupted in the wake of the verdict not the least of which is this Court's call for briefing on the import of the Supreme Court's <u>Garcetti</u> opinion.  After extensive briefing, defendants thereafter sought judgment for the fourth time, the latest effort under Fed. R. Civ. Pro. 60, necessitating further research and analysis respecting <u>Garcetti</u> as well as the procedural propriety of a Rule 60 motion.

**1.     Defendant Complicated The Proceedings Further By Instigating A New Round Of Litigation Over The Posting of Security For The Judgment.**

All other strategies having failed, defendant instigated another, and unprecedented, round of litigation and extensive hearings with his provocative and controversial suggestions that he is not, or at least no longer is, indemnified by the City of New Haven.  Plaintiff's counsel was then forced to contend not only with a claim believed to be spurious and contrived for strategic purposes but one which, as such, raised serious ethical issues.  It provoked the necessity of extensive research into such legal issues as: (1) defendant's questionable post-trial "poor-mouthing" while repeatedly invoking attorney-client privilege to prevent any

---

for a protective order designed to block discovery of Wearing's assets..

meaningful examination into the truthfulness and credibility of his suggestions; (2) issues surrounding the withdrawal from the case by municipal counsel and their like refusal, on grounds of privilege, to answer any questions regarding their interactions with Wearing or his private counsel regarding third party sources of payment; (3) the necessity of legal research on the issue of subrogation as well as defendant's rights of action against municipal attorneys and his private counsel, all relevant to the issue of defendant's assets and the credibility of post-trial poor-mouthing.[3]

The unprecedented amount of time and investment expended and made by plaintiff's counsel is entirely the fault of this defendant and his seven attorneys, with prompting by Attorney Keefe.[4]

### 2. The Hourly Rate Awarded To Attorney John R. Williams In *Galazo v. Pieksca* Is Irrelevant As There Is No Comparison Between That Case And The Instant Case.

---

[3] The high-profile nature of this case, which drew much media attention, together with the size of the awards produced a new array of attorneys, including Hugh Keefe and Hubert Santos. With that came the necessity of plaintiff's counsel having to research and craft a motion and brief which successfully sought an order restraining Mr. Keefe's interruptions of the proceedings and constraining him to a properly limited role as counsel for non-party witnesses. The time accounting reveals just how much time a solo practitioner was caused to expend fending off new tactics from new lawyers with a new agenda. The questionable post-trial assertion of poverty occurred after Wearing's counsel declined, for strategic reasons, to pursue the issue at trial before the jurors and abruptly stopped any cross-examination into Wearing's insurance and indemnification.

[4] The Court is reminded that evidentiary hearings were further provoked by Wearing's unjustified refusal to respond to asset interrogatories and respect a notice of deposition regarding his assets. He has resisted and obstructed plaintiff's counsel every single step of the way through lawyers every single one of whom has enjoyed timely payment by the hour and thus far have been the only ones who have profited and continue to profit from this case. The evidentiary hearings revealed that Wearing, remarkably, contracted with Attorney Santos who is charging $500 an hour.

Defendant places undue emphasis on the $350.00 hourly rate granted to Attorney Williams by Magistrate Judge Smith in <u>Galazo v. Pieksca</u>, 2006 WL 141652 (D.Conn. 2002). That award is irrelevant for review reveals <u>Galazo</u> was a simple, garden-variety excessive force case.[5] Williams only requested $350.00 an hour, no doubt in acknowledgment of the simple and uncomplicated brevity of the case.[6]

    **3.**    ***Arlio v. Lively* Is Irrelevant And Further Misrepresented By Defendant.**

Defendant disingenuously states that Judge Arterton, in <u>Arlio v. Lively</u>, "set Attorney Torre's lodestar rate at $300.00 per hour". Judge Arterton did not "set" a lodestar for the undersigned; she merely granted the undersigned's requested hourly rate. The requested rate was so modest that even defense counsel in that case posed no objection. There was a reason why the undersigned only requested $300.00 an hour. Like the <u>Galazo</u> case, Arlio was a short, simple, garden-variety case which presented no novel or complex issues.[7] The undersigned was not going to seek a higher rate for handling a routine claim that presented no challenging

---

[5] Its lack of complexity is revealed by Attorney Williams' request for compensation for only 13.9 hours of pre-trial work with his co-counsel indicating that it took but 49 hours to prepare for and prosecute the trial which lasted but three days. <u>Id.</u> at *10.

[6] Defendant cites Mr. Williams' many years of experience yet ignores the fact that undersigned counsel herself has 20 years of experience. Apart from citing length of years, defendant has not cited a single verdict achieved by Mr. Williams which even approaches the six and seven figure verdicts achieved by the undersigned in complex First Amendment cases.

[7] Indeed, the defendant did not even move for summary judgment in that case.

legal issues, required no special research and involved a straightforward defense with no questionable or provocative defense tactics. Plaintiff's counsel should not be penalized for responsibly seeking a rate in Arlio which matched the simplicity of the case.[8] In contrast, in the instant case, every conceivable trick in a lawyer's playbook was pulled, overwhelming plaintiff's counsel and wearing her down.

    **4.    Defendant Offers No Affidavits Or Expert Opinions Suggesting A $400 Hourly Rate Does Not Reflect A Reasonable Market Rate While Plaintiff Has Submitted Such Evidence From A Recognized Authority On Attorney's Fees In This District.**

In support of his applications, plaintiff submitted an expert affidavit from Attorney Joseph D. Garrison, a leading member of the federal trial bar in this district. See Affidavit of Joseph D. Garrison dated January 27, 2006 (Attached as Exhibit 3 to plaintiff's January 30, 2006 first Motion for Award of Attorney Fees and Costs). Defendant has neither challenged Attorney Garrison's opinions nor offered any expert evidence to contradict Attorney Garrison's affidavit. Attorney Garrison testified *without contradiction* that the undersigned counsel, if a partner in his firm, would have her time billed out at between $350 and $400 per hour. Id. at (¶ 8). Moreover, Attorney Garrison testified that most defense counsel in larger

---

[8] As the Arlio ruling demonstrates, Judge Arterton treatment of the fee application was brief in its grant of the requested $300.00 hourly rate, finding it reasonable and noting that defendant did not even object to it. Thus, Judge Arterton was not called upon to "set" a lodestar rate for the undersigned counsel. Moreover, Judge Arterton did set a lodestar rate of $375.00 for Attorney Victoria de Toledo for what appears to be a garden variety age for retaliation case tried in 2005. See McInnis v. Town of Weston, 458 F.Supp. 2d 7 (D. Conn. 2006).

firms not only bill at least $350 per hour for litigation but "many of them have far less trial experience than Attorney Torre". Notably Attorney Garrison concluded that the undersigned would be under-billing clients at the rate of $325 per hour, a rate he considers inconsistent with the undersigned's value to clients. (Attorney Garrison himself bills at the hourly rate of $500.)

Defendant certainly could have offered an affidavit or other expert evidence to contradict Attorney Garrison (assuming he could find any) but did not. Instead, he merely gave his own opinion that the requested $400 hourly rate is unreasonable and inconsistent with our market. Accordingly, based upon this Court's own knowledge of the undersigned's experience and skill and the uncontroverted expert opinion of Attorney Garrison, the requested hourly rate is market-based and reasonable and should be granted.

5. **The Protracted And Complex Nature Of The Proceedings Obviously Precluded Counsel From Other Employment.**

The defendant concedes that among the relevant factors for the Court to consider is the "preclusion of employment" by the attorney due to the case yet remarkably argues there is "no evidence" suggesting that undersigned counsel was precluded from employment and taking other cases because of her representation of Officer Tolnay. This Court need look no further than the accounting of time submitted by the undersigned counsel as more than sufficient evidence on this point. This Court may take notice that unlike the army of lawyers at Halloran

& Sage (who also enjoyed the collaboration of municipal counsel as well as Attorney Hugh Keefe and Attorney Hubert Santos) the undersigned is a solo practitioner whose professional life was nearly entirely consumed by this case since its pre-trial ramp-up in the fall of 2005.[9]

The extraordinary number of hours and long days which this case required is borne out by the time records and this Court's own extraordinary investment of time in dealing with the never-ending motions, disputes and proceedings in this case. Unless defense counsel can show that the undersigned is allotted more than a 24-hour day and doesn't need any sleep, the suggestion that she was free to take on new clients and embark on other profitable endeavors during the pendency of Tolnay is pure fantasy.

Finally, citing Second Circuit's April, 2007 opinion in Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F. 3d 162 (2d Cir. 2007), defendant suggests this Court is now required to determine what hourly rate Officer Tolnay would have negotiated for this litigation based on his own financial ability and willingness to pay under usual market forces. That is not a fair reading of the decision and moreover, since the filing of defendant's objection, the Second Circuit has since amended its opinion, evidently out of concern that its ruling would be so construed. See Arbor Hills Concerned Citizens Neighborhood Ass'n v. County of Albany,   2007 U.S. App. LEXIS 16583 at n.2 (emphasizing the Circuit did not

---

[9] In addition to being a solo practitioner without associates, the undersigned also is without the benefit of the ever-expanding army of paralegals and other support staff aiding the numerous members of the defense team.

mean to suggest that attorneys from non-profits or those acting <u>pro</u> <u>bono</u> "are excluded from the usual approach to determining attorneys' fees" and indicating the court "hold[s] **only** that in calculating [rates] a district court should consider what a <u>reasonable</u>, <u>paying</u> <u>client</u> would expect to pay.") (Emphasis supplied).

Given the undersigned's history, experience, skill and verdict record in this district, a record with which this court is well aware (since four of those notable verdicts were achieved in trials before this very court) it is not unreasonable to declare that a "reasonable" person would be willing to pay $400 an hour for the services of the undersigned, especially if the allegedly poverty-stricken Wearing is willing to pay $500.00 per hour for the services of Mr. Santos.

Respectfully submitted:

BY: _____
Karen Lee Torre
Law Offices of Karen Lee Torre
Fed. Bar No. 01707
51 Elm Street, Suite 307
New Haven, CT 06150
Tel. 203-865-5541
Fax 203-865-4844
E-mail: ktorre@choiceonemail.com
Plaintiff's Attorney

10

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed, on this 2nd day of August, 2007, to:

Robert A. Rhodes, Esq.
Ralph W. Johnson, III, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

Hubert J. Santos, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

Norman A. Pattis, Esq.
649 Amity Road
P.O. Box 280
Bethany, CT 06524

Alexandra K. Block, Esq.
Joseph D. Garrison, Esq.
Garrison, Levin-Epstein, Chimes, Richardson
405 Orange Street
New Haven, CT 06511-6489

_____
Karen Lee Torre