```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JAMES ARLIO,                    :
                                :
     Plaintiff,                 :
                                :
v.                              :     CIV. NO. 3:03CV2013 (JBA)
                                :
MARLIN J. LIVELY,               :
                                :
     Defendant.                 :
```

### RULING ON POST-TRIAL MOTIONS
### [DOCS. ## 63, 65, 66, 68, 76, 77]

Plaintiff James Arlio, a police Sergeant for the Town of Trumbull, alleged that Marlin Lively, the former Chief of Police, retaliated against him for exercising his First Amendment rights, and violated his Fourteenth Amendment right to due process of law, by summarily suspending him on trumped-up charges of sleeping on the job and thereby sabotaging his chance to be promoted to Lieutenant. At trial, held May 3-9, 2005, the jury found the defendant liable on both of the constitutional claims as well as a state law claim of intentional infliction of emotional distress. The jury found that the plaintiff had failed to prove that he would have been promoted to Lieutenant but for the defendant's unconstitutional conduct, and thus awarded no economic damages, but awarded $150,000 in non-economic damages and $100,000 in punitive damages. See Verdict Form [Doc. # 58].

Defendant now challenges the jury verdict on a number of grounds. He seeks judgment as a matter of law on the basis of qualified immunity [Doc. # 63] and excessive damages [Doc. # 65].

He further seeks a new trial [Doc. # 66] on the ground that the Court erred in permitting certain other Trumbull police officers to testify concerning Lively's retaliation against them and in admitting evidence of previous labor arbitration proceedings between the parties in this case.  For the reasons that follow, defendant's motions will be denied.  Additionally, plaintiff seeks attorney fees as the prevailing party in this case, and his motion will be granted as set forth below.

**I.    Defendant's Renewed Motion for Judgment as a Matter of Law**

Defendant seeks judgment as a matter of law on the basis that he is entitled to qualified immunity.  Defendant argues, citing Saucier v. Katz, 533 U.S. 194, 201 (2001), and Lennon v Miller, 66 F.3d 416, 421 (2d Cir. 1995), that a government official performing a discretionary function is shielded from § 1983 liability if he reasonably believed, in light of clearly established law, that his conduct was lawful.  He asserts in a conclusory fashion, without citing to any trial evidence, that "this court should make the legal determination that the defendant is entitled to qualified immunity since it is clear that a reasonable officer could have believed that the defendant's actions were lawful...."  Def. Mem. of Law [Doc. # 64] at 3.

The defendant misapprehends the standard for qualified immunity in a First Amendment retaliation case.  Because

2

malicious intent is an element of the plaintiff's claim in such a case, "it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." Locurto v. Safir, 265 F.3d 154, 169 (2d Cir. 2001). Therefore the standard is a subjective one and "turns on an issue of fact," namely the defendant's motive. Id. at 170.

The jury in this case found that by suspending the plaintiff because of his protected political activity, defendant Lively wilfully violated the plaintiff's First Amendment rights. Therefore the jury necessarily found that Lively acted with a constitutionally prohibited retaliatory motive. The jury also found that Lively committed the state law tort of intentional infliction of emotional distress, which involves "extreme and outrageous" conduct exceeding "all possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Bd. of Educ., 254 Conn. 205, 210-11 (2000). Given these jury findings, and given that the defendant cites no evidence supporting his argument, the Court cannot find that Lively acted reasonably as a matter of law. Therefore his motion for judgment on the ground of qualified immunity must be denied.

**II. Damages**

Defendant moves for judgment as a matter of law, see Def. Mot. [Doc. # 65], and for a new trial [Doc. # 66] on the grounds

that the award of $150,000 in non-economic damages and $100,000 in punitive damages "is clearly excessive and not supported by the evidence."  Def. Mem. [Doc. # 67] at 4.  His memorandum of law simply restates defendant's conclusory position that the damages awarded against him were excessive, without providing legal arguments or citations.  Defendant does not seek to have the damages awards reduced.

When evaluating an award of compensatory damages, a court "may order a new trial only when the verdict is irrational or so high as to shock the judicial conscience ... ."  Nairn v. Nat'l R.R. Passenger Corp., 837 F.2d 565, 567 (2d Cir. 1988).  "In order to determine whether a particular award is excessive, courts have found it useful to review awards in other cases involving similar injuries, while bearing in mind that any given judgment depends on a unique set of facts and circumstances."  Id. at 568.

The award of $150,000 in compensatory damages to plaintiff Arlio cannot be said to be irrational.  Although the jury did not find that Arlio would have been promoted to Lieutenant but for the suspension, and consequently did not award economic damages, the jury was instructed that it could award non-economic damages for "emotional distress or pain, humiliation, personal indignity, embarrassment, fear, anxiety and/or anguish which the plaintiff has suffered or may with reasonable certainty be expected to

4

suffer in the future." Jury Charge [Doc. # ] at 36.  Arlio testified that he suffered embarrassment and humiliation due to the extensive local press coverage of Lively's accusation that Arlio was sleeping on the job.  He further testified that this embarrassment is ongoing, as his coworkers and other members of the community still tease him about the incident.  Arlio also stated that he suffered anxiety during the time Lively suspended him without a hearing, because of his uncertainty about whether he would be able to take the Lieutenant test or whether he would even get his job back.  The jury found that Lively's actions against Arlio violated Arlio's First Amendment rights because they were motivated by political animus, and also that they constituted the state law tort of intentional infliction of emotional distress.  Thus an award of damages for emotional distress is consistent with the jury's verdict in plaintiff's favor on these claims.

Second, the jury's award is well within the realm of recently-affirmed damages awards in First Amendment cases seeking compensation for emotional distress.  See, e.g., Gonzalez v. Bratton, 147 F. Supp. 2d 180 (S.D.N.Y. 2001) ($250,000 verdict for emotional distress not excessive in light of evidence of ongoing sex-based harassment and retaliation, including defendant's acts of filing false disciplinary reports against plaintiff, leading to plaintiff's constructive discharge);

Phillips v. Bowen, 115 F. Supp. 2d 303 (N.D.N.Y. 2000) (emotional distress verdict of $400,000 upheld on jury verdict finding First Amendment retaliation against sheriff's department employee); Mihalick v. Town of Simsbury, 37 F. Supp. 2d 125 (D. Conn. 1999) (remittitur of damages ordered to $150,000 where plaintiff prevailed on claims for violation of First and Fourth Amendment rights and intentional infliction of emotional distress). While Plaintiff's memorandum of law in opposition to defendant's motion for a new trial [Doc. # 75] contains an extensive list of other similar cases with verdicts in this range, defendant cites no contrary evidence or cases. The compensatory damages award of $150,000 therefore is within the realm of rationality and similarity to awards in other cases, and does not shock the judicial conscience.

    Similarly, the Court concludes that the jury's assessment of $100,000 in punitive damages is well within constitutional bounds. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003). The factors to be considered in determining excessiveness of punitive damages are the degree of reprehensibility of the defendant's misconduct; the disparity between compensatory and punitive damages awarded; and the difference between punitive damages awarded and the civil

penalties authorized or imposed in comparable cases.  Id. at 418 (citing BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996)).

Regarding the first prong, the evidence adduced at trial showed reprehensible conduct amounting not only to a violation of Arlio's constitutional rights but also intentional infliction of emotional distress.  Arlio showed that the defendant engaged in a malicious campaign to tarnish his name and reputation based on Arlio's support for an opposing political candidate.  Such efforts to chill First Amendment expression indeed could be considered reprehensible.  Additionally, Arlio adduced undisputed evidence that Lively summarily suspended him from his job without offering a prior opportunity for Arlio to dispute Lively's accusation of sleeping on the job, and then persisted in ignoring Arlio at a subsequent public meeting.  The violation of Arlio's due process rights was blatant.

Under the second prong of Gore, the assessment of $100,000 in punitive damages was less than the compensatory damages awarded, and thus well within the Supreme Court's direction that the ratio should not exceed "a single-digit." State Farm, 538 U.S. at 425.  The third prong of the Gore test, requiring comparison between punitive damages and civil penalties, leads to the same conclusion, because the assessment of $100,000 is well within the range of compensatory damages awards in similar cases, as discussed above.

The Court therefore finds that the compensatory and punitive damages awards imposed by the jury were not excessive and were in accordance with governing law.  Thus defendant's motions for a directed verdict and a new trial on this basis are denied.

### III. Motion for New Trial

#### A.   Testimony of Trumbull Police Officers

Defendant moves for a new trial on the ground that the Court erred in admitting the testimony of Officers Targowski, Hammel, Harry and Cifatte of the Trumbull Police Department, concerning acts of politically-motivated retaliation committed against them by defendant Lively.  Defendant asserts that this was "propensity" evidence prohibited by Fed. R. Evid. 404(b) and was more prejudicial than probative.  Def. Mem. of Law at 2.

However, as the Court held in denying defendant's motion in limine to exclude this testimony, Lively's specific intent and motive for disciplining Arlio was an element of Arlio's First Amendment retaliation claim.  The evidence of Lively's treatment of similarly-situated police officers was probative of Lively's motivation for his adverse treatment of plaintiff, and thus was relevant and offered for a proper purpose under Fed. R. Evid. 404(b).

Rosa v. Town of East Hartford, No. 3:00cv1367(AHN), 2005 WL 752206 (D. Conn. Mar. 31, 2005), relied on by the defendant, is distinguishable.  The plaintiff in that case asserted a claim for

unreasonable force, and as the court held, "the subjective motivations of an individual officer have no bearing on whether the force used to effectuate an arrest was reasonable under § 1983." Id. at *3. Therefore the court excluded evidence of other situations where the defendant had used a police dog to make an arrest. By contrast, defendant Lively's subjective motivation or retaliatory intent was a key element that plaintiff Arlio was required to prove at trial. Defendant argues that the dissimilarity of the other officers' testimony regarding the time and circumstances of prior acts of retaliation rendered the officers' testimony merely evidence of Lively's "propensity to discipline officers who supported the Democratic party." Def. Mem. at 2. Defendant attempts to draw too fine a line between motivation to discipline officers of a particular persuasion and impermissible propensity evidence.

  The case law supports admission of testimony by other similarly-situated employees in statutory employment discrimination cases, where the plaintiff similarly must prove discriminatory motive or intent. "It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." Heyne v. Caruso, 69 F.3d 1475, 1479 (9th Cir. 1995); see also Ansell v. Green Acres

9

Contracting Co., 347 F.3d 515, 521 (3d Cir. 2003) ("[O]ther acts are admissible under Rule 404(b) in the employment discrimination context for the proper purpose of establishing negative discriminatory intent."). More specifically, "[b]ecause an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." Phillip v. ANR Freight Sys., Inc., 945 F.2d 1054, 1056 (8th Cir. 1991) (quoting Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 154 (8th Cir.), cert. denied, 498 U.S. 854 (1990)).

Finally, the disputed testimony of the Trumbull police officers was more probative than prejudicial under Rule 403. Any "unduly inflammatory" effect of this testimony, Def. Mem. of Law at 3, was cured by the Court's limiting instruction during trial and in the jury charge:

> [O]n the First Amendment retaliation count, in which plaintiff Arlio alleges that the defendant suspended him because of what plaintiff claims was defendant's bias against officers perceived to be affiliated with the Police Union and the Trumbull Democratic Party, you have heard the testimony of Officers Edward Targowski, Kevin Hammel, Michael Harry, and Richard Cifatte. This testimony was permitted only on the issue of defendant Lively's motive in disciplining plaintiff Arlio. It is to be considered only on this issue and not as showing any propensity of the defendant to act in any particular way. In other words, it is only permitted to be considered as to whether the defendant was politically motivated in suspending Arlio.

Jury Charge [Doc. # 55] at 16. The jury is presumed to follow

its instructions.

Additionally, contrary to defendant's argument, the officers' testimony was permitted under the terms of their 2002 settlement agreement with the Town of Trumbull.  See Def. Mem. of Law, Ex. B.  As defendant acknowledges, the agreement contains an exception "as otherwise provided by law or judicial process," id. at ¶ 6, which clearly applies to witnesses subpoenaed to testify at this trial.  Having found their testimony relevant and proper for the limited purpose offered, it was not "merely an opportunity for the officers to once again reiterate the claims made in their complaint which was conditionally settled."  Def. Mem. at 3.  Preclusion of the other officers' testimony at Arlio's trial would have been antithetical to public justice because it would have permitted a private agreement to override a judicial subpoena.

    **B.**   **Labor Arbitration Decision**

Defendant contends that the Court "erred in allowing the jury to hear any reference to the fact that the plaintiff filed a grievance which was upheld by the State Labor Board," Def. Mem. at 4, on the grounds of irrelevance and unfair prejudice under Fed. R. Evid. 402 and 403.  The jury was charged that they were "not to consider [the] board's decision except for the explanation as to why the plaintiff is not seeking damages for any lost wages he may [have] incurred during the time of his

11

suspension." Jury Charge at 15-16. Further, the jury was entitled to consider the evidence that, due to the suspension imposed by Lively, plaintiff had to pursue another adversarial proceeding to recover, belatedly, unpaid salary and benefits.

**IV. Plaintiff's Motion for Attorney Fees and Costs**

As a prevailing party in a civil rights case, plaintiff is entitled to an award of reasonable attorney fees and costs. 42 U.S.C. § 1988. Plaintiff has filed a motion seeking an award of $68,985 in attorney fees and $1,387.44 in costs through the time of trial [Doc. # 68], and a supplemental motion for $11,310 in fees for post-judgment proceedings [Doc. # 77].[1] Plaintiff's counsel requests a rate of $300/hour for her time. Defendant does not object to this rate, and on the basis of the supporting affidavits, the Court finds it reasonable in light of counsel's experience. Therefore the requested attorney fees are granted in the amount of $80,295.

Defendant objects to plaintiff's request for the cost of plaintiff's deposition transcript. Under D. Conn. L. Civ. R. 54(c)(2)(ii), a party may recover such costs if, among other reasons, the transcript is "necessarily obtained for the preparation of the case and not for the convenience of counsel." Obtaining a client's deposition testimony is a reasonably

---

[1] Plaintiff's motion for leave to file an amended affidavit in support of these motions [Doc. # 76] is GRANTED, and the affidavit is made part of the record.

necessary step in preparing that client to testify at trial and in preparing the examination of other witnesses, including the defendant, whose testimony is anticipated to bear on the same subject matter as covered in plaintiff's deposition. Therefore this cost is recoverable.

Similarly, copying costs are "taxable only if counsel can demonstrate that ... copies were necessarily obtained for use in the case." Id. at 54(c)(3)(i). As it is this Court's preference that counsel provide jurors with exhibit books for their use during trial, plaintiff's request for such copying expenses is granted over defendant's objection.

Plaintiff's request for costs of an expedited transcript of a January 2005 status conference are disallowed under Local Rule 54(c)(7)(iv) as having been "produced for the convenience of counsel." The request for an expedited transcript of the hearing on the Rule 50 motion is similarly denied, and only regular transcript rates ($3.30/page) are recoverable. The transcript was needed to aid in preparing plaintiff's opposition brief to defendant's renewed motion for judgment as a matter of law, but plaintiff sought neither an extension of time to permit regular transcript receipt, nor requested leave to incur expedited transcript costs and obtain recovery thereof.

Finally, defendant's objection is sustained as to the cost of attempted service of a subpoena on Attorney Floyd Dugas, who

did not testify at trial.  <u>See</u> D. Conn. L. Civ. R. 54(c)(1), (permitting "service fees for ... subpoenas for nonparty witnesses testifying at trial.").  In sum, plaintiff is awarded costs in the amount of $1,158.89.

**V.   Conclusion**

Accordingly, defendant's post-trial motions [Docs. ## 63, 65, 66] are DENIED.  Plaintiff's motions [Docs. ## 68, 76, 77] for costs and fees are GRANTED in the total amount of $81,453.89, and an amended judgment shall issue accordingly.

                              IT IS SO ORDERED.

                              /s/

                              _____
                              JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, <u>September 28, 2005</u>.**