IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
|     Defendant | : | OCTOBER 24, 2007 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A STAY OF THE ENFORCEMENT AND EXECUTION OF THE JUDGMENT PENDING APPEAL AND FOR IMMEDIATE STAY PENDING A RULING ON THE INSTANT MOTION

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:    (203) 227-2855
Fax:    (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:    (860) 522-6103
Fax:    (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ......................................................................................................................... 2

    I.     PROCEDURAL HISTORY ........................................................................................ 2

    II.    CHIEF WEARING'S LIMITED ASSETS ............................................................... 2

    III.   THE INSURANCE POLICY ..................................................................................... 3

STANDARD OF REVIEW ......................................................................................................... 4

    I.     RULE 62(d) ................................................................................................................ 4

    II.    RULE 62(f) ................................................................................................................ 7

ARGUMENT ............................................................................................................................... 8

    I.     THE COURT SHOULD ENTER A STAY UNDER
          RULE 62(f) ................................................................................................................ 8

    II.    THE COURT SHOULD ENTER A STAY UNDER
          RULE 62(d) WITHOUT REQUIRING THE POSTING
          OF ANY ADDITIONAL SECURITY ..................................................................... 9

         A.    Chief Wearing Has A "Substantial Case" To Put
             Before The Second Circuit ............................................................................ 9

             1.    The Analysis Of Garcetti v. Ceballos
                  In The February 5 Ruling Is Subject To
                  Reversal On Appeal ................................................................... 10

             2.    The "Public Concern" Analysis In The
                  February 5 Ruling Is Subject To Reversal
                  On Appeal ................................................................................ 15

             3.    The Qualified Immunity Analysis In The
                  February 5 Ruling Is Subject To Reversal
                  On Appeal ................................................................................ 16

             4.    At A Minimum, Garcetti Required The
                  Ordering Of A New Trial On All Issues ................................... 17

i

5. The _Pickering_ Analysis In The February 5 Ruling Is Subject To Reversal On Appeal ..................... 18

6. The Analysis Of The Punitive Damages Jury Instruction Issue In The February 5 Ruling Is Subject To Reversal On Appeal ..................... 19

7. The Analysis Of The Excessiveness Of The Punitive Damages In The February 5 Ruling Is Subject To Reversal On Appeal ..................... 20

B. Absent A Stay, Chief Wearing Will Be Irreparably Harmed ..................... 21

C. A Stay Will Not Substantially Harm The Plaintiff ..................... 23

D. The Public Interest Weighs In Favor Of Granting A Stay ..................... 24

E. Additional Factors Favor The Entry Of A Stay Without The Posting Of Any Additional Security ..................... 24

III. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A STAY WITH THE POSTING OF THE MINIMAL ADDITIONAL SECURITY TO SECURE ONLY THE COMPENSATORY DAMAGES PORTION OF THE JUDGMENT ..................... 25

IV. IF THE COURT DENIES CHIEF WEARING'S MOTION, IT SHOULD ORDER THE PLAINTIFF TO POST A BOND TO SECURE ANY EXECUTION AND ORDER THAT ALL MONIES OBTAINED BY THE PLAINTIFF BE DEPOSITED INTO AN ACCOUNT HELD BY THE COURT ..................... 27

V. IF THE COURT DENIES CHIEF WEARING'S MOTION, AT A MINIMUM, IT SHOULD STAY THE EXECUTION AND ENFORCEMENT OF THE JUDGMENT UNTIL AFTER THE SECOND CIRCUIT HAS REVIEWED THE MOTION FOR A STAY AND ISSUED ITS OWN RULING ..................... 28

CONCLUSION ..................... 28

## PRELIMINARY STATEMENT

The defendant, Melvin Wearing, the former Police Chief for the City of New Haven, submits this memorandum of law in support of his motion for a stay of the enforcement and execution of the judgment, pending the disposition of all appellate proceedings. In further support of his motion, Chief Wearing has submitted an appendix containing three exhibits. Specifically, the appendix contains: (1) Chief Wearing's affidavit, which is attached as Exhibit A, (2) a copy of the lien placed on his home by the plaintiff, which is attached as Exhibit B and (3) a copy of Chief Wearing's initial, appellate brief (without the attached addendum) filed with the Second Circuit on July 2, 2007, which is attached as Exhibit C.[1]

As part of this motion, Chief Wearing requests that the Court immediately stay the execution and enforcement of the judgment pending its ultimate ruling on this motion.

The Court should not put Chief Wearing, his family and his creditors in a dangerous financial situation. Thus, Chief Wearing's personal assets should not be subjected to any further executions or enforcements.

Accordingly, for the reasons set forth below, the Court should grant Chief Wearing's motion and enter a stay without requiring the posting of any further security. In the alternative, the Court should enter a stay with the posting of a minimal amount of additional security to secure only the compensatory damages portion of the award. If the Court denies the motion, it should order the plaintiff to: (a) post a bond to secure any damage caused to Chief Wearing by execution of the judgment and (b) deposit any monies he recovers into an interest bearing account held by the Clerk of the Court.

---

[1]/    The addendum attached to the July 2 brief contains copies of the electronically reported decisions cited in the brief and is more than 180 pages in length.

Also, if the Court denies the motion, at a minimum, it should stay the execution and

enforcement of the judgment until after the Second Circuit has reviewed the matter and issued its

own ruling on the motion for a stay.

## BACKGROUND

### I.     PROCEDURAL HISTORY

Following a jury verdict, a judgment was entered against Chief Wearing in the amount of

$150,903.84 in compensatory damages and $5,000,000.00 in punitive damages.  (Elec. Docket

Entry No. 71)  On February 5, 2007, the Court entered a ruling that denied Chief Wearing's Rule

50(b) motion and his motion for a new trial as to liability.  The Court gave the plaintiff 30 days

to either accept $1,350,000 as a reduced punitive damages award or face a new trial on damages.

The Court did not adjust the compensatory damages award.  On February 27, the plaintiff

accepted the reduced award.

Chief Wearing filed an appeal on March 6.  On March 30, the Court entered an order

which denied Chief Wearing's motion for a new trial and denied his Rule 60(b) motion as moot.

Chief Wearing filed an amended notice of appeal and a second notice of appeal on April 27.  He

filed his opening brief with the Second Circuit on July 2.  The plaintiff's response brief was filed

on August 31.  Chief Wearing's reply brief was filed on October 5.

On September 19, 2007, the Court entered an order awarding the plaintiff $513,657.50 in

attorneys' fees.  Chief Wearing filed a third notice of appeal on October 17.

### II.     CHIEF WEARING'S LIMITED ASSETS

Chief Wearing does not have the personal assets to pay the judgment.  (Ex. A, Wearing

Aff. ¶¶ 2-3)  He cannot obtain security for, let alone pay, the punitive damages award of

$1,350,000.

Chief Wearing's assets are limited. As set forth in his affidavit, he owns his home and his vacation home jointly with his wife. (Wearing Aff. ¶¶ 3(a)-(b)) They purchased their home in 1972 and there is a home equity loan of approximately $6,126.40 on it. (Id. ¶ 3(a)) There is a mortgage of $131,173 outstanding on their vacation home. (Id. ¶ 3(b)) Chief Wearing is making monthly payments of $679.56 on his 2003 motor vehicle and there is a remaining balance of $5,967.56 due on it. (Id. ¶ 3(c)) He also owns an old pick-up truck. (Id. ¶ 3(d)) He has one bank account with approximately $23,625 in it and which is jointly held with his wife. (Id. ¶ 3(e)) Chief Wearing has another account with approximately $21,895.26 in it. (Id.) His current salary is $105,000 per year and his pension is $76,000 per year. (Id. ¶¶ 3(f)-(g)) Chief Wearing's wife is employed and earns approximately $42,625 per year. (Id. ¶ 5)

Finally, in addition to his wife, Chief Wearing has two grandchildren. (Wearing Aff. ¶ 4) They are 18 and 19 years old. (Id.) They will both be attending college in the Fall of 2007 and Chief Wearing is financially responsible for their tuition. (Id.)

If Chief Wearing is required to commit any of his assets as security for a stay of the judgment, it will have a significant adverse impact of his ability to pay his other creditors and to support his family. (Id. ¶ 6) Moreover, if required to commit any of his assets as security for a stay of the judgment, Chief Wearing will be forced to consult with bankruptcy counsel. (Id.)

## III.    THE INSURANCE POLICY

Coregis Insurance Company has been involved in this matter as the insurer of Chief Wearing's former employer, the City of New Haven. The Coregis insurance policy is on file with the Court. (Elec. Docket Entry No. 220)

## STANDARD OF REVIEW

**I.    RULE 62(d)**

Rule 62(d) governs a stay pending the resolution of an appeal. To determine whether to grant a stay of the execution of a judgment under Rule 62(d), a court considers: (1) whether the movant is likely to prevail on the merits, (2) whether, without a stay, the movant will be irreparably injured, (3) whether the issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest. Network Enterprises, Inc. v. APBA Offshore Prods., Inc., 2007 WL 398276, at *1 (S.D.N.Y. Feb. 5, 2007); Morgan Guar. Trust Co. v. Republic of Palau, 702 F.Supp. 60, 65 (S.D.N.Y. 1988), vacated on other grounds, 924 F.2d 1237 (2d Cir. 1991). The weight accorded to each of these factors should be "flexible" to ensure a just result "according to the unique circumstances of each case." Network Enterprises, 2007 WL 398276, at *1; Morgan Guar., 702 F.Supp. at 65.

Indeed, a district court may grant a stay of a judgment without requiring a posting of a bond or condition a stay on the posting of only a partial bond. See Texaco v. Pennzoil Co., 784 F.2d 1133, 1154 (2d Cir. 1986), rev'd on other grounds, 481 U.S. 1 (1987) (inflexible requirement that a bond be posted may amount to "a confiscation of the judgment debtor's property without due process"); Network Enterprises, 2007 WL 398276, at *1; Morgan Guar., 702 F.Supp. at 65. "Thus, for example, where the latter three factors strongly favor interim relief, the court has required only that the petitioner demonstrate a 'substantial case on the merits,' even if ultimate success is not a mathematical probability." Morgan Guar., 702 F.Supp. at 65. See Network Enterprises, 2007 WL 398276, at *1. Consequently, the bond requirement should be eliminated or reduced if doing so "does not unduly endanger the judgment creditor's interest in ultimate recovery." Morgan Guar., 702 F.Supp. at 65. See HCB Contractors v. Rouse

& Assoc., 168 F.R.D. 508, 513 (E.D.Pa. 1995) (granting stay without bond where allowing execution would prompt foreclosures and move debtor into bankruptcy).

Earlier this year, a senior district judge in this circuit granted a motion for stay pending appeal, without requiring the posting of a bond. Network Enterprises, 2007 WL 398276 at *3-4. The analysis employed in Network Enterprises is instructive to the Court's consideration of Chief Wearing's motion.

Specifically, in Network Enterprises, after a bench trial, Judge Haight entered a judgment against the defendants, a corporation and an individual, jointly and severally, in the amount of $572,350.92. After an appeal was filed, the individual defendant moved under Rule 62(d) requesting a stay and the waiver of any bond requirement. Id. at *1. After identifying the four factors which govern the analysis of a Rule 62(d) motion, Judge Haight addressed them in turn. Id. at *1-4.

With regard to the first factor, whether the defendant was likely to prevail on the merits of his appeal, Judge Haight recognized:

> In determining whether this Court should conclude that [the individual defendant] 'is likely to prevail on the merits of his appeal,' it is not necessary for me to confess error and predict a reversal by the Second Circuit. In keeping with the previously noted principle that these four requirements must be applied flexibly and according to the unique circumstances of each case, it has been held that where the other factors favor the interim relief of waiving a supersedeas bond, a court may require 'only that the petitioner demonstrate a substantial case on the merits, even if ultimate success is not a mathematical probability.'

Id. at *1.

In concluding that the individual defendant had satisfied the first factor, Judge Haight recognized "[w]hile I rejected Allweiss' contentions … , and remain of the opinion that I was

right in doing so, it is equally clear that Allweiss has a substantial case to lay before the Court of Appeals." Id. at *2.

With regard to the second factor, Judge Haight concluded that the defendant would be irreparably injured without a stay of execution on the judgment. Id. at *2. More specifically, the defendant had stated in his affidavit that he had a wife and three children to support, and although he had resumed working full time, he did not personally have the resources to post security in the amount of the judgment against him. Id. Judge Haight recognized that to obtain a bond in excess of $500,000 from a surety company, the defendant would undoubtedly have to furnish 100% collateral. Id. There was nothing in the record to suggest that he could do so. Network Enterprises, 2007 WL 398276, at *2.

Consequently, requiring the defendant to post a bond in that amount, followed by his failure to do so, would permit the plaintiff to pursue and levy upon the defendant's personal property during the pendency of the appeal. Id. Finally, the individual defendant had stated under oath that in the absence of a stay of execution of the judgment he would "most likely be forced to declare bankruptcy which in turn w[ould] damage [his] reputation and ability to practice law and thus provide for [his] family." Id. Accordingly, Judge Haight concluded that these circumstances constituted the "ingredients of irreparable injury." Id.

With regard to the third factor, whether issuance of a stay would substantially harm the plaintiff's interests, Judge Haight noted that under Second Circuit precedent, the analysis "is not inflexible, and may yield to a showing of irreparable harm to the appellant." Id. at *2.

In particular, the plaintiff in Network Enterprises had expressed a concern that if the defendant was allowed to proceed with his appeal without a bond, he would in the interim dispose of assets sufficient to satisfy the judgment if it was affirmed on appeal, thereby rendering

himself judgment-proof. 2007 WL 398276, at \*2. Judge Haight concluded that the plaintiff's concern assumed (1) that the individual defendant had nearly $1 million in liquid assets and (2) that he could successfully dispose of or shield those assets in order to avoid paying the judgment while still retaining the benefit of them. Id. With regard to the first assumption, Judge Haight concluded that the record contained no evidence indicating the individual defendant had personal assets in that amount or rebutting the sworn statements that he did not. Id. With regard to the second assumption, Judge Haight noted that the plaintiff would have available discovery in aid of enforcing the judgment if there was any effort to transfer funds. Id.[2]

Consequently, Judge Haight held that the third factor, harm to the plaintiff if execution of the judgment against the individual defendant was stayed without requiring a bond, did not trump the irreparable harm to the defendant if the judgment was enforced while his appeal proceeded. Id. at \*2. Judge Haight also concluded that the fourth factor, the public interest, was not implicated in the case. Accordingly, he granted the individual defendants' motion for stay and relieved him of the need to file any bond. Id. at \*4.

## II.     RULE 62(f)

Rule 62(f) provides as follows:

> In any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the district court held therein, to such stay as would be accorded the judgment debtor had the action been maintained in the courts of that state.

Fed. R. Civ. P. 62(f).

---

[2]     As part of his analysis, Judge Haight noted that the problems that a successful appellant can face in retrieving his assets and property which the appellee was allowed to obtain through the enforcement of a judgment while the appeal was pending, should also be considered as part of the determination of whether to stay the enforcement of a judgment. Network Enterprises, 2007 WL 398276, at \*3 n.1.

In <u>FDIC v. Ann-High Associates</u>, No. 97-6095, 1997 WL 1877195 (2d Cir. Dec. 2, 1997)(per curiam), the Second Circuit recognized that there are circumstances under which Rule 62(f) would apply to a Connecticut case. <u>Id.</u> at *1-4. In particular, it concluded that a judgment debtor can avoid posting a supersedeas bond if he demonstrates that: (1) the state law entitled him to appeal without a bond; (2) that a judgment can be made a lien against a judgment debtor's property under the state's lien law; and (3) that the circumstances are such that the judgment creditor can readily establish a lien that will be adequate to secure the judgment. <u>Id.</u> at *4. The Second Circuit further recognized that "[i]n Connecticut, this will involve the judgment debtor's disclosure of the value and location of both real and personal property in the state so that the judgment creditor will know where to file the lien and can evaluate the adequacy of its security." <u>Id.</u> Accordingly, "[i]f state law provides security pending appeal to a particular judgment creditor in the form of a lien, then federal courts must respect the state's determination that judgment debtors in the state may appeal without filing a bond." <u>Id.</u>

The Second Circuit in <u>Ann-High Associates</u> further held that while other exceptions to the supersedeas bond requirement are discretionary, a district court must grant a stay without a supersedeas bond if a judgment debtor shows that it has met the requirements of Rule 62(f). <u>Id.</u> at *4.

## ARGUMENT

## I.    THE COURT SHOULD ENTER A STAY UNDER RULE 62(f)

As the Court is aware, the plaintiff has placed a lien on Chief Wearing's home in Connecticut. (Ex. B) Chief Wearing has also identified his other assets. Thus, under Rule 62(f), the Court should grant Chief Wearing's motion for a stay consistent with the automatic stay that applies in Connecticut state court practice. Fed. R. Civ. P. 62(f); Conn. Practice Book § 61-

11(a). See Ann-High Associates, 1997 WL 1877195, at *1 (a stay under Rule 62(f) is mandatory).

Under Connecticut state law, Chief Wearing would be entitled to an automatic stay of enforcement pending the conclusion of appellate proceedings. Specifically, Practice Book § 61-11(a) is entitled "Automatic Stay of Execution." It provides, in relevant part, that "proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to take an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause."

Chief Wearing's appeal is fully briefed and pending before the Second Circuit. As the plaintiff has chosen to place a lien on Chief Wearing's home in Connecticut, despite the pendency of the March 2, 2006 motion for stay, Chief Wearing should now under Rule 62(f), be entitled to a stay of any further executions or enforcement of the judgment. See Ann-High Associates, 1997 WL 1877195, at **2-4.

## II.    THE COURT SHOULD ENTER A STAY UNDER RULE 62(d) WITHOUT REQUIRING THE POSTING OF ANY ADDITIONAL SECURITY

The application of the factors identified in Network Enterprises and Morgan Guar. demonstrates that the Court should grant Chief Wearing's motion for a stay under Rule 62(d) without requiring the posting of a bond or any further security.

### A.    Chief Wearing Has A "Substantial Case" To Put Before The Second Circuit

Like Judge Haight in Network Enterprises, this Court need not confess error and predict a reversal by the Second Circuit in order to grant the motion for a stay. 2007 WL 398276, at *1. Rather, Chief Wearing satisfies the first factor in the Rule 62(d) analysis by demonstrating a "substantial case on the merits, even if ultimate success is not a mathematical probability." Id. As demonstrated in Chief Wearing's July 2 appellate brief (Ex.C) and below in the summary of

9

some of the issues on appeal, at a minimum, Chief Wearing's appeal presents a "substantial case" to the Second Circuit. Thus, he has satisfied the first factor.

**1.    The Analysis Of <u>Garcetti v. Ceballos</u> In The February 5 Ruling Is Subject To Reversal On Appeal**

A "substantial case" can be made that the analysis of the First Amendment claim in the February 5 Ruling was in error. As of the filing of the instant motion, the Second Circuit has not addressed the application of <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951 (2006) in detail. Thus, Chief Wearing's appeal presents an issue of first impression for the Second Circuit.

At the outset, contrary to the analysis in the February 5 Ruling, the plaintiff (not the defendant) has the burden of proof and must "provid[e] evidence that her expressions were made in her capacity as a citizen and not pursuant to her 'official duties.'" <u>Casey v. West Las Vegas Indep. Sch. Dist.</u>, 473 F.3d 1323, 1328 (10th Cir. 2007). The February 5 Ruling incorrectly put the burden on Chief Wearing to disprove that the plaintiff was speaking "as a citizen." A review of the record, <u>Garcetti</u> and the decisions that have applied <u>Garcetti</u> confirms that the plaintiff was speaking in his capacity "as an employee." As such, his speech is not protected by the First Amendment and judgment should enter in favor of Chief Wearing.

In fact, the analysis of <u>Garcetti</u> in the February 5 Ruling did not address any of the post-<u>Garcetti</u> case law which has applied <u>Garcetti</u>'s holding that in order for a plaintiff to establish a First Amendment retaliation claim, a plaintiff must prove that his speech was not pursuant to his job duties. 126 S.Ct. at 1960. <u>See id.</u> at 1962 ("ma[d]e in the course of doing his or her job."). Instead, the February 5 Ruling relied exclusively on pre-<u>Garcetti</u> Seventh Circuit precedent to support its conclusion that a plaintiff's speech is protected by the First Amendment "unless he was 'clearly acting *entirely* in an employment capacity when he made [the speech].'" (2/5/07 Ruling, at 11-12 (emphasis original)) This holding is inconsistent with <u>Garcetti</u> and the

10

overwhelming majority of the cases which have applied it. Indeed, the February 5 Ruling is contrary to the Seventh Circuit precedent applying Garcetti.

Garcetti mandated that the analysis that the lower courts are to apply to analyzing the issue of a speaker's capacity must be a "practical" one. 126 S.Ct. at 1961-62. As Chief Wearing's July 2 appellate brief demonstrated and as is confirmed by a LEXIS or WESTLAW search of the Garcetti decision, circuit and district courts have been applying Garcetti far more favorably to defendants than the standard applied in the February 5 Ruling. See Garcetti, 126 S.Ct. at 1965, 1966-67, 1969 (Souter, J., dissenting) (discussing broad scope of the Court's opinion); Barclay v. Michalsky, 493 F.Supp.2d 269, 273-78 (D. Conn. 2007)(Arterton, J.)(vacating previous "restrictive" interpretation of Garcetti and recognizing "broader interpretation" is appropriate).

For example, in Sigsworth v. City of Aurora, 487 F.3d 506, 510 (7th Cir. 2007), the Seventh Circuit rejected the plaintiff's argument that his report of alleged police misconduct was protected because it "exceeded the scope of his official duties." The plaintiff in Sigsworth, like the February 5 Ruling, relied on Delgado v. Jones, 282 F.3d 511 (7th Cir. 2002), which had found First Amendment protection because the speech at issue "'went far beyond some rote, routine discharge of an assigned duty'" and contained "'additional facts.'" The Seventh Circuit in Sigsworth recognized that Delgado was not helpful because its central concern in that case was the content of the speech and thus it did not address whether the plaintiff was "speaking as a citizen when he made his report." Sigsworth, 487 F.3d at 510.

Similarly, in Spiegla v. Hull, 481 F.3d 961, 965-67 (7th Cir. 2007), the Seventh Circuit recognized that it had to significantly alter its First Amendment analysis after Garcetti. In particular, in a prior decision in the case, a panel had concluded that because the plaintiff's

statements were not part and parcel of her core function to implement but not question prison security policies, she acted beyond her employment capacity and spoke as a private citizen as a matter of public concern. Id. at 966. However, after Garcetti the Seventh Circuit recognized that its "focus on 'core' job functions [wa]s too narrow [as] Garcetti, ... asked only whether an 'employee's expressions [were] made pursuant to official responsibilities.'" Id. (quoting Garcetti, 126 S.Ct. at 1961).

Consequently, the Seventh Circuit concluded that as the plaintiff in Spiegla reported a possible security breach to the Assistant Superintendent as part of her official responsibilities as a correctional officer to keep the prison secure, her speech was not "citizen" speech protected by the First Amendment. Spiegla, 481 F.3d at 967. As part of its analysis, the court noted that the fact that the plaintiff's statements highlighted potential misconduct by prison officers "d[id] not change the fact that she was speaking pursuant to her official responsibilities, not as a citizen 'contribut[ing] to the civil discourse.'" Id. Moreover, it noted that the plaintiff "'acted as a government employee' when she reported the possible misconduct of her superior and sought clarification of a security policy she felt may have been breached." Id. Accordingly, based on its analysis of Garcetti, the Seventh Circuit vacated the judgment entered in favor of the plaintiff and remanded the case with instructions that a judgment be entered in favor of the defendants. Id.

In Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 693 (5th Cir. 2007), the Fifth Circuit addressed "the extent to which, under Garcetti, a public employee is protected by the First Amendment if his speech is not necessarily required by his job duties but nevertheless is related to his job duties." The court focused on the distinction between speech "that is 'the kind of activity engaged in by citizens who do not work for the government,' ..., and activities

undertaken in the course of performing one's job." <u>Id.</u> It concluded that "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties." <u>Id.</u>

Thus, simply because the plaintiff in <u>Williams</u> had written memoranda, which were not demanded of him, did not mean that he was not acting within the course of performing his job. <u>Id.</u> at 694. As the memoranda were written in the course of the plaintiff performing his job, the speech was not protected. <u>Id.</u> See <u>Green v. Board of County Commissioners</u>, 472 F.3d 794, 800-01 (10th Cir. 2007) (even if not explicitly required speech, activities stem from and were the type the plaintiff was paid to do); <u>Schuster v. Henry County</u>, 2007 WL 1701795, at *4 (N.D.Ga. June 7, 2007); <u>Thompson v. District of Columbia</u>, 478 F. Supp. 2d 5, 9 (D.D.C. 2007). Indeed, as part of its analysis, the Fifth Circuit recognized that the conclusion it had reached was similar to those reached by other circuits. <u>Williams</u>, 480 F.3d at 693 (citing decisions by Seventh, Ninth and Eleventh circuits). <u>See</u> <u>Linksey v. City of Bristol</u>, 2007 WL 963179, at *3 (D. Conn. Mar. 30, 2007) (citing <u>Williams</u>).

Similarly, the Seventh Circuit's first pronouncement on <u>Garcetti</u>, <u>Mills v. City of Evansville</u>, 452 F.3d 646, 648 (7th Cir. 2006), affirmed the granting of summary judgment in favor of the defendants. <u>Mills</u> concluded as follows:

> Mills was on duty, in uniform, and engaged in discussion with her superiors, all of whom had just emerged from Chief Gulledge's briefing. She spoke in her capacity as a public employee contributing to the formulation and execution of official policy. Under <u>Garcetti</u> her employer could draw inferences from her statements about whether she would zealously implement the Chief's plans or try to undermine them; when the department drew the latter inference it was free to act accordingly.

<u>Id.</u> at 648.

In fact, under the standards applied by the ***overwhelming majority*** of the decisions applying <u>Garcetti</u>, the plaintiff's speech in this case is not protected by the First Amendment and

13

Chief Wearing is entitled to the entry of a judgment in his favor, as a matter of law. See Foraker

v. Chaffinch, 2007 WL 2445561, at *9 (3d Cir. Aug. 30, 2007); Weisbarth v. Geauga Park Dist.,

2007 WL 2403659, a *4-7 (6th Cir. Aug. 24, 2007); Morales v. Jones, 494 F.3d 590, 597-98 (7th

Cir. 2007); Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir.

2007); Williams v. Robinson, 480 F3d 1140, 1149-51 (D.C. Cir. 2007); Parks v. City of

Horseshoe Bend, 480 F.3d 837, 840 n.4 (8th Cir. 2007) (speech not protected if made "in the

course of [plaintiff's] official duties"); Bradley v. James, 479 F.3d 536, 537-38 (8th Cir. 2007);

Haynes v. Circleville, 474 F.3d 357, 364 (6th Cir. 2007); Freitag v. Ayers, 468 F.3d 528, 546

(9th Cir. 2006) ("[t]o the extent that the jury may have considered internal forms prepared by

[the plaintiff], it [wa]s clear that, under [Garcetti], such activity [wa]s *not* constitutionally

protected."); Cheek v. City of Edwardsville, 2007 WL 2417011, at *10 (D. Kan. Aug. 24, 2007);

Iott v. Carter, 2007 WL 764321, at *3-4 (D. Or. Mar. 8, 2007); Fritz v. Daly, 2006 WL 3095755,

at *5 (D.N.H. Oct. 31, 2006); Tomicich v. Pueblo City County Library Dist., 2006 WL 2734250,

at *2 (D. Colo. Sept. 25, 2006) ("The Supreme Court has made it clear that statements made as

an employee in the course of performing the duties of the position are not protected under the

First Amendment."); Nolan v. Terry, 2006 WL 2620002, at *5 (W.D. Va. Sept. 13, 2006) (Under

Mills, "[i]f plaintiff was speaking as part of his public job,…, the inquiry is over."); Milde v.

Housing Auth., 2006 WL 2583086, at *6 (D. Conn. Sept. 5, 2006); Sweeney v. Leone, 2006 WL

2246372, at *7-10 (D. Conn. July 31, 2006); Logan v. Indiana Dep't of Corrections, 2006 WL

1750583, at *1 (S.D. Ind. June 26, 2006) ("Stated otherwise, the court must ask, 'Did the

employee's expression arise from her employment duties?'"); Brewster v. City of Poughkeepsie,

434 F.Supp. 2d 155, 157 (S.D.N.Y. 2006).

Moreover, the February 5 Ruling's conclusion that speech that is "intertwined" with official duties is protected by the First Amendment is not supported by either Garcetti's call for a "practical" test or the majority of the post-Garcetti case law. Indeed, the February 5 Ruling cites no authority in support of its conclusion. Moreover, its recognition that the plaintiff's speech was part of (intertwined with) his duties requires the entry of judgment in favor of Chief Wearing under Garcetti.

Finally, the February 5 Ruling's reliance on testimony, that the plaintiff's statement in his report would have been better if placed in a memorandum, does not address Garcetti's recognition that if a plaintiff's superiors believe that a plaintiff's work product is "inflammatory or misguided, they ha[ve] the authority to take proper corrective action." 126 S.Ct. at 1960-61. See Fritz, 2006 WL 3095755, at *5; Milde, 2006 WL 2583086, at *6 ("rejecting argument that because plaintiff was disciplined for her work, the work was not pursuant to her duties, as the argument "d[i]d not take into account the reality that one can perform one's official duties inadequately or in an insubordinate manner, and still be subject to lawful, disciplinary action.").

Accordingly, given the significant amount of case law (and in particular, *circuit level* case law) favoring his position, Chief Wearing has a "substantial case" to present to the Second Circuit regarding the application of Garcetti in the February 5 Ruling.

## 2. The "Public Concern" Analysis In The February 5 Ruling Is Subject To Reversal On Appeal

As demonstrated in detail at pages 30-36 of Chief Wearing's July 2 appellate brief, a "substantial case" can be made that the February 5 Ruling's analysis of the First Amendment issue under the content, form and context analysis was in error. The ruling neither identified nor analyzed Tolnay's *actual speech*. Rather, the ruling's analysis relied on the plaintiff's re-writing of his speech in his counsel's legal memoranda. There is no First Amendment protection for

15

words that a plaintiff never speaks. <u>Wernsing v. Thompson</u>, 423 F.3d 732, 753 (7th Cir. 2005);

<u>Giacalone v. Abrams</u>, 850 F.2d 79, 86-87 (2d Cir. 1988).

**3.    The Qualified Immunity Analysis In The February 5 Ruling Is Subject To Reversal On Appeal**

A review of pages 40-44 of Chief Wearing's July 2 appellate brief confirms that he has a

"substantial case" to put before the Second Circuit on the issue of qualified immunity. In sum,

the qualified immunity analysis in the February 5 Ruling did not address <u>Garcetti</u>'s recognition

that the holding in that case was dictated by the "[p]roper application of [Supreme Court]

precedents." 126 S.Ct. at 1961. Among that prior precedent is <u>Connick v. Myers</u>, 461 U.S. 138,

147 (1983) (speech not made "as a citizen" is not protected).

The February 5 Ruling incorporates the March 9, 2005 summary judgment ruling. In that

ruling, the Court recognized that the qualified immunity "inquiry requires [a] Court to define the

constitutional right with specificity." (3/9/05 Ruling, at 47) In other words, a more

particularized or specific analysis is required. <u>See</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198-99

(2004); <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001); <u>Pena v. DePrisco</u>, 432 F.3d 98, 114-15 (2d

Cir. 2005). The summary judgment ruling further acknowledged that "[t]he facts of this case are

strikingly dissimilar to any other case analyzed through exhaustive research by this Court,..."

(3/9/05 Ruling, at 43) That acknowledgement alone required the "clearly established" analysis

to be resolved in Chief Wearing's favor. <u>See</u> <u>Brosseau</u>, 543 U.S. at 198-99; <u>Saucier</u>, 533 U.S. at

201-02; <u>Iott v. Carter</u>, 2007 WL 764321 at *4 (D. Or. Mar. 8, 2007).

Moreover, in addition to <u>Connick</u> and <u>Garcetti</u> itself, there are numerous decisions that

demonstrate that even assuming that the plaintiff had any First Amendment rights, they were not

"clearly established" in August of 2002. <u>See</u> <u>Pappas v. Giuliani</u>, 290 F.3d 143, 152 (2d Cir.

2002) (McMahon, J., concurring); <u>Urofsky v. Gilmore</u>, 216 F.3d 401, 407 (4th Cir. 2000) (en

16

banc); Morris v. Crow, 142 F.3d 1379, 1381-82 (11th Cir. 1999) (per curiam); Thomson v.

Scheid, 977 F.2d 1017, 1020-21 (6th Cir. 1992); Koch v. Hutchinson, 847 F.2d 1436, 1442-43

(10th Cir. 1988) (en banc); Cahill v. O'Donnell, 75 F.Supp.2d 264, 273 (S.D.N.Y. 1999) (Parker,

J.). Indeed, this is the conclusion expressed by the Solicitor General in footnote 13 of the brief

he filed in Garcetti.[3]

Further, as the February 5 Ruling is the first decision to conclude that "intertwined"

speech is protected, any right held by the plaintiff would not be "clearly established." Also, as

the February 5 Ruling is the first decision to conclude that "intertwined" speech is protected,

Chief Wearing's conduct was objectively reasonable under the circumstances, as a matter of law.

At a minimum, that determination should have been made by a jury.[4]

### 4.    At A Minimum, Garcetti Required The Ordering Of A New Trial On All Issues

A review of pages 45-61 of Chief Wearing's July 2 appellate brief confirms that he has a

"substantial case" to put before the Second Circuit in support of his argument that this Court

erred in denying his motion for a new trial. For example, even if Chief Wearing was not entitled

to judgment as a matter of law under Garcetti, the evidence in the case required that the issue of

what capacity the plaintiff was speaking in (and thus whether his speech was protected by the

First Amendment) be submitted to a jury. There is no authority or evidence supporting the

determination in the February 5 Ruling, as a matter of law, that under the circumstances, the

---

[3]/    A copy of the Solicitor General's Brief was provided to the Court on June 30, 2006, as Exhibit B to Chief Wearing's memorandum regarding Garcetti.

[4]/    The February 5 Ruling did not address Chief Wearing's Pickering arguments. For example, it did not address the decisions of numerous courts of appeals which have recognized that because Pickering's constitutional rule turns on a fact-intensive balancing test, claimed rights can rarely be considered clearly established for purposes of qualified immunity.

plaintiff was speaking "as a citizen." Accordingly, Chief Wearing has a "substantial case" to put before the Second Circuit on this issue.

> 5.   **The _Pickering_ Analysis In The February 5 Ruling Is Subject To Reversal On Appeal**

The February 5 Ruling's analysis of the jury charge under _Pickering v. Board of Educ.,_ 391 U.S. 563 (1968) and the corresponding interrogatories is subject to reversal on appeal. The ruling fails to take into account the fact that in the summary judgment ruling, the Court acknowledged that Chief Wearing was arguing under _Pickering_ in the alternative, and that he had the right to do so. (3/9/05 Ruling, at 29 n.23) See _Bailey v. Department of Elementary and Secondary Educ.,_ 451 F.3d 514, 520-21 (8th Cir. 2006) (_Pickering_ can be argued in the alternative); _Vista Community Services v. Dean,_ 107 F.3d 840, 845 (11th Cir. 1997) ("In those cases where the employer's claimed reasons are unrelated to the speech, we still apply the _Pickering_ balancing test.").

There is no authority to support the February 5 Ruling's compartmentalizing or distinguishing between the plaintiff's speech and behavior. To the contrary, the analysis violates _Connick,_ 461 U.S. at 153. Moreover, as demonstrated in Chief Wearing's July 2 appellate brief, the analysis in the February 5 ruling is not supported by the record. (Ex. C, Chief Wearing's July 2, 2007 Appellate Br. at pp. 46-47). Thus, under Second Circuit precedent, Chief Wearing was entitled to have the jury instructed regarding the propriety of a governmental employer balancing an employee's speech rights with the needs of the governmental employer and to have the jury answer interrogatories. _Reuland v. Hynes,_ 460 F.3d 409, 419 (2d Cir. 2006). Indeed, the Court recognized this in its denial of the Rule 50(a) motion on December 7, 2005, as it held that the _Pickering_ analysis was a question that had to be decided by the jury. (12/7/05 Tr. at 147)

Accordingly, Chief Wearing has a "substantial case" to put before the Second Circuit on this issue.

### 6. The Analysis Of The Punitive Damages Jury Instruction Issue In The February 5 Ruling Is Subject To Reversal On Appeal

The Court's refusal to charge the jury that any punitive damages award had to bear a "reasonable relationship" to the compensatory or actual damages actually suffered by the plaintiff constituted reversible error. As confirmed recently by the Supreme Court in Philip Morris USA v. Williams, 127 S.Ct. 1057 (2007), a jury's determination of punitive damages must be constrained and limited to the award of punitive damages which have a "reasonable relationship" to the compensatory or actual damages. Id. at 1061. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 580-81 (1996) (The principle that punitive damages "must bear a 'reasonable relationship' to compensatory damages has a long pedigree," dating back at least 700 years). Indeed, a requested "reasonable relationship," jury charge was at the heart of Philip Morris. 127 S.Ct. at 1064.

In this case, Chief Wearing twice requested that the jury be charged regarding the "reasonable relationship" standard and took an exception when the Court would not give that charge. As the February 5 Ruling confirms, the jury's award of $5 million in punitive damages was constitutionally excessive. It bore no reasonable relationship to the actual damages allegedly suffered by the plaintiff.

Consequently, the Court's failure to charge the jury regarding the "reasonable relationship" standard constituted harmful and reversible error. At a minimum, Chief Wearing has a "substantial case" to put before the Second Circuit on this issue.

19

7.    **The Analysis Of The Excessiveness Of The Punitive Damages In The February 5 Ruling Is Subject To Reversal On Appeal**

Finally, the limited reduction of the punitive damages award from $5 million to $1,350,000 is not supported by the requisite analysis. (See Ex. C, Chief Wearing's 7/2/07 Appellate Br. at pp. 54-60) Under the full analysis, the reduction of the award should have been significantly greater. In particular, the February 5 Ruling did not address the factors that must be employed in analyzing the reprehensibility guidepost. State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003) (listing specific factors). See Clark v. Chrysler Corp., 436 F.3d 594, 601-08 (6th Cir. 2006) (analyzing factors in detail).

Moreover, the February 5 Ruling's analysis of other First Amendment retaliation cases does not support its ultimate conclusion. A review of punitive damages awards in First Amendment retaliation cases from the Second Circuit and the District of Connecticut confirms that the reduced award of $1,350,000 would be the second largest punitive damage award in a First Amendment retaliation case in the District and the Circuit.[5] The 1 to 8.9 ratio would be the highest ratio in a First Amendment case with a substantial compensatory damages award. The circumstances of this case do not justify such an award. In particular, the alleged damages to the plaintiff, the only person the jury was allowed to award damages to, do not support this amount. See Phillip Morris, 127 S.Ct. at 1060. Thus, Chief Wearing has a "substantial case" to put before the Second Circuit on this issue.

Accordingly, the foregoing summary of some of the issues on appeal demonstrates that the first factor in the Rule 62(d) analysis weighs heavily in Chief Wearing's favor. Furthermore, the Court's denial of Chief Wearing's Rule 50(b) motion is subject to de novo review on appeal,

---

[5]    A review of First Amendment retaliation cases from the Second Circuit and the District of Connecticut demonstrates that the $1,350,000 punitive damages award should not stand on appeal. (Chief Wearing's 12/28/05 New Trial Mem. of Law, at 19-37)

as is its denial of qualified immunity. <u>Anderson v. Recore</u>, 446 F.3d 324, 328 (2d Cir. 2006);

<u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 108 (2d Cir. 2001). Similarly, the Court's jury

instructions regarding punitive damages and its refusal to charge the jury regarding the need for a

"reasonable relationship" between punitive and compensatory or actual damages suffered by the

plaintiff are subject to de novo review. <u>Gordon v. New York City Bd. of Educ.</u>, 232, F.3d 111,

115-16 (2d Cir. 2000). Finally, the Court's analysis of the constitutional excessiveness of the

punitive damages award is also subject to de novo review on appeal. <u>DiSorbo v. Hoy</u>, 343 F.3d

172, 186 (2d Cir. 2003).

### B.    Absent A Stay, Chief Wearing Will Be Irreparably Harmed

Chief Wearing satisfies the second factor under the Rule 62(d) analysis. <u>See</u> <u>Network</u>

<u>Enterprises</u>, 2007 WL 398276, at *2. As demonstrated in his affidavit in detail, the denial of a

stay or the allowing of a stay conditioned on the posting of additional security, will irreparably

harm Chief Wearing and his family. (Wearing Aff. ¶ 6) In addition to his wife, Chief Wearing

has two grandchildren who are attending college and for whose tuition he is responsible. (<u>Id.</u> ¶

4) Chief Wearing has limited assets. He does not have the personal assets to secure the

judgment. (Wearing Aff. ¶¶ 2, 3(a)-(g)) If he must commit any of his assets to securing a stay,

Chief Wearing will have extreme difficulty in paying his other creditors and he will be required

to consult with bankruptcy counsel. (<u>Id.</u> ¶ 6) Given Chief Wearing's limited assets, if the Court

requires Chief Wearing to provide personal security on more than $2 million, it would place his

family and his other creditors in an insecure position. Such a result would be inappropriate and

inconsistent with the governing case law.

The Second Circuit has recognized that "an inflexible requirement for impressment of a

lien and denial of a stay of execution less a supersedeas bond in the full amount of the judgment

is posted can in some circumstances be irrational, unnecessary, and self defeating, amounting to a confiscation of the judgment debtor's property without due process." Texaco, 784 F.2d at 1154. "Accordingly, the district court has discretion to grant a stay of judgment with no supersedeas bond or with only a partial supersedeas bond if doing so does not unduly endanger the judgment creditor's interest in ultimate recovery." Morgan Guar., 702 F.Supp. at 65. See Olympia Equip. Leasing Co. v. Western Union Telegraph Co., 786 F.2d 794, 798-99 (7th Cir. 1986); Federal Prescription Serv., Inc. v. American Pharmaceutical Assoc., 636 F.2d 755, 759 (D.C. Cir. 1980) (district court has power to dispense with security requirement). See also Network Enterprises, 2007 WL 398276, at *2; Silver v. Mendel, 1992 WL 163285 at * 1 (E.D.Pa. July 8, 1992) ("it is entirely appropriate for a court to grant a stay without security if defendants are unable to satisfy judgment or obtain a bond.").

Courts adhere to the principle that a bond or other security should not be required where the requirement would put the judgment debtor's other creditors in undue jeopardy. See Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979) ("if the judgment debtor's present financial condition is such that the posting a full bond would impose an undue financial burden, the court similarly is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection of the judgment creditor."); Olympia, 786 F.2d at 799 (wherein the court recognized that it was reluctant where allowing the plaintiff to execute his judgment before the defendant could appeal might not even increase the probability of the plaintiff's collecting the judgment in full and depending on what assets were seized might throw the appellant into bankruptcy); id. at 800 (Easterbrook, J., concurring) ("The supercedeas bond is not supposed to elevate the judgment creditor over other

creditors ....."); id. ("The preference for the judgment creditor [over the defendant/debtor's other creditors as a result of the providing a bond] may send the debtor over the brink."); Network Enterprises, 2007 WL 398276, at *2.

The instant case involves a situation where the reasoning from Texaco, Network Enterprises and the other decisions discussed above applies and weighs heavily in favor of entering a stay without requiring any further security. It would be irrational and self-defeating to deny a stay absent the posting of additional security and it would amount to a confiscation of Chief Wearing's property without due process. In particular, it would place Chief Wearing, his family and his other creditors in a dangerous financial position. As such, Chief Wearing has satisfied the second factor in the Rule 62(d) analysis.

### C.    A Stay Will Not Substantially Harm The Plaintiff

Third, the issuance of a stay without requiring the posting of additional security will not harm the plaintiff. More specifically, it will not unduly endanger the plaintiff's interest in ultimately recovering on the judgment, if the judgment is not modified or vacated on appeal. See Network Enterprises, 2007 WL 398276, at *2. Indeed, having waited eight months since the issuance of the February 5 Ruling, it is disingenuous for the plaintiff to claim any need for additional security at this time.

Given Chief Wearing's financial condition, the plaintiff's ability to collect the judgment will be no different if the judgment is stayed without further security. Alexander v. Chesapeake, Potomac and Tidewater Books, Inc., 190 F.R.D. 190, 193-94 (E.D.Va. 1999). See Network Enterprises, 2007 WL 398276, at *2. As discussed above, the plaintiff has already placed a lien on Chief Wearing's home. (Ex. B) Thus, the plaintiff's interests in Chief Wearing's personal assets have been secured. Indeed, if the plaintiff is allowed to execute on a judgment in excess

of $2 million, his ability to collect may ultimately be impaired by the damage to Chief Wearing's finances. Dillon v. City of Chicago, 866 F.2d 902, 904-05 (7th Cir. 1988)("whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position…."). See Olympia, 786 F.2d at 800 (Easterbrook, J., concurring) ("The ensuing scramble to realize on the debtor's assets may make everyone worse off.").

Accordingly, the third factor weighs heavily in favor of granting Chief Wearing's motion.

### D.    The Public Interest Weighs In Favor Of Granting A Stay

Finally, the public's interest weighs in favor of staying this action without security. In particular, the public's interest is damaged if Chief Wearing cannot support his family, cannot pay his other creditors and is forced into a precarious financial situation.

### E.    Additional Factors Favor The Entry Of A Stay Without The Posting Of Any Additional Security

In Silver v. Mendel, 1992 WL 163285 (E.D.Pa. July 8, 1992), the court recognized that courts weigh the following factors when ruling on a motion for stay under Rule 62(b): (1) a defendant's net worth and ability to post a bond, (2) whether a defendant has cooperated with the court, and (3) whether a defendant's assets are within the jurisdiction. Id. at *1.

The reasoning from Silver further supports the granting of Chief Wearing's motion. First, as discussed above, Chief Wearing does not have the personal assets to secure the judgment.

Second, Chief Wearing has cooperated with the Court. He filed comprehensive post-trial motions and briefs. He did not oppose the plaintiff's numerous motions for extensions of time in connection with the filing of his opposition to those motions and to the filing of other pleadings. He has identified his assets and his appeal to the Second Circuit is fully briefed.

Finally, Chief Wearing resides in Connecticut and as demonstrated by his affidavit, the vast majority of his assets are located in Connecticut. (Wearing Aff. ¶¶ 3(a)-(g))

Accordingly, the Court should grant Chief Wearing's motion under Rule 62(d) and order a stay without the posting of any further security.

## III.    IN THE ALTERNATIVE, THE COURT SHOULD ORDER A STAY WITH THE POSTING OF THE MINIMAL ADDITIONAL SECURITY TO SECURE ONLY THE COMPENSATORY DAMAGES PORTION OF THE JUDGMENT

For the reasons set forth above, if the Court does not grant a stay without requiring further security, it should only require Chief Wearing to submit a minimal amount of additional security to secure the compensatory damages award. As set forth above, Chief Wearing does not have the personal assets to obtain a bond to cover the punitive damages award. Moreover, the plaintiff has a lien on Chief Wearing's home.

As discussed above and in Chief Wearing's affidavit, if the Court does not stay the execution without the posting of additional security, but rather, requires the posting of security sufficient to secure the $1,350,000 punitive damages award, it will adversely affect Chief Wearing's ability to support his family and to pay his other creditors and it will force him to consult with bankruptcy counsel. (Wearing Aff. ¶¶ 4, 6)

Under Rule 62(d), it is inappropriate to set a figure for security which in the face of the defendant's financial condition, will drive the defendant into financial ruin and possibly bankruptcy. Moreover, a successful plaintiff does not have a right to interfere with the rights of the defendant's other creditors. This is particularly true where the damages award is punitive damages and thus a windfall for the plaintiff. See Olympia, 786 F.2d at 797.

In those situations where the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, a district court should

25

substitute some form of guarantee of judgment responsibility for the usual bond. See Poplar Grove, 600 F.2d at 1191; Alexander, 190 F.R.D. at 193. In these situations, the court "is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor." Poplar Grove, 600 F.2d at 1191; Alexander, 190 F.R.D. at 193. Thus, the stay may issue where the judgment creditor/plaintiff "will be in nearly the same position at the conclusion of the appeal of th[e] case as they are currently." Alexander, 190 F.R.D. at 193. See id. at 193-94 (ordering bond or escrow account in the amount of $16,175.50 on judgment in excess of $127,000.00, where defendants were insolvent, but had previously put aside the amount ordered).

As discussed above, in this case, requiring Chief Wearing to post security in order to obtain a stay will not result in the plaintiff being in a better position to collect the judgment after the disposition of the appeal. Also, the plaintiff will not be in a better position to collect on the judgment if he is allowed to execute now. To the contrary, if he is allowed to execute, he will damage Chief Wearing's financial condition and reduce his likelihood of collecting on the judgment. See Olympia, 786 F.2d at 800 (Easterbrook, J., concurring) ("The ensuing scramble to realize on the debtor's assets may make everyone worse off.").

Accordingly, given Chief Wearing's financial condition, if it requires the posting of any further security, the Court should exercise its discretion to require only a minimal amount of security to secure the compensatory damages portion of the award. Morgan Guar., 702 F.Supp. at 65.[6]

---

[6] Although Chief Wearing presents alternative arguments, he reserves the right to seek review by the Second Circuit under Rule 8 of the Federal Rules of Appellate Procedure if the Court does not grant a stay without requiring any further security.

**IV.    IF THE COURT DENIES CHIEF WEARING'S MOTION, IT SHOULD ORDER THE PLAINTIFF TO POST A BOND TO SECURE ANY EXECUTION AND ORDER THAT ALL MONIES OBTAINED BY THE PLAINTIFF BE DEPOSITED INTO AN ACCOUNT HELD BY THE COURT**

If the Court does not grant Chief Wearing's motion for a stay, it should order (a) that the plaintiff post a bond to secure any damages that result from his execution on or enforcement of the judgment and (b) that all monies obtained by the enforcement and execution of the judgment be deposited into an interest bearing account held by the Clerk's Office. See Harris v. Butler, 961 F.Supp. 61, 63-64 (S.D.N.Y. 1997)(approving depositing of monies and holding in escrow).

As the Court is aware, the plaintiff is an individual. If the plaintiff is allowed to execute on the judgment and obtain any monies from that execution, Chief Wearing's ability to retrieve those monies after he is successful on his appeal should be secured. See Network Associates, 2007 WL 398276, at *3 n.1 (difficulty in appellant's ability to recover his property from appellee should be considered); Connecticut General Life Ins. Co. v. Riner, 2005 WL 151933, at *1 (W.D. Va. Jan. 24, 2005) (granting stay because appellant "may suffer irreparable loss" if appellee obtained monies before resolution of appeal).

Consequently, the plaintiff should provide security for the damages that will be inflicted on Chief Wearing if he is not able to obtain restitution after he succeeds on his appeal. In fact, even if he is able to obtain restitution, the damage done to Chief Wearing and his family may be irreversible. Accordingly, at a minimum, the Court should require the plaintiff to post a bond before executing on the judgment and to deposit any monies obtained into an interest bearing account held by the Clerk's Office. See Taylor v. Currie, 2006 WL 287323, at *1 (E.D. Mich. Feb. 7, 2006) (funds to be deposited in interest bearing escrow account).

## V.   IF THE COURT DENIES CHIEF WEARING'S MOTION, AT A MINIMUM, IT SHOULD STAY THE EXECUTION AND ENFORCEMENT OF THE JUDGMENT UNTIL AFTER THE SECOND CIRCUIT HAS REVIEWED THE MOTION FOR A STAY AND ISSUED ITS OWN RULING

If the Court denies the instant motion, Chief Wearing will file a motion for a stay with the Second Circuit. See Fed. R. App. P. 8(a)(2). At a minimum, the Court should stay the execution and enforcement of the judgment until after the Second Circuit has issued its ruling on that motion. Such a stay will allow Chief Wearing to present the issue to Second Circuit and will allow that Court an opportunity to review the issue in an orderly fashion.

A temporary stay will not prejudice the plaintiff. Indeed, he has already placed a lien on Chief Wearing's home (Ex. B), and did not press the issue of security despite *eight months* passing since the February 5 Ruling on the post-trial motions.

### CONCLUSION

For the foregoing reasons, the Court should grant Chief Wearing's motion and enter a stay without requiring the posting of any additional security, pending the disposition of all appellate proceedings. In the alternative, the Court should enter a stay with the posting of a minimal amount of security to secure only the compensatory damages portion of the award. If the Court denies the motion, it should order the plaintiff to: (1) post a bond to secure any execution he undertakes on the judgment and (2) order the plaintiff to deposit any monies obtained into an interest bearing account held by the Clerk's office. If the Court denies the motion, at a minimum, it should stay the execution and enforcement of the judgment until after the Second Circuit has issued its ruling on the motion for a stay.

Respectfully submitted,

**DEFENDANT**
**MELVIN WEARING**

By: _____
      Robert A. Rhodes, Esq.
      CT Fed. Bar No. 13583
      **HALLORAN & SAGE LLP**
      315 Post Road West
      Westport, CT 06880
      Tel:     (203) 227-2855
      Fax:    (203) 227-6992
      E-Mail:  rhodes@halloran-sage.com

          and

      Ralph W. Johnson III Esq.
      CT Fed. Bar No. 15277
      **HALLORAN & SAGE LLP**
      One Goodwin Square
      225 Asylum Street
      Hartford, CT 06103
      Tel:     (860) 522-6103
      Fax:    (860) 548-0006
      E-Mail:  johnsonr@halloran-sage.com

      His Attorneys

## CERTIFICATION

This is to certify that on this 24th day of October, 2007, a copy of the foregoing was caused to be served via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

Alexandra K. Block, Esq.
Joseph D. Garrison, Esq.
Garrison Levin-Epstein Chimes
   Richardson
405 Orange Street
New Haven, CT 06511

The Honorable Ellen B. Burns
United States District Court
   for the District of Connecticut
141 Church Street
New Haven, CT 06510
**(Courtesy Copy, Via Hand Delivery)**

_____
Ralph W. Johnson III

1009702_1 DOC

30