IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
|     Defendant | : | FEBRUARY 12, 2008 |

### DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A STAY OF THE ENFORCEMENT AND EXECUTION OF THE JUDGMENT PENDING APPEAL AND FOR IMMEDIATE STAY PENDING A RULING ON THE INSTANT MOTION

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:     (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:     (860) 522-6103
Fax:     (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

# TABLE OF CONTENTS

PAGE

ARGUMENT ................................................................................................................ 1

    I.    THE PLAINTIFF'S OPPOSITION TO THE
        STAY IS WITHOUT MERIT ................................................................ 2

    II.   THE INSURER'S POSITION ................................................................ 4

    III.  THE CITY OF NEW HAVEN'S POSITION .......................................... 4

    IV.  CHIEF WEARING'S MOTION SHOULD BE
        GRANTED UNDER THE GOVERNING
        STANDARD AND THE RECORD IN THIS CASE ................................ 5

CONCLUSION ............................................................................................................ 9

## ARGUMENT

As previously submitted to the Court, (Docket No. 191, 4/27/06 Tr. at 164), Melvin Wearing maintains that he is entitled to full indemnification from the City of New Haven and its insurer. He cannot, however, force either the City or its insurer to file a full bond. The Court should not penalize Chief Wearing and his family because of the positions taken by the City and its insurer. In particular, the Court should not grant the plaintiff leave to inflict financial damage on Chief Wearing's personal assets and his family, which is the express relief sought by the plaintiff's December 28, 2007 opposition. (Pl.'s 12/28/07 Mem. at 3)

The plaintiff already has security in Chief Wearing's partial interest in his home in Connecticut as the plaintiff has placed a lien on it. (Ex. A attached to Def.'s 10/24/07 Mem.) Under this Court's October 25, 2007 order (Docket No. 279), the plaintiff also has the ability to register the judgment in South Carolina, the location of a vacation home in which Chief Wearing has a partial interest. Moreover, given the lien and the October 25 order, it is safe to say that no surety company would accept Chief Wearing's partial interests in the property as collateral for a bond.

The record in this case is very clear on the issue of Chief Wearing's personal assets. Chief Wearing does not have the personal assets to obtain a bond or provide further security to cover the amended judgment and in particular, the punitive damages award. The plaintiff cannot challenge this fact.[1] Accordingly, under the standard governing motions for a stay, (Def.'s

---

[1]    Indeed, a thorough review of the transcripts from the four days of hearings held in March, April and May 2006 confirms that plaintiff's attorney had no interest in Chief Wearing's personal assets. More specifically, on March 28, 2006, the plaintiff's attorney only asked Chief Wearing a limited number of questions regarding his personal assets. (Docket No. 169, 3/28/06 Tr. at 22-31) She then proceeded to question Chief Wearing regarding potential third-party sources of payment. (Id. at 32-103) On April 27, when Chief Wearing's testimony resumed, the plaintiff's attorney had no questions for him regarding his personal assets. (4/27/06 Tr. at 66-

10/24/07 Mem. at 9-25), Chief Wearing should receive a stay of execution pending the

conclusion of all appellate proceedings.

## I. THE PLAINTIFF'S OPPOSITION TO THE STAY IS WITHOUT MERIT

At the outset, the plaintiff's accusations of wrongdoing by Chief Wearing and his

attorneys are false. In sum, the plaintiff's opposition consists of nothing more than false

accusations, insults and an effort to create the false impression that Chief Wearing has not

cooperated in the post-judgment proceedings.[2]

At the plaintiff's insistence, the Court convened and multiple witnesses appeared on four

different days between March 28 and May 23, 2006. During those four days of hearings, the

plaintiff had a full and fair opportunity to ask any questions he wished to pose to Chief Wearing

---

168) Again, her questions focused exclusively on potential third-party sources of payment. On May 1, the plaintiff's attorney's questioning of Chief Wearing (Docket No. 187, 5/1/06 Tr. at 19-45), again focused on the issue of potential third-party sources of payment. She only paused briefly to ask a few questions which related to Chief Wearing's personal assets. (Id. at 28-32)

[2]/     For example, as part of his effort to create a false impression, the plaintiff in footnote 1 of his opposition maintains that the existence of Chief Wearing's pension and current salary were only revealed through a "forced disclosure" at the hearings on Chief Wearing's Rule 62(b) motion. In fact, there was no "forced disclosure." The existence of and amounts of Chief Wearing's pension and current salary were presented to the Court in paragraphs 3(f) and 3(g) of his affidavit dated March 2, 2006 and filed in support of his Rule 62(b) motion prior to the hearings. (Docket Nos. 125-26)

As part of his effort, the plaintiff's opposition also repeatedly refers to not being able to take a deposition of Chief Wearing. However, during a telephonic conference on March 24, 2006, the plaintiff's counsel represented to the Court that "if defense counsel is willing to produce Mr. Wearing at a hearing before the Court, I will be happy to examine him at that time and forego a deposition." (Docket No. 160, 3/24/06 Tr. at 20) Four days of hearings followed. Chief Wearing was questioned by the plaintiff's counsel on three of those days and was present on the fourth day and answered questions from the Court. (3/28/06 Tr. at 21-103; 4/27/06 Tr. at 66-168; 5/1/06 Tr. at 19-45; Docket No. 199, 5/23/06 Tr. at 90) During the course of the hearings, the Court itself recognized that a hearing, as opposed to a deposition, was the appropriate manner in which to proceed in this case. (4/27/06 Tr. at 50) Indeed, once the hearing had begun, the plaintiff's counsel vehemently opposed adjourning it to proceed via deposition. (Id. at 54)

or the other witnesses. The plaintiff's attorneys made strategic decisions on which questions they wanted to ask and which questions they did not. Those strategic decisions by the plaintiff's attorneys do not provide a basis for denying Chief Wearing's motion.[3]

As part of his opposition, the plaintiff accuses Chief Wearing of using the attorney-client privilege as both a sword and a shield and argues that because Chief Wearing asserted objections to questions based on the privilege, all evidence and arguments submitted by him in support of his motion for stay, must be rejected. (Pl.'s 12/28/07 Mem. at 30-39) This argument is wholly without merit. It is based on a belief that because the Court sustained objections to questions posed by the plaintiff's counsel nearly two years ago, including objections based upon the attorney-client privilege, Chief Wearing has no right to file a motion for a stay.

Contrary to in the plaintiff's argument, this Court's sustaining of objections cannot be the basis for penalizing Chief Wearing. Although the plaintiff may not agree, when the Court sustained an objection to a question, the witness was not required to or allowed to answer. Consequently, evidentiary rulings in favor of Chief Wearing cannot be used against him, let alone bar his motion for a stay. Moreover, contrary to the plaintiff's characterization of the hearings, the Court rejected a substantial number, if not the vast majority, of objections based upon the attorney-client privilege and Chief Wearing and other witnesses answered the questions posed to them.

---

[3]    As part of his effort to create a false impression, the plaintiff's opposition also claims that Chief Wearing has refused to answer questions. The plaintiff cannot, however, identify any question asked of Chief Wearing during the hearings which he "refused" to answer. Contrary to the plaintiff's belief, Chief Wearing had the right to have his counsel assert objections and was not required to answer any question to which the Court had sustained an objection. Moreover, at the conclusion of the hearings on May 23, 2006, when the Court asked counsel if the evidentiary presentation had concluded, the plaintiff's counsel did not indicate any need to question Chief Wearing any further. (5/23/06 Tr. at 93) Thus, it is disingenuous for the plaintiff to claim that Chief Wearing has refused to answer questions.

## II.    THE INSURER'S POSITION

At the heart of the plaintiff's opposition is an elaborate attempt to create the false impression that there is uncertainty about the positions of the City of New Haven and its insurer regarding indemnification and then to have the Court penalize Chief Wearing because of that uncertainty.  In point of fact, the positions of the City and its insurer are available to the Court and there is no basis for penalizing Chief Wearing.

The insurance policy from the City's insurer has been on file with the Court since July 5, 2006.  (Docket No. 220)  Attached as Exhibit 1 is a letter dated January 9, 2008 from Michael J. DeLonay, Vice President, Claims & Liability Management for the Westport Insurance Corporation to Attorney Hubert Santos.[4]  The letter contains the insurance company's position regarding its coverage of Chief Wearing and its obligations in connection with the posting of a bond.

## III.    THE CITY OF NEW HAVEN'S POSITION

Contrary to the plaintiff's suggestions, neither Chief Wearing nor his attorneys can speak for the City of New Haven.  To the extent that the Court believes it is necessary to have an express and official statement of the City's position with regard to indemnification and a bond, it is respectfully submitted that the Court should make a direct inquiry of the City.

During the four days of hearings held in 2006, officials from the City, including its Mayor, testified before the Court.  On April 27, 2006, the attorney representing New Haven's Mayor and the other officials offered to submit a letter setting forth the City's position.  (4/27/06 Tr. at 160-62)  The plaintiff's attorney opposed having such a letter submitted and the Court did

---

[4]      As the first paragraph of the letter indicates, Coregis Insurance Company has merged with Westport.

not take up the offer. (Id.) The offer from the City presumably still stands and merely requires the Court to request a letter from the City.

## IV.     CHIEF WEARING'S MOTION SHOULD BE GRANTED UNDER THE GOVERNING STANDARD AND THE RECORD IN THIS CASE

As Chief Wearing's initial memorandum demonstrated and as the plaintiff's opposition concedes at page 27, to determine whether to grant a stay under Rule 62(d), a court considers: (1) whether the movant is likely to prevail on the merits of his appeal, (2) whether, without a stay, the movant will be irreparably injured, (3) whether the issuance of stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest. Network Enterprises, Inc. v. APBA Offshore Prods., Inc., 2007 WL 398276, at *1 (S.D.N.Y. Feb. 5, 2007); Morgan Guar. Trust Co. v. Republic of Palau, 702 F.Supp. 60, 65 (S.D.N.Y. 1988), vacated on other grounds, 924 F.2d 1237 (2d Cir. 1991).[5]

Although the plaintiff's opposition acknowledges the factors which must be analyzed in ruling on a Rule 62(d) motion, the plaintiff fails to address any of the factors. First, the plaintiff

---

[5]      In connection with the first factor, a movant satisfies the factor if he demonstrates a "'substantial case on the merits,' even if ultimate success is not a mathematical probability." Morgan Guar., 702 F.Supp. at 65. See Network Enterprises, 2007 WL 398276, at *1. In analyzing the success factor, a district court must be extremely mindful to check itself and not improperly disregard the appellant's claims of error on appeal. See Mohammed v. Reno, 309 F.3d 95, 101 n.8 (2d Cir. 2002). This is particularly so given the fact that the district court is assessing the likelihood that the ruling it made will be rejected on appeal. Id. In discussing the first factor, the Second Circuit has concluded that the "'necessary 'level' or 'degree' of possibility of success will vary according to the Court's assessment of the other [stay] factors.'" Id. at 101. See Cooper v. United States Postal Service, 2007 U.S. Dist. LEXIS 80877, at *7-8 (D.Conn. Nov. 1, 2007) (granting stay pending appeal). Consequently, in applying the test, a courts have granted "a stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant .... " Mohammed, 309 F.3d at 101. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other." Id. (internal quotation marks omitted). Accordingly, in order to satisfy the success factor of the test, an appellant need only demonstrate "'a substantial possibility, although less than a likelihood, of success.'" Id.

does not challenge the fact that Chief Wearing has presented a substantial case on appeal. Indeed, under the significant weight of the case law applying <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006), there is a strong likelihood that the judgment for the plaintiff will be vacated by the Second Circuit and either a judgment will be entered in favor of Chief Wearing or a new trial will be ordered. (Def.'s 10/24/07 Mem. at 9-15)

With regard to the second factor, the record confirms that Chief Wearing, who served as a law enforcement officer for 34 years, (Docket No. 99, 12/6/05 Tr. at 17, 46), does not have the personal assets to provide any further security for an amended judgment in excess of $2 million. In particular, he does not have the personal assets to provide security for the punitive damages award of $1.35 million. The plaintiff has never contested this fact, but rather, has alleged wrongdoing in connection with potential, third-party sources of indemnification or insurance coverage.

The plaintiff's opposition does not deny that Chief Wearing will be irreparably injured absent the entry of a stay. To the contrary, by his opposition, (Pl.'s 12/28/07 Mem. at 3), the plaintiff expressly seeks a ruling which will allow him to execute against Chief Wearing's personal assets under the belief that an execution will result in the City and/or its insurer filing a bond for the full amount of the amended judgment, including the punitive damages portion. The most basic norms of justice prohibit the issuance of such an order. There is no authority for a court to allow one litigant to inflict financial damage on another litigant and his family as bait to assist him in pursuing a municipality and an insurance company. Accordingly, regardless of the City of New Haven's and its insurer's positions, the Court should stay any execution of the amended judgment. The Court should not provide the plaintiff with an order by which he can inflict financial damage on Chief Wearing, his family and his other creditors.

With regard to the third factor in the Rule 62(d) analysis, the plaintiff does not claim that the issuance of a stay will substantially harm him.[6] Nor can he. The purpose of the supersedeas bond is "to secure the appellee from loss resulting from the stay of execution." Federal Prescription Serv., Inc. v. American Pharm. Ass'n, 636 F.2d 755, 760 (D.C. Cir. 1980). See Texaco, Inc. v. Pennzoil Co., 784 F.2d 1133, 1154 (2d Cir. 1986)("A judgment creditor's primary concern when judgment in his favor is stayed pending appeal is that he be 'secure ... from loss resulting from the stay of execution'"), rev'd on other grounds, 481 U.S. 1 (1987). Consequently, "no bond or a reduced bond would suffice when the creditor's interest, due to unusual circumstances, would not be unduly endangered." Texaco, 784 F.2d at 1155. See Federal Prescription, 636 F.2d at 758 (less than full bond appropriate "where a full bond would mean undue financial burden"). Here, a stay of execution will not harm the plaintiff. Chief Wearing does not have the personal assets to cover the punitive damages award of $1.35 million. There is no evidence that that situation will change after or as a result of a stay. Thus, the plaintiff will not be harmed as a result of a stay of execution pending the appellate proceedings.

Finally, the plaintiff does not challenge the fact that the public interest favors the entry of a stay, which will allow Chief Wearing to continue to pay his other creditors and to assist with the supporting of his family.

Rule 62 "in no way necessarily implies that filing a bond is the only way to obtain a stay." Federal Prescription, 636 F.2d at 759. See Alexander v. Chesapeake, Potomac & Tidewater Books, Inc., 190 F.R.D. 190, 192 (E.D. Va. 1999). In fact, the Second Circuit has

---

[6]    As discussed above, a review of the transcripts from the four days of hearings and the plaintiff's December 28, 2007 memorandum confirms that the plaintiff has no interest in Chief Wearing's personal assets. During the hearings, the plaintiff's attorney's questions regarding Chief Wearing's personal assets were extremely limited. The plaintiff did not care about the Chief's personal assets because he knew that they could not cover the judgment.

recognized that "an inflexible requirement for impressment of a lien and denial of a stay of execution unless a supersedeas bond in the full amount of the judgment is posted can in some circumstances be irrational, unnecessary, and self-defeating, amounting to a confiscation of the judgment debtor's property without due process." Texaco, 784 F.2d at 1154.

Thus, it is well-established that a full bond should not be required when the appellant's financial condition is such that requiring a full bond would impose an "undue financial burden." Popular Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979).[7] Accordingly, "[w]hen the judgment debtor lacks the assets or credit necessary to pay at once and in full, this means that the judge should give the creditor less than complete security." Olympia Equip., 786 F.2d at 800 (Easterbrook, J., concurring). See HCB Contractors v. Rouse & Assocs., 168 F.R.D. 508, 513 (E.D. Pa. 1995) ("Refusal of the stay would not advance the orderly course of justice; rather, it would create more difficulties by enhancing the uncertain positions of all concerned, prejudicing the other creditors, and most likely leading to additional legal proceedings.").[8]

---

[7]    See Olympia Equip. v. Western Union Telegraph Co., 786 F.2d 794, 796-99 (7th Cir. 1986) (Posner, J.); Federal Prescription, 636 F.2d at 758 (less than full bond appropriate "where a full bond would mean undue financial burden"). See also Dillon v. City of Chicago, 866 F.2d 902, 905 (7th Cir. 1988) (a factor in determining whether to waive the bond requirement is "whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position").

[8]    For example, relying on the Second Circuit's decision in Texaco, the Tenth Circuit in Miami Int'l Realty Co. v. Paynter, 807 F.2d 871, 873-74 (10th Cir. 1986) affirmed the granting of a stay with the posting of bond in an amount lesser than the verdict, where the appellant submitted an affidavit stating that he did not have sufficient assets to post a bond in the amount of the verdict and that execution of the judgment would cause him irreparable harm and place him in insolvency. See Alexander, 190 F.R.D. at 192-93; Jack Frost Labs, Inc. v. Physicians & Nurses Mfg. Corp., 1996 U.S. Dist. LEXIS 18137, at *2 (S.D.N.Y. Dec. 10, 1996) ("where a judgment debtor would otherwise be in danger of being driven into bankruptcy pending appeal, a stay may be granted without the debtor posting a bond in the full amount of the judgment."); International Distribution Centers, Inc. v. Walls Trucking Co., Inc., 62 B.R. 723, 732 (S.D.N.Y. Bankr. Jan. 8, 1986); C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc., 368 F.Supp. 501,

There is nothing in the record to suggest that Chief Wearing, a career law enforcement officer, has the personal assets to satisfy an amended judgment which includes $1.35 million in punitive damages. Contrary to the plaintiff's suggestions, the likelihood that the enforcement of the amended judgment would place an undue financial burden on Chief Wearing and/or force him into bankruptcy is a factor which should control the Court's analysis in this case.[9]

Excusing a bond to cover the punitive damages portion of the amended judgment is appropriate given the fact that that portion of the amended judgment is a "windfall" to the plaintiff, and the purpose of it is to punish rather than to compensate the plaintiff. Olympia Equip., 786 F.2d at 797. It is particularly appropriate to forego requiring a full bond in this case because allowing execution of the judgment against Chief Wearing's personal assets would in no way bring the plaintiff realistically closer to collecting the $1.35 million in punitive damages. Moreover, allowing execution inappropriately jeopardizes Chief Wearing, his family and his other creditors.

## CONCLUSION

For the reasons set forth above and in Chief Wearing's initial memorandum, the Court should grant Chief Wearing's motion and enter a stay without requiring Chief Wearing to post any further security. In the alternative, the Court should enter a stay with the posting of security by the City of New Haven's insurer in the amount that the insurer is willing to provide.

---

520 (E.D.Pa. 1973). See also River Oaks Marine, Inc. v. Town of Grand Island, 1992 U.S. Dist. LEXIS 20407, at *3 (S.D.N.Y. Dec. 10, 1992) (recognizing that absent a stay "[m]any innocent third parties may suffer if execution is allowed to proceed").

[9]    Dillon, 866 F.2d at 905; Olympia Equip., 786 F.2d at 796-99; id. at 800 (Easterbrook, J., concurring); Popular Grove, 600 F.2d at 1190-91; Alexander, 190 F.R.D. at 192-93; HCB Contractors, 168 F.R.D. at 512-14 (granting stay without requiring bond); Morgan Guar., 702 F.Supp. at 65 (equity supported stay upon posting of partial bond).

If the Court denies the motion, it should stay the execution and enforcement of the amended judgment until after the Second Circuit has reviewed the matter and issued its own ruling on the motion for a stay. Chief Wearing would file a motion pursuant to Fed. R. App. P. 8 with the Second Circuit within 14 days of this Court's ruling. If the Second Circuit does not grant a stay, and this Court's ruling stands, it should order the plaintiff to: (a) post a bond to secure any damages inflicted on Chief Wearing and his family by the execution of the amended judgment and (b) deposit any monies he recovers into an interest bearing account held by the Clerk of the Court. In connection with that account, the Court should further order that the Clerk not deduct any monies from the account at the time monies are released.

Respectfully submitted,

**DEFENDANT-APPELLANT**
**MELVIN WEARING**

By: _____
Ralph W. Johnson III
Robert A. Rhodes
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel: (860) 522-6103
Fax: (860) 548-0006

His Attorneys

# EXHIBIT 1

**Swiss Re**

᚛᚛᚛

Michael J DeLonay
Vice President
Claims & Liability Management

Commercial Insurance
Westport Insurance Corporation
222 West Adams. Suite 2300
Chicago, IL 60606
USA

Telephone 800 879 4428
Fax 312 849 5367
Michael_Delonay@swissre com
www swissre com

*Via Facsimile & Regular Mail*

Hubert J. Santos
Santos & Seeley, P.C.
51 Russ Street
Hartford, Connecticut 06106-1566

January 9, 2008

RE:    Arpad Tolnay v. Melvin Wearing
       Case No :     3:02 CV 1514
       Insured:      City of New Haven
       Policy No.:   POD-001986
       Claim No.:    ECD 80175514

Dear Mr. Santos:

Please allow this correspondence to provide you with our updated position with regard to coverage in light of developments in connection with post trial proceedings in the above-referenced case. At the outset, please be advised that Coregis Insurance Company ("Coregis") has merged with Westport Insurance Corporation ("Westport"). As this impacts you, and your client, only the name of the company has changed.

As you are aware, your client, Melvin Wearing, was subject to a jury award and judgment rendered on December 12, 2005 in the case entitled Arpad Tolnay v. Melvin Wearing, Case No 3:02 CV 1514. The jury award consisted of $903.84 in economic damages, $150,000 00 in non-economic damages, and $5 million in punitive damages. Subsequently, after remittitur, the punitive award was reduced to the sum of $1,350,000.00. Tolnay's attorneys were awarded $513,657 50 in attorneys' fees, above and beyond the jury award. Westport has been and will continue to be willing to provide coverage for the economic ($903.84) and non-economic ($150,000.00) portions of the award, as well as that portion of the award of attorneys' fees that is attributable to the plaintiff's pursuit of potentially covered claims.

Westport also will provide defense costs, including attorney's fees, through the appeal process However, for the reasons that follow, Westport must once again respectfully advise you that the Westport policy does not cover punitive damages. Therefore, Westport will not indemnify Mr. Wearing for punitive damages, inasmuch as such damages are expressly excluded from the definition of "Loss" in the policy Additionally, under Connecticut law, punitive damages are not

Swiss Re

insurable  Tedesco v. Maryland Casualty Co., 127 Conn. 533, 18 A.3d 357. Therefore, Westport has no obligation to indemnify Mr. Wearing in regard to the award of punitive damages.

We understand that briefing is underway with regard to the issue of whether Mr. Wearing will or will not be required to post a bond in order to stay execution of the judgment pending the outcome of the appeal   Pursuant to Section II(B) of the Insuring Agreement, Westport is obligated to pay for the cost of (premium for) an appeal bond. However, under the express terms of the policy, Westport has no obligation to apply for, or secure, any such bond. Moreover, Westport's responsibility for paying the premium for such a bond is expressly limited to the amount of premium which is attributable to only such bond amount as would cover the potentially covered portion of the judgment (Insuring Agreement; Section II , Paragraph B, Subpart 2)  Please note that, even if  Westport were otherwise obligated to actually secure an appeal bond, it would not be appropriate for Westport to secure an appeal bond applicable to those sums which exceed the potentially covered compensatory damages and attorneys' fees awarded in this case  Execution on such a bond after an unsuccessful appeal would, in such instance, effectively result in the provision of insurance coverage for punitive damages  Such a result is contrary to the express language of the Westport policy and would be violative of applicable law.

Westport reserves the right to seek reimbursement from Mr. Wearing of attorney's fees, costs and expenses for the defense and/or appeal incurred in regard to non-covered claims and/or damages

Please be advised that there may be additional coverage defenses, which, while not apparent, may come to light as this matter proceeds  Westport expressly reserves the right to invoke and rely upon any other coverage defenses which may apply now or which may be deemed to apply in the future. In addition, the specific enumeration of the policy provisions set forth above is not intended by Westport to be a waiver of any other policy defenses. Westport does not intend to waive any of its coverage defenses, nor shall it be estopped from asserting any applicable defenses. If you believe that there is additional information which may be relevant to Westport's determination of coverage in this matter, please immediately forward that information to us  If you have any questions, please do not hesitate to contact us

Sincerely,

Michael J. DeLonay

1

**Swiss Re**

cc:    Thomas W. Ude, Jr.
       Corporation Counsel
       165 Church Street
       Suite 4
       New Haven, CT 06510

       Robert A. Rhodes
       Halloran & Sage, LLP
       315 Post Road West
       Westport, CT  06880

## CERTIFICATION

This is to certify that on this 12th day of February, 2008, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Norman A. Pattis
129 Church Street, 4th Floor
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

Joseph D. Garrison, Esq.
Alexandra K. Block, Esq.
Garrison Levin-Epstein Chimes
  & Richardson
405 Orange Street
New Haven, CT 06511

_____
Ralph W. Johnson III

1114997_1 DOC

11