IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
| Defendant | : | APRIL 2, 2008 |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFF'S MOTION TO STRIKE

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:     (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:     (860) 522-6103
Fax:     (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .........................................................................................................1

    I.    THE APRIL 27, 2006 PROCEEDINGS.....................................................1

    II.   THE MAY 1, 2006 PROCEEDINGS ........................................................2

    III.  THE MAY 23, 2006 PROCEEDINGS ......................................................2

    IV.  THE INSURANCE POLICY AND
           RESERVATION OF RIGHTS LETTER.....................................................3

    V.   THE PLAINTIFF'S DECEMBER 28, 2007
           MEMORANDUM IN OPPOSITION TO
           CHIEF WEARING'S PENDING MOTION
           FOR A STAY..............................................................................................3

    VI.  THE JANUARY 9, 2008 LETTER FROM THE
           WESTPORT INSURANCE CORPORATION .............................................4

    VII. MICHAEL DELONAY'S AFFIDAVIT.....................................................4

ARGUMENT...............................................................................................................5

    I.   THE PLAINTIFF'S MOTION TO STRIKE
           IS WITHOUT MERIT .................................................................................6

    II.  THE PLAINTIFF'S REQUEST FOR AN
           EVIDENTIARY HEARING IS WITHOUT
           MERIT ......................................................................................................12

CONCLUSION...........................................................................................................13

## PRELIMINARY STATEMENT

The defendant, Melvin Wearing, the former Chief of Police of the New Haven Police Department, submits this memorandum of law in opposition to the plaintiff's motion to strike (Document No. 301). By his motion, the plaintiff seeks to strike Exhibit A attached to the Chief Wearing's reply memorandum of law in support of his motion for a stay. Exhibit A is a letter dated January 9, 2008 from Michael DeLonay of the Westport Insurance Corporation to Chief Wearing's personal counsel, Attorney Hubert Santos. The letter sets forth Westport's position regarding the coverage it will provide to Chief Wearing.

In further support of his opposition to the plaintiff's motion to strike, Chief Wearing submits the affidavit of Michael DeLonay, which is attached hereto as Exhibit 1. For the reasons set forth below, the Court should deny the plaintiff's motion to strike.

## BACKGROUND

### I.    THE APRIL 27, 2006 PROCEEDINGS

On April 27, 2006, the Court summarized one of the key issues in Chief Wearing's then pending Rule 62(b) motion for a stay. Specifically, it recognized that "[t]he availability of funds is what we're all interested in." (Docket No. 191, 4/27/06 Tr. at 70)

That same day, Chief Wearing's personal counsel (Attorney Santos) informed the Court that he had sent letters to the City of New Haven and its insurer, the Coregis Insurance Company, demanding full indemnification for Chief Wearing. (4/27/06 Tr. at 151) However, Chief Wearing's personal counsel further informed the Court that it was "obvious that the insurance company [wa]s taking the position that they're not going to cover the punitives." (Id. at 159)

## II.    THE MAY 1, 2006 PROCEEDINGS

On May 1, 2006, an October 27, 2005 letter from Halloran & Sage to Chief Wearing was marked as defendant's Exhibit A and was received into evidence without objection. (Docket No. 187, 5/1/06 Tr. at 34-35) After informing Chief Wearing that Halloran & Sage had been retained by the Coregis Insurance Company to assist with his defense, the letter stated "[y]ou should also be aware that under the Coregis policy, as well as Connecticut law, any punitive damages will not be covered by insurance and are not insurable in the State of Connecticut."

## III.   THE MAY 23, 2006 PROCEEDINGS

On May 23, 2006, the plaintiff's counsel acknowledged that the proceedings to date had included testimony that Chief Wearing, through his counsel, had sent a letter to Coregis in which he set forth his position with respect to his right to full coverage in excess of the policy under the circumstances of this case. (Docket No. 199, 5/23/06 Tr. at 63) In fact, letters dated April 24, 2006 from Chief Wearing's personal counsel to the City of New Haven and Coregis were introduced into evidence by the plaintiff and marked as Plaintiff's Exhibits 13 and 14. (5/23/06 Tr. at 82)

That same day, the Court summarized the purpose of the proceedings as follows:

> This hearing is about whether or not [Chief Wearing] has the assets and if he is going to have to personally pay the judgment if it stands against him. Whether he's going to be indemnified is of interest to the Court on that issue.

(5/23/06 Tr. at 81)

The Court made this statement in response to the plaintiff's counsel's objection to the introduction of the Coregis insurance policy. (Id. at 80-81) After making the statement, the Court indicated that it wanted to see the insurance policy and that if an authenticating affidavit was provided, the Court would consider the policy. (Id. at 81-82)

2

## IV.    THE INSURANCE POLICY AND RESERVATION OF RIGHTS LETTER

The Coregis insurance policy was filed with the Court on July 5, 2006. (Docket No. 220)

It was accompanied by the authenticating affidavit requested by the Court. Id. A copy of a

reservation of rights letter dated January 23, 2003 from Coregis to the City of New Haven was

included with the policy. (Id.) On page 2 of the letter, it stated that "punitive damages are

uninsurable in the state of Connecticut. If there were to be an award of punitive damages, that

would be your responsibility." (Id.)

## V.    THE PLAINTIFF'S DECEMBER 28, 2007 MEMORANDUM IN OPPOSITION TO CHIEF WEARING'S PENDING MOTION FOR A STAY

By his December 28, 2007 opposition to Chief Wearing's motion for a stay under Rules

62(d) and 62(f), the plaintiff sought a ruling from the Court which would grant him leave to

inflict financial damages on Chief Wearing. (Docket No. 290, Pl.'s 12/28/07 Mem., at 3)

Specifically, the plaintiff maintained that with a ruling conditioning a stay on the posting of

security which would cover both the compensatory damages and the $1,350,000 punitive

damages and with the subsequent execution efforts by the plaintiff, the "court shall see just how

fast Melvin Wearing becomes 're-indemnified' for punitive damages and/or just how fast

Coregis Insurance Company and Halloran & Sage arrange for a supersedeous (sic) bond." (Id.)

In footnote 5 of his opposition memorandum, the plaintiff acknowledged that Chief

Wearing's counsel had represented to the Court that New Haven's insurer was "tak[ing] the

position that it is not responsible for the entire judgment." The plaintiff criticized this

representation and maintained that there was no evidence in the record of the insurance

company's position. (Id.)[1] He made this criticism, despite the evidence already before the

---

[1]    At page 6 of his opposition, the plaintiff repeated his criticism of Chief Wearing's
counsel's representations to the Court that the Coregis Insurance Company was "'tak[ing] the

3

Court, which was submitted in connection with Chief Wearing's Rule 62(b) motion and despite
the Court's observations during the proceedings held in 2006. As part of his opposition, the
plaintiff further criticized Chief Wearing and his counsel for advising the Court that Chief
Wearing was not aware of the extent of Coregis' coverage. (Id. at 5, n.8)

Finally, at page 24 of his December 28, 2007 opposition memorandum, the plaintiff
maintained that Chief Wearing was covered under the Coregis policy, which was on file with the
Court and that it was uncertain as to whether "Coregis would not fund the cost of a bond
sufficient to protect Wearing and in the full amount of the judgment plus interest." (Id. at 24)

## VI.    THE JANUARY 9, 2008 LETTER FROM THE WESTPORT INSURANCE CORPORATION

On February 12, 2008, Chief Wearing filed a reply memorandum of law in further
support of his motion for a stay pending all appellate proceedings. Exhibit A attached to the
reply memorandum was a letter dated January 9, 2008 from Michael DeLonay of the Westport
Insurance Corporation to Attorney Santos. Westport had merged with Coregis. The letter set
forth Westport's position regarding the coverage it would provide to Chief Wearing in
connection with the plaintiff's claim. In particular, the letter indicated that Westport would not
provide coverage for the punitive damages award.

## VII.   MICHAEL DELONAY'S AFFIDAVIT

Attached hereto as Exhibit 1 is the affidavit of Michael DeLonay. He is the author of the
letter dated January 9, 2008 addressed to Attorney Hubert Santos, which was attached as Exhibit
A to Chief Wearing's reply memorandum in support of his motion to stay and which the plaintiff
seeks to strike. As his letter indicates, Mr. DeLonay is a Vice President, Claims & Liability
Management for the Westport Insurance Corporation.

---

position' that it is not responsible for payment of the entire judgment." (Pl.'s 12/28/07 Mem., at
6)

4

Mr. DeLonay's affidavit confirms that a true and accurate copy of his January 9, 2008 letter is attached to his affidavit and that his letter sets forth Westport's coverage position with regard to the claim made against Chief Wearing by the plaintiff. Moreover, Mr. DeLonay's affidavit confirms that his letter is a business record of the Westport Insurance Corporation.

## ARGUMENT

The plaintiff's motion to strike is the latest maneuver in his elaborate attempt to create the false impression that there is uncertainty about the coverage position of the Westport Insurance Corporation, New Haven's insurer. Specifically, despite Mr. DeLonay's January 9, 2008 letter to Attorney Santos and despite the evidence in the record, the plaintiff wishes the Court to pretend that the insurer will post a bond to cover the $1,350,000 punitive damage award or to pretend that there is uncertainty as to whether the insurer will post a bond to cover the punitive damages. The plaintiff's motion to strike is also part of an effort to block the Court from receiving information that it has previously indicated that it wishes to have in connection with its adjudication of Chief Wearing's motion for a stay.

Melvin Wearing, like all litigants, has a right to basic due process. As demonstrated by the case law cited in his initial and reply memoranda submitted in support of his motion for a stay pending appeal, when an appellant does not have the financial means to post a bond or other security and/or when requiring an appellant to post security will inflict an undue financial burden on the appellant, courts will either excuse the requirement of security outright or they will modify it so it will not impose an undue financial burden. In this case, contrary to the urgings of the plaintiff, the Court cannot pretend that the Westport Insurance Corporation will provide coverage to Chief Wearing for the punitive damages portion of the amended judgment, if the Court conditions a stay on the posting of security to cover the $1,350,000 punitive damages award. The most basic norms of justice should not allow the Court to ignore the fact that

Westport has taken the position that it will not cover Chief Wearing for the punitive damages portion of the amended judgment.

The record in this case is very clear on the issue of Chief Wearing's personal assets. He does not have the personal assets to obtain a bond or provide further security to cover the amended judgment and in particular, the punitive damages award. The plaintiff cannot challenge this fact. Instead, he has engaged in an elaborate attempt to create the false impression that there is uncertainty about the positions of the City of New Haven and its insurer regarding indemnification and coverage and then to have the Court penalize Chief Wearing because of that uncertainty. As demonstrated in Chief Wearing's memoranda submitted in support of his motion to stay and as demonstrated above, the positions of the City and its insurer are available to the Court and there is no basis for penalizing Chief Wearing.

As previously submitted to the Court, (4/27/06 Tr. at 164), Chief Wearing maintains that he is entitled to full indemnification from the City of New Haven and its insurer. He cannot, however, force either the City or its insurer to file a full bond. The Court should not penalize Chief Wearing and his family because of the positions taken by the City and its insurer. In particular, the Court should not grant the plaintiff leave to inflict financial damage on Chief Wearing's personal assets and his family, which is the relief sought by the plaintiff's December 28, 2007 opposition. (Pl.'s 12/28/07 Mem. at 3)

## I.    THE PLAINTIFF'S MOTION TO STRIKE IS WITHOUT MERIT

The plaintiff raises three arguments in support of his motion to strike. (Docket No. 301, Pl.'s 2/21/08 Motion, at 1-3) First, he maintains that Mr. DeLonay's January 9, 2008 letter should be stricken because under the Local Rules the defendant does "not have the right to attach new documents, exhibits and other evidence" to a reply brief. In support of his first argument, the plaintiff suggests that a full hearing was held in connection with Chief Wearing's pending

6

motion for a stay and that the submission of Mr. DeLonay's letter is part of an effort to interfere with that hearing. Second, the plaintiff contends that Mr. DeLonay's letter should be stricken because it is not authenticated. Finally, the plaintiff maintains that Mr. DeLonay's letter should be stricken because it constitutes hearsay.

The plaintiff's first argument is without merit. Local Rule 7(d) governs reply briefs. It does not prohibit the filing of exhibits or affidavits in connection with a reply brief.

As demonstrated above, despite the record in connection with the proceedings in 2006, the representations in the initial memorandum of law filed in support of Chief Wearing's Rule 62(b) motion for a stay (Docket No. 124), the representations in the initial memorandum of law filed in support of Chief Wearing's instant motion for a stay (Docket No. 278) and the Court's observations about the purpose of the stayed proceedings and the subject matter which is of the most interest to the Court, ("[t]he availability of funds"), the plaintiff's December 28, 2007 opposition criticized Chief Wearing and his counsel and maintained that there was no evidence regarding the insurer's position on coverage for punitive damages.

The plaintiff's claims notwithstanding, the record before the Court prior to Chief Wearing filing his January 12, 2008 reply memorandum in support of his motion for stay, demonstrated that Coregis/Westport was taking the position that punitive damages were not covered. However, in response to the attacks in plaintiff's December 28, 2007 opposition, Chief Wearing properly submitted a letter from Westport to his counsel setting forth Westport's position regarding coverage. The submission of this letter was proper under Local Rule 7(d).[2]

Similarly, the plaintiff's second and third arguments in support of his motion to strike are without merit. The attached affidavit of Michael DeLonay eliminates any questions of

---

[2]    The Court is well aware of litigants submitting exhibits and affidavits in connection with reply briefs. Indeed, the practice has previously been utilized in this case.

authenticity and to the extent necessary admissibility. Mr. DeLonay's affidavit has attached to it

as Exhibit A, a true and accurate copy of his January 9, 2008 letter to Attorney Hubert Santos,

which sets forth Westport's coverage position. The submission of this authenticating affidavit is

consistent with the procedure established by the Court for the admission and consideration of the

Coregis insurance policy. (5/23/06 Tr. at 80-81) Accordingly, the plaintiff's motion to strike the

January 8, 2008 letter should be denied.

Moreover, to the extent the Court believes it is necessary, Mr. DeLonay's January 9,

2008 letter should be admissible under at least two exceptions to the rule against hearsay.

First, the letter is admissible as a business record. See Fed. R. Evid. 803(6).

Mr. DeLonay's affidavit establishes that his letter is a business record of the Westport Insurance

Corporation. (Exhibit 1)

Under Rule 803(6) of the Federal Rules of Evidence, records of regularly conducted

business activity are not subject to the rule against hearsay. Specifically, Rule 803(6) provides

as follows:

> A memorandum, report, record, or data compilation, in any form,
> of acts, events, conditions, opinions, or diagnoses, made at or near
> the time by, or from information transmitted, by a person with
> knowledge, if kept in the course of a regularly conducted business
> activity, and if it was the regular practice of that business activity
> to make the memorandum, report, record, or data compilation, all
> as shown by the testimony of the custodian or other qualified
> witness, or by certification that complies with Rule 902(11), Rule
> 902(12), or a statute permitting certification, unless the source of
> information or the method or circumstances of preparation indicate
> lack of trustworthiness. The term 'business' as used in this
> paragraph includes business, institution, association, profession,
> occupation, and calling of every kind, whether or not conducted for
> profit.

"'Because of the general trustworthiness of regularly kept records and the need for such

evidence in many cases, the business records exception has been construed generously in favor

8

of admissibility.'" 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence,

§ 803.08[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2007) (citation omitted). Both

the routine nature of the record-keeping and the necessity for accuracy to promote the efficient

function of a business entity help to ensure the reliability of business records. See id.

Records with the following characteristics qualify under Rule 803(6): (1) the document

is prepared in normal course of business; (2) the document is made at or near the time of the

events it records; and (3) the document is based on the personal knowledge of the entrant or of an

informant who had a business duty to transmit the information to the entrant. Id. See also Fed.

R. Evid. 902(11).

In the instant case, Mr. DeLonay's affidavit establishes that his January 9, 2008 letter to

Attorney Santos is a business record of the Westport Insurance Corporation. (Exhibit 1,

DeLonay Aff.) Specifically, Mr. DeLonay's affidavit confirms that his letter was prepared and

kept in the normal course of Westport's business. (DeLonay Aff. ¶ 6) The letter was prepared

and kept in the course of a regularly conducted activity and as a regular practice of Westport.

(Id.) More specifically, the issuing of letters regarding Westport's position on the coverage that

it will provide under an insurance policy is a regular and normal practice of the Westport

Insurance Corporation. (Id. ¶ 7) Moreover, Mr. DeLonay's affidavit confirms that his letter was

prepared based on his personal knowledge of the claim and the insurance contract and that the

letter was prepared at or about the time it is dated. (Id. ¶ 7) Accordingly, Mr. DeLonay's letter

is a business record and as such admissible under Rule 803(6). See Fed. R. Evid. 902(11).

To the extent necessary, Mr. DeLonay's letter is also admissible under Rule 807 of the

Federal Rules of Evidence. That rule addresses the residual exception to the rule against

hearsay. Specifically, it provides as follows:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules in the interest of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including name and address of the declarant.

The policies served by the residual hearsay exception are as follows:

1. To provide sufficient flexibility to permit the courts to deal with new and unanticipated situations.

2. To preserve the integrity of the specifically enumerated exceptions.

3. To facilitate the basic purpose of the Federal Rules of Evidence: *truth ascertainment and fair adjudication of controversies*.

Weinstein's Federal Evidence, supra § 807.02[1] (emphasis added).  "The availability of the residual exception leaves open the door to the admission of needed, relevant, and reliable evidence that does not conform to an enumerated exception, and to the development of new class exceptions as experience warrants." Id.  Consequently, "the residual exception should be interpreted to authorize the admission of hearsay evidence of high probative value in individual situations, but not to create new exceptions." Id.

In the instant case, Mr. DeLonay's letter has the "circumstantial guarantees of trustworthiness" comparable to those of the enumerated exceptions.  Moreover, the admission of the letter under Rule 807 advances the policy of "truth ascertainment and fair adjudication of controversies."  Specifically, if the letter does not satisfy the "business records exception" then it

10

is extremely close to doing so. The letter is from a Vice President of an insurance company who is handling a claim, to an attorney for an insured setting forth the company's position on what coverage it will provide to the insured under a policy. The letter is also supported and authenticated by an affidavit from the author of the letter. Thus, the letter is trustworthy as a statement of Westport's position regarding the coverage it will provide to Chief Wearing and is admissible under Rule 807. Accordingly, the plaintiff's motion to strike should be denied.

Finally, the plaintiff's suggestion that Chief Wearing's submission of Mr. DeLonay's letter somehow interferes with an ongoing evidentiary hearing or is improperly submitted after the close of a hearing is without merit. Indeed, it is yet another example of a plaintiff's attempt to create confusion in this case. More specifically, four days of hearings were held in 2006 in connection with Chief Wearing's motion to stay pending the Court's rulings on his post-trial motions. The Court denied that motion to stay as moot on March 30, 2007, after it issued its ruling on the post-trial motions. (Docket Entry No. 250)

The motion to stay currently pending before the Court is Chief Wearing's motion to stay pending all appellate proceedings. It was filed on October 24, 2007. (Docket Entry No. 278) Although the plaintiff cited to transcripts from the 2006 hearings as part of his opposition to the instant motion, there was no hearing in connection with the instant motion. Rather, prior testimony is merely part of the Court record. Consequently, Chief Wearing's submission of the DeLonay letter as an exhibit to his reply brief did not constitute an improper effort to submit evidence after a hearing had been closed. Under Local Rule 7(d), Chief Wearing had a right to submit a reply brief in support of his motion to stay. As demonstrated above, nothing in the Local Rules prohibited him from submitting exhibits or affidavits in reply to arguments raised in the plaintiff's responsive brief.

## II.    THE PLAINTIFF'S REQUEST FOR AN EVIDENTIARY HEARING IS WITHOUT MERIT

In the alternative, the plaintiff requests that the Court "reopen the evidentiary hearing for the purpose of examination of the author of the document and discovery of any and all other communications between the company he purportedly represents and any party or counsel in this case." (Pl.'s 2/21/08 Motion, at 3)

The plaintiff's request that he be allowed access to "any and all" communications between Coregis/Westport and Chief Wearing's counsel is without merit and should be denied. The plaintiff has no right to access to the communications because they are protected by the work product doctrine and/or the attorney-client privilege. Indeed, the plaintiff's counsel vehemently argued that communications between defense counsel and an insurer are protected by the attorney-client privilege. (5/1/06 Tr. at 40-42) In particular, the plaintiff has no right to access to communications regarding the Chief Wearing's defense in the district court or in the pending appeals before the Second Circuit. In addition to being barred by the work product doctrine and/or the attorney-client privilege, such information is irrelevant to the motion for a stay pending before this Court.

Moreover, the plaintiff's claim notwithstanding, there is no need for the Court to conduct an evidentiary hearing regarding the position taken by the Westport Insurance Corporation. As set forth above in detail, the record before the Court demonstrates that Westport has taken the position that it will not cover Chief Wearing for the punitive damages portion of the amended judgment. In particular, in addition to Mr. DeLonay's letter, the Court has had the insurance policy and the reservation of rights letter since July 5, 2006. (Document No. 220)

Chief Wearing does not have the personal assets to post a bond to cover the $1,350,000 punitive damages award. He does have a very strong case to put before the Second Circuit.

12

Accordingly, the Court should grant a stay without requiring further security to cover the

punitive damages award.

## CONCLUSION

For the foregoing reasons, the Court should deny the plaintiff's motion to strike.

Respectfully submitted,

**DEFENDANT
MELVIN WEARING**


By: _____

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:     (203) 227-6992
E-Mail:  rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:     (860) 522-6103
Fax:     (860) 548-0006
E-Mail:  johnsonr@halloran-sage.com

His Attorneys

# EXHIBIT 1

323091                                                           0806-0152

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ARPAD TOLNAY,                           )
                                        )
                  Plaintiff,            )
                                        )
v.                                      )                    **EBB**
                                        )   **Number: 3:02 CV 1514  (EBB)**
MELVIN WEARING                          )
                                        )
                  Defendant.            )
                                        )
                                        )
                                        )
                                        )
                                        )

## <u>AFFIDAVIT OF MICHAEL DELONAY</u>

Michael DeLonay, being first duly sworn on oath, deposes and says as follows:

1. I am a claims professional handling claims for Westport Insurance Corporation.

2. I was heretofore assigned to handle the claim entitled "Arpad Tolnay v. Melvin Wearing," which is pending as Westport Claim No. ECD80175514.

3. Westport Insurance Corporation's has merged with Coregis Insurance Company. As this affects Coregis' insureds, only the name of the company has changed.

4. Coregis issued a Public Officials and Employment Liability Insurance Policy to the City of New Haven under policy number POD-001986, effective August 12, 2002 to August 12, 2003. Melvin Wearing is an insured under this policy with regard to the <u>Tolnay</u> claim.

5. My correspondence to Attorney Hubert Santos dated January 9, 2008, a true and correct copy of which is attached hereto as Exhibit "A," sets forth Westport

Insurance Corporation's coverage position with regard to the claims made against

Melvin Wearing in connection with the <u>Tolnay</u> claim.

6. My January 9, 2008 letter, a true and accurate copy of which is attached hereto as

Exhibit "A," was prepared and kept in the normal course of the business of the

Westport Insurance Corporation. My letter was prepared and kept in the course of

a regularly conducted activity and as a regular practice of the Westport Insurance

Corporation

7 Issuing letters regarding Westport Insurance Corporation's position on the

coverage that it will provide under an insurance policy is a regular and normal

practice of Westport Insurance Corporation and the letter attached as Exhibit "A"

was prepared based on my personal knowledge of this claim and the insurance

contract  My letter was prepared and kept at or about the time it is dated.

FURTHER AFFIANT SAYETH NOT.

_____
Michael DeLonay

SUBSCRIBED AND SWORN to before
me this _18_ day of March, 2008.

_____
Notary Public

OFFICIAL SEAL
DIANNE M. CALHOUN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9-24-2009

# EXHIBIT A

**Swiss Re**

Michael J DeLonay
Vice President
Claims & Liability Management

Commercial Insurance
Westport Insurance Corporation
222 West Adams. Suite 2300
Chicago, IL 60606
USA

Telephone 800 879 4428
Fax 312 849 5367
Michael_Delonay@swissre com
www swissre com

*Via Facsimile & Regular Mail*

Hubert J. Santos
Santos & Seeley, P.C
51 Russ Street
Hartford, Connecticut 06106-1566

January 9, 2008

RE:     <u>Arpad Tolnay v. Melvin Wearing</u>
         Case No :    3:02 CV 1514
         Insured:     City of New Haven
         Policy No.:   POD-001986
         Claim No.:   ECD 80175514

Dear Mr. Santos:

Please allow this correspondence to provide you with our updated position with regard to coverage in light of developments in connection with post trial proceedings in the above-referenced case. At the outset, please be advised that Coregis Insurance Company ("Coregis") has merged with Westport Insurance Corporation ("Westport"). As this impacts you, and your client, only the name of the company has changed.

As you are aware, your client, Melvin Wearing, was subject to a jury award and judgment rendered on December 12, 2005 in the case entitled <u>Arpad Tolnay v. Melvin Wearing</u>, Case No. 3:02 CV 1514. The jury award consisted of $903.84 in economic damages, $150,000.00 in non-economic damages, and $5 million in punitive damages. Subsequently, after remittitur, the punitive award was reduced to the sum of $1,350,000.00. Tolnay's attorneys were awarded $513,657.50 in attorneys' fees, above and beyond the jury award. Westport has been and will continue to be willing to provide coverage for the economic ($903.84) and non-economic ($150,000.00) portions of the award, as well as that portion of the award of attorneys' fees that is attributable to the plaintiff's pursuit of potentially covered claims.

Westport also will provide defense costs, including attorney's fees, through the appeal process However, for the reasons that follow, Westport must once again respectfully advise you that the Westport policy does not cover punitive damages. Therefore, Westport will not indemnify Mr. Wearing for punitive damages, inasmuch as such damages are expressly excluded from the definition of "Loss" in the policy. Additionally, under Connecticut law, punitive damages are not

Swiss Re

insurable  <u>Tedesco v. Maryland Casualty Co.</u>, 127 Conn. 533, 18 A.3d 357.  Therefore, Westport has no obligation to indemnify Mr. Wearing in regard to the award of punitive damages

We understand that briefing is underway with regard to the issue of whether Mr. Wearing will or will not be required to post a bond in order to stay execution of the judgment pending the outcome of the appeal.  Pursuant to Section II(B) of the Insuring Agreement,  Westport is obligated to pay for the cost of (premium for) an appeal bond.  However, under the express terms of the policy, Westport has no obligation to apply for, or secure, any such bond.  Moreover, Westport's responsibility for paying the premium for such a bond is expressly limited to the amount of premium which is attributable to only such bond amount as would cover the potentially covered portion of the judgment (Insuring Agreement; Section II , Paragraph B, Subpart 2).  Please note that, even if  Westport were otherwise obligated to actually secure an appeal bond, it would not be appropriate for Westport to secure an appeal bond applicable to those sums which exceed the potentially covered compensatory damages and attorneys' fees awarded in this case.  Execution on such a bond after an unsuccessful appeal would, in such instance, effectively result in the provision of insurance coverage for punitive damages.  Such a result is contrary to the express language of the Westport policy and would be violative of applicable law.

Westport reserves the right to seek reimbursement from Mr. Wearing of attorney's fees, costs and expenses for the defense and/or appeal incurred in regard to non-covered claims and/or damages

Please be advised that there may be additional coverage defenses, which, while not apparent, may come to light as this matter proceeds.  Westport expressly reserves the right to invoke and rely upon any other coverage defenses which may apply now or which may be deemed to apply in the future. In addition, the specific enumeration of the policy provisions set forth above is not intended by Westport to be a waiver of any other policy defenses.  Westport does not intend to waive any of its coverage defenses, nor shall it be estopped from asserting any applicable defenses.  If you believe that there is additional information which may be relevant to Westport's determination of coverage in this matter, please immediately forward that information to us.  If you have any questions, please do not hesitate to contact us

Sincerely,

Michael J. DeLonay

**Swiss Re**

cc:    Thomas W. Ude, Jr.
       Corporation Counsel
       165 Church Street
       Suite 4
       New Haven, CT 06510

       Robert A. Rhodes
       Halloran & Sage, LLP
       315 Post Road West
       Westport, CT  06880

## CERTIFICATION

This is to certify that on this 2nd day of April, 2008, a copy of the foregoing was caused to be served via U.S. Mail to:

Karen Lee Torre, Esq.
Law Offices of Norman A. Pattis
129 Church St., 4th Floor
New Haven, CT 06510

Norman A. Pattis, Esq.
649 Amity Road
Bethany, CT 06524

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

Joseph D. Garrison, Esq.
Alexandra K. Block, Esq.
Garrison Levin-Epstein Chimes
  & Richardson
405 Orange Street
New Haven, CT 06511

_____
Ralph W. Johnson, III

1134555_1 DOC

14