UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
_____
ARPAD TOLNAY,                    :
                                 :
            Plaintiff,           :   CIVIL NO.
                                 :
        v.                       :
                                 :   3:02 CV 1514 (EBB)
MELVIN WEARING,                  :
                                 :
            Defendant.           :
_____:
```

### Ruling on Defendant's Motion for a Stay of Enforcement and Execution of Judgment

After a trial in this case, the jury found that the Defendant, Chief of Police Melvin Wearing ("Wearing" or "Defendant"), had violated Officer Arpad Tolnay's ("Tolnay" or "Plaintiff") First Amendment rights. The Plaintiff's damages award, after remittur, was $1,500,903.84. This award reflected $903.84 in economic damages, $150,000 in non-economic compensatory damages, and $1,350,000 in punitive damages.

The Defendant now moves, pursuant to Rule 62 of the Federal Rules of Civil Procedure, for a stay of enforcement and execution of the judgment entered against him, pending the disposition of all appellate proceedings. In addition, the Defendant asks this Court to enter a stay without requiring the posting of a bond. In the alternative, the Defendant asks that the Court only require a bond sufficient to secure the compensatory damages portion of the

Plaintiff's award.  For the following reasons, the Defendant's motion for a stay of enforcement and execution of the judgment [Doc. No. 278] is GRANTED in part and DENIED in part.  While the Court stays the execution of the judgment entered against the Defendant, pending disposition of all appellate proceedings, the Court declines to depart from the requirement that the Defendant post a full supersedeas bond.  Therefore, a stay under Rule 62(d) will take effect only when the Defendant posts a supersedeas bond, approved by this Court, sufficient to satisfy the entire judgment in this case.

## Discussion

This Court assumes familiarity with the factual and procedural background recounted in several prior rulings on this case.  Thus, this ruling sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, the Defendant's motion.

## I. Rule 62(f)

The Defendant claims that he is entitled to an automatic stay of the judgment in this case under Fed. R. Civ. P. 62(f).  This Rule provides that

> "[i]n any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the district court held therein, to such stay as would be accorded the judgment debtor had the action been maintained in the courts of that state."

2

The Defendant's argument appears to be indistinguishable from his previous argument, already rejected by this Court, in his opposition to the Plaintiff's motion to register the judgment in South Carolina. See Ruling On Pl's. Mot. for Order ("10/25/07 Ruling") [Doc. No. 279]. The Defendant again contends that an automatic stay should enter under Rule 62(f) because the Plaintiff has placed a lien on the Defendant's home in Connecticut. Def's. Mem. in Supp. of Mot. at 8 [Doc. No. 278].

The Defendant cites FDIC v. Ann-High Associates, No. 97-6095, 1997 WL 1877195 (2d Cir. 1997), a case in which the Second Circuit considered whether, in Connecticut, Rule 62(f) entitled a judgment debtor to a stay without posting a supersedeas bond pending the resolution of his appeal. As this Court previously noted, the Second Circuit in Ann-High "held that there is no 'per se rule' when it comes to applying Rule 62(f) to federal district court judgments to be enforced in Connecticut," rather, a court must make a "fact-based inquir[y]". Ruling On Pl's. Mot. for Order at 6 [Doc. No. 279], citing Ann-High, 1997 WL 1877197, at *3, 4. Among other requirements, the judgment debtor must demonstrate that

> "the circumstances are such that the judgment creditor can readily establish a lien that will be adequate to secure the judgment. In Connecticut, this will involve the judgment debtor's disclosure of the value and location of both real and personal property in the state so that the judgment creditor will know where to file the lien and can evaluate the adequacy

of its security." <u>Ann-High</u>, 1997 WL 1877197, at * 4.

The Defendant has not shown that the circumstances are such that the lien is adequate to secure the judgment. Thus, an automatic stay under Rule 62(f) is not appropriate.

## II. Rule 62(d)

Rule 62(d) provides that:

> "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond[1], except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal.  The stay takes effect when the court approves the bond."

"The philosophy underlying [Rule 62] is that a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed." <u>Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville</u>, 245 F.R.D. 65, 69 (D. Conn 2007), <u>citing</u> <u>Lightfoot v. Walker</u>, 797 F.2d 505 (7th Cir. 1986).  To determine whether to stay execution of a judgment pending an appeal, a court must consider (1) whether the movant is likely to prevail on the merits of his

---

[1]"A supersedeas bond is a contract by which a surety obligates itself to pay a final judgment rendered against its principal under the conditions stated in the bond.  The surety of the bond remains liable unless one of the stated conditions of the bond has occurred properly discharging the surety." <u>Rand-Whitney Containerboard Ltd. Partnership v. Town of Montville</u>, 245 F.R.D. 65, 67 (D. Conn. 2007) (internal citations and quotation marks omitted).

appeal, (2) whether, without a stay, the movant will be irreparably injured, (3) whether issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest. Hilton v. Braunskill, 481 U.S. 770, 777, 107 S.Ct. 2113 (1987); Morgan Guaranty Trust Co. v. Republic of Palau, 702 F. Supp. 60, 65 (S.D.N.Y. 1998), vacated on other grounds, 924 F.2d 1237 (2d Cir. 1991) (citations omitted).   Each of these factors must be applied "flexibly according to the unique circumstances of each case."  Morgan Guaranty, 702 F. Supp. at 65; de la Fuente v. DCI Telecommunications, Inc., 269 F. Supp.2d 237, 240 (S.D.N.Y. 2003).  The Second Circuit has "treated [the four factors] somewhat like a sliding scale, citing approvingly other circuits' formulation that '[t]he necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors' and explaining that '[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay.'"  Thapa v. Gonzales, 460 F.3d 323, 335 (2d Cir. 2006), quoting Mohammed v. Reno, 309 F. 3d 95, 101 (2d Cir. 2002); see also In re World Trade Center Disaster Site Litig., 503 F.3d 167, 170-71 (2d Cir.2007) ("the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other") (internal citations and quotation marks omitted).

The Court considers each of these factors in turn. First, the Defendant raises a number of issues on appeal. Principally, the Defendant argues that the Plaintiff's speech was not protected by the First Amendment, and that this Court's denials of the Defendant's motions for summary judgment, judgment as a matter of law, and a new trial were based upon a misapplication of <u>Garcetti v. Cellabos</u>, 547 U.S. 410, 126 S.Ct. 1951 (2006), the "public concern" test, the balancing analysis under <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 88 S.Ct. 1731 (1968), and the doctrine of qualified immunity. The Defendant also contends that a new trial should have been granted for what it argues were erroneous evidentiary rulings and jury instructions. Finally, the Defendant argues that the $150,000 compensatory damages award was not supported by sufficient evidence and should have been vacated, and that the $1,350,000 punitive damages award is unconstitutional and excessive.

"It is not necessary for [this Court] to confess error and predict a reversal by the Second Circuit," in order to find that this first factor is established. <u>Network Enterprises, Inc. v. APBA Offshore Prods., Inc.</u>, 2007 WL 398276, at *1 (S.D.N.Y. Feb. 5, 2007). The speech at issue in this case concerned statements made by the Plaintiff in a Case Incident Report (CIR) following a motor vehicle stop and comments made during a meeting with his supervisor. In <u>Garcetti</u>, the Supreme Court held that "when public

6

employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S.Ct. at 1960.[2]  In its denial of the Defendant's motion for judgment as a matter of law, this Court held that Garcetti was inapplicable because the Plaintiff's statements were made in his capacity as a citizen and not pursuant to his official duties:

> "While the filing of a case incident report and attendance at the internal investigatory meeting with Chief Wearing may have been part of Tolnay's official duties as a police officer, his opinions regarding the selective enforcement of the laws in New Haven and the political influence enjoyed by some members of the community are not required to be included in a case incident report.  Nor was Tolnay required to report his feelings on those matters to the Chief of Police." Ruling on Def's. Mot. for J. as a Matter of Law ("2/02/07 Ruling") at 13 [Doc. No. 240].

In contrast, this Court noted that in Garcetti, the speech that "sparked government retaliation was required to be in [the

---

[2]In Garcetti, the Supreme Court set forth a two-part inquiry for determining whether public employee speech is protected by the First Amendment.  "The first requires determining whether the employee spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418, 126 S. Ct. at 1958.  "If the answer is no, the employee has no First Amendment cause of action . . ." Id.  However, if the answer is yes, a court must then ask whether the government employer "had an adequate justification for treating the employee differently from any other member of the general public." Id., citing Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731 (1968) (stating that "[t]he problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

plaintiff's] memorandum and was, essentially, commissioned by the District Attorney's Office." <u>Id</u>. at 13-14 [Doc. No. 240].  This Court also observed that the Supreme Court in <u>Garcetti</u> explicitly noted that it had no "'occasion to articulate a comprehensive framework for defining the scope of an employee's duties where there is room for serious debate.'" <u>Id</u>. at 11 [Doc. No. 240], <u>citing</u> <u>Garcetti</u>, 547 U.S. at 424, 126 S.Ct. at 1961.

The Defendant argues that circuit and district courts "have been applying <u>Garcetti</u> far more favorably to defendants than the standard applied in [this Court's ruling]," citing a number of cases in support of this claim.  Def's. Mem. in Supp. of Mot. at 11 [Doc. No. 278]. While this Court adheres to its previous ruling finding the Plaintiff's speech to be protected by the First Amendment, it acknowledges that "because of the difficulties of the issues . . . presented, it would be foolhardy to predict that there is no likelihood of success on appeal." <u>Morgan Guar. Trust</u>, 702 F. Supp. at 65.  In addition, the Court notes that the Second Circuit has not yet addressed the application of <u>Garcetti</u> in detail.  For these reasons, the Court finds that the first factor weighs in favor of a stay.

The second factor requires the Court to consider whether Wearing will be irreparably harmed without a stay.  An irreparable injury is an injury "for which money cannot compensate". <u>Sperry Int'l Trade, Inc. v. Gov't of Israel</u>, 670 F.2d 8, 12 (2d Cir.

1982). Thus, "[a] monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation. Bankruptcy is such a case." <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2d Cir. 1989). Accordingly, monetary injury may suffice "where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state." <u>Bridgeport, Port Jefferson Steamboat Co. V. Bridgeport Port. Auth.</u>, No. Civ. 3:03-cv-599, 2004 WL 840140, at *3 (D. Conn. April 15, 2004) (internal citations and quotation marks omitted); <u>see</u> <u>also</u> <u>Mitsubishi Power Sys., Inc. v. Shaw Group, Inc.</u>, No. 94-cv-1251, 2004 WL 527047, at *2 (S.D.N.Y. March 16, 2004) ("Courts have generally applied this limited exception where insolvency is imminent.").

Here, the Defendant argues that the denial of a stay will cause irreparable harm because it would "place [the Defendant's] family and his other creditors in an insecure position" and would "force him to consult with bankruptcy counsel." Def's. Mem. in Supp. of Mot. at 21 [Doc. No. 278]; Wearing Aff. ¶ 6. Wearing does not claim that he is insolvent, and there is no indication that he is in a perilous financial state. Nor, for reasons explained in Part III, <u>infra</u>, is it clear that Wearing himself would pay the full damage award if it were to stand upon the resolution of his appeal. Therefore, the Court cannot conclude that Wearing faces an

injury that is "actual and imminent". <u>See</u> <u>Tucker Anthony Realty</u> <u>Corp.</u>, 888 F.2d at 976 (stating that "[t]o establish irreparable harm, [the movant] must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'") (internal citations omitted). Thus, this factor does not weigh in favor of granting a stay.

However, the issuance of a stay would not cause substantial harm to other parties interested in these proceedings. Nor does the public interest weigh against a stay. Thus, upon consideration of these four factors, the Court finds that a stay under Rule 62(d) is appropriate. The Defendant has demonstrated that he has a substantial case to present to the Second Circuit, and that the issuance of a stay would not substantially harm other parties interested in these proceedings.

## III. Posting of a Supersedeas Bond

The Defendant moves for a stay without requiring the posting of a full supersedeas bond, or, in the alternative, requiring the posting of a bond sufficient to cover only the compensatory damages award. "The burden lies with the moving party to demonstrate why the Court should waive the standard requirement that the appellant post a full supersedeas bond." <u>de la Fuente v. DCI</u> <u>Telecommunications, Inc.</u>, 269 F. Supp. 2d at 245. As will be discussed below, the Defendant has not met this burden.

The overall purpose of a supersedeas bond is to preserve the

status quo while securing the appellee from loss resulting from the stay of execution. See Beatrice Foods Co. v. New England Printing & Lithography Co., 930 F.2d 1572 (D. Conn. 1991). Therefore, the general requirement is that a judgment debtor post a supersedeas bond in the full amount of the judgment. See Liberty Mut. Ins. Co. v. Bankers Trust Co., 769 F. Supp. 130, 131 (S.D.N.Y. 1991) (describing the posting of a supersedeas bond in the amount of the judgment as "the customary practice"); Morgan Guaranty, 702 F. Supp. at 65 ("it is common for the court to require the appellant to post a supersedeas bond in the full amount of the judgment."). However, a district court may, in its discretion, grant a stay of judgment without requiring the posting of a bond or condition a stay on the posting of only a partial bond. See Texaco Inc. v. Pennzoil Co., 784 F.2d 1133, 1154-55 (2d Cir. 1986), rev'd on other grounds, 481 U.S. 1 (1987). "The burden is on the movant to 'objectively demonstrate' the reasons why the court should 'depart from the usual requirement of a full security supersedeas bond . . .'" Port Chester Elec. Const. Corp. v. HBE Corp., 1991 WL 258737, at *2 (S.D.N.Y. 1991), quoting Poplar Grove, etc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189 (5th Cir. 1979).

"Some courts have adhered to the principle that supersedeas bonds are required in order to stay the enforcement of a judgment pending appeal except in two 'rare instances' when the court should not require a bond: '(1) where the [judgment debtor's] ability to

pay the judgment is so plain that the cost of the bond would be a waste of money, and, (2) where the requirement would put the [judgment debtor's] other creditors in undue jeopardy.'" <u>Port Chester Elec. Const. Corp. v. HBE Corp.</u>, No. 86 Civ. 4617, 1991 WL 258737, at *2 (S.D.N.Y. Nov. 27, 1991), <u>quoting</u> <u>Olympia Equipment Leasing Co.</u>, 786 F.2d 794 (7th Cir. 1986).   Courts have also considered "(1) a defendant's net worth and ability to post a bond . . . (2) whether a defendant has cooperated with the court . . . and (3) whether a defendant's assets are within the jurisdiction." <u>Silver v. Mendel</u>, No. 86-7104, 1992 WL 163285, at *1 (E.D. Pa. July 8, 1992) (citing cases).   Finally, courts have considered the irreparable harm a defendant may suffer if required to post a full supersedeas bond, which "is usually established upon a showing that the judgment debtor will become insolvent if required to post [the full amount]." <u>Port Chester Elect Const. Corp.</u>, 1991 WL 258737, at *2, <u>citing</u> <u>Miami Int'l Realty Co. v. Paynter</u>, 807 F.2d 871, 874 (10th Cir. 1986).   However, "while the threat of insolvency has been deemed a sufficient threat of irreparable harm to preclude the full supersedeas requirement . . . the judgment debtor cannot expect to continue business as usual without assum[ing] some financial burden in recognition of the rights bestowed on the judgment creditor by the judgment." <u>Teachers Ins. and Annuity Ass'n of America v. Ormesa Geothermal</u>, No. 87 Civ. 1259, 1991 WL 254573, at *3 (S.D.N.Y. Nov. 21, 1991) (internal citations and

quotation marks omitted).

Here, Wearing argues that the court should not require a full supersedeas bond because it would adversely affect his ability to support his family and pay other creditors, as well as force him to consult with bankruptcy counsel.    Def's. Mem. in Supp. of Mot. at 25 [Doc. No. 278]; Wearing Aff. ¶¶ 2,3(a)-(g). He has submitted an affidavit that he states summarizes his assets and shows that he has insufficient personal assets to satisfy the judgment against him.    He asserts that he "cannot obtain security for, let alone pay, the punitive damages award of $1,350,000."    Def's. Mem. in Supp. of Mot. at 2 [Doc. No. 278].

Tolnay counters that Wearing has not presented credible evidence that he does not have third party sources of payment available to him, to wit, municipal indemnification and municipal insurance coverage.  For this reason, Tolnay contends that Wearing has failed to meet his burden of demonstrating why he should be relieved of the obligation to post a full supersedeas bond.  Thus, while Wearing's personal assets alone may be insufficient to satisfy the judgment in this case, Tolnay argues that a full bond would not put Wearing, his family, or his creditors in undue jeopardy.

In response, Wearing represents that he is unsure to what extent, if any, he is covered by these third party sources.  He directs the Court's attention to the fact that the insurance policy

between the City of New Haven (the "City") and Coregis Insurance Company (the liability carrier for the City) explicitly states that punitive damages are not covered.   Wearing also states that he has had no indication from the City of New Haven that he will be fully indemnified for the damage award.   The Plaintiff argues that the Defendant's (and Defendant's counsel's) representations that they are unsure of his coverage by these third party sources  are misleading and not credible.  Pl's. Mem. in Opp. to Def's. Mot. at 33 [Doc. No. 290].

The Court held an evidentiary hearing principally addressing the issue of whether the Defendant has the available resources to satisfy the judgment in this action.  Upon careful consideration of the testimony presented and evidence adduced at this hearing, the Court declines to depart from the requirement of a full supersedeas bond, because Wearing has not objectively demonstrated that he will be irreparably harmed, or that his creditors would be placed in undue jeopardy.

As a preliminary matter, the Court considers Wearing's affidavit, which he cites to support his claim that he would be insolvent if required to post a full supersedeas bond.   Wearing states that he owns a home, purchased in 1972, with a home equity loan of $6,126.40.  Wearing Aff. ¶ 3(a).  He does not indicate how much the house is worth.  At the hearing, he testified that the house was fully paid for, but that he did not know the market value

of his home.  1 Tr. 23-24.[3]  He guessed that it might be worth $130,000 to $140,000. Id.  Wearing's affidavit also states that he owns a vacation home, with a remaining mortgage balance of $131,173, but fails to state how much the vacation home is worth. Wearing Aff. at ¶3(b).  When asked about the value of this home at the hearing, Wearing testified that he had no idea how much this property was worth.  1 Tr. 26.  Wearing also states that he is financially responsible for the college education of his two grandchildren.  Wearing Aff. ¶4.

Tolnay correctly notes that Wearing's affidavit is not completely clear as to the full value of his personal assets.  In particular, the affidavit fails to indicate the value of his property in Connecticut and South Carolina.  However, the Court noted in a prior ruling, and Tolnay does not contest, that Wearing's personal assets alone are insufficient to satisfy the $1.5 million judgment in this case.  See [Doc. No. 279 at 3].

Nonetheless, Tolnay argues that Wearing has third party sources that will satisfy the judgment. In a previous ruling on this case, this Court noted that "it was unclear whether the City of New Haven will indemnify the Defendant," stating that "the Plaintiff may have been successful in calling into question the credibility of statements made by representatives of the City."

---

[3]Citations to "Tr." are to the transcripts of the evidentiary hearing. The number preceding "Tr." indicates the volume number of the transcript.

10/25/07 Ruling at 2 [Doc. No. 279].

Wearing's first memorandum in support of his motion is silent on the issue of municipal indemnification. His reply brief states that "neither [he] or his attorneys can speak for the City of New Haven", and suggests that this Court "make a direct inquiry of the City" on whether, and/or to what extent, Wearing will be indemnified by the City. Def's. Reply Mem. in Supp. of Mot. at 4 [Doc No. 296].

This suggestion ignores the fact that, during the evidentiary hearing, representatives from the City were repeatedly asked to clarify their position on whether or not Wearing would be indemnified. Although Wearing asserts that it is his belief that he will have "no chance" of being fully indemnified by the City, 2 Tr. 163, the testimony from past and present city representatives, including the Mayor of New Haven and attorneys from the Office of the Corporation Counsel, suggests that his belief is unfounded.

First, Tolnay argues that Wearing's absence from and ignorance of several key events in the litigation of this case indicate that his attorneys, assigned by the Corporation Counsel to represent him, could not have been proceeding under the assumption that Wearing would not be indemnified. For example, Wearing testified that he was not told about a pre-trial settlement conference that Attorney Jonathan Beamon, assistant corporation counsel for the

16

City of New Haven, attended in his absence.  2 Tr. 133.  Attorney Beamon testified that he was not aware of any written communication informing Wearing of the conference.  1 Tr. 243.  Wearing was not told of any settlement demands that were made pre-trial, nor was he included in any decisions or discussions regarding the rejections of these demands.  2 Tr. 131, 133-34.  Wearing also testified that he was not consulted with respect to the decision to proceed to trial.  2 Tr. 131.  During jury deliberations in this case, the jury issued a note requesting to know the source of payment of any punitive damages award.  After this note was sent out, plaintiff's counsel approached defense counsel about settlement.  1 Tr. 252.  Defense counsel declined to discuss settlement, without even informing Wearing of plaintiff counsel's approach, let alone soliciting his input.  2 Tr. 134.

Tolnay argues that defense counsel's failure to include Wearing in these decisions, including the decision to try the case and later take the case to verdict after the jury's note, indicate that counsel was proceeding based upon the understanding that Wearing would be fully indemnified.  Pl's. Mem. in Opp. to Def's. Mot. at 29 [Doc. No. 290].  Indeed, at no point during the trial of this case did Attorney Beamon advise Wearing that he could be exposed to a significant punitive damage award or advise him that he should retain private counsel.  1 Tr. 250-251.  It was only after the judgment in this case that the Office of the Corporation

Counsel believed that a conflict had arisen between representing the City and representing Wearing, leading it to withdraw its appearance.  1 Tr. 144.  According to Attorney Beamon, this withdrawal occurred because he learned that the City would not pay the punitive damage award. 1 Tr. 254. However, he did not generate any written communication to Wearing to this effect.  1 Tr. 259. For his part, Corporation Counsel Thomas Ude testified that he did not make a decision regarding indemnification at the time of the corporation counsel's withdrawal.  1 Tr. 144.  Although Attorney Ude stated that "the statutes do not authorize a City to indemnify for punitive damages,"  1 Tr. 144, he admitted that the City had paid punitive damages in the past. 1 Tr. 146.  In addition, Martin Echter, formerly employed as an attorney in the Office of the Corporation Counsel, testified that the City had paid punitive damages in the past.  2 Tr. 170-172.  Attorney Echter further stated that the City evaluated whether it was appropriate to pay punitive damages on a "case-by-case basis." Id.  The Mayor of New Haven, John DeStefano Jr., testified that, to his knowledge, there was no written policy with respect to the extent to which a city official will be fully indemnified if a federal action is brought against him.  4 Tr. 13.

Tolnay also notes that in a prior federal action brought against Wearing, in which Wearing was defended by the corporation counsel, the jury returned a verdict that included a $500,000

18

punitive damage award. Thereafter, the parties entered into a settlement agreement. Wearing never received an affirmative express grant of indemnification from the City in this prior case. 1 Tr. 62. Nonetheless, his personal funds were not used to pay for any part of the award. 1 Tr. 61-62.

In light of the testimony recounted above, and absent any affirmative indication from the City that it will not cover the punitive damage award, Wearing has not met his burden of objectively demonstrating a reason why the Court should depart from the standard requirement of a full supersedeas bond. While Wearing may honestly believe that the City will not indemnify him for the full damages award, this belief is completely at odds with the actions of the City's representatives during the litigation of this case.[4]

---

[4]Tolnay also expresses skepticism at Wearing's claim that "[h]e can report that Coregis [Insurance Company] does not consider itself responsible to indemnify the punitive damages award . . ." [Doc. No. 124 at 2]. The Coregis insurance policy with the City provides that the limit of liability is $1,000,000 per loss, and explicitly states that "loss" does not include punitive damages. Def. Ex. B. (Coregis Policy at Section V.L.1.). Similarly, in a January 30, 2003 letter to the Office of the Corporation Counsel, Coregis stated that under the City's insurance policy, "the stated limit of liability is $1,000,000 per loss and in the aggregate for each policy year", and that "punitive damages are uninsurable in the state of Connecticut. If there were to be an award of punitive damages, that would be your responsibility." Def. Ex. B. Despite the language in the insurance policy, Tolnay argues that any representations made by Coregis that it will not cover punitive damages are belied by the fact that attorneys retained by Coregis to represent Wearing made decisions without Wearing's input or authority, including post-judgment decisions to reject settlement demands from Tolnay. 2 Tr. 132-33. Because the Court has already found that Wearing has failed to objectively demonstrate a reason why a full supersedeas bond should not be required, it need not consider the scope of Coregis' insurance coverage.

## **CONCLUSION**

For the foregoing reasons, the Defendant's motion for a stay of enforcement [Doc. No. 278] is GRANTED in part and DENIED in part.  A stay under Rule 62(d) shall take effect only when the Defendant posts a supersedeas bond, approved by this Court, sufficient to satisfy the judgment in this case.


SO ORDERED


 /s/ Ellen Bree Burns, SUDJ

ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE


Dated at New Haven, Connecticut this 3rd day of April 2008.

20