IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARPAD TOLNAY | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02-CV-1514 (EBB) |
| | : | |
| V. | : | |
| | : | |
| MELVIN WEARING | : | |
|     Defendant | : | JUNE 6, 2008 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS RENEWED MOTION FOR A STAY OF THE ENFORCEMENT AND EXECUTION OF THE AMENDED JUDGMENT PENDING APPEAL AND FOR IMMEDIATE STAY PENDING A RULING ON THE INSTANT MOTION AND TO THE EXTENT NECESSARY MOTION FOR RECONSIDERATION

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:     (203) 227-6992
E-Mail:  Rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:     (860) 522-6103
Fax:     (860) 548-0006
E-Mail:  Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Melvin Wearing*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 3

    I.     THE APRIL 3, 2008 RULING ........................................................................ 3

    II.    THE CITY OF NEW HAVEN'S POSITION ................................................... 4

STANDARD OF REVIEW ............................................................................................... 5

    I.     RULE 62(d) ..................................................................................................... 5

    II.    MOTION FOR RECONSIDERATION .......................................................... 5

ARGUMENT ................................................................................................................... 6

    I.     THE COURT SHOULD RECONSIDER THE
         APRIL 3 RULING AND ENTER A STAY
         WITHOUT REQUIRING THE POSTING OF
         ANY ADDITIONAL SECURITY OR IN THE
         ALTERNATIVE, ENTER A STAY WITH THE
         POSTING OF THE AMOUNT OF ADDITIONAL
         SECURITY THAT THE CITY'S INSURER IS
         WILLING TO PROVIDE ................................................................................ 6

         A.    New Haven Has Refused To Post A Bond
             And Chief Wearing And His Family Are
             Facing An Undue Financial Burden ........................................ 6

         B.    The April 3 Ruling Is Based On A Clearly
             Erroneous Definition Of Irreparable Harm
             And Overlooks The Case Law Governing
             Rule 62(d) Motions ................................................................ 7

         C.    The April 3 Ruling Is Based On An Erroneous
             Understanding Of The Factors Governing A
             Rule 62(d) Motion ............................................................... 14

II.    IF THE COURT DENIES CHIEF WEARING'S
       MOTION, IT SHOULD ORDER THE PLAINTIFF
       TO POST A BOND TO SECURE ANY EXECUTION
       AND ORDER THAT ALL MONIES OBTAINED
       BY THE PLAINTIFF BE DEPOSITED INTO AN
       ACCOUNT HELD BY THE COURT ................................................................ 17

III.   IF THE COURT DENIES CHIEF WEARING'S
       MOTION, AT A MINIMUM, IT SHOULD STAY
       THE EXECUTION AND ENFORCEMENT OF
       THE AMENDED JUDGMENT UNTIL AFTER THE
       SECOND CIRCUIT HAS REVIEWED THE MATTER
       AND ISSUED ITS OWN RULING .................................................................. 18

CONCLUSION ........................................................................................................... 19

## PRELIMINARY STATEMENT

The defendant, Melvin Wearing, the former Chief of Police of the City of New Haven,

submits this memorandum of law in support of his renewed motion for a stay of the enforcement

and execution of the amended judgment and to the extent necessary, motion for reconsideration

of the Court's April 3, 2008 ruling, which conditioned a stay on the posting of a bond sufficient

to satisfy the entire amended judgment.

In support of his motion, Chief Wearing also incorporates by reference the pleadings,

memoranda of law, affidavits and exhibits that he submitted in connection with his October 24,

2007 motion for a stay and his opposition to the plaintiff's February 21, 2008 motion to strike.[1]

In further support of his motion, Chief Wearing submits a letter dated April 7, 2008 from his

personal counsel to New Haven's Corporation Counsel and a response letter dated May 28, 2008

from New Haven's Corporation Counsel. The letters are attached as Exhibits A and B,

respectively. By the May 28 letter, New Haven refuses to post a bond.

As part of this motion, Chief Wearing requests that the Court immediately stay the

execution and enforcement of the amended judgment pending its ultimate ruling on this motion.

The record is very clear on the issue of Chief Wearing's personal assets. The plaintiff

already has security in Chief Wearing's partial interest in his home in Connecticut as the plaintiff

has placed a lien on it. (Ex. B attached to Def.'s 10/24/07 Mem.) Moreover, on February 4,

2008, the plaintiff registered the amended judgment in the United States District Court for the

---

[1] Those pleadings, memoranda, affidavits and exhibits were filed on October 24, 2007, February 12, 2008, March 10, 2008 and April 2, 2008 and are found in the Court's file at Docket Entry Nos. 278, 296, 302 and 306.

District of South Carolina, the location of a vacation home in which Chief Wearing has a partial interest and the location of an undeveloped lot which Chief Wearing owns.[2]

Chief Wearing does not have the personal assets to obtain a bond or provide further security to cover the amended judgment and in particular, the $1,350,000 punitive damages award. The plaintiff cannot challenge this fact and the Court's April 3 Ruling did not dispute it. Accordingly, under the standard governing motions for a stay under Fed. R. Civ. P. 62(d), Chief Wearing should receive a stay pending the conclusion of all appellate proceedings. Given the high degree to which the factors favor Chief Wearing, the stay should enter without any further security being posted. (Def.'s 10/24/07 Mem. at 9-25; Def.'s 2/12/08 Reply Mem. at 5-9) In the alternative, the Court should enter a stay with the posting of the additional security that the City's insurer will post.[3]

If the Court denies the instant motion, it should order the plaintiff to: (a) post a bond to secure any damages inflicted on Chief Wearing and his family by the execution of the amended judgment and (b) deposit any monies he recovers into an interest bearing account held by the Clerk of the Court. In connection with that account, the Court should order the Clerk not to deduct any monies from the account at the time monies are released.

If the Court denies this motion, it should also stay the execution and enforcement of the amended judgment until after the Second Circuit has reviewed its ruling. Chief Wearing would file a motion pursuant to Fed. R. App. P. 8 with the Second Circuit within 14 days of this Court's ruling.

---

[2]    Copies of the pleadings filed by the plaintiff in the District of South Carolina and the docket for the miscellaneous case in that district are attached collectively hereto as Exhibit C.

[3]    The insurer's position is set forth in a January 9, 2008 letter, a copy of which is on file with the Court. (Ex. 1 attached to Def.'s 2/12/08 Reply Mem., 1/9/08 Letter from Westport Insurance Corporation)

## BACKGROUND

### I.   THE APRIL 3, 2008 RULING

On April 3, 2008, the Court granted in part and denied in part Chief Wearing's motion for a stay pending appeal. Specifically, it concluded that despite its holdings (1) that Chief Wearing had demonstrated that he has a "substantial case" to put before the Second Circuit, (2) that the issuance of a stay would not substantially harm other parties interested in the proceedings, and (3) that the public interest did not weigh against the stay, a stay would take effect "only when the Defendant posts a supersedeas bond, approved by th[e] Court, sufficient to satisfy the entire judgment." (4/3/08 Ruling, at 2, 10)  The Court conditioned the stay on the posting of a full bond because it concluded that it was unclear whether Chief Wearing "himself would pay the full damage award if it were to stand upon the resolution of his appeal." (Id. at 9; see id. at 13-19)

In particular, the Court concluded that Chief Wearing had not demonstrated that he was facing irreparable harm. (Id. at 9-10)  It believed that although the plaintiff did not contest the fact that Chief Wearing did not have the personal assets to provide security for the $1,350,000 punitive damages award, (id. at 15), Chief Wearing's belief that he would not be indemnified by the City of New Haven was misplaced, given the conduct of city officials. (Id. at 16-19)  Based on that conduct and "absent an affirmative indication from the City that it will not cover the punitive damages award," the Court held that Chief Wearing had not demonstrated a reason to depart from the typical requirement of a full supersedeas bond. (Id. at 19)

After reviewing the actions of city officials in the past, the Court concluded its April 3 Ruling as follows:

> In light of the testimony recounted above, and absent any affirmative indication from the City that it will not cover the

3

> punitive damages award, Wearing has not met his burden of objectively demonstrating a reason why the Court should depart from the standard requirement of a full supersedeas bond. While Wearing may honestly believe that the City will not indemnify him for the full damages award, this belief is completely at odds with the actions of the City's representatives during the litigation of this case.

(4/3/08 Ruling, at 19 (footnote omitted))

Prior to the April 3 Ruling, Chief Wearing reminded the Court that an attorney representing the Mayor and other city officials at the hearings held in the Spring of 2006 on Chief Wearing's Rule 62(b) motion had offered to provide the Court with a letter expressly setting out the City's position on the indemnification of the punitive damages award. (4/3/08 Ruling, at 16; see Def.'s 2/12/08 Mem. at 4-5 citing 4/27/06 Tr. at 160-62))[4] Nevertheless, the April 3 Ruling rejected Chief Wearing's suggestion that, to the extent the Court anticipated that the City would indemnify him for the punitive damages award, the best approach would be for the Court to make a direct inquiry of the City. (4/3/08 Ruling, at 16) The Court viewed this suggestion as unnecessary because at the Spring 2006 hearings, city officials "were repeatedly asked to clarify their position on whether or not Wearing would be indemnified." (Id.)

## II.    THE CITY OF NEW HAVEN'S POSITION

Attached hereto as Exhibit A is a letter dated April 7, 2008 from Chief Wearing's personal counsel to New Haven's Corporation Counsel. The April 7 letter demanded that New Haven post a bond for Chief Wearing in this case.

---

[4]    During the proceedings on March 28, 2006, the attorney representing the Mayor and other officials stated that the "City is not paying punitive damages." (Docket No. 169, 3/28/06 Tr. at 139)

Attached hereto as Exhibit B is a letter dated May 28, 2008 from the City of New Haven's Corporation Counsel. In it, the City responds to the April 7 letter and indicates that it cannot comply with the demand that it post a bond for Chief Wearing.

## STANDARD OF REVIEW

### I.     RULE 62(d)

In determining whether to grant a stay under Rule 62(d), a court considers: (1) whether the movant is likely to prevail on the merits of his appeal, (2) whether, without a stay, the movant will be irreparably injured, (3) whether the issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest. Network Enterprises, Inc. v. APBA Offshore Prods., Inc., 2007 U.S. Dist. LEXIS 9514, at *2 (S.D.N.Y. Feb. 5, 2007); Morgan Guar. Trust Co. v. Republic of Palau, 702 F.Supp. 60, 65 (S.D.N.Y. 1988), vacated on other grounds, 924 F.2d 1237 (2d Cir. 1991). As this Court recognized in the April 3 Ruling, the "Second Circuit has 'treated [the four factors] somewhat like a sliding scale.'" (4/3/08 Ruling, at 5) In other words "the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." (Id. citing In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170-71 (2d Cir. 2007))

### II.    MOTION FOR RECONSIDERATION

The reconsideration of a ruling is appropriate when there is an intervening change in the controlling law, new evidence, or the need to correct a clear error of law or to prevent a manifest injustice. United Technologies Corp. v. American Home Assur. Co., 237 F.Supp.2d 168, 170-71 (D. Conn. 2001); Rubin v. Hirschfeld, 2001 U.S. Dist. LEXIS 25443, at *1-2 (D. Conn. Nov. 5,

2001).  It is also appropriate where the court has overlooked case law or other matters.  See United States v. All Assets of Blue Chip Coffee, Inc., 882 F.Supp. 45, 46 (E.D.N.Y. 1995).

## ARGUMENT

I.    **THE COURT SHOULD RECONSIDER THE APRIL 3 RULING AND ENTER A STAY WITHOUT REQUIRING THE POSTING OF ANY ADDITIONAL SECURITY OR IN THE ALTERNATIVE, ENTER A STAY WITH THE POSTING OF THE AMOUNT OF ADDITIONAL SECURITY THAT THE CITY'S INSURER IS WILLING TO PROVIDE**

   A.    **New Haven Has Refused To Post A Bond And Chief Wearing And His Family Are Facing An Undue Financial Burden**

The April 3 Ruling concluded that "absent any affirmative indication from the City that it will not cover the punitive damages award, Wearing has not met his burden of objectively demonstrating a reason why the Court should depart from the standard requirement of a full supersedeas bond." (4/3/08 Ruling, at 19)

The May 28, 2008 letter from New Haven's Corporation Counsel is the "affirmative indication" that the April 3 Ruling sought.  In response to the ruling and a demand from Chief Wearing's personal counsel, (Ex. A), the City has not posted a bond.  Instead, it has produced the May 28 letter by which it refuses to post a bond in compliance with the demand for one.  (Ex. B) The May 28 letter appears to eliminate any uncertainty about whether the City will indemnify Chief Wearing for the punitive damages award.

Accordingly, for the reasons set forth in Chief Wearing's previous memoranda, (see supra footnote 1), the Court should reconsider its April 3 Ruling and grant Chief Wearing a stay without the posting of any additional security.  In the alternative, the Court should reconsider its April 3 Ruling and grant Chief Wearing a stay with the posting of a bond in the amount that the City's insurer is willing to provide.  (Ex. 1 attached to Def.'s 2/12/08 Reply Mem., 1/9/08 Letter from Westport Insurance Corporation)

6

If the Court believes that anything further is required from the City, it need only accept the offer made on April 27, 2006 by the attorney representing the Mayor and ask and/or order the City to provide whatever information the Court seeks. (4/27/06 Tr. at 160-62)

While the Court has the power to obtain any information it wishes from the City, Chief Wearing cannot force the City to do anything, let alone post a bond. Given the disparity in the positions of Chief Wearing and the Court vis-à-vis the City, it would constitute a manifest injustice for the Court to continue to deny Chief Wearing a stay on the ground that Chief Wearing has not met his burden of proving the City's position.[5]

The Court should not penalize Chief Wearing and his family because of the position taken by the City. In particular, the Court should not grant the plaintiff leave to inflict financial damage on Chief Wearing and his family, which is the relief sought by the plaintiff, (Pl.'s 12/28/07 Mem. at 3), and given to him by the April 3 Ruling.

**B.    The April 3 Ruling Is Based On A Clearly Erroneous Definition Of Irreparable Harm And Overlooks The Case Law Governing Rule 62(d) Motions**

The April 3 Ruling indicated that the Court could not find that Chief Wearing faced "an injury that is 'actual and imminent.'" (4/3/08 Ruling, at 9-10) As such, the Court held that the irreparable harm factor did not weigh in favor of granting a stay. (Id. at 10) More specifically,

---

[5]    Indeed, refusing a stay without the posting of a full bond based on a finding that there is uncertainty about the City's position constitutes a manifest injustice. A review of the transcripts from the hearings held in the Spring of 2006 confirms that neither the Court nor the plaintiff asked the City to definitively indicate whether it would indemnify Chief Wearing for the punitive damages award. (Docket No. 169, 3/28/06 Tr.; Docket No. 191, 4/27/06 Tr.; Docket No. 187, 5/1/06 Tr.; Docket No. 199, 5/23/06 Tr.) If the Court believed that a definitive answer from the City was necessary, it had the opportunity to ask for such an answer prior to the April 3 Ruling. In fact, the attorney representing the Mayor offered the Court a letter setting forth the City's position on the indemnification of the punitive damages award. (4/27/06 Tr. at 160-62) Presumably, that offer remains open should the Court believe further elaboration from the City is necessary.

the April 3 Ruling held that it was declining to depart from the requirement of a full bond

"because Wearing ha[d] not objectively demonstrated that he w[ould] be irreparably harmed, or

that his creditors would be placed in undue jeopardy." (Id. at 14)

The Court's conclusion that Chief Wearing had not established the requisite irreparable

harm was based an erroneous definition of irreparable harm for the purposes of Rule 62(d).

More specifically, the Court's analysis of this factor was not based on case law analyzing or

defining irreparable harm under Rule 62(d). (4/3/08 Ruling, at 8-9) Rather, the Court defined

irreparable harm based on case law analyzing preliminary injunction motions. (Id.)

The decisions cited by the April 3 Ruling indicated that monetary loss is generally

insufficient to constitute irreparable harm for the purposes of granting a preliminary injunction.

In particular, at pages 8-9 of the April 3 Ruling, the Court cited four decisions: Sperry Int'l

Trade, Inc. v. Gov't of Israel, 670 F.2d 8 (2d Cir. 1982); Tucker Anthony Realty Corp. v.

Schlesinger, 888 F.2d 969 (2d Cir. 1989); Bridgeport, Port Jefferson Steamboat Co. v.

Bridgeport Port Auth., 2004 WL 840140 (D.Conn. Apr. 15, 2004); Mitsubishi Power Sys., Inc. v.

Shaw Group, Inc., 2004 WL 527047 (S.D.N.Y. Mar. 16, 2004). Those decisions dealt with

either appeals from preliminary injunction rulings or the analysis of preliminary injunction

motions. Based on these four decisions, the Court concluded that monetary loss short of

insolvency or imminent bankruptcy could not constitute irreparable harm for purposes of

analyzing a motion for a stay under Rule 62(d). (4/3/08 Ruling, at 8-9)[6]

By contrast, as demonstrated below, and in Chief Wearing's initial and reply memoranda

of law in support of his motion for a stay, under Rule 62(d), an appellant establishes irreparable

---

[6]/    The April 3 Ruling gave no explanation as to why it relied on case law analyzing
preliminary injunction motions to define irreparable harm in the context of a motion for stay
under Rule 62(d).

harm for purposes of obtaining a stay if he demonstrates that he is in danger of suffering an undue financial burden, if the judgment is executed. (Def.'s 10/24/07 Mem. at 21-23; Def.'s 2/12/08 Reply Mem. at 6-9) Consequently, the definition of irreparable harm under Rule 62(d) is completely at odds with the definition of irreparable harm upon which the April 3 Ruling is based.

The April 3 Ruling's unexplained reliance on preliminary injunction case law to define irreparable harm constituted clear error and resulted in a manifest injustice. The ruling overlooks the case law addressing irreparable harm in the context of a motion for a stay under Rule 62(d). That case law is clear. When an appellant does not have the personal assets to post a full bond, an appellant is facing irreparable harm from execution on the judgment. In such circumstances, the appellant satisfies the second factor of the analysis and the case law overwhelmingly favors the granting of a stay without the posting of a bond or without the posting of a full bond.

Moreover, under the governing law, the analysis of the factors on Rule 62(d) motion involves a "balancing of the hardships." See Texaco, Inc. v. Pennzoil Co., 784 F.2d 1133, 1154 (2d Cir. 1986)("Against the hardship to Texaco from denial of a stay the district court was required to balance the threat to Pennzoil's interests caused by granting the stay."), rev'd on other grounds, 481 U.S. 1 (1987); Network Enterprises, 2007 U.S. Dist. LEXIS 9514, at *5-6 ("balancing test"). See also Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002). Under the definition of "irreparable harm" adopted by the April 3 Ruling, the balancing is eliminated and almost no appellant can ever satisfy the second factor. The April 3 Ruling defines irreparable harm to require that an appellant be either insolvent or on the verge of bankruptcy *independent of* the money judgment at issue. (4/3/08 Ruling, at 8-10; id. at 9 ("Wearing does not claim that

he is insolvent, and there is no indication that he is in a perilous financial state.")) That analysis constituted clear error and imposed a manifest injustice upon Chief Wearing.

The purpose of the supersedeas bond is "to secure the appellee from loss resulting from the stay of execution." Federal Prescription Serv., Inc. v. American Pharm. Ass'n, 636 F.2d 755, 760 (D.C. Cir. 1980). See Texaco, 784 F.2d at 1154 ("A judgment creditor's primary concern when judgment in his favor is stayed pending appeal is that he be 'secure ... from loss resulting from the stay of execution'"). Consequently, "no bond or a reduced bond would suffice when the creditor's interest, due to unusual circumstances, would not be unduly endangered." Texaco, 784 F.2d at 1155. See Federal Prescription, 636 F.2d at 758 (less than full bond appropriate "where a full bond would mean undue financial burden"). Indeed, the Second Circuit has recognized that "an inflexible requirement for impressment of a lien and denial of a stay of execution less a supersedeas bond in the full amount of a judgment is posted can in some circumstances be irrational, unnecessary, and self defeating, amounting to a confiscation of the judgment debtor's property without due process." Texaco, 784 F.2d at 1154.

The plaintiff has never claimed that the issuance of a stay will substantially harm him. Nor can he, given the lien he has on Chief Wearing's home in Connecticut and his registration of the judgment in South Carolina. Moreover, there is nothing in the record to suggest that Chief Wearing, a career law enforcement officer, has the personal assets to satisfy the amended judgment. To the contrary, the record confirms that Chief Wearing, who served as a law enforcement officer for 34 years, (Docket Entry No. 99, 12/6/05 Tr. at 17, 46), does not have the personal assets to provide any further security for an amended judgment in excess of $2 million. In particular, he does not have the personal assets to provide further security for the punitive damages award of $1.35 million. There is no evidence that the situation will change after or as a

result of a stay. Rather, the fact that the enforcement of the amended judgment will place an undue financial burden on Chief Wearing and/or force him to consider bankruptcy is a factor which should control the Court's analysis in this case. See Dillon v. City of Chicago, 866 F.2d 902, 905 (7th Cir. 1988); Olympia Equip. Leasing Co. v. Western Union Telegraph Co., 786 F.2d 794, 796-99 (7th Cir. 1986); id. at 799 ("execution *might* ... throw the company into bankruptcy") (emphasis added); id. at 800 (Easterbrook, J., concurring); Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1190-91 (5th Cir. 1979); Network Enterprises, 2007 U.S. Dist. LEXIS 9514, at *2 ("*whether, without a stay*, the petitioner will be irreparably injured") (emphasis added).

Courts adhere to the principle that a bond or other security should not be required where the requirement would put the judgment debtor's other creditors in undue jeopardy. See Olympia Equip., 786 F.2d at 798-99; id. at 800 (Easterbrook, J., concurring) ("The supersedeas bond is not supposed to elevate the judgment creditor over other creditors ...."); id. ("The preference for the judgment creditor [over other creditors as a result of the providing a bond] *may* send the debtor over the brink.") (emphasis added); Poplar Grove, 600 F.2d at 1191. It is well-established that a full bond should not be required when the appellant's financial condition is such that requiring a full bond would impose an "undue financial burden." Popular Grove, 600 F.2d at 1191. See Olympia Equip., 786 F.2d at 796-99. See also Dillon, 866 F.2d at 905 (a factor in determining whether to waive the bond requirement is "whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position").

Accordingly, "[w]hen the judgment debtor lacks the assets or credit necessary to pay at once and in full, this means that the judge should give the creditor less than complete security."

11

Olympia Equip., 786 F.2d at 800 (Easterbrook, J., concurring). See HCB Contractors v. Rouse & Assocs., 168 F.R.D. 508, 513 (E.D. Pa. 1995) ("Refusal of the stay would not advance the orderly course of justice; rather, it would create more difficulties by enhancing the uncertain positions of all concerned, prejudicing the other creditors, and most likely leading to additional legal proceedings."). For example, in Miami Int'l Realty Co. v. Paynter, 807 F.2d 871, 873-74 (10th Cir. 1986), the Tenth Circuit, relying on Texaco, affirmed the granting of a stay with the posting of bond in an amount less than the verdict, where the appellant submitted an affidavit stating that he did not have sufficient assets to post a bond in the amount of the verdict and that execution of the judgment would cause him irreparable harm and place him in insolvency. See Network Enterprises, 2007 U.S. Dist. LEXIS 9514, at 11 (granting stay without a bond); Alexander v. Chesapeake, Potomac and Tidewater Books, Inc., 190 F.R.D. 190, 192-93 (E.D.Va. 1999); Jack Frost Labs, Inc. v. Physicians & Nurses Mfg. Corp., 1996 U.S. Dist. LEXIS 18137, at *2 (S.D.N.Y. Dec. 10, 1996) ("where a judgment debtor would otherwise be *in danger of being driven into bankruptcy* pending appeal, a stay may be granted without the debtor posting a bond in the full amount of the judgment.") (emphasis added); International Distribution Centers, Inc. v. Walls Trucking Co., Inc., 62 B.R. 723, 732 (S.D.N.Y. Bankr. Jan. 8, 1986); C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc., 368 F.Supp. 501, 520 (E.D.Pa. 1973). See also River Oaks Marine, Inc. v. Town of Grand Island, 1992 U.S. Dist. LEXIS 20407, at *3 (S.D.N.Y. Dec. 10, 1992) (recognizing that absent a stay "[m]any innocent third parties may suffer if execution is allowed to proceed").

In this case, the status of Chief Wearing's personal assets is undisputed. If he is required to commit any of his personal assets as further security for a stay of the amended judgment, it will have a significant adverse impact on his ability to pay his other creditors and to support his

family. (Ex. A to Def's 10/24/08 Mem., Chief Wearing's 10/12/07 Aff. ¶ 6) Moreover, if required to commit any of his personal assets as further security for a stay, he will be placed in danger of being driven into bankruptcy. (Id.) The April 3 Ruling recognized that Chief Wearing does not have the personal assets to satisfy the amended judgment, let alone the punitive damages award of $1,350,000. Thus, if the plaintiff is allowed to execute against Chief Wearing's personal assets, Chief Wearing and his family will suffer financial damage. That is a real and imminent danger after the April 3 Ruling. It is the type of harm that Rule 62(d) is designed to prevent. It is the irreparable harm the case law speaks of when analyzing a motion for a stay without a bond or without the posting of a full bond. Under Rule 62(d), the danger of financial damage constitutes irreparable harm and the second factor weighs heavily in favor of granting Chief Wearing's motion for a stay.

Indeed, the plaintiff has never denied that Chief Wearing and his family would be irreparably injured absent the entry of a stay. To the contrary, the plaintiff has sought and obtained a ruling which allows him to execute against Chief Wearing's personal assets. The most basic norms of justice require the vacating of that ruling. There is no authority for a court to allow a plaintiff to inflict financial damage on a defendant and his family, even if it is merely intended as bait to assist the plaintiff in pursuing a municipality. To the extent the Court issued the April 3 Ruling in response to the plaintiff's exhortations to test the City's resolve, that experiment has failed. Accordingly, regardless of the City's position, this Court should reconsider the April 3 Ruling and stay any execution of the amended judgment.

Even if the premise for the attempt to leverage the City's position is entertained, the underlying reasoning in the April 3 Ruling is misplaced. Although neither Chief Wearing nor his attorneys can speak for the City, if the Court is correct that the City will indemnify Chief

Wearing, there is no need for a bond. If, however, the Court is mistaken and the City does not indemnify Chief Wearing, the April 3 Ruling exposes Chief Wearing and his family to irreparable financial damage. Such a situation constitutes a manifest injustice and requires the reconsideration of the April 3 Ruling.

Accordingly, for the reasons set forth in Chief Wearing's previous memoranda, (see supra footnote 1), the Court should reconsider its April 3 Ruling and grant Chief Wearing a stay without the posting of any additional security. In the alternative, the Court should reconsider its April 3 Ruling and grant Chief Wearing a stay with the posting of a bond in the amount that the City's insurer is willing to provide. (Ex. 1 attached to Def.'s 2/12/08 Reply Mem., 1/9/08 Letter from Westport Insurance Corporation)

### C.    The April 3 Ruling Is Based On An Erroneous Understanding Of The Factors Governing A Rule 62(d) Motion

There are two additional errors in the April 3 Ruling's analysis under Rule 62(d). Those errors resulted in a manifest injustice and require reconsideration.

After an extended discussion of the four factors that determine whether a stay should be granted without a bond, or without a full bond, the April 3 Ruling concluded that three of the four factors favored the entry of a stay. (4/3/08 Ruling, at 6-10) The Court then addressed the question whether a stay should enter without the posting of a bond as an independent issue. (Id. at 10-19) That approach constituted clear error.

Under Rule 62(d), if an appellant posts a full bond, the appellant is entitled to a stay "as a matter of right." American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theaters, Inc., ___ U.S. ___, 87 S.Ct. 1, 3 (1966)(Opinion of Circuit Justice Harlan); Hoban v. Washington Metropolitan Area Transit Auth., 841 F.2d 1157, 1159 (D.C. Cir. 1988) (per curiam) (posting bond under Rule 62(d) "automatic[ally]" creates stay). See Phansalkar v. Andersen Weinroth &

Co., 211 F.R.D. 197, 200 (S.D.N.Y. 2002) (bond effective when approved by Clerk).[7] The four

factors are only analyzed when an appellant seeks a stay without the posting of a bond or without

the posting of a full bond.

Consequently, after concluding that the factors weighed in favor of Chief Wearing, the

result should have been a stay without a bond or without a full bond. Instead, after analyzing the

factors, the April 3 Ruling treated the question whether a stay should be entered without a bond

as a separate and distinct question which had to be analyzed independently. (4/3/08 Ruling, at

10-19) That approach constituted clear error. Because the Court held that the factors weighed in

favor of Chief Wearing, he was entitled to stay without the posting of any further security. At a

minimum, he was entitled to a stay, with the posting of additional security in the amount that the

City's insurer is willing to post.

The second fundamental error in the April 3 Ruling is its ignoring the "sliding scale"

analysis of the factors. Despite recognizing that the strength of one factor could vary depending

on the strength of the other factors,[8] and despite its concluding that three of the four factors

weighed in Chief Wearing's favor, the April 3 Ruling denied his motion based on its conclusion

that he had not satisfied the irreparable harm factor. More precisely, it concluded that it was

---

[7]/    Upon the presentation of a full and proper bond, a district court cannot deny an appellant a stay. Olympia Equip., 786 F.2d at 796 ("posting a bond *entitles* the appellant to a stay"). See 11 Charles Allen Wright, Arthur R. Miler & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2905, at 520 (2d Ed. 1995) (stay issues "as a matter of right" under Rule 62(d) when bond is approved).

[8]/    Specifically, the April 3 Ruling recognized that the "Second Circuit has 'treated [the four factors under Rule 62(d)] somewhat like a sliding scale.'" (4/3/08 Ruling, at 5) In other words, "the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." (Id. citing In re World Trade Ctr. Disaster Site Litig., 503 F.3d at 170-71)

unclear whether Chief Wearing would be irreparably harmed, given that the City might indemnify him.

Although it acknowledged the "sliding scale" analysis, the April 3 Ruling did not weigh the strength of the first, third and fourth factors against its belief that the second factor did not favor Chief Wearing.[9] Nor did it "balance the hardships." Rather, it made the second factor dispositive. A full weighing of the factors, particularly after considering the City's May 28 letter and the strength of Chief Wearing's arguments on appeal, should result in the issuance of a stay without a bond or with the posting of a bond in the amount that the City's insurer is willing to provide, as all four factors weigh in favor of Chief Wearing. At a minimum, the weight of the first, third and fourth factors and the "balancing of the hardships" outweigh the Court's conclusion regarding the second factor. Even if the Court were to conclude that the irreparable harm factor still weighs against Chief Wearing, given the strength of the other three factors and, in particular, the strength of Chief Wearing's arguments under Garcetti v. Ceballos, 547 U.S. 410 (2006), he should receive a stay pending all appellate proceedings. (Def.'s 10/24/07 Mem. at 9-25; Def.'s 2/12/08 Reply Mem. at 5-9)

Chief Wearing was entitled to a stay under the record as it existed on April 3. Under the current state of the record, his right to a stay is even greater. It is undisputed that Chief Wearing does not have the personal assets to provide further security. Chief Wearing and his family should not be subjected to financial damage based on speculation that the City will agree to post a bond for him and thus indemnify him.

---

[9]    As the Court recognized in its April 3 Ruling and as demonstrated in Chief Wearing's July 2, 2007 appellate brief, (Ex. C attached to Def.'s 10/24/07 Mem.), a "substantial" case can be made that the analysis of the First Amendment claim in the February 5, 2007 Ruling constituted reversible error. (4/3/08 Ruling, at 8 ("the Court finds that the first factor weighs in favor of a stay"))

The Court should not penalize Chief Wearing and his family because of the position taken by the City. In particular, the Court should not grant the plaintiff leave to inflict financial damage on Chief Wearing and his family, which is the relief sought by the plaintiff, (Pl.'s 12/28/07 Mem. at 3), and given to him by the April 3 Ruling.

Accordingly, the Court should grant Chief Wearing a stay without the posting of any additional security. In the alternative, the Court should grant Chief Wearing a stay with the posting of a bond in the amount that the City's insurer is willing to provide.

## II.    IF THE COURT DENIES CHIEF WEARING'S MOTION, IT SHOULD ORDER THE PLAINTIFF TO POST A BOND TO SECURE ANY EXECUTION AND ORDER THAT ALL MONIES OBTAINED BY THE PLAINTIFF BE DEPOSITED INTO AN ACCOUNT HELD BY THE COURT

If the Court does not grant Chief Wearing's motion for a stay, it should order (a) that the plaintiff post a bond to secure any damages that result from his execution on or enforcement of the amended judgment and (b) that all monies obtained by the enforcement and execution of the judgment be deposited into an interest bearing account held by the Clerk's Office. See Harris v. Butler, 961 F.Supp. 61, 63-64 (S.D.N.Y. 1997)(approving depositing of monies and holding in escrow). This relief was requested in Chief Wearing's prior motion for a stay, but was overlooked by the April 3 Ruling. (Def's 10/24/07 Mem., at 27)

As the Court is aware, the plaintiff is an individual. If the plaintiff is allowed to execute on the amended judgment and obtain any monies from that execution, Chief Wearing's ability to retrieve those monies after he is successful on his appeal should be secured. See Network Associates, 2007 U.S. Dist LEXIS 9514, at *11 n.1 (difficulty in appellant's ability to recover his property from appellee should be considered); Connecticut General Life Ins. Co. v. Riner, 2005 WL 151933, at *1 (W.D. Va. Jan. 24, 2005) (granting stay because appellant "may suffer irreparable loss" if appellee obtained monies before resolution of appeal). The April 3 Ruling

overlooked this situation, despite it having been raised in Chief Wearing's motion for a stay. (Def's 10/24/07 Mem., at 27)

The plaintiff should provide security for the damages that will be inflicted on Chief Wearing and his family if he is not able to obtain restitution after he succeeds on his appeal. In fact, even if he is able to obtain restitution, the damage done to Chief Wearing and his family may be irreversible. Accordingly, at a minimum, the Court should require the plaintiff to post a bond before executing on the amended judgment and to deposit any monies obtained into an interest bearing account held by the Clerk's Office. See Taylor v. Currie, 2006 WL 287323, at *1 (E.D. Mich. Feb. 7, 2006) (funds to be deposited in interest bearing escrow account). In connection with that account, the Court should order the Clerk not to deduct any monies from the account at the time monies are released.

## III.    IF THE COURT DENIES CHIEF WEARING'S MOTION, AT A MINIMUM, IT SHOULD STAY THE EXECUTION AND ENFORCEMENT OF THE AMENDED JUDGMENT UNTIL AFTER THE SECOND CIRCUIT HAS REVIEWED THE MATTER AND ISSUED ITS OWN RULING

If the Court denies the instant motion, Chief Wearing will file a motion for a stay with the Second Circuit. See Fed. R. App. P. 8(a)(2). At a minimum, the Court should stay the execution and enforcement of the amended judgment until after the Second Circuit has issued its ruling on that motion. Such a stay will allow Chief Wearing to present the issue to the Second Circuit and will allow that Court an opportunity to review the issue in an orderly fashion.

A temporary stay will not prejudice the plaintiff. Indeed, he has already placed a lien on Chief Wearing's home and registered the amended judgment in the United States District Court for the District of South Carolina.

18

## **CONCLUSION**

For the reasons set forth above and in Chief Wearing's previous memoranda, the Court should reconsider the April 3 Ruling and enter a stay without requiring Chief Wearing to provide any further security, given the high degree to which the Rule 62(d) factors favor Chief Wearing. In the alternative, the Court should enter a stay with the posting of security by the City of New Haven's insurer in the amount that the insurer is willing to provide.

If the Court denies the instant motion, it should order the plaintiff to: (a) post a bond to secure any damages inflicted on Chief Wearing and his family by the execution of the amended judgment and (b) deposit any monies he recovers into an interest bearing account held by the Clerk of the Court. In connection with that account, the Court should order the Clerk not deduct any monies from the account at the time monies are released.

If the Court denies the instant motion, it should also stay the execution and enforcement of the amended judgment until after the Second Circuit has reviewed the matter and issued its own ruling on the motion for a stay. Chief Wearing would file a motion pursuant to Fed. R. App. P. 8 with the Second Circuit within 14 days of this Court's ruling.

Respectfully submitted,

**DEFENDANT**
**MELVIN WEARING**

By: _____

Robert A. Rhodes, Esq.
CT Fed. Bar No. 13583
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel:     (203) 227-2855
Fax:     (203) 227-6992
E-Mail: rhodes@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel:     (860) 522-6103
Fax:     (860) 548-0006
E-Mail: johnsonr@halloran-sage.com

His Attorneys

# EXHIBIT A

# SANTOS & SEELEY, P.C.

### ATTORNEYS AT LAW

51 RUSS STREET

HARTFORD, CONNECTICUT 06106-1566

HUBERT J. SANTOS
HOPE C. SEELEY
SANDRA L. SNADEN
BENJAMIN B. ADAMS

TELEPHONE
(860) 249-6548
TELECOPIER
(860) 724-5533

April 7, 2008

John R. Ward, Esq.
Office of the Corporation Counsel
City of New Haven
165 Church Street, 4th Floor
New Haven, CT 06510

*Re:  Tolnay v. Wearing*

Dear Attorneys Ward:

 As you are aware, our firm represents Melvin Wearing in a lawsuit brought by Officer Arpad Tolnay of the New Haven Police Department. Chief Wearing was represented by the Office of Corporation Counsel through Attorney Jonathan Beamon from the inception of this litigation up to and including the trial in which the jury awarded $150,000.00 in non-economic compensatory damages, $903.84 in economic damages and $5,000,000.00 in punitive damages. The award of punitive damages was subsequently reduced to $1,350,000.00. Approximately three months after the trial, Attorney Beamon withdrew his appearance on behalf of Mr. Wearing.

 The District Court has recently denied Mr. Wearing's Motion for Stay of Enforcement and Execution of the Judgment in this matter. In this ruling, the court states Mr. Wearing has failed to affirmatively demonstrate that he will not be indemnified by the City of New Haven for punitive damages. In pages 16 through 19 of its Decision, the court recounts conduct by the city and its counsel in support of the conclusion that the City of New Haven will indemnify Mr. Wearing for punitive damages.

April 7, 2008

    As execution of the judgment would obviously subject Mr. Wearing to economic catastrophe, we now affirmatively request that the City of New Haven indemnify Mr. Wearing and post a bond in the amount of $1,350,000.00 in this matter so that Mr. Wearing may pursue his appeal of this judgment without being further harassed by the plaintiff. We request an immediate response to this letter.

                    Very truly yours,

                    HUBERT J. SANTOS

HJS/mlt

# EXHIBIT B

05/28/2008 13:41 FAX 58   CORPORATION COUNSEL   ☒002/002



# OFFICE OF THE CORPORATION COUNSEL

165 Church Street 4th Floor, New Haven 06510
Tel: 203.946.7958   Facsimile: 203.946.7942
www.cityofnewhaven.com



New Haven
· 2003

John R. Ward
Corporation Counsel

John DeStefano, Jr.
Mayor

May 28, 2008

Attorney Hubert Santos
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

**VIA FACSIMILE AND US MAIL**

Re:   <u>Arpad Tolnay v. Wearing 3:02CV1514 (EBB)</u>

Dear Attorney Santos:

In response to your letter dated April 7, 2008 in which you requested the City of New Haven to post bond in the amount of 1.35 million dollars in the above referenced matter, the City of New Haven cannot comply your request. Please feel free to contact me if you have any questions.

Very truly yours,

John Ward

Cc: Attorney Vikki Cooper, Deputy Corporation Counsel
    Attorney Robert Rhodes, Halloran & Sage, LLP

# EXHIBIT C

CLOSED

## U.S. District Court
### District of South Carolina (Charleston)
### CIVIL DOCKET FOR CASE #: 2:08-mc-00013

Tolnay v. Wearing                          Date Filed: 02/01/2008
Assigned to:                               Date Terminated: 02/05/2008

**Plaintiff**

**Arpad Tolnay**                 represented by **Tobias Gavin Ward, Jr**
                                               Todd and Barber
                                               PO Box 1549
                                               Columbia, SC 29202
                                               803-779-4383
                                               Fax: 803-799-7604
                                               Email: tgw@thw-law.com
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Melvin Wearing**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/04/2008 | 1 | REGISTRATION of Foreign Judgment, filed by Tobias Ward.(ltap, ) Modified filer on 2/5/2008 (ltap, ). (Entered: 02/04/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/08/2008 12:23:29 | | |
| PACER Login: | hs0028 | Client Code: | 07312.0268/166 |
| Description: | Docket Report | Search Criteria: | 2:08-mc-00013 |
| Billable Pages: | 1 | Cost: | 0.08 |

AO 451 (Rev. 12/93)  Certification of Judgment

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ CONNECTICUT _____

**CERTIFICATION OF JUDGMENT**
**FOR REGISTRATION IN**
**ANOTHER DISTRICT**

ARPAD TOLNAY
V.
MELVIN WEARING

2:08-MC-13

Case Number:    3:02CV1514(EBB)

I, _____ ROBERTA D. TABORA _____ Clerk of the United States district court certify that the

attached judgment is a true and correct copy of the original judgment entered in this action on ____1/23/2008____ , as it
                                                                                                         Date

appears in the records of this court, and that

___this Court ordered registration of judgment for good cause shown in a Ruling on Plaintiff's Motion___

___for Order Permitting Registration of Judgment filed on 10/25/07.___

**IN TESTIMONY WHEREOF,** I sign my name and affix the seal of this Court.

JAN 2 3 2008
_____
Date

**ROBERTA D. TABORA**
_____
Clerk

*Melissa Ruocco*
_____
(By) Deputy Clerk

"Insert the appropriate language: ..."no notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal
Rules of Appellate Procedure has been filed." ..."no notice of appeal from this judgment has been filed, and any motions of the kinds listed in Rule 4(a)
of the Federal Rules of Appellate Procedure (†) have been disposed of, the latest order disposing of such a motion having been entered on [date]." ..."an
appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on [date]. ..."an appeal was taken from
this judgment and the appeal was dismissed by order entered on [date]."

(†Note: The motions listed in Rule 4(a), Fed. R. App. P., are motions: for judgment notwithstanding the verdict; to amend or make additional findings
of fact; to alter or amend the judgment; for a new trial; and for an extension of time for filing a notice of appeal.)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2:08-MC-13
2008 JAN 23  A 9 37

ARPAD TOLNAY

v.

Civil No.  3:02cv1514(EBB)

MELVIN WEARING

U.S. DISTRICT COURT
NEW HAVEN, CT

**A M E N D E D   J U D G M E N T**

It is hereby Ordered that the Judgment entered by this Court in the above-entitled

case on December 14, 2005, be amended.  This matter came on for trial before a jury and

the Honorable Ellen Bree Burns, Senior United States District Judge.   On December 12,

2005, the jury returned a verdict for the plaintiff, Arpad Tolnay, in the amount of

$150,903.84 in compensatory damages and $5,000,000.00 in punitive damages.  Post

judgment motions were filed and on February 5, 2007, a ruling on post-trial motions

entered denying defendant's motion for judgment as a matter of law.  The ruling further

granted defendant's motion for remittitur conditioned by plaintiff's acceptance of a remittitur

in the amount of $1,350,000.00 within 30 days or a new trial limited to the issue of

damages would be held.  On February 27, 2007, plaintiff filed a notice of election to accept

the remitted punitive damage award.  On September 19, 2007, plaintiff's motion for

attorney's fees in the amount of $513,657.50 was granted.  On October 25, 2007, plaintiff's

motion for costs in the amount of $6,712.98 was granted.

Therefore, it is hereby ORDERED, ADJUDGED and DECREED that judgment is

entered for the plaintiff in the amount of  $1,350,000.00 in punitive damages, $150,903.84

in compensatory damages, $513,657.50 in attorney's fees, plus $6,712.98 in costs.

Dated at New Haven, Connecticut this 23rd day of January, 2008.

I hereby certify that the foregoing  ROBERTA D. TABORA, Clerk
is a true copy of the original document
on file. Date: 1/23/08

Roberta D. Tabora          *Melissa Ruocco*
Clerk

Melissa Ruocco
Deputy Clerk

EOD: 1/23/08  By *Melissa Ruocco*  Deputy Clerk

## CERTIFICATION

This is to certify that on this 6th day of June, 2008, a copy of the foregoing was caused to be mailed via U.S. Mail to:

Karen Lee Torre, Esq.
Norman A. Pattis, Esq.
Law Offices of Norman A. Pattis
129 Church Street, 4th Floor
Suite 405
New Haven, CT 06510

Hugh F. Keefe, Esq.
Lynch, Traub, Keefe and Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506-1612

Hubert J. Santos, Esq.
Sandra L. Snaden, Esq.
Santos & Seeley, P.C.
51 Russ Street
Hartford, CT 06106

Joseph D. Garrison, Esq.
Alexandra K. Block, Esq.
Garrison Levin-Epstein Chimes
  & Richardson
405 Orange Street
New Haven, CT 06511

Ralph W. Johnson III

1187443_1.DOC